**Case No. 26-769**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

BEAGLE LABS, INC.; BEAGLE TECHNOLOGIES, INC.; BIG BEAGLE, INC.;
RENTAL PROPERTY MANAGERS ASSOCIATION LLC; and
YRIG RISK RETENTION GROUP, INC.,
Plaintiffs-Appellants,

v.

APPFOLIO, INC.,
Defendant-Appellee.

---

Appeal from the United States District Court for the Central District of California
Case No. 2:25-cv-12248-JFW-SSC
Honorable John F. Walter

---

**APPELLANTS' EXCERPTS OF RECORD VOLUME 2 OF 4**

---

Michael Burshteyn
Marcelo Barros
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 590-5141

Jake Evans (pro hac vice)
Jordana R. Sternberg (pro hac vice)
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE, Suite 2500, Terminus 200
Atlanta, GA 30305
Telephone: (678) 553-2100

*Counsel for Plaintiffs-Appellants*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiff, Beagle Labs, Inc., Beagle Technologies, Inc., and Big Beagle Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF LODGING [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE ECF NO. 39**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the Court's Order dated December 29, 2025 (Dkt. 32), and in conformity with Local Rule 5.4.4.1 and Item 5(f) of the Court's Standing Order, Plaintiffs Beagle Labs, Inc., et al., hereby lodges a copy of its [Proposed] Statement of Decision on Plaintiffs' Motion for Reconsideration.

DATED: March 11, 2026

Respectfully Submitted,

By: */s/ Michael Burshteyn*

GREENBERG TRAURIG, LLP

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

BEAGLE LABS, INC., a Delaware corporation,
BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

CASE NO. 2:25-cv-12248-JFW-SSC

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE DKT. 39**

Defendant.

The Court has considered Plaintiffs' Motion for Reconsideration, supporting declarations, all papers submitted, and argument of counsel. Good cause appearing, and in light of a material difference in fact or law from that presented to the Court at the time the Order was entered, including new material facts arising after the Court's prior Order, the Court ORDERS as follows:

**PROPOSED STATEMENT OF DECISION**

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and Yrig Risk Retention Group, Inc., (collectively "Plaintiffs" or "Beagle"), filed a Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction (the "Motion for TRO") to prevent Defendant AppFolio, Inc., ("AppFolio") from deploying or directing technical or policy measures that would allegedly block, degrade, or otherwise interfere with Plaintiffs' ability to provide services to mutual customers who use Defendant's platform, pending a hearing on a preliminary injunction. On January 7, 2026, the Court denied Plaintiffs' Motion for TRO, in part because the Court understood that alternative paths existed, including paths referenced by the parties as "Scheduled Reports" and "Database API." (Dkt. 39.) On January 21, 2026, Plaintiffs filed a Motion for Reconsideration and raised new facts. (Dkt. 50.) On February 4, 2026, the Court struck Plaintiffs' Motion for Reconsideration for failure to comply with Local Rule 7-3 (Dkt. 39.) On February 11, 2026, Plaintiffs complied with Local Rule 7-3 and refiled the Motion for Reconsideration as soon as procedurally permissible. (Dkt. 64.)

Having considered the Motion for Reconsideration, supporting declarations, all papers submitted, and argument of counsel, the Court **GRANTS** the Motion for Reconsideration and **SETS a limited evidentiary hearing** for the reasons stated below. This limited hearing will resolve factual disputes concerning the technical capabilities and sufficiency of Defendant's proposed alternative access methods.

## I. PROCEDURAL HISTORY

Before the Court is Plaintiffs' Motion for Reconsideration of the Court's January 7,

2026 Minute Order denying Plaintiffs' Motion for TRO (the "Prior Order").

On January 21, 2026, Plaintiffs filed a Motion for Reconsideration, raising new facts to support its Motion for TRO. (Dkt. 50.) On February 4, 2026, the Court struck Plaintiffs' Motion for Reconsideration for failure to comply with Local Rule 7-3. (Dkt. 56.) Local Rule 7-3 requires that "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Local Rule 7-3. Counsel for Plaintiffs "mistakenly misunderstood the Local Rule and the Court's Standing Order to require pre-motion conferences for motions such as a motion to dismiss, but not a motion for reconsideration of an underlying motion for a preliminary injunction." (Dkt. 68 at 2.)

Following the Court's clarification of Local Rule 7-3, Plaintiffs immediately complied. Plaintiffs met and conferred with Defendant's counsel that same day, February 4, 2026. Plaintiffs then refiled their Motion for Reconsideration exactly seven days later, on February 11, 2026, the first date permitted under Local Rule 7-3 following the meet-and-confer. (Dkt. 64.)

In the Prior Order, the Court denied Plaintiffs' TRO primarily because it found the record did not establish a likelihood of irreparable harm. The Court found that the four categories of data Plaintiffs identified as essential (tenant rosters, unit identifiers, lease/billing information, and insurance-compliance status) appeared available through authorized alternatives, including Scheduled Reports and the Database API; the Court also noted a customer email from Plaintiffs' CEO suggesting the "fix was simple" using Scheduled Reports. The Court further observed that Plaintiffs' criticisms of the API and concerns about re-engineering time lacked sufficient specificity.

In their reconsideration papers, Plaintiffs allege they have discovered in the time since entry of the Order that: (i) Scheduled Reports and the Database API are functionally read-only and do not permit the write-level operations Plaintiffs must perform to meet customer obligations; (ii) Defendant communications to Plaintiffs' customers after the Prior

Order appear to disparage Plaintiffs' practices, allegedly causing ongoing reputational injury; and (iii) upon technical review post-Order, the API endpoints are similarly insufficient as a substitute for Plaintiffs' access. Plaintiffs assert these facts emerged after briefing was completed and could not reasonably have been developed under the compressed briefing schedule.

## II. LEGAL STANDARDS

"*Absent good cause shown*, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." Local Rule 7-18 (emphasis added).

Local Rule 7-18 provides for reconsideration "on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." Local Rule 7-18.

Similarly, Fed. R. Civ. P. 59(e) provides four grounds for reconsideration: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *IV Sols. Inc. v. TakeCare Ins. Co.*, No. CV 13-4592-JFW MANX, 2014 WL 8515781, at *2 (C.D. Cal. Feb. 28, 2014) (Walter, J.) (*citing Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.2011)). *See also White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) ((noting that Rule 59(e) was adopted to make clear that the district court possesses the power to make changes in the period immediately following the entry of judgment)); (The Rule enables a party to request that a district court reconsider a just-issued judgment."); *Banister v. Davis*, 590 U.S. 504, 507 (2020) (The Rule enables a party to request that a district court

reconsider a just-issued judgment.”).

In addition, Fed. R. Civ. P. 54(b) provides: “any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties’ rights and liabilities.” Accordingly, “[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.” *Feltzs v. Cox Commc’ns Cal., LLC*, 562 F.Supp. 3d 535, 539 (C.D.Cal. 2021) (granting motion for reconsideration due to intervening change in controlling law).

## III. DISCUSSION

### A. Plaintiffs Are Permitted to Refile Their Motion for Reconsideration

#### i. The Refiled Motion for Reconsideration Was Timely

Defendant argues the Motion for Reconsideration is untimely on grounds that the Prior Order triggered the 14-day clock, where Plaintiffs’ first Motion for Reconsideration was filed on January 21, 2026, but struck for noncompliance with Local Rule 7-3 and the Court’s Standing Order, and the operative motion was re-filed on February 11, 2026. (Dkt. 68 at 10.) Plaintiffs respond that the original January 21 filing was timely; that upon the Court’s strike order, they immediately initiated the Local Rule 7-3 process, filed the joint statement, and refiled at the earliest date permitted; and that their refiling at most reflects excusable neglect and compliance with the Local Rules’ timing mechanics. (Dkt. 69 at 12-14.) For the reasons below, the Court finds that the Motion for Reconsideration was timely.

Defendant concedes that Plaintiffs’ January 21 motion was filed timely. (Dkt. 68 at 10.) It does not dispute that Plaintiffs re-filed immediately after curing the procedural deficiency identified by the Court. Having admitted timeliness, Defendant identifies no authority holding that a motion timely filed, then struck solely for an unintentional

procedural defect, becomes untimely when promptly refiled in conformity with the Court's directive.

The relevant question asks not whether the *re-filed* motion fell within the original 14-day window—it could not. The question is whether Plaintiffs acted in good faith and without undue delay. It manifestly did so.

After the Court struck Plaintiffs' timely-filed reconsideration motion, Plaintiffs had to comply with the time requirements of the Court's rules in order to refile. Plaintiffs did so. Plaintiffs initiated the Local Rule 7-3 conference the same day the Court issued the strike order, filed the Joint Statement two days later, and re-filed the motion at the earliest point possible given the procedural prerequisites were satisfied. Local Rule 7-3.

In its Opposition, Defendant cites to *ML Prods. Inc. v. Ninestar Tech. Co. Ltd*. and *Teixeira v. BMW of N. Am., LLC*. (Dkt. 68 at 11.) Both are distinguishable. In *ML Prods. Inc.*, the plaintiff attempted to file its *original* motion for reconsideration "a day late." *See ML Prods. Inc. v. Ninestar Tech. Co. Ltd.*, 2025 WL 2670865 at *3-4 (C.D. Cal. Feb. 12, 2025). *Teixeira* is even further afield. There, the defendant repeatedly misunderstood and misapplied the Local Rules and the Court's procedures, including a 63-day delay following entry of a motion to compel order. *Teixeira v. BMW of N. Am., LLC*, 2023 WL 6194169, at *10, 11, n.3 (C.D. Cal. July 3, 2023). Neither case resembles the present circumstances. Unlike the plaintiff in *ML Prods. Inc.*, Plaintiffs' original motion for reconsideration was timely. Additionally, Plaintiffs did not miss a deadline through neglect or inattention. Rather, Plaintiffs proceeded under an incorrect but sincere interpretation of the Local Rules and procedural mechanisms. Plaintiffs' actions do not reflect a pattern of noncompliance, willful disobedience, or dilatory intent. As soon as Plaintiffs' counsel learned of the inadvertent mistake, Plaintiffs acted diligently, in good faith, and expeditiously.[1]

[1] The length of delay and its impact on the proceedings also supports the finding of excusable neglect. The Ninth Circuit evaluates how unique local rules may complicate compliance with deadlines. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th. Cir. 2010) (finding excusable neglect, partially because plaintiff "faced an

Accordingly, this Court holds that the Motion for Reconsideration is timely.

**ii. Plaintiffs' Appeal Does Not Divest This Court Of Jurisdiction**

As to procedural propriety in light of the February 6, 2026 notice of appeal, Defendant asserts that this Court lacks jurisdiction because Plaintiffs seek reconsideration of the same Order they have appealed. (Dkt. 68 at 11.) However, the Court concludes it retains authority to consider reconsideration of its interlocutory Order and to convene an evidentiary hearing to address newly emergent facts and disputes relevant to prospective preliminary injunctive relief. The issues presented—timeliness, excusable neglect, and the need for a focused evidentiary record on technical matters—are sufficiently distinct from the appellate challenge to permit this Court to proceed. It may be the case that a ruling following an evidentiary hearing might moot the appeal, but that does not mean this Court cannot hold a hearing.

Therefore, this Court has jurisdiction to consider the Motion for Reconsideration.

**B. Plaintiffs Have Shown Sufficient Grounds for Reconsideration Based on New and Material Differences in Fact**

The Court finds that Plaintiffs have amply demonstrated grounds for reconsideration. After the Court denied preliminary injunctive relief, new facts and evidence surfaced, including Defendant's post-Prior Order communications and technical clarifications, supporting reconsideration. Specifically, Plaintiffs allege that Defendant communicated directly to customers that it does not intend to permit Plaintiffs to work with its platform and refused to provide a path forward for integration, despite Plaintiffs' direct requests for

---

exceptionally constrained deadline resulting from the peculiar dictates of the local rules for the Central District of California.") Here, once counsel for Plaintiffs learned of the meet and confer requirement for motions for reconsideration, they immediately met and conferred and complied fully with Local Rule 7-3. The seven-day time lapse in refiling was solely to comply with Local Rule 7-3, which mandates a conference to occur "at least 7 days prior to the filing of the motion." Local Rule 7-3. Plaintiffs acted promptly and in immediate conformity with Local Rule 7-3 once the deficiency was identified, thereby ensuring minimum disruption and prejudice.

an explanation or guidance on how to use the API or any alternative means and notwithstanding Defendant's prior representations to the Court that Plaintiffs could operate through alternative methods. (Dkt. 64 at 2.) Additionally, Plaintiffs allege that after the Prior Order, Defendant continued to take affirmative steps to block Plaintiffs from its platform, implement new blocking measures, and communicate disparagingly to Plaintiffs' customers, which, if true, could cause irreparable harm to Plaintiffs. (Dkt. 64 at 2-3.)

Plaintiffs allege that their post-Prior Order investigation has revealed facts that they could not have determined during the compressed and expedited briefing period before the Prior Order, during which Defendant filed its responsive papers on December 29, and Plaintiffs responded in the afternoon on December 31. Defendant asserted that these alternative routes could work, and Plaintiffs allege that its investigation during that time could not reasonably have discovered the shortcomings in Defendant's proposed solutions that it has now discovered. Plaintiffs' post-Prior Order investigation findings, if true, constitute material factual development warranting an evidentiary hearing, as Plaintiffs may be able to establish irreparable harm on the basis of the newly developed facts. Likewise, if new facts could show that the Court relied on information that has turned out to be untrue in making its determination that Plaintiffs failed to establish irreparable harm, then an evidentiary hearing on those new facts is warranted.

In addition, the parties have submitted diametrically opposed technical declarations regarding whether the alternatives Defendant proffered for platform access actually work for Plaintiffs' purposes. For example, Plaintiffs' engineer attested that the alternatives lack critical functionality, while Defendant's declarant contended the opposite regarding API write capabilities. (Dkt. 69 at 8-10.) Such factual disputes, particularly on technical matters, are best addressed through live testimony and cross-examination at an evidentiary hearing.

Under the standards set forth in Local Rule 7-18, reconsideration is permissible where new facts arise or where a material difference in fact is demonstrated that could not have been discovered with reasonable diligence prior to the challenged order. Local Rule 7-18.

The circumstances alleged here—new evidence of harm, direct contradictions in technical feasibility, material differences not previously discoverable, and ongoing, unaddressed reputational harms—collectively support reconsideration and entitle Plaintiffs to the opportunity to fully air and examine these issues at a minimum through an evidentiary hearing.

In summary, Plaintiffs have carried its burden to demonstrate grounds for reconsideration based on both new evidence arising post-Prior Order and previously undiscoverable, material differences in fact. Accordingly, reconsideration and further proceedings—including an evidentiary hearing—are warranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is **GRANTED**.

The Court **VACATES** the portions of the Prior Order (ECF No. 39) denying injunctive relief and **ORDERS** a limited evidentiary hearing to determine whether Plaintiffs' claims satisfy the elements required to obtain injunctive relief.

It is so **ORDERED**.

DATED: _______________, 2026 ________________________________

United States District Court Judge

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. **2:25-cv-12248-JFW-SSC**

**NOTICE OF LODGING OF DEFENDANT APPFOLIO'S [PROPOSED] STATEMENT OF DECISION ON BEAGLE'S MOTION FOR RECONSIDERATION OF ORDER DENYING EX PARTE TRO AND OSC RE PRELIMINARY INJUNCTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT pursuant to Local Rule 5-4.4.1 and Item 5(g) of the Court's Standing Order, Defendant AppFolio, Inc., hereby lodges its [Proposed] Statement of Decision on Beagle's Motion for Reconsideration of the Court's Order Denying the Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction.

DATED this 11th day of March 2026.

*/s/ Brian Procel*

Brian Procel
Jeremiah Levine
Marty Pritikin
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Defendant
AppFolio, Inc.

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. **2:25-cv-12248-JFW-SSC**

**NOTICE OF LODGING OF DEFENDANT APPFOLIO'S [PROPOSED] STATEMENT OF DECISION ON BEAGLE'S MOTION FOR RECONSIDERATION OF ORDER DENYING EX PARTE TRO AND OSC RE PRELIMINARY INJUNCTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT pursuant to Local Rule 5-4.4.1 and Item 5(g) of the Court's Standing Order, Defendant AppFolio, Inc., hereby lodges its [Proposed] Statement of Decision on Beagle's Motion for Reconsideration of the Court's Order Denying the Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction.

DATED this 11th day of March 2026.

*/s/*

Brian Procel
Jeremiah Levine
Marty Pritikin
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Defendant
AppFolio, Inc.

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. **2:25-cv-12248-JFW-SSC**

**DEFENDANT APPFOLIO'S [PROPOSED] STATEMENT OF DECISION ON BEAGLE'S MOTION FOR RECONSIDERATION OF ORDER DENYING EX PARTE TRO AND OSC RE PRELIMINARY INJUNCTION**

**STATEMENT OF DECISION**

The Court, having considered the papers filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, and YRig Risk Retention Group, Inc. (collectively, "Beagle"), and Defendant AppFolio, Inc. ("AppFolio"), including Beagle's Motion for Reconsideration (Dkt. 64), AppFolio's Opposition (Dkt. 68), and Beagle's Reply (Dkt. 69), hereby **DENIES** Beagle's Motion for Reconsideration of the Court's Order Denying the Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction (the "Motion") for the following reasons:

## I. BEAGLE'S MOTION IS UNTIMELY

As a threshold matter, Beagle's motion for reconsideration is untimely. Local Rule 7-18 provides that, absent good cause, a motion for reconsideration must be filed "no later than 14 days after entry of the Order that is the subject of the motion." C.D. Cal. L.R. 7-18. The Court issued its Order denying Beagle's Motion for a Temporary Restraining Order on January 7, 2026. (Dkt. 39.) Under the Local Rule, any motion seeking reconsideration of that Order was therefore required to be filed no later than January 21, 2026.

Beagle did file a motion for reconsideration on January 21, 2026. However, the Court subsequently struck that motion because it failed to comply with Local Rule 7-3 and the Court's Standing Order, both of which require a pre-filing conference between counsel and the filing of a joint statement following that conference. (Dkt. 56.) Beagle did not dispute that it had failed to comply with those procedural requirements.

After the Court struck the initial motion, Beagle filed the present motion on February 11, 2026 – five weeks after the Court issued the Order denying the TRO

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 20 of 281

and three weeks after the Local Rule deadline had passed. (Dkt. 64.) By that time, the fourteen-day deadline imposed by Local Rule 7-18 had long expired.

Beagle does not meaningfully address this timing issue in its motion. Nor does Beagle attempt to demonstrate good cause for filing the present motion after the Local Rule deadline. Instead, the record reflects that the delay resulted from Beagle's failure to comply with the Local Rules in connection with its original filing. Courts in this district have repeatedly held that a party's misunderstanding of the Local Rules or failure to follow them does not constitute good cause to excuse an untimely motion for reconsideration. *See, e.g., ML Prods. Inc. v. Ninestar Tech. Co. Ltd. et al.*, 2025 WL 2670865, at *1 (C.D. Cal. Feb. 12, 2025); *Teixeira v. BMW of N. Am.,* LLC, 2023 WL 6194169, at *4 (C.D. Cal. July 3, 2023).

The Court recognizes that Beagle initially filed a reconsideration motion within the fourteen-day period. However, once that motion was stricken for failure to comply with the Court's procedural requirements, Beagle was required to demonstrate good cause for filing a new motion outside the time permitted by Local Rule 7-18. Beagle has not made that showing.

Because Beagle's present motion was filed well beyond the deadline established by Local Rule 7-18 and because Beagle has not demonstrated good cause to excuse that delay, the motion is untimely and may be denied on that basis alone.

## II. <u>BEAGLE'S MOTION IS PROCEDURALLY IMPROPER</u>

The motion is also procedurally improper because Beagle has simultaneously sought relief from the same Order in the Court of Appeals. On February 6, 2026, Beagle filed a Notice of Appeal from the Court's January 7, 2026 Order denying its Motion for a Temporary Restraining Order. (Dkt. 58.) That Notice of Appeal asks

the Ninth Circuit to review the same Order that Beagle now asks this Court to reconsider.

Litigation over the same order ordinarily does not proceed simultaneously in both the district court and the court of appeals. The filing of a notice of appeal divests the district court of jurisdiction over the matters being appealed. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *see also United States v. Vroman*, 997 F.2d 627, 627 (9th Cir. 1993) (holding that the district court lacked jurisdiction to consider a motion for reconsideration filed after a notice of appeal).

Here, Beagle seeks appellate review of the Court's January 7 Order while simultaneously asking this Court to reconsider that same ruling and reopen the record. Beagle's motion does not address the effect of its Notice of Appeal or explain how both proceedings may properly move forward at the same time.

The Court need not definitively resolve the precise scope of its jurisdiction in light of the pending appeal. It is sufficient to observe that Beagle's decision to pursue reconsideration here while simultaneously seeking appellate review of the same Order underscores the procedural irregularity of the present motion and provides an additional reason why the Court declines to reconsider its prior Order.

## III. BEAGLE HAS NOT IDENTIFIED NEW FACTS WARRANTING RECONSIDERATION

Beagle's motion does not identify any new material facts that would justify reconsideration under Local Rule 7-18. Instead, the record demonstrates that the limitations Beagle now relies upon were either known to Beagle during the original TRO proceedings or could have been discovered with reasonable diligence before the Court ruled.

First, the record reflects that the parties already addressed the capabilities of Scheduled Reports during the TRO briefing. In opposing the TRO, AppFolio explained that Scheduled Reports allow customers to generate and automatically transmit reports containing the exact categories of data Beagle claimed it required to operate its business. (Opposition to TRO (Dkt. 33) at 5-6.) Beagle itself acknowledged during the TRO proceedings that Scheduled Reports did not permit Beagle to "add or remove charges" within the AppFolio platform – that is, that the reports did not provide write functionality. (Reply in Support of TRO (Dkt. 36) at 6-7.) Thus, the limitation Beagle now characterizes as a newly discovered fact was expressly identified by Beagle during the TRO proceedings. Because this limitation was known to and raised by Beagle before the Court issued its January 7 Order, it cannot serve as a basis for reconsideration.

Second, Beagle has not demonstrated that the capabilities of AppFolio's Database API could not have been discovered earlier through reasonable diligence. The Court previously noted that once AppFolio informed Beagle that it intended to enforce its Terms of Service, Beagle presumably began exploring alternative authorized mechanisms for obtaining customer data. (Order (Dkt. 39) at 6.) However, Beagle's own declaration indicates that it did not assign an engineer to evaluate these alternatives until after the Court issued its Order. (Okpokowuruk Decl. ¶ 3.) Beagle also did not request technical documentation regarding the Database API until after the Court's Order and has not shown why it could not have sought that information earlier through reasonable diligence. (Dkt. 69 at 7, 11.)

The reconsideration standard does not permit a party to withhold investigation until after an adverse ruling and then rely on the results of that

investigation as "new facts." *See Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985).

Nor does Beagle identify any change in the functionality of Scheduled Reports or Database API occurring after the Court's Order. To the contrary, the evidence submitted by AppFolio indicates that the capabilities of these features remained unchanged throughout the relevant period. (Delage Decl. ¶ 5.) Because the alleged limitations existed at the time of the TRO briefing, they cannot constitute new material facts within the meaning of Local Rule 7-18.

## IV. APPFOLIO'S POST-ORDER COMMUNICATIONS DO NOT JUSTIFY RECONSIDERATION

Beagle also contends that AppFolio's post-Order communications to customers constitute new evidence warranting consideration. Specifically, Beagle points to statements made in a January 9, 2026 communication and argues that those statements demonstrate that AppFolio never intended to permit Beagle to integrate with its platform. (Dkt. 64 at 6-7.) This argument does not provide a basis for reconsideration.

The statements identified by Beagle were not new. The record reflects that the January 9 communication repeated statements that AppFolio had already conveyed to customers in its December 9, 2025 notice. (Delage Decl. ¶¶ 3–4.) AppFolio sent the January 9 message to customers who had not received the December communication because Beagle did not have user access to those customers' databases at the time. The content of the message itself remained unchanged.

Because the January 9 communication merely reiterated statements that were already known before the Court ruled on the TRO motion, it does not constitute

new evidence within the meaning of Local Rule 7-18. Evidence that merely reiterates previously known facts does not justify reconsideration. *See Trust Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). Accordingly, Beagle's reliance on AppFolio's post-Order communications does not provide a basis for reconsideration.

## V. EVEN IF RECONSIDERATION WERE WARRANTED, THE RESULT WOULD NOT CHANGE

Even if Beagle had satisfied the threshold requirements for reconsideration, the additional arguments presented in its motion would not alter the Court's conclusion that Beagle failed to demonstrate a likelihood of irreparable harm.

In denying the TRO, the Court determined that Beagle had not established irreparable harm because the data Beagle claimed it required to operate its business – such as tenant rosters, unit identifiers, lease and billing information, and insurance compliance data – remained available through authorized mechanisms, including Scheduled Reports and potentially the Database API. (Order (Dkt. 39) at 5–6.) The Court further noted that Beagle had not identified any specific data fields that were unavailable through those mechanisms. (*Id*. at 6.)

Beagle's reconsideration motion does not challenge that finding. Rather, Beagle now argues that even if the relevant data can be obtained through authorized mechanisms, those mechanisms are insufficient because they do not provide the "write" capabilities Beagle prefers. But Beagle's original TRO motion was premised on the claim that AppFolio's actions would prevent Beagle from accessing critical customer data and would lead to Beagle's extinction. (TRO Motion (Dkt. 4) at 9-10, 18.) The Court rejected that contention after determining that the relevant data remained accessible through authorized means.

Beagle also asserted that if AppFolio enforced its Terms of Service and disabled the user accounts used by Beagle to access customer databases, it would "end Beagle's business overnight." (Dkt. 4-2 ¶ 10.) The continued operation of Beagle's business since the Court issued its Order further undermines its claim of irreparable harm.

In any event, Beagle's revised theory – that it requires the ability to modify records within AppFolio's system – does not establish irreparable harm. At most, Beagle's motion suggests that operating through authorized mechanisms may be less convenient or require changes to Beagle's workflow. But inconvenience or the need to adjust internal business processes does not constitute irreparable harm. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Moreover, Beagle still has not identified any contractual provision requiring it to perform its services by writing directly into AppFolio's system. The customer contract submitted during the TRO proceedings demonstrates that Beagle provides insurance-related services to property managers, but it does not obligate Beagle to perform those services through direct access to AppFolio's platform. (Dkt. 36-1 Ex. A.) The absence of any such contractual requirement further undermines Beagle's assertion that the loss of write access will cause irreparable harm.

Accordingly, even if the Court were to reconsider its prior Order, the record before the Court would still not support a finding that Beagle faces irreparable harm warranting injunctive relief.

## VI. <u>BEAGLE IS NOT ENTITLED TO AN EVIDENTIARY HEARING</u>

Finally, Beagle argues that the Court should hold an evidentiary hearing because the parties have submitted competing declarations regarding the technical

capabilities of Scheduled Reports and the Database API. The Court declines to do so.

An evidentiary hearing is not required merely because parties submit conflicting declarations in connection with a motion for injunctive relief. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986). Rather, the decision whether to conduct such a hearing rests within the Court's discretion, particularly where the relevant issues can be resolved on the written record.

Here, the Court previously made specific findings regarding the categories of data Beagle claimed it required, the availability of alternative mechanisms for obtaining that data, and Beagle's failure to demonstrate likely irreparable harm. (Order (Dkt. 39) at 5–6.) Beagle's reconsideration motion does not identify any new factual disputes that would alter those findings. Instead, Beagle seeks an opportunity to further develop the factual record regarding issues that could have been investigated and presented during the original TRO proceedings.

A motion for reconsideration is not a vehicle for reopening the record in order to present evidence that could have been submitted earlier. *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985). Allowing an evidentiary hearing under these circumstances would undermine the limited purpose of reconsideration and would effectively provide Beagle with a second opportunity to litigate issues that were already before the Court.

Nor would an evidentiary hearing cure the threshold defects in Beagle's motion. As explained above, the motion is untimely and fails to identify new material facts within the meaning of Local Rule 7-18. Because those procedural

deficiencies independently require denial of the motion, an evidentiary hearing would not affect the outcome.

## CONCLUSION

For the foregoing reasons, Beagle's Motion for Reconsideration of the Court's Order Denying the Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction is **DENIED**.

IT IS SO ORDERED.

Dated: ________________

Hon. John F. Walter

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jake.Evans@gtlaw.com
Jordana R. Sternberg (*pro hac vice*)
Jordana.Sternberg@gtlaw.com
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation,
BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

CASE NO. 2:25-cv-12248-JFW-SSC

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39**

Defendant.

## PRELIMINARY STATEMENT

Beagle seeks limited relief: an evidentiary hearing to determine whether a preliminary injunction should issue. There are a slew of new facts and evidence not presented or available when the Court initially denied injunctive relief.

AppFolio represented to the Court that Beagle could access alternative paths to service Beagle customers through AppFolio's platform, even if AppFolio carried out its threat to block Beagle from its existing access to those customers. The Court's January 7 Order reflects reliance on AppFolio's representations, finding that Beagle had alternative access and did not establish irreparable harm based on existential risk. The Court did not make findings about other grounds for irreparable harm, such as reputational harm to Beagle or otherwise. Despite AppFolio's representations, the alternative paths it outlined are all dead ends. AppFolio knows this now and knew this when it represented to the Court otherwise. Outside of the Court's view, weeks after the ruling gave AppFolio a license to block Beagle, AppFolio told Beagle that its "dishonest and unethical conduct, as detailed in our filings, undermines that trust" that is "part of any partnership decision."[1]

AppFolio's opposition brief boils down to a gotcha: that the representations it made to the market, to Beagle, and to this Court about how Beagle could have alternative access methods—were never true. AppFolio argues that because its representations were untrue when AppFolio made those representations, now the Court should not permit an evidentiary

---

[1] Declaration of Marcelo Barros ("Barros Decl."), Exhibit 1.

hearing to determine the true nature of the facts because there is nothing "new" justifying reconsideration. This is a tortured reading of the reconsideration standard and would essentially reward AppFolio for hiding the ball and, from the get-go, never intending to work with Beagle.

The Court's current ruling is based on an incomplete factual record and factual findings that relied on misrepresentations and omissions by AppFolio. An evidentiary hearing could remedy this by permitting Beagle to cross examine AppFolio's witnesses (and AppFolio could do the same) and both parties could present evidence on what Beagle's customers contract with Beagle to do and how that can be done—or not—after AppFolio blocks Beagle. Indeed, even in AppFolio's Opposition Brief, it includes new declarations with new factual attestations and statements about API access and Scheduled Reports. In a highly technical and fact-intensive dispute, such as this one, an evidentiary hearing is a common prelude to a decision on a preliminary injunction request and can be helpful to the fact-finder.

By way of example of the facts that merit scrutiny: AppFolio claims that Scheduled Reports can provide Beagle's customers what they need, despite the fact that Scheduled Reports are onerous to set up and not equivalent to Beagle's customers' prior method of access through Beagle, as well as being read-only. AppFolio claims that Beagle can use its API, while omitting to the Court that AppFolio's API does not work for the majority of AppFolio customers who do not have the higher level of API access needed enabled.

AppFolio also touted its Stack program, but has blocked Beagle from joining it since the Court's ruling (and omitted that it never intended to allow Beagle to join prior to the ruling either).

Apart from the substance, AppFolio spends a long portion of its brief on procedural gotchas as well. With respect to timing, good cause merits reconsideration. Beagle is being irreparably harmed daily based on conduct—selective targeting and Terms enforcement—that the Ninth Circuit has proscribed in the *HiQ* case. Beagle's refiling of the reconsideration motion did not prejudice AppFolio. The delay has only harmed Beagle. The appeal also does not divest this Court of its jurisdiction to reconsider whether to hold a hearing on a preliminary injunction motion. The pending appeal has to do with the Court's application of the legal standard, while the reconsideration motion focuses on whether new facts merit an evidentiary hearing.[2]

Reconsideration is appropriate in light of new facts, and an evidentiary hearing would provide clarity as to the complex technical issues behind how AppFolio claims Beagle can work with it. AppFolio should not be rewarded for claiming that it is willing to work with Beagle to this Court, and then after the Court ruling, proclaiming to customers that it has no intention of working with Beagle.

[2] AppFolio's opposition references an argument Beagle made previously in support of its claim for TRO and asserts that Beagle's current motion "abandons the theory altogether." (Dkt. 68 at 5.) Beagle's argument choice simply reflects its compliance with L.R. 7-18 and does not represent abandonment of its prior claims.

## ARGUMENT

### I. New Facts Warrant An Evidentiary Hearing

#### A. AppFolio's Proffered Solutions Do Not Provide Beagle Effective Access

In its TRO opposition, AppFolio represented to this Court that Beagle had multiple "secure methods," including AppFolio Stack, Database API, and Scheduled Reports. (Dkt. 33 at 9-11.)[3] The Court relied on this representation in denying the TRO, finding Beagle had no basis to fear being locked out. In finding a lack of irreparable harm, the Court found that "that data is available through alternative authorized means, such as through the use of Scheduled Reports" and that "customers can share that data with Beagle through other authorized means, including by using AppFolio's Database API." (Dkt. 39 at 5, 6.)

But AppFolio's own public filings confirm that "Beagle does not and will not integrate with AppFolio—not now, and not ever." (Dkt. 57 ¶ 87 (Answer, admitting the statement was made).) These positions are incompatible. AppFolio cannot simultaneously represent to the Court that "compliant paths" exist for Beagle to use its platform while telling its customers Beagle "will not" ever integrate.

After the TRO was denied, Beagle formally asked AppFolio to actually provide access to those alternatives. AppFolio refused. The reason, it turns out, is that AppFolio does not trust Beagle enough to allow it to use the API; the same API AppFolio told the

[3] AppFolio's brief more precisely states that "customers" have multiple secure methods: "customers can work with Point Solutions in the AppFolio Stack Marketplace"; "customers can use AppFolio's Database API"; "customers can use scheduled reports." (Dkt. 33 at 9.)

Court "may" provide a viable path. AppFolio acknowledges it did not provide any technical documentation about Database API capabilities until January 30, 2026, *after* Beagle sent a formal request on January 14, 2026, and *well after* the TRO briefing had concluded. See Barros Decl. Exh. 1. In the same communication, AppFolio all but admitted that it would not permit Beagle to join its Stack Marketplace as a partner because AppFolio did not "trust" Beagle.

Apart from the issues with the API, AppFolio knew Beagle required "write" access – not just "read-only" – which is why Scheduled Reports would not work. Yet in its representations to the Court, it framed Scheduled Reports as sufficient for Beagle's purposes. AppFolio now backtracks, stating that it "[n]ever claimed any of its features would allow Beagle to service its customers' contracts" and that it "never claimed [in prior briefs that the] scheduled reports or database API have write capability." (Opp. at 13.)

This stands at odds with AppFolio's claim, in a footnote, that Beagle sued because Beagle needed more than "just accessing data." (Opp. at 14 n.3). That is, AppFolio understood from the outset that "Beagle wanted write capability" (*id*) and yet it apparently took no position on this in its prior TRO briefs, which arguably misled the Court. To the contrary, AppFolio represented at the time of its opposition that all Beagle needed stemmed from the Scheduled Reports, but now admits it understood from the outset that Beagle sought "write capability." (Opp. at 14 n.3). This alone warrants reconsideration.

AppFolio claims these are not new facts, and that Beagle already knew that Scheduled

Reports are read-only. In fact, AppFolio claims that it "fully explained and demonstrated scheduled reports read-only functionality in its Opposition." This is false and highlights why a hearing is important to test these statements (on both sides). (Opp. at 18.) In support of the claim that it "fully explained," AppFolio cites "Dkt. 33 at 5." (*Id.*) But no such explanation appears at that page, which is the introduction to AppFolio's opposition and merely quotes a statement from Beagle's CEO to its customers about the possibility of using Scheduled Reports. Beagle has already shown by Declaration that its CEO's statement was "meant to be damage control to stop customer panic." (Brown Decl., Dkt. 36-1 at ¶5.) Moreover, the term "read-only" does not appear anywhere in AppFolio's Opposition.

Finally, while AppFolio represented to the Court that Stack was a viable path for Beagle's access, AppFolio did not disclose that AppFolio had already rejected Beagle's attempt to join the Stack Marketplace as of December 2024. This omission independently supports reconsideration. See L.R. 7-18. (Dkt. 64-2, Ex. A at 2; Ex. C.)

Because Beagle has determined since the denial of the TRO that AppFolio's representations about effective alternative access were not accurate, Beagle seeks the opportunity to present evidence that AppFolio's blocking is causing Beagle irreparable harm, and that AppFolio's proffered solutions do not work.

**B. Diametrically Opposed Technical Declarations Cannot Be Resolved on the Cold Record**

The technical declarations at issue here, concerning the factual dispute over whether

the solutions AppFolio proffered actually work, are irreconcilable and should only be resolved via an evidentiary hearing. The case of *Thomas v. County of Los Angeles* counsels against resolution of factual disputes where there are dueling declarations. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992). There, the court held that "[t]he parties to this action submitted diametrically opposing declarations and counter-declarations disputing the frequency and seriousness of" the conduct at issue, and that the district court had improperly entered its order "without resolving any of the disputed matters." *Id.*

First, the question of whether Database API provides the write access that Beagle's contracts require is a technical question about which two software engineers have now given conflicting sworn testimony. Mr. Ayanga Okpokowuruk submitted a declaration in support of Beagle's motion for reconsideration stating that neither Scheduled Reports nor Database API will work, in large part because neither have "write" capabilities. (Okpokowuruk Decl. ¶¶ 2-5.) Though AppFolio admits Scheduled Reports do not have write capabilities (Opp. at 13-14.), Mr. Delage represents on behalf of AppFolio that Database API has a "robust [write] capability." (Dkt. 68-3 ¶ 5.)[4]

Second, Beagle's engineer, Mr. Okpokowuruk, said available endpoints do not support Beagle's required workflows, and that building them would require AppFolio's

[4] Beagle acknowledges that AppFolio's declarant has made this statement, but does not address here whether it is accurate.

active cooperation—which AppFolio has refused to provide. (Okpokowuruk Decl. ¶ 4.) AppFolio's declarant, in turn, stated that "*[c]ustomers* can use this write capability without the need for AppFolio to engineer new endpoints," (Dkt. 68-3 ¶ 5 (emphasis added).) These two positions are also at odds and necessitate an evidentiary hearing.

A third conflict that should be reconciled in an evidentiary hearing concerns the universe of customers for whom API is available. Mr. Okpokowuruk declared that Database API is restricted to enterprise-tier AppFolio accounts, making it unavailable to most of Beagle's relevant customer base. (Okpokowuruk Decl. ¶ 4.) AppFolio does not appear to dispute this: its opposition is silent on the issue. The Court should not resolve an unrebutted engineering declaration *against* Beagle on a cold record.

AppFolio argues no evidentiary hearing is needed because Beagle identifies no "false statements." (Opp. at 19.) But that is not the standard. *Thomas* does not require proof of false statements—it requires "diametrically opposing declarations" on a material fact. *Thomas*, 978 F.2d at 509. That is precisely the situation here.

**C. Beagle Exercised Reasonable Diligence**

Perhaps recognizing the precarity of its conflicting statements, AppFolio then resorts to arguing Beagle lacked reasonable diligence to discover that AppFolio's proffered solutions would not work. For example, AppFolio claims the API limitation did not change after the Court's order and that Beagle could have learned of the API limitations.

*First*, AppFolio did not provide, and has never claimed it provided, API

documentation, technical specifications, or integration guidance to Beagle during the TRO briefing period. AppFolio responded only after Beagle's counsel sent a formal letter on January 14, 2026, and even then, AppFolio did not respond until January 30, 2026, weeks after the TRO had been denied. AppFolio cannot establish that Beagle had the means to discover the gaps underlying AppFolio's representations about the purported solution.

*Second*, Beagle had no opportunity for discovery or other diligence *before* the TRO briefing concluded on December 29, 2025. Beagle had only two days between AppFolio's December 29 opposition and the end of briefing, and this was in the midst of chaos caused by AppFolio, which created a business emergency in addition to the legal emergency, all during the holiday season. Expecting Beagle to have independently engineered and tested API integrations in that short window is unreasonable. Contrary to AppFolio's statements, Beagle did not have "months."[5] Therefore, AppFolio's claim that Beagle should have known the solutions AppFolio offered would not work is unavailing and should be rejected.

## II. <u>The Refiled Motion Is Timely And Relates Back To The Original Filing</u>

### A. AppFolio Concedes the Original Motion Was Timely

[5] AppFolio slings mud about the delay in its brief, arguing that Beagle should have figured out AppFolio's deception. Beagle had just a short number of days to respond to AppFolio's Opposition to its request for a TRO and OSC re Preliminary Injunction. AppFolio's accusations of forum shopping are false. Beagle had good reason to file in the Northern District of California and the venue issue was not so clear cut as AppFolio tries to make it seem by cherry-picking a single quote from the transfer order. The briefing and order speak for themselves. There was no part of Beagle's filing in the Northern District that had to do with forum shopping. Both Courts are in the Ninth Circuit and the same law binds each.

AppFolio concedes that Beagle's January 21 motion was filed timely. (Opp. at 10.) It does not dispute that Beagle re-filed immediately after curing the procedural deficiency identified by the Court. Having admitted timeliness, AppFolio identifies no authority holding that a motion timely filed, then struck solely for an unintentional procedural defect, becomes untimely when promptly refiled in conformity with the Court's directive.

The relevant question asks not whether the *re-filed* motion fell within the original 14-day window—it could not. The question is whether Beagle acted in good faith and without undue delay. It manifestly did so.

### B. Good Cause Exists for the Minimally Required Time Delay Compelled by the Court's Own Local Rules

After the Court struck Beagle's timely-filed reconsideration motion, Beagle had to comply with the time requirements of the Court's own rules, in order to refile. Beagle did just that. Beagle initiated the L.R. 7-3 conference the same day the Court issued the strike order, filed the Joint Statement two days later, and re-filed the motion at the earliest point possible given the procedural prerequisites were satisfied. L.R. 7-3.

In its Opposition, AppFolio cites to *ML Prods. Inc. v. Ninestar Tech. Co. Ltd*. and *Teixeira v. BMW of N. Am., LLC*. Both are distinguishable. In *ML Prods. Inc.*, the plaintiff attempted to file its *original* motion for reconsideration "a day late." *See ML Prods. Inc. v. Ninestar Tech. Co. Ltd.*, 2025 WL 2670865 at *3-4 (C.D. Cal. Feb. 12, 2025). *Teixeira* is even further afield. There, the defendant repeatedly misunderstood and misapplied the

Local Rules and the Court's procedures, including a *63-day delay* following entry of a motion to compel order. *Teixeira v. BMW of N. Am., LLC*, 2023 WL 6194169, at *10, 11, n.3 (C.D. Cal. July 3, 2023). Neither case resembles the present circumstances. Unlike the plaintiff in *ML Prods. Inc.*, Beagle's original motion for reconsideration was timely. Additionally, Beagle did not miss a deadline through neglect or inattention. Rather, Beagle proceeded under an incorrect but sincere interpretation of the Local Rules and procedural mechanisms. Beagle's actions do not reflect a pattern of noncompliance, willful disobedience, or dilatory intent. As soon as Beagle's counsel learned of the inadvertent mistake, Beagle acted diligently, in good faith, and expeditiously.[6]

**C. The refiled motion relates back to the first-filed reconsideration motion**

The February 11, 2026 motion is substantively identical to the January 21, 2026 original motion. It presents the same grounds, the same facts, the same declarations, and

[6] The length of delay and its impact on the proceedings also supports the finding of excusable neglect. The Ninth Circuit evaluates how unique local rules may complicate compliance with deadlines. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th. Cir. 2010) (finding excusable neglect, partially because plaintiff "faced an exceptionally constrained deadline resulting from the peculiar dictates of the local rules for the Central District of California.") Here, once counsel for Beagle learned of the meet and confer requirement for motions for reconsideration, they immediately met and conferred and complied fully with Local Rule 7-3. The seven-day time lapse in refiling was solely to comply with Local Rule 7-3, which mandates a conference to occur "at least 7 days prior to the filing of the motion." Local Rule 7-3. Beagle acted promptly and in immediate conformity with Local Rule 7-3 once the deficiency was identified, thereby ensuring minimum disruption and prejudice.

the same legal arguments. Accordingly, there is no prejudice, no surprise, and no incremental burden on AppFolio.

The Ninth Circuit mandates liberal application of relation back doctrine "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1005 (9th. Cir. 2014). Courts have recognized that the relation back doctrine applies to facilitate merits adjudication where the opposing party has notice and suffers no prejudice. *C.f. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (analyzing excusable neglect through equitable factors including prejudice, length of delay, reason for delay, and good faith). Each *Pioneer* factor favors Beagle: there is zero or minimal prejudice to AppFolio, the delay was the minimum required (seven days), mandated by L.R. 7-3, the reason for the initial defect was a genuine interpretive question about whether L.R. 7-3 applied, and Beagle acted in immediate good faith upon learning of the deficiency.

The Court should find that the re-filed motion relates back to the original in order to facilitate merits-based adjudication of the reconsideration request. Treating the February 11th motion as relating back avoids prejudice, conserves judicial resources, and promotes a decision on the merits.

## III. Beagle's Appeal Does Not Divest This Court Of Jurisdiction

At the outset, AppFolio's jurisdictional argument is internally contradictory. On one hand, AppFolio's opposition states that it "takes no position on the scope of this Court's

jurisdiction," yet it devotes a full section of its brief to arguing the Court should deny Beagle's motion on jurisdictional grounds. (Opp. at 11-12.)

In any event, the two inquiries are distinct: the Ninth Circuit can review the Court's January 7th order for legal error while this Court is asked to consider the denial of an evidentiary hearing on the grounds of new facts, declarations, and material omissions. It may be the case that a ruling following an evidentiary hearing might moot the appeal, but that does not mean this Court cannot hold a hearing.

## IV. AppFolio's Irreparable Harm Arguments Further Support the Need for an Evidentiary Hearing

AppFolio argues that recent funding announcements demonstrate the Beagle entities do not face irreparable harm and that AppFolio's actions do not put Beagle at catastrophic risk. This argument misunderstands both the nature of irreparable harm and the purpose of injunctive relief.

AppFolio's unilateral termination of access threatens to disable Beagle's ability to serve existing customers, force Beagle to abandon product features that depend on real-time property management data, and expose Beagle to customer attrition that money cannot undo. Beagle cannot be made whole in situations where customers abandon Beagle's product because it no longer functions. Courts in this Circuit have consistently held that loss of market position, customer relationships, reputation, and operational continuity can constitute irreparable harm independent of a company's financial condition. *See* *Rent-A-*

*Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."). Even where alternatives could be developed, the threat of business disruption alone can constitute the "extinction" level event that merits an injunction. *See also hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180, 1188 (9th Cir. 2022) (noting that it was "at least highly dubious" that hiQ could survive by "devising and implementing an entirely new data collection system").

AppFolio's factual statements about irreparable harm in their opposition brief do nothing but underscore the value of an evidentiary hearing. To the extent Beagle's family of companies has other business lines unrelated to AppFolio, that does not permit AppFolio to kill the rental software line of business. AppFolio's reasoning would make it impossible for any company to receive injunctive relief when it has multiple lines of businesses and a competitor's unlawful conduct threatens one of them.

**CONCLUSION**

Beagle respectfully requests that the Court grant the motion for reconsideration and order an evidentiary hearing on whether a preliminary injunction should issue. Beagle does not ask the Court to resolve the merits on this record, but only that it be provided an opportunity to be heard.

DATED: March 9, 2026

By *_/s/ Michael Burshteyn_*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jake.Evans@gtlaw.com
Jordana R. Sternberg (*pro hac vice*)
Jordana.Sternberg@gtlaw.com
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF MARCELO BARROS IN SUPPORT OF REPLY TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE DKT. 39**

# DECLARATION OF MARCELO BARROS

I, Marcelos Barros, declare as follows:

1. I am an attorney at law with the law firm Greenberg Traurig, LLP ("GT"), counsel of record for Plaintiffs in the above-captioned matter. I make this declaration in support of Plaintiffs' Reply To Plaintiffs' Motion For Reconsideration of Denial of Order Denying TRO And OSC Preliminary Injunction re DKT. 39. Except where indicated on information and belief, the matters set forth herein are based upon my personal knowledge. If called as a witness, I could and would testify competently to the facts stated.

2. On January 30, 2026, Counsel for Appfolio finally responded to Beagle's letter dated January 14, 2026. A true and correct copy attached as **Exhibit 1.**

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. This declaration was executed on this 9th day of March 2026 in Albany, California.

__*/s/ Marcelo Barros*___________
Marcelo Barros

# EXHIBIT 1

PROCELEVINE

401 Wilshire Boulevard
12th Floor
Santa Monica, CA 90401
(424) 788-4538

January 30, 2026

Dear Counsel:

As our client stated in its letter to Beagle on or about December 9, 2025, AppFolio is ready and willing to help Beagle understand how its customers can use AppFolio's platform to work with Beagle.

While the timing and tenor of your January 14, 2026, letter—as well as your client's disregard for our prior outreach and continued attempts to obtain noncompliant user access—suggest your letter is a litigation tactic, AppFolio will nevertheless respond in earnest, in the hopes that it aids our clients' mutual customers.[1] The information you requested on AppFolio Stack and Database API is below.

**AppFolio Stack Marketplace**

Your letter asks how Beagle can "move forward" within the AppFolio's Stack Marketplace. As explained in our prior briefing, Stack is strictly limited to vetted partners and, while Beagle is welcome to apply, trust is part of any partnership decision. Beagle's dishonest and unethical conduct, as detailed in our filings, undermines that trust.

**AppFolio Database API**

Database API, in turn, allows customers to work with third parties with whom AppFolio has no partnership or integration. Using Database API, customers can directly establish API connections to any third parties they choose. In doing so, customers generally work directly with the third party, without our involvement. Nevertheless, we have attached both our Help Center article on Database API[2] and the most recent API documentation. Customers can provide you with updated documentation as it is released.

AppFolio remains committed to supporting its customers' choice to work with third-party tools — including Beagle — through the appropriate, authorized channels. We trust this information

---

[1] Because AppFolio is focused on helping our mutual customers, rather than building a record for litigation, we have responded only to your client's request for information; the other matters can be addressed in our respective filings to the Court.

[2] Please note, our Help Center articles are confidential and available only to our customers. We have chosen to share this individual article to assist you in supporting our mutual customers.

PROCE LEVINE

401 Wilshire Boulevard
12th Floor
Santa Monica, CA 90401
(424) 788-4538

addresses your client's questions regarding Stack and Database API.[3]

Sincerely,

Jeremiah Levine

---

[3] Since no questions were raised regarding Scheduled Reports, we assume Beagle has the information it requires. We also reiterate that our Terms of Service prohibit our customers from granting Beagle user-access and allow AppFolio to disable such access when it occurs. *Beagle's conduct in continuing to establish and/or conceal unauthorized user accounts continues to interfere with our contractual rights.*

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. 25-cv-12248-JFW-SSC

**APPFOLIO'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION**

**[Declarations of Nathan Delage Sean Saxena and]**

**Table of Contents**

Introduction ........ 1
Factual and Procedural Background ........ 4
Legal Standards ........ 9
Argument ........ 10
I. The Motion Is Untimely ........ 10
II. The Motion Is Procedurally Improper Because It Addresses the Same Order as Beagle's Appeal ........ 11
III. The Read-Only Nature of Scheduled Reports and Database API Are Not New Facts, So There Is No Basis for Reconsideration ........ 12
A. The Capabilities of Scheduled Reports and Database API Are Not New Facts Because They Did Not Change After the Court's Order ........ 12
B. The Capabilities of Scheduled Reports and Database API Were Either Known to Beagle or Knowable with a Modicum of Diligence ........ 13
a. The Capabilities of Scheduled Reports and Database API Were Accurately Presented to the Court ........ 13
b. Beagle Knew the Capability of Scheduled Reports ........ 14
c. Beagle Could Have Known the Capability of Database API with Even a Modicum of Diligence ........ 15
IV. AppFolio's Post-Order Statements Are Not New and Do Not Justify Reconsideration ........ 17
V. Even if Reconsideration Was Warranted, The Outcome Would Not Change ........ 18
VI. Beagle Is Not Entitled to an Evidentiary Hearing ........ 19
Conclusion ........ 20

## Table of Authorities

**Cases**

*Collins v. U.S. Citizenship & Naturalization Serv.*, 2013 WL 776244 (C.D. Cal. Feb. 6, 2013) ........ 17

*Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604 (9th Cir. 1985) ........ 14

*Hanson v. La Flamme*, 761 F. App'x 685 (9th Cir. 2019) ........ 10

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547 (9th Cir. 1986) ........ 20

*Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877 (9th Cir. 2000) ........ 9

*Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147 (D. Haw. 2013) ........ 16

*ML Prods. Inc. v. Ninestar Tech. Co. Ltd.*, 2025 WL 2670865 (C.D. Cal. Feb. 12, 2025) ........ 11

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163 (9th Cir. 2001) ........ 11

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ........ 18

*Teixeira v. BMW of N. Am.*, LLC, 2023 WL 6194169 (C.D. Cal. July 3, 2023) ........ 11

*Thomas v. Cnty. of Los Angeles*, 978 F.2d 504 (9th Cir. 1992) ........ 19

*Trust Corp. v. Aetna Casualty & Surety Co.*, 873 F. Supp. 1386 (D. Ariz. 1994) ........ 17

*United States v. Vroman*, 997 F.2d 627 (9th Cir. 1993) ........ 11

**Statutes**

Federal Rule of Civil Procedure 59(e) ........ 9

**Rules**

C.D. Cal. Local Rule 7-18 ........ 9, 10

## Introduction

Plaintiffs' ("Beagle") latest motion for reconsideration is: (1) untimely, without any showing of good cause for the delay; (2) procedurally improper due to the Notice of Appeal that Beagle previously filed; and (3) substantively baseless because no new evidence is offered.

As a threshold matter, the instant motion is untimely by 21 days. Local Rule 7-18 requires any motion for reconsideration to be filed within 14 days of the relevant order. Here, the Court issued its order (the "Order") denying Beagle's motion for a temporary injunction (the "TRO Motion") on January 7, 2026, which is when the 14-day clock began to run. Beagle waited until the final day, January 21, 2026, to move for reconsideration of the Order (the "First Reconsideration Motion"). The Court proceeded to strike the first Reconsideration Motion for failure to comply with Local Rules and Standing Order. Beagle then filed the instant motion for reconsideration (the "Motion") on February 11, 2026—35 days after the Order was issued and 21 days after the deadline for reconsideration had passed. While the Local Rules anticipate the possibility of extending this deadline upon a showing of good cause, none has been made here. Beagle admits that its failure to comply with the Local Rules and Standing Order was due entirely to its own misunderstanding of the rules. Such a mistake is not good cause.

The Motion is also procedurally improper because Beagle is attempting to litigate the same issue in two different courts. Five days before filing this Motion, Beagle filed a Notice of Appeal, effectively asking the Ninth Circuit to overturn the same Order that it now asks this Court to reconsider. So the instant motion amounts to a *fourth* bite at the apple, which is a further basis for denial of the Motion.

As for the substance of the Motion, Beagle cannot prevail because it has not provided any evidence, much less *new* evidence, to sustain its underlying claims. In its TRO Motion, Beagle claimed it faced an "extinction level event" because AppFolio "planned to block Beagle's access" to "limited categories of" its customers' "operational data." The Court denied Beagle's TRO Motion for failure to show irreparable harm after AppFolio demonstrated that its scheduled reports feature could "provide the exact information that Beagle claimed it needed in its moving papers." The Court further found AppFolio's database API feature may also provide the required data, as Beagle "fail[ed] to identify what data fields are missing." Beagle now asks the Court to reconsider its Order without providing any evidence that scheduled reports and database API cannot provide the data Beagle claims to need.

Beagle's Reply in Support of the TRO Motion (the "Reply") moved away from the data blocking theory, and now this Motion abandons the theory altogether. Instead, the Reply and the Motion both argue that Beagle is entitled to write information into AppFolio databases; in the words of the instant Motion, Beagle is entitled to "take action (i.e., write-in) within AppFolio's system." It is this theory on which Beagle rests its motion for reconsideration, claiming it discovered post-Order that Scheduled reports and database API do not provide the desired write access. Among other failings, these purportedly newly discovered facts do not meet the standard for reconsideration.

First, the fact that scheduled reports are read-only is not new: AppFolio and Beagle both addressed this while briefing the TRO Motion. In its Opposition to the TRO Motion, AppFolio explained scheduled reports, including the fact that, as the name suggests, scheduled reports provide a report—not access to the

functionality of AppFolio's system. And in its Reply, Beagle challenged the sufficiency of scheduled reports on the basis that they do not allow Beagle to "add or remove charges"—i.e., scheduled reports do not have write capability. Moreover, AppFolio's records show that Beagle has used scheduled reports over *fifty-four thousand* times since it began working with AppFolio's customers.

Second, new facts only justify reconsideration if the moving party could not have discovered them before the Court's order with reasonable diligence. Beagle offers no declaration or other evidence that it lacked prior knowledge. Beagle also had ample time to discover any complaints about scheduled reports and database API. Beagle told its own customers on December 9—the week before filing its *original* TRO Motion—that scheduled reports were the "fix" to losing direct access to AppFolio's databases, and that this was "simple" and "already in motion." Beagle should have checked the veracity of this representation *before* making it to its customers. At a minimum, Beagle could and should have investigated this immediately afterward. Tellingly, the declaration submitted by a Beagle engineer in support of the renewed Motion states that he wasn't even *asked* to investigate the viability of scheduled reports and database API until *January*. (Dkt. 52-3, ¶¶ 3-4.) That delay is only Beagle's fault.

Third, distinct from its alternate "write access" theory, Beagle also accuses AppFolio of "new and escalating" post-order conduct that it claims justifies reconsideration. Specifically, Beagle complains of four statements made to a customer in a January 9, 2026, email. What Beagle fails to mention is these four statements are *identical* to those sent in the December 9, 2025, communications. AppFolio merely sent an updated version of *the same message* on January 9 to users who did not receive the December 9 message because they did not yet have

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 56 of 281

Beagle users in their database. These statements are not new. They were already fully briefed and decided on by the Court and, as such, are not grounds for reconsideration.

Lastly, Beagle claims it is entitled to an evidentiary hearing "to test" and "explore" whether "1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle." Beagle offers no authority for the proposition that a court must hold an evidentiary hearing when a party seeks an ex parte TRO. Beagle suggests—incorrectly—that evidentiary hearings are mandatory when the parties present sharply conflicting declarations. Beagle identifies no false statement of any AppFolio declarant and provides no opposing testimony of its own. Beagle is not entitled to substitute the Court's resources for its own diligence. Beagle's motion should be denied.

## Factual and Procedural Background

**December 9, 2025: AppFolio Gives Beagle Notice That AppFolio Will Enforce its Terms of Service.**

Seeking to enforce its Terms of Service, which prohibit third parties from having user access to customer databases, AppFolio notified its customers with Beagle user access that AppFolio intended to disable the noncompliant access. (Dkt. 33-8 ¶ 3; Dkt. 33-3 ¶ 19.) In the same communication, AppFolio identified alternative methods by which its customers could work with Beagle and provided five business days (until December 16) for its customers to transition. (Dkt. 4-5 Exh. C.) To assist with this transition, AppFolio also contacted Beagle directly, identifying alternate methods and offering that, if Beagle had "questions about

compliant access paths or need[s] clarification on transition steps, we are happy to provide additional guidance." (Saxena Decl. ¶ 4.) Beagle never responded. (*Id.*)

That same day, Beagle CEO, Mike Brown, emailed customer stating that the "fix" was "simple and already in motion" and that it could "continue to run your Beagle program using scheduled reports from AppFolio instead of direct logins." (Dkt. 33-3 Exh. D.)

**December 15, 2025: Beagle Seeks a TRO and OSC re Preliminary Injunction, Leading to Forum Shopping Finding**

The day before AppFolio intended to disable Beagle's user access, Beagle filed a complaint and application for a temporary restraining order and order to show cause why a preliminary injunction should not be issued. (Dkt. 1, 4.) In that motion, Beagle accused AppFolio of "data blocking" and creating an "extinction level event" by "plan[ning] to block Beagle's access" to "limited categories of" its customers' "operational data." (Dkt. 4 at 2, 6.) Beagle specifically identified four categories of required data: "tenant rosters, unit identifiers, lease and billing information, and insurance compliance." (*Id.* at 5.) Beagle emphasized that "AppFolio does not own or create this data," but "merely hosts the data on its software platform." (*Id.* at 6.)

Further briefing on Beagle's motion was, however, delayed by two weeks while the case was transferred from the Northern District of California to this Court, following a finding that "the apparent forum shopping by Beagle strongly favor[ed]" the transfer." (Dkt. 24.) The Northern District court directed AppFolio to stay enforcement of its Terms of Service until the case could be transferred and the motion heard. (*Id.*)

**December 29, 2025: AppFolio Files its Opposition Brief, Identifying That Scheduled Reports Only Transmit Data**

In its Opposition Brief, AppFolio explained that scheduled reports "allows Beagle to *receive* exactly the same data it receives through its unauthorized user accounts" (emphasis added) and provided a sample scheduled report. (Dkt. 33 at 5; Dkt. 33-3 Exh. B.) Because Beagle's CEO admitted scheduled reports would work, AppFolio focused on its capabilities and made no representations as to database API. (Dkt. 33-3 Exh. D.) AppFolio also posited that Beagle had filed this lawsuit—despite scheduled reports' ability to provide the required data—because Beagle was not after data, but after free access to AppFolio's functionality (i.e., write capability). (Dkt. 33 at 6.) As AppFolio explained, "user logs show Beagle is not just accessing data, it is *using AppFolio's platform* to issue charges to residents for its products" in violation of AppFolio's Terms of Service (emphasis in original). (*Id.*)

**December 31, 2025: Beagle Files Its Reply, Demanding the Write Access That Beagle Now Alleges It Just Discovered It Needs**

In its Reply, Beagle acknowledged that it sought not only read-access to data, but also the ability to write in AppFolio databases, including the ability issue residents charges for its products. It argued scheduled reports "will not work" as an alternative to user access because they "make[] it so Beagle cannot add or remove charges." (Dkt. 36 at 6.) Beagle said that without AppFolio's functionality (meaning write access), "the entire Beagle value proposition" is negated. (*Id.*) In addition, Beagle made a host of arguments about database API, but did not identify any data fields missing from its capabilities. (*Id.* at 7.)

**January 7, 2026: The Court Denies Beagle's Motion**

The Court denied Beagle's motion for failure to show irreparable harm citing the ability of scheduled reports to "provide the exact information that Beagle claimed it needed in its moving papers." (Dkt. 39 at 6.) The Court further found AppFolio's database API feature may provide the required data, as Beagle "fail[ed] to identify what data fields are missing." (*Id.*) In addition, the Court noted Beagle's failure to provide any evidence that transitioning to scheduled reports or database API would be overly arduous, despite having "presumably" begun "working on developing or engineering such integrations" as "soon as [it] became aware that AppFolio intended to enforce its Terms of Service." (*Id.*)

**Post-January 7, 2026: Beagle Begins to Investigate Alternatives**

In January, Beagle assigned an engineer to begin "exploration of and attempts to implement the proposed substitute methods." (Mot., Okpokowuruk Decl. at 1.)

**January 9, 2026: AppFolio Enforces its Terms of Service, and Beagle's Parent Company Announces that it Raises $108 million**

Following the Court's Order, and no longer bound by its agreement to maintain the status quo, AppFolio implemented security measures to identify and disable Beagle's user access. (Delage Decl. ¶ 3.) These measures identified customers who had not received the December 9, 2026, email because Beagle did not have user access to their database at that time. (*Id.*) AppFolio provided these customers the *same notice* it had previously sent, updating only the dates and timing. (*Id.*) Both the December and January notices contain the exact language complained of in Beagle's Motion: "the method by which Beagle has chosen to operate their business places you at risk;" Beagle can "access the personally

identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." (*Id.*) Beagle CEO, Mike Brown had previously admitted these are things Beagle "*could* technically do in your account" (emphasis in original) (Dkt. 33-3 Exh. D.)

Also on January 9, 2026, Beagle's parent company, Corgi, announced it had raised $108 million in funding. (Saxena Decl. ¶ 6.) Corgi said that it was valued at $630 million, based in part on its $40 million in annual recurring revenue. (*Id.*) Based on Beagle's claim of $12.5 million in revenue (Dkt. 4 at 18), approximately one fourth of Corgi's revenue underlying the valuation appears to come from the purportedly imperiled Beagle.

**January 21, 2026: Beagle Files its First Motion for Reconsideration**

Two weeks after the Court's Order, Beagle sought reconsideration of its ex parte motion. (Dkt. 52.)

**February 4, 2026: The Court Strikes Beagle's First Motion for Reconsideration**

The Court issued a text-only order striking Beagle's First Motion for Reconsideration "for failure to comply with Local Rule 7-3, which requires the conference of counsel to take place at least seven days prior to the filing of the Motion, and paragraph 5(b) of the Court's Standing Order, which requires the Joint Statement to be filed not more than 2 days after the Local Rule 7-3 conference." (Dkt. 56.)

**February 6, 2026: Beagle Files a Notice of Appeal of the Order**

Two days after the Court struck Beagle's First Motion for Reconsideration of the Order, Beagle filed a Notice of Appeal of the Order.

**February 11, 2026: Beagle Files This Motion**

One week after the Court struck the First Motion for Reconsideration, Beagle filed the instant Motion, based on the threat of "immediately" facing "an extinction-level event." As its primary relief, Beagle seeks an evidentiary hearing, to be held sometime after the noticed March 23 hearing on its Motion. The Motion offers no new evidence of unavailable data, but instead contends AppFolio must provide it the ability "to take action (i.e., write-in) within AppFolio's system" and claims AppFolio's January 9, 2026, communications are a new source of irreparable harm. (Mot. at 5.)

## Legal Standards

Federal Rule of Civil Procedure 59(e) permits a "motion to alter or amend a judgment." The Ninth Circuit has elaborated that Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources. Indeed, a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted).

Central District of California 7-18 provides more specific criteria for reconsideration, stating that:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered….

> Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

C.D. Cal. L.R. 7-18; *Hanson v. La Flamme*, 761 F. App'x 685, 689 (9th Cir. 2019) (affirming denial of motion for reconsideration based on failure to comply with Local Rule 7-18).

**Argument**

**I. The Motion is Untimely**

Beagle's Motion was filed three weeks too late. Local Rule 7-18 states that, "[a]bsent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." The Order denying Beagle's TRO Motion was issued on January 7, 2026. Beagle's deadline to file a reconsideration motion was therefore January 21, 2026, which is precisely when Beagle filed its First Reconsideration Motion. The Court struck that motion, however, due to Beagle's "failure to comply with Local Rule 7-3, which requires the conference of counsel to take place at least seven days prior to the filing of the Motion, and paragraph 5(b) of the Court's Standing Order, which requires the Joint Statement to be filed not more than 2 days after the Local Rule 7-3 conference." (Dkt. 56.) Beagle then proceeded to file the instant Motion on February 11, 2026, five weeks after the Order was issued, and three weeks after the deadline's passing. (Dkt. 64.)

Beagle's Motion makes no mention whatsoever of the missed deadline, nor does it offer any good cause for missing it. Instead, Beagle attempts to explain itself in the Joint Statement filed on February 6, 2026, saying: "Counsel for Beagle mistakenly misunderstood the Local Rule and the Court's Standing Order to require pre-motion conferences for motions such as a motion to dismiss, but

not a motion for reconsideration of an underlying motion for a preliminary injunction." (Dkt. 62 at 2.) In other words, Beagle simply misread the rules. While Beagle cites to two cases in the Joint Statement that address the "possibility of re-filing stricken motions upon a showing of good cause," (*Id*. at 3) in neither cited order did the court actually permit such a re-filing. In fact, the case law is clear that this type of mistake does not constitute good cause that would allow for a reconsideration motion to be filed after the deadline. *See ML Prods. Inc. v. Ninestar Tech. Co. LTD. et al*, 2025 WL 2670865, at *1 (C.D. Cal. Feb. 12, 2025) (denying reconsideration motion as untimely; finding that counsel's filing error and calendaring error did not constitute good cause for the delay); *see also Teixeira v. BMW of N. Am., LLC*, 2023 WL 6194169, at *4 (C.D. Cal. July 3, 2023) (denying reconsideration motion as untimely despite party's "good faith" mistake in reading the Local Rules).

## II. The Motion Is Procedurally Improper Because It Addresses the Same Order as Beagle's Appeal

Beagle's Motion does not explain or even mention the Notice of Appeal (Dkt. 58) that Beagle filed on February 11, 2026, five days prior to this Motion, in which it seeks review by the Court of Appeals of the exact Order that it asks this Court to reconsider. Litigation cannot proceed in two courts over the same issue at the same time. Assuming Beagle believes its Notice of Appeal to be valid and proper, then its own actions would seem to have divested this Court of jurisdiction over a motion, this Motion, which it nonetheless subsequently filed. *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed"); *United States v. Vroman*, 997 F.2d

627, 627 (9th Cir. 1993) ("The district court was without jurisdiction to respond to Vroman's motion for reconsideration because he filed it after having filed a notice of appeal."). AppFolio takes no position on the scope of this Court's jurisdiction, other than to identify the confusion and prejudice to AppFolio that arises from Beagle's decision to litigate the same issue in two courts simultaneously.

## III. <u>The Read-Only Nature of Scheduled Reports and Database API Are Not New Facts, So There is No Basis for Reconsideration</u>

Beagle claims the purported read-only capabilities of scheduled reports and database API constitute both "new material facts occurring after the Order was entered" and "a material difference in fact from that presented to the Court that in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered." (Mot. at 5.) Neither is true.

### A. The Capabilities of Scheduled Reports and Database API Are Not New Facts Because They Did Not Change After the Court's Order

Beagle's claim that the purported read-only capability of scheduled reports and database API are "new material facts occurring after the Order" can be dismissed out of hand. Beagle does not make any claim that the capabilities of these features changed after the Order. Indeed, the capabilities of scheduled reports and database API have not changed since before this litigation began. (Delage Decl. ¶ 5.) The argument appears to be no more than a throwaway line in Beagle's brief and should be treated accordingly.

### B. The Capabilities of Scheduled Reports and Database API Were Either Known to Beagle or Knowable with a Modicum of Diligence

Beagle claims that its purported recent discovery that scheduled reports and database API "do not have the write access necessary for Beagle to service its customer contracts" constitutes "a material difference in fact from that presented to the Court that in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered." (Mot. at 5.) The argument fails.

#### a. The Capabilities of Scheduled Reports and Database API Were Accurately Presented to the Court

Beagle claims that it has recently discovered that scheduled reports and database API do not have write capabilities and that this is a material difference in fact from "AppFolio's claim that scheduled reports, the API, and other means can permit Beagle to service its customers' contracts." (Mot. at 3.) The argument has three problems.

*First*, AppFolio never claimed that any of its features would allow Beagle to service its customers' contracts. To the contrary, AppFolio expressly stated that because Beagle had not attached a contract or identified any term thereof, AppFolio "does not know what Beagle has actually promised its customers." (Dkt. 33 at 21.) AppFolio instead focused on the data Beagle told the Court itneeded.[1] (*Id*. at 9-10.)

*Second*, AppFolio never claimed that scheduled reports or database API have write capability. To the contrary, AppFolio argued only that scheduled

[1] Given the shifting nature of Beagle's claims, AppFolio does not claim to know what data Beagle actually needs.

reports "allows Beagle to receive exactly the same data it receives through its unauthorized user accounts."[2] (*Id.* at 5.) AppFolio then provided "a sample scheduled report showing the data Beagle claims to require." (*Id.* at 15.) As the name suggests, scheduled reports provide a report—not write access to AppFolio's system. AppFolio never represented otherwise. [3]

*Third,* Beagle itself told the Court scheduled reports did not have the write access it claims to require (the same fact it now claims to have newly discovered). In its Reply in Support of the TRO Motion, Beagle argued that scheduled reports were insufficient because it "makes it so Beagle cannot add or remove charges" —i.e., it did not allow Beagle to write into the customer's database. (Dkt. 36 at 7.)

Because, in briefing the original motion, both parties accurately represented the capability of scheduled reports (and AppFolio made no representation as to database API), there is no "material difference in fact from that presented to the Court."

**b. Beagle Knew the Capability of Scheduled Reports**

The law is clear that reconsideration cannot be justified by evidence that was already known to the moving party. *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (Applying FRCP 59 and affirming denial

---

[2] While database API does in fact have robust write capability (Delage. Decl. ¶ 5.), AppFolio made no representations regarding its capabilities, choosing instead to focus on scheduled reports, given that Beagle's own CEO claimed it would provide the data required. (Dkt. 33 at 22.)

[3] AppFolio, in fact, posited that Beagle sued AppFolio, rather than use Scheduled reports, because Beagle was "not just accessing data, it is using AppFolio's platform to issue charges to residents for its products." (Opp. at 6.) In other words, Beagle wanted write capability.

of motion for reconsideration where moving party's "new" fact was known before disposition of the order for which he sought reconsideration).

Beagle's motion claims that it did not know that scheduled reports were read-only until after the Court issued its Order. (Mot. at 4-5.) That is simply not true. As detailed above, AppFolio fully explained and demonstrated scheduled reports read-only functionality in its Opposition. (Dkt. 33 at 5.) And Beagle itself argued on Reply that scheduled reports were insufficient because they did not allow it to make changes to charges in the customer's database. (Dkt. 36 at 7.) In addition, AppFolio's user logs show that Beagle is familiar with scheduled reports, having used them with 346 AppFolio customers, sending over *fifty-four thousand* scheduled reports. (Delage Decl. ¶ 6.) Perhaps this is why no Beagle declarant states that Beagle was unaware, prior to the Court's Order, that scheduled reports were read-only.

**c. Beagle Could Have Known the Capability of Database API with Even a Modicum of Diligence**

As explained above, Beagle cannot establish that database API's capability is materially different than that presented to the Court in the prior motion because AppFolio made no representations as to database API's capabilities. But even if it had, Beagle would still need to establish that "the exercise of reasonable diligence" would not have revealed those capabilities prior to the Court's Order. That it cannot do.

The Court has already recognized that "[p]resumably, as soon as Beagle became aware that AppFolio intended to enforce its Terms of Service, Beagle began working on developing or engineering such integrations." (Dkt. 39 at 6.) But that is not the case. Beagle's own declarant, Ayanga Okpokowuruk, states that

he was not tasked with evaluating Scheduled reports and Database API *until January.* (Mot. Okpokowuruk Decl. ¶ 3.) And Beagle's Motion further specifies that its "exploration of and attempts to implement the proposed substitute methods" occurred sometime "after the Order" on January 7.[4]

Placing this in context, AppFolio notified Beagle of its intent to enforce its Terms of Service on December 9, 2025, and, in that same letter, offered to answer Beagle's "questions about compliant access paths" and provide "clarification on transition steps." (Saxena Decl. ¶ 4.) Beagle never responded. Beagle instead told its customers they could "continue to run [their] Beagle program using scheduled reports" (Dkt. 33-3 Exh. D); brought this lawsuit against AppFolio; and filed an *ex parte* motion based on the threat of "extinction;" and fully briefed that motion all before assigning Mr. Okpokowuruk to investigate viable alternatives.

If Beagle had wanted to know the capabilities of database API, all it had to do was ask. When Beagle did ask on January 14—after the Order—AppFolio provided explanatory materials on January 30. (Delage Decl. ¶ 5.) Beagle's lack of diligence is fatal to its motion. *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1157 (D. Haw. 2013) (denying motion for reconsideration based on new fact because party could have obtained new fact by diligent investigation).

---

[4] Beagle's motion does separately claim it began working on solutions "as soon as Beagle became aware that AppFolio intended to sever its existing access." (Mot at 4.) But Beagle cites no evidence to support this claim; and it is inconsistent with Mr. Okpokowuruk's declaration.. (Mot. Okpokowuruk Decl. ¶ 3.)

## IV. AppFolio's Post-Order Statements Are Not New and Do Not Justify Reconsideration

Beagle accuses AppFolio of "new and escalating" post-order conduct that it claims justifies reconsideration. (Mot. at 3.) Specifically, Beagle complains of four statements made to a customer in a January 9, 2026, email. (*Id.* at 6.) What Beagle fails to mention is these four statements are *identical* to those sent in the December 9, 2025, communications.

| **December 9 Communication (Dkt. 4-5 Exh. C)** | **January 9, 2026 Communication (Mot. D'Angelo Decl., Ex B)** |
|---|---|
| We value your ability to choose providers, but the *method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:<br>• access the personally identifiable information of your residents<br>• issue payments through the AppFolio payments platform<br>• view and take action across your entire account database | We value your ability to choose providers, but the *method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:<br>• access the personally identifiable information of your residents<br>• issue payments through the AppFolio payments platform<br>• view and take action across your entire account database |

AppFolio merely sent an updated version of *the same message* on January 9, 2026, to users who did not receive the December 9, 2025, message because they did not yet have Beagle user access to their databases. (Delage Decl. ¶¶ 3-4.) Far from new, these statements were already fully briefed in response to Beagle's TRO Motion and, as such, are not grounds for reconsideration. *Trust Corp. v. Aetna Casualty and Surety Co.,* 873 F.Supp. 1386, 1393 (D.Ariz.1994) (denying motion for reconsideration where new deposition testimony merely reinforced old facts that court previously addressed) (cited approvingly in *Collins v. U.S. Citizenship & Naturalization Serv.*, 2013 WL 776244, at *1 (C.D. Cal. Feb. 6,

2013) (Walter, J.) (denying motion for reconsideration for failure to meet Local Rule 7-18).

Even if these statements were new and therefore warranted reconsideration, they would not change the outcome. First, Beagle does not even contend they are false. Indeed, Beagle's CEO admitted these are "things a user *could* technically do in your account" (emphasis in original). (Dkt. 33-3 Exh. D.) And, as also fully briefed, *see* Opp. at 18 fn. 8, false statements would not support Beagle's request that the Court enjoin AppFolio from disabling Beagle's user access. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged.")

## V. <u>Even if Reconsideration Was Warranted, The Outcome Would Not Change</u>

In its original motion, Beagle claimed it faced an "extinction level event" because AppFolio "planned to block Beagle's access" to "limited categories of" its customers' "operational data." (Dkt. 4 at 2, 6.) The Court, however, denied Beagle's motion for failure to show irreparable harm after AppFolio demonstrated that its scheduled reports feature could "provide the exact information that Beagle claimed it needed in its moving papers." (Dkt. 39 at 6.) The Court further found AppFolio's database API feature may also be a viable alternative, with Beagle having "fail[ed] to identify what data fields are missing." (*Id.*) Beagle's purportedly new facts do not change this outcome: Beagle still has no evidence that scheduled reports and database API cannot provide the data Beagle claimed to need as the basis for its original motion.

But even if write access were relevant to Beagle's motion, it would still fail to show a likelihood of irreparable harm because Beagle has not offered any evidence that its contracts require it to take action in its customer's databases. Beagle attached a customer contract to its reply in support of the TRO Motion, but

that contract showed only that Beagle is obligated to provide insurance to its customers. (Dkt. 36-1 Exh. A.) The contract made no mention of AppFolio, much less promise to use its functionality.

In addition, the credibility of Beagle's claim of irreparable harm is called into question by the recent announcement that Beagle's parent company, Corgi, raised $108 million dollars in funding, with a $630 million valuation, based in part on $40 million in annual recurring revenue. Whether true or not, Corgi's announcement—*made two days after the Court's Order*—tells a different story than Beagle, which claimed that, by disabling its user access, AppFolio would "with the click of a button . . . collapse more than $10 million dollars of revenue and "eviscerate hundreds of millions of dollars in enterprise value." (Dkt. 4 at 18.)

## VI. Beagle is Not Entitled to an Evidentiary Hearing

Lastly, Beagle claims it is entitled to an evidentiary hearing "to test" and "explore" whether "1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle." But, according to Beagle's own authority in *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), *as amended* (Feb. 12, 1993), evidentiary hearings are appropriate where there are "diametrically opposing declarations and counter-declarations" on a material fact, not just because a party seeks to explore an issue. Beagle identifies no false statement of any AppFolio declarant, and it is not entitled to a hearing to "explore" the technical issues it should have investigated a month ago.

Unsurprisingly, Beagle offers no authority for the proposition that a court must hold an evidentiary hearing to enter an ex parte TRO. The Ninth Circuit

cases Beagle does cite address preliminary injunctions, not TROs. Beagle's cases are inapplicable for that reason.

Beagle's cases are inapt for additional reasons. In *Thomas*, the Ninth Circuit criticized the District Court for failing to hold an evidentiary hearing because there were conflicting declarations *and the district made no specific factual findings*. *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), *as amended* (Feb. 12, 1993). Here, by contrast, the Court made detailed factual findings about each category of data Beagle sought, and each way Beagle could get it. (Dkt. 39 at 6-7.) Beagle's other Ninth Circuit case helps Beagle even less because it went *against* Beagle's current position. It found that "The district court did not abuse its discretion in granting the preliminary injunction without an evidentiary hearing." *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986).

**Conclusion**

For the foregoing reasons, the Court should deny the Motion in its entirety.

DATED this 2nd day of March, 2026.

*/s/*

Brian Procel
Jeremiah Levine
Marty Pritikin
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Plaintiff
AppFolio, Inc.

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC., a California corporation,<br><br>Defendants. | Case No. 25-cv-12248-JFW-SSC<br><br>**DECLARATION OF SEAN SAXENA IN SUPPORT OF APPFOLIO, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION** |

**DECLARATION OF SEAN SAXENA**

I, Sean Saxena, declare:

1. I make this declaration in support of AppFolio, Inc.'s ("AppFolio's") Opposition To Plaintiffs' Motion for Reconsideration of Order Denying TRO and OSC re Preliminary Injunction. If called as a witness, I could and would testify competently hereto.

2. My job title is Senior Director, Insurance, for AppFolio. I have been employed by AppFolio for approximately 13 years.

3. On December 9, 2025, AppFolio notified its customers with Beagle user accounts that AppFolio intended to disable the noncompliant access. (Dkt. 4-5 Exh. C.)

4. Also on December 9, 2025, AppFolio sent an email to Beagle stating that if Beagle had "questions about compliant access paths or need[s] clarification on transition steps, we are happy to provide additional guidance."[1] Beagle never responded. Attached as Exhibit A is a true and correct copy of that email.

5. On or about January 7, 2026, the Court denied Beagle's motion for a temporary restraining order in this matter. (Dkt. 39 at 6.)

6. On or about January 9, 2026, Beagle's parent company, Corgi Insurance, announced on LinkedIn that it had raised $108 million in funding. Corgi

[1] I make this statement not for the truth of the matter asserted, but to demonstrate notice to Beagle.

said that it was valued at $630 million, based in part on its $40 million in annual recurring revenue.[2]

7. Beagle issued a press release, on August 6, 2025, confirming that "Corgi Insurance" is "the parent company behind Beagle."[3]

I declare under penalty of perjury according to the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was signed by me on February 2, 2026, in Goleta, California.

Sean Saxena

[2] I make this statement not for the truth of Corgi's statement, but for the fact that Corgi made it.

[3] The press release is available at: https://www.prnewswire.com/news-releases/entrata-co-founder-johnny-hanna-joins-beagle-as-president-to-drive-expansion-302523573.html

Exhibit A

appfolio

Matthew Kaddatz <matthew.kaddatz@appfolio.com>

## Notification from AppFolio

1 message

**Account Security** <account.security@appfolio.com> Tue, Dec 9, 2025 at 2:06 PM
To: support@beagleforpm.com

Hi Beagle team,

We are reaching out to inform you that **all Beagle-associated user accounts in AppFolio customer databases will be disabled on December 16, 2025**. This action is necessary to uphold the security and integrity of our platform and to ensure compliance with AppFolio's terms of service.

AppFolio is committed to protecting our customers and delivering a safe, high-quality user experience. We support our customers' ability to choose the providers they work with, and access must occur through compliant, secure channels.

To support customers who wish to continue using your services, **you can offer multiple secure methods, including scheduled reports** from AppFolio. These methods ensure data security, maintain compliance, and provide a safe framework for third-party collaboration.

We have notified our customers of this action this morning (December 9th) and provided guidance for how they can continue to utilize your service in a method that is compliant with our terms of service and does not create a security risk.

If you have questions about compliant access paths or need clarification on transition steps, we are happy to provide additional guidance.

Thank you,
AppFolio

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendants.

Case No. 25-cv-12248-JFW-SSC

**DECLARATION OF NATE DELAGE IN SUPPORT OF APPFOLIO, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION**

**DECLARATION OF NATE DELAGE**

I, Nathaniel Delage, declare:

1. I make this declaration in support of AppFolio, Inc.'s ("AppFolio's") Opposition To Plaintiffs' Motion for Reconsideration of Order Denying TRO and OSC re Preliminary Injunction. If called as a witness, I could and would testify competently hereto.

2. My job title is Director, Software Engineering, for AppFolio. I have been employed by AppFolio for approximately eight years.

3. Following the Court's Order on January 7, 2025, AppFolio implemented security measures to identify and disable Beagle's user access to AppFolio's customers' databases. These measures identified customers who had not received AppFolio's prior, December 9, 2025, notice, because Beagle did not have user access to their database at that time.

4. On January 9, 2025, AppFolio provided these customers the *same notice* it had previously sent, updating only the dates and timing. Both the December and January 9 notices contain this language: "the method by which Beagle has chosen to operate their business places you at risk;" Beagle can "access the personally identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." *Compare* Dkt. 4-5 Exh. C with Dkt. 50-2 Exh. B.

5. I am familiar with AppFolio's features, including scheduled reports and database API. The capabilities of scheduled reports and database API have not changed since before this litigation began. At all times relevant to this

litigation, database API has had a robust capability to write in AppFolio databases. Customers can use this write capablity without the need for AppFolio to engineer new endpoints. If Beagle had wanted to know the capabilities of database API, all it had to do was ask. When Beagle did ask on January 14—after the Order—AppFolio provided explanatory materials on January 30.

6. AppFolio's user logs[1] show that Beagle has used scheduled reports with 346 AppFolio customers, sending over fifty-four thousand scheduled reports.

I declare under penalty of perjury according to the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was signed by me on February 2, 2026, in San Diego, California.

Nathaniel Delage

[1] I am a duly authorized custodian of records for AppFolio. AppFolio's user logs are records of regularly conducted activity, made and kept in the ordinary course of business, prepared automically and accurately, and made near the time of the facts reflected therein.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Beagle Labs, Inc., et al., Plaintiff, v. AppFolio, Inc., Defendants. | Case No.: **CV 25-12248-JFW(SSCx)** **SCHEDULING AND CASE MANAGEMENT ORDER** |

The purpose of this Order is to notify the parties and their counsel of the deadlines and the schedule that will govern this action. SEE THE LAST PAGE OF THIS ORDER FOR THE SPECIFIED DATES. Ordinarily, the dates set forth on the last page are determined after reviewing the parties' Joint Report or consultation with the parties at the Scheduling Conference. Accordingly, the dates and requirements are firm. The Court is very unlikely to grant continuances, even if stipulated to by the parties, unless the parties establish good cause through a concrete showing. **Because this Order in some respects modifies the applicable Local Rules, counsel are advised to read it carefully to avoid default on the obligations established herein. Counsel are advised to pay particular attention to the requirements of the Court with**

**respect to electronic filing, the filing of motions for summary judgment, and the documents to be submitted at the Pre-Trial Conference and Trial.**

**1. ELECTRONIC FILING AND COURTESY COPIES**

The parties shall comply with Section 3 of the Court's Standing Order with respect to electronic filing and courtesy copies.

**2. DISCOVERY**

All discovery shall be completed by the discovery cut-off date specified on the last page of this Order. **THIS IS <u>NOT</u> THE DATE BY WHICH DISCOVERY REQUESTS MUST BE SERVED; IT IS THE DATE BY WHICH ALL DISCOVERY, INCLUDING EXPERT DISCOVERY, SHALL BE COMPLETED.** The Court does not enforce side agreements to conduct discovery beyond the discovery cut-off date.

Any motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted.

In an effort to provide further guidance to the parties, the Court notes the following:

**(a) Depositions**

All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date.

/ / /

**(b) Written Discovery**

All interrogatories, requests for production of documents, and requests for admissions shall be served sufficiently in advance of the discovery cut-off date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient.

**(c) Discovery Motions**

Whenever possible, the Court expects the parties to resolve discovery issues among themselves in a courteous, reasonable, and professional manner. If they do so, resort to the Court for guidance in discovery is seldom necessary. The Magistrate Judge assigned to this case will rule on discovery motions and protective orders.

**(d) Expert Discovery**

If expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial and shall provide reports required by Fed.R.Civ.P. 26(a)(2)(B) not later than eight weeks prior to the discovery cut-off date. Rebuttal expert witnesses shall be designated and reports provided as required by Fed.R.Civ.P. 26(a)(2)(B) not later than five weeks prior to the discovery cut-off date. Any non-retained expert designated by a party as an affirmative or rebuttal expert shall also prepare and provide an expert report in the form described by Fed.R.Civ.P. 26(a)(2)(B). Expert witnesses will be bound by the opinions expressed in their reports prepared in accordance with Fed.R.Civ.P. 26(a)(2)(B) and will not be permitted to offer new opinions at trial. Failure to timely comply with this

deadline will result in the expert being excluded at trial as a witness.

**3. MOTIONS - GENERAL PROVISIONS**

All law and motion matters, except for motions in limine, must be set for <u>hearing</u> (not filed) by the motion cut-off date specified on the last page of this Order. The Court will deny or strike late-filed motions. The title page of all motions must state the hearing date and time for the motion, the Pre-Trial Conference date, and the Trial date.

Once a party has noticed a motion for hearing on a particular date, the hearing shall not be continued without leave of Court. If the Court concludes that a motion can be resolved without argument, the Court will notify the parties in advance.

If counsel does not intend to oppose a motion, counsel shall immediately inform the Courtroom Deputy by e-mail and immediately file a Notice of Non-Opposition in accordance with the Local Rules. The parties should note that failure to timely respond to any motion shall be deemed by the Court as consent to the granting of the motion. *See* Local Rules.

Ex parte practice is strongly discouraged. The Court will require strict adherence to proper ex parte procedures for any ex parte application filed with the Court. *See* Local Rules and the Court's Standing Order.

**(a) Applications and Stipulations to Extend Time**

No application or stipulation to extend the time to file any required document or to continue any date is effective unless and until the Court approves it. Any application or

stipulation to extend the time to file any required document or to continue any date must set forth the following:

(1) the existing due date or hearing date, as well as all dates set by the Court, including the discovery cut-off date, the Pre-Trial Conference date, and the Trial date;

(2) the new dates proposed by the parties;

(3) specific, concrete reasons supporting good cause for granting the extension; and

(4) whether there have been prior requests for extensions by any party, and whether those requests were granted or denied by the Court.

The application or stipulation must be accompanied by a separate proposed order. The proposed order shall include the existing due date(s) or hearing date(s) as well as the new proposed date(s).

Failure to comply with the provisions of this section may result in the denial of the application or stipulation.

**(b) Joinder of Parties and Amendment of Pleadings**

The deadline for joining parties and amending pleadings is sixty days from the date of this Order. Any motions to join other parties or for leave to amend the pleadings shall be filed within twenty days of the date of this Order so that they can be heard and decided prior to the deadline.

In addition to the requirements of the Local Rules, all motions to amend the pleadings shall: (1) state the effect of the amendment; and (2) state the page, line number(s), and wording of any proposed change or addition of material. The parties shall file and deliver to Chambers a redlined version

of the proposed amended pleading indicating all additions and/or deletions of material.

**(c) Withdrawal or Substitution of Counsel**

The Court will not grant a request for approval of substitution of counsel after an action has been set for trial unless: (1) counsel files the request using the most recent version of the appropriate forms provided on the Court's website; and (2) the request is accompanied by a declaration signed by a substituting attorney indicating that such attorney has been advised of the trial date and will be prepared to proceed with trial as scheduled. Any request for substitution of counsel which is not on the proper form or is not accompanied by a declaration signed by a substituting attorney as set forth above will be denied.

Counsel who wish to withdraw and substitute their client *pro se* must file a regularly noticed motion to withdraw which demonstrates good cause for the request to withdraw. The Court will not consider such a motion unless: (1) the motion is accompanied by a declaration signed by the client indicating that the client consents to the withdrawal, has been advised of the time and date of trial, and will be prepared to represent themselves *pro se* on the scheduled trial date; or (2) the Court is otherwise satisfied for good cause shown that the attorney should be permitted to withdraw.

**4. SUMMARY JUDGMENT MOTIONS**

The Court will only entertain ONE summary judgment motion by a party. In the event a party believes that more than one

summary judgment motion is necessary to expedite the resolution of issues in the action, the party must obtain leave of court to file more than one summary judgment motion. The Court will require strict adherence to the following requirements:

**(a) Statement Of Uncontroverted Facts and Conclusions of Law and Statement of Genuine Disputes of Material Fact**

The Statement of Uncontroverted Facts and Conclusions of Law is to be prepared in a two column format. The left hand column should set forth the allegedly undisputed fact or conclusion of law. The right hand column should set forth the evidence that supports the factual statement or conclusion of law. The factual statements and conclusions of law should be set forth in sequentially numbered paragraphs. Each paragraph should contain a narrowly focused statement of fact or conclusion of law. Each numbered paragraph should address a single subject in as concise a manner as possible.

The opposing party's Statement of Genuine Disputes of Material Fact must track the movant's Statement of Uncontroverted Facts exactly as prepared. The document must be in two columns; the left hand column must restate the allegedly undisputed fact, and the right hand column must restate the moving party's evidence in support of the fact, and indicate either undisputed or disputed. The opposing party may dispute all or only a portion of the statement, but if disputing only a portion, must clearly indicate what part is being disputed. Where the opposing party is disputing the

fact in whole or part, the opposing party must, in the right hand column, set forth the evidence controverting the fact. Where the opposing party is disputing the fact on the basis of an evidentiary objection, the party must cite to the evidence alleged to be objectionable and state the ground of the objection and nothing more. Counsel are reminded that unwarranted factual denials made in the context of a Summary Judgment Motion are subject to Rule 11 sanctions. **No argument should be set forth in this document.**

The opposing party may submit additional material facts that bear on or relate to the issues raised by the movant, which shall follow the format described above for the moving party's Statement of Uncontroverted Facts. These additional facts shall follow the movant's facts, shall continue in sequentially numbered paragraphs (*i.e.*, if movant's last statement of fact was set forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and the evidence that supports the new fact shall be set forth in the right hand column.

The moving party, together with its reply, shall file a separate document entitled "Combined Statement of Facts" that (1) restates the entirety of the opposing party's Statement of Genuine Disputes of Material Fact and (2) responds to any additional facts in the same manner and format that the opposing party must follow in responding to the Statement of Uncontroverted Facts, as described above.

/ / /

/ / /

**(b) Supporting Evidence**

No party should submit any evidence other than the specific items of evidence or testimony necessary to support or controvert a proposed statement of undisputed fact. Thus, for example, entire sets of interrogatory responses, or documents that do not specifically support or controvert material in the Statements should not be submitted in support of or in opposition to a motion for summary judgment. Any such material will not be considered.

Evidence submitted in support of or in opposition to a motion for summary judgment should be submitted either by way of stipulation or as exhibits to declarations sufficient to authenticate the proffered evidence, and should not be attached to the memorandum of points and authorities. The Court will accept counsel's authentication of deposition transcripts, written discovery responses, and the receipt of documents in discovery if the fact that the document was in the opponent's possession is of independent significance. Documentary evidence as to which there is no stipulation regarding foundation must be accompanied by the testimony, either by declaration or properly authenticated deposition transcript, of a witness who can establish its authenticity.

All exhibits submitted in support of, and in opposition to, a motion for summary judgment shall be consecutively numbered; no two exhibits shall bear the same number. For example, if the moving party submits one declaration and one request for judicial notice, with four exhibits attached to each document, the exhibits attached to the declaration shall

be marked 1 through 4, and the exhibits attached to the request for judicial notice shall be marked 5 through 8. The opposing party's exhibits shall then commence with number 9. Immediately above or below the page number on each page of an exhibit, the parties shall mark "[Party Name]'s Summary Judgment Exhibit No. __".

All exhibits shall be separately filed on CM/ECF, and each exhibit on the docket shall include a meaningful description such that the exhibit can be easily identified. For example, if a declaration in support of a motion for summary judgment appears as Docket No. 30, exhibit 1 to the declaration should be filed as Docket No. 30-1 with a description of the exhibit that includes the title of the exhibit and the exhibit number (*e.g.*, Exhibit 1: Letter from John Doe to Jane Doe dated January 1, 2021). Exhibit 2 to the declaration should be filed as Docket No. 30-2 with a description of the exhibit which includes the title of the exhibit and exhibit number (Exhibit 2: Letter from Jane Doe to John Doe dated January 2, 2021), and so on.

In addition to the foregoing, any party who offers deposition testimony in support of or in opposition to a motion for summary judgment shall prepare and file a separate document for each deponent which contains only those questions and answers, and any objections made at the time of the deposition to those questions, that a party is relying on to support their motion, with a citation to the appropriate page and line number(s) in the deposition transcript.

/ / /

The parties shall also deliver to chambers (but not file) one copy of the entire deposition transcript (single-sided condensed transcript including the word index) of each deposition referenced. The deposition transcripts shall be placed in a slant D-ring binder with each transcript separated by a tab divider on the right side and three-hole punched at the left margin with the oversized 13/32" hole size, not the standard 9/32" hole size. The deposition transcript binder shall include a Table of Contents and the spine of each binder shall be labeled with its contents.

Courtesy Copies of all evidence in support of and in opposition to a motion for summary judgment shall be provided to the Court in accordance with Section 3 of the Court's Standing Order.

In addition to the foregoing, the parties shall meet and confer and prepare two binders, one binder containing a joint set of all exhibits relied on by the parties in support of and in opposition to the motion for summary judgment ("Joint Exhibit Binder"), and the other binder containing a joint set of all declarations relied on by the parties in support of and in opposition to the motion for summary judgment ("Joint Declarations Binder"). The parties shall file the Joint Set of Exhibits with a cover page titled "Joint Set of Exhibits" and the Joint Set of Declarations with a cover page titled "Joint Set of Declarations" with the Reply. The parties shall also deliver to Chambers Courtesy Copies of both the Joint Exhibit Binder and Joint Declarations Binder in accordance with Section 3 of the Court's Standing Order.

The Joint Exhibit Binder and Joint Declarations Binder shall include a Table of Contents, and the spine of each binder shall be labeled with its contents. The Table of Contents for the Joint Exhibit Binder and Joint Declarations Binder shall specifically describe each summary judgment exhibit or declaration and include a citation to each paragraph number in the Combined Statement of Facts that refers to the exhibit or declaration (*e.g.* Plaintiff's Summary Judgment Exhibit No. 1 - Letter from John Doe to Jane Doe dated January 1, 2007 Re: Reasons for Jane Doe's termination) (Combined Statement of Facts Nos. 2, 8, 10). In preparing the Table of Contents, counsel should <u>not</u> create a new set of exhibit numbers. Counsel shall use the same exhibit numbers that were used to identify the documents in the Motion for Summary Judgment.

When filing the Joint Set of Exhibits and Joint Set of Declarations electronically, each exhibit or declaration shall be separately filed on CM/ECF and the description of the exhibit or declaration on the docket shall track the description of the exhibit or declaration in the Table of Contents.

**(c) Objections to Evidence**

If a party disputes a fact based in whole or in part on an evidentiary objection, the ground for the objection, as indicated above, should be stated in the Statement of Genuine Disputes of Material Fact or Combined Statement of Facts but not argued in that document. Evidentiary objections are to be addressed in a separate memorandum to be filed with the

opposition or reply brief of the party. This memorandum should be organized **<u>to track the paragraph numbers of the Statement of Genuine Disputes of Material Fact or Combined Statement of Facts in sequence</u>**. It should identify the specific item of evidence to which objection is made, or in the case of deposition testimony it should quote the relevant testimony, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken. The following is an example of the format required by the Court:

> <u>Combined Statement of Facts Paragraph 10</u>: Objection to the supporting deposition testimony of Jane Smith [quote testimony] at 60:1-10 on the grounds that the statement constitutes inadmissible hearsay and no exception is applicable. To the extent it is offered to prove her state of mind, it is irrelevant because her state of mind is not in issue. Fed. R. Evid. 801, 802.

**DO NOT SUBMIT BLANKET OR BOILERPLATE OBJECTIONS TO THE OPPONENT'S STATEMENT OF FACTS. THESE WILL BE DISREGARDED AND OVERRULED.**

**(d) The Memorandum of Points and Authorities**

The movant's memorandum of points and authorities should be in the usual form required under Local Rules and should contain a narrative statement of facts as to those aspects of the case that are before the Court. All facts should be supported with citations to the paragraph number in the

/ / /

Statement of Uncontroverted Facts that supports the factual assertion and not to the underlying evidence.

Unless the case involves some unusual twist, the motion need only contain a brief statement of the Fed.R.Civ.P. 56 standard; the Court is familiar with the Rule and with its interpretation under *Celotex* and its progeny. If at all possible, the argument should be organized to focus on the pertinent elements of the claim(s) for relief or defense(s) at issue, with the purpose of showing the existence or non-existence of a genuine issue of material fact for trial on that element of the claim or defense.

Likewise, the opposition memorandum of points and authorities should be in the usual form required by the Local Rules. Where the opposition memorandum sets forth facts, those facts should be supported with citations to the paragraph number in the Statement of Genuine Disputes of Material Fact and not to the underlying evidence.

**(e) Proposed Statement of Decision**

No more than two days after the deadline for filing the Reply, each party shall lodge a Proposed Statement of Decision, which shall contain a statement of the relevant facts and applicable law with citations to case law and the record. The Proposed Statement of Decision shall not exceed twenty pages and shall be in a form that would be appropriate for the Court to enter as its final order on the motion. The Proposed Statement of Decision shall be submitted to the Court in accordance with the Local Rules and shall be e-mailed in WordPerfect or Word format to the Chambers'

e-mail address (JFW_Chambers@cacd.uscourts.gov) at the time of filing. Failure to lodge the Proposed Statement of Decision will result in the denial or granting of the motion.

**(f) Timing**

Parties should not wait until the motion cut-off date to bring motions for summary judgment or partial summary judgment. Early completion of non-expert discovery and filing of motions for summary judgment may eliminate or reduce the need for expensive expert depositions which are normally conducted in the last stages of discovery.

**<u>Caveat</u>: Failure of the moving party to comply with these procedures regarding summary judgment motions will result in the denial of the Motion for Summary Judgment. If a party fails to respond to a Motion for Summary Judgment, the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy, which will likely result in the granting of the Motion for Summary Judgment.**

**5. MOTIONS IN LIMINE**

The Court will only entertain a maximum of five motions in limine by a party. In the event a party believes that more than five motions in limine are necessary, the party must obtain leave of Court to file more than five motions in limine. The Court will not hear or resolve motions in limine that are disguised summary judgment motions. No application to file under seal will be granted with respect to a motion in limine or any documents submitted with the motion in limine.

Before filing any motion in limine, lead counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion in limine or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel for the moving party to arrange for this conference. The conference shall take place in person within ten calendar days of service upon opposing counsel of a letter requesting such conference, but in no event later than twenty-one days before the Pre-Trial Conference. Unless counsel agree otherwise, the conference shall take place at the office of the counsel for the moving party. If lead counsel are not both located within the Central District, the conference may take place via video (letters and e-mail, for example, do not constitute a proper conference).

The moving party's letter shall identify the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial, shall state briefly with respect to each such matter the moving party's position (and provide any legal authority that the moving party believes is dispositive), and shall specify the terms of the order to be sought.

If counsel are unable to resolve their differences, they shall prepare and file a separate, sequentially numbered Joint Motion in Limine for each issue in dispute which contains a clear caption which identifies the moving party and the nature of the dispute (*e.g.*, "Plaintiff's Motion in Limine #1 to exclude the testimony of Defendant's expert"). Each Joint Motion in Limine shall consist of one document

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 97 of 281

signed by all counsel. The Joint Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be inadmissible and/or prejudicial and a statement of the specific prejudice that will be suffered by the moving party if the motion is not granted. The identification of the matters in dispute shall be followed by each party's contentions and each party's memorandum of points and authorities. The title page of the Joint Motion in Limine must state the Pre-Trial Conference date, hearing date for the motions in limine, and Trial date.

Joint Motions in Limine made for the purpose of precluding the mention or display of inadmissible and/or prejudicial matter in the presence of the jury shall be accompanied by a declaration that includes the following: (1) a clear identification of the specific matter alleged to be inadmissible and/or prejudicial; (2) a representation to the Court that the subject of the motion in limine has been discussed with opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence; and (3) a statement of the specific prejudice that will be suffered by the moving party if the motion in limine is not granted.

/ / /

/ / /

Unless ordered by the Court, no supplemental or separate memorandum of points and authorities shall be filed by either party in connection with any motion in limine.

The Court's Courtesy Copies shall be provided to the Court in accordance with Section 3 of the Court's Standing Order.

The Court will not consider any motion in limine in the absence of a joint motion or a declaration from counsel for the moving party establishing that opposing counsel: (1) failed to confer in a timely manner; (2) failed to provide the opposing party's portion of the joint motion in a timely manner; or (3) refused to sign and return the joint motion after the opposing party's portion was added.

Unless otherwise ordered by the Court, motions in limine should be filed and will be heard on the dates specified on the last page of this Order. Unless the Court in its discretion otherwise allows, no motions in limine shall be filed or heard on an ex parte basis, absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party.

The failure of any counsel to comply with or cooperate in the foregoing procedures will result in the imposition of sanctions, including a resolution of the issue against the party refusing to cooperate.

/ / /

/ / /

/ / /

/ / /

**6. PRE-TRIAL CONFERENCE AND LOCAL RULE 16 FILINGS**

**(a) General Provisions**

The Pre-Trial Conference ("PTC") will be held on the date specified on the last page of this Order, unless the Court expressly waived a PTC.

The lead trial attorney on behalf of each party shall attend both the PTC and all meetings of the parties in preparation for the PTC, unless excused for good cause shown in advance of the PTC.

A continuance of the PTC at the parties' request or by stipulation is highly unlikely. **Specifically, failure to complete discovery is not a ground for continuance.**

At the PTC, the parties should be prepared to discuss means of streamlining the trial, including, but not limited to: bifurcation; presentation of foundational and non-critical testimony and direct testimony by deposition excerpts; narrative summaries and/or stipulations as to the content of testimony; presentation of testimony on direct examination by affidavit or by declaration subject to cross-examination; and qualification of experts by admitted resumes. The Court will also discuss settlement.

**(b) Form of Pre-Trial Conference Order ("PTCO")**

The proposed PTCO shall be filed by the date specified on the last page of this Order. Adherence to this time requirement is necessary for in-chambers preparation of the matter. The PTCO shall include the date of the L.R. 16-2 conference and the names of each attorney in attendance at the L.R. 16-2 conference. The form of the proposed PTCO

shall comply with Appendix A to the Local Rules and the following:

(1) Place in "ALL CAPS" and in **bold** the separately numbered headings for each category in the PTCO (*e.g.*, "**1. THE PARTIES**" or "**7. CLAIMS AND DEFENSES OF THE PARTIES**").

(2) Include a Table of Contents at the beginning.

(3) In specifying the surviving pleadings, state which claims or counterclaims have been dismissed or abandoned (*e.g.*,"Plaintiff's second cause of action for breach of fiduciary duty has been dismissed."). Also, in multiple party cases where not all claims or counterclaims will be prosecuted against all remaining parties on the other side, specify to which party each claim or counterclaim is directed.

(4) In drafting the PTCO, the Court expects that the parties will attempt to agree on and set forth as many uncontested facts as possible. A carefully drafted and comprehensively stated stipulation of facts will assist the Court in preparing for the Pre-Trial Conference.

**(5) In specifying the parties' claims and defenses in Section 7 of the PTCO, each party shall closely follow the examples set forth in Appendix A of the Local Rules.**

(6) The Court may submit fact issues to the jury in the form of findings on a special verdict form. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

(7) If expert witnesses are to be called at trial, each party must list and identify its respective expert

witnesses, both retained and non-retained. Failure of a party to list and identify an expert witness in the PTCO shall preclude the party from calling that expert witness at trial.

**(c) Rule 16 Filings; Memoranda; Witness Lists; Exhibit Lists; Numbering of Exhibits**

The parties must comply fully with the requirements of Local Rule 16. They shall file carefully prepared Memoranda of Contentions of Fact and Law (which may also serve as the trial brief), along with their respective Witness Lists and Exhibit Lists, in accordance with the Local Rules unless otherwise noted or modified by this Order.

Trial Exhibits shall be numbered in accordance with this Order and not the Local Rules. Prior to the Local Rule 16-2 meeting, the parties shall designate the approximate number of exhibits they each intend to offer at trial and then assign a range of numbers for that party to use in numbering its exhibits. For example, the parties may assign numbers 1 through 50 to Plaintiff, and numbers 51 through 100 to Defendant. Plaintiff shall then sequentially number its trial exhibits from 1 to 50; Defendant shall sequentially number its exhibits from 51 to 100. No two exhibits shall bear the same number. The Court recognizes that not all assigned numbers may be used by the parties, and that there may be gaps in the numerical sequence on the Exhibit List and Pre-trial Exhibit Stipulation. Once an exhibit has been assigned an exhibit number in the Exhibit List or Pre-trial

Exhibit Stipulation filed with the Court, that exhibit number shall not change and shall be used for that exhibit at trial.

**(d) Summary of Witness Testimony and Time Estimates**

Counsel shall prepare a list of their witnesses, including a brief summary (two to three paragraphs) of each witness's expected testimony, an estimate of the length of time needed for direct examination, and whether the witness will testify by deposition or in person. Counsel shall exchange these lists with opposing counsel. **Counsel shall jointly file a single list of witness testimony summaries, including estimates for direct examination of their own witnesses and estimates for cross-examination of opposing witnesses.** The joint witness testimony summaries shall be filed at the same time counsel submit the PTCO. If a party intends to offer deposition testimony into evidence at trial, the party shall comply with the Local Rules.

**(e) Pre-Trial Exhibit Stipulation**

The parties shall prepare a Pre-Trial Exhibit Stipulation which shall contain each party's numbered list of all trial exhibits, with objections, if any, to each exhibit including the basis of the objection and the offering party's response. All exhibits to which there is no objection shall be deemed admitted. The parties shall also identify each witness they anticipate will testify about and/or lay the foundation for the exhibit. All parties shall stipulate to the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall identify any exhibits for which

authenticity has not been stipulated to and the specific reasons for the party's failure to stipulate.

The Pre-Trial Exhibit Stipulation shall be substantially in the following form:

<u>Pre-Trial Exhibit Stipulation</u>

<u>Plaintiff(s)' Exhibits</u>

| Number | Description | Witness | If Objection, State Grounds | Response to Objection |
| --- | --- | --- | --- | --- |

<u>Defendant(s)' Exhibits</u>

| Number | Description | Witness | If Objection, State Grounds | Response to Objection |
| --- | --- | --- | --- | --- |

The Pre-Trial Exhibit Stipulation shall be filed at the same time counsel file the PTCO. Failure to comply with this paragraph shall constitute a waiver of all objections. **DO NOT SUBMIT BLANKET OR BOILERPLATE OBJECTIONS TO THE OPPOSING PARTY'S EXHIBITS. THESE WILL BE DISREGARDED AND OVERRULED.**

**(f) Jury Instructions, Verdict Forms, Special Interrogatories**

Fourteen days before the required Local Rule 16-2 meeting, the parties shall exchange proposed jury instructions, verdict forms, and, if necessary, special interrogatories. Seven days before the meeting, counsel shall exchange written objections, if any, to the proposed jury instructions, verdict forms, and special interrogatories. At the required meeting, lead counsel shall confer with the objective of submitting one set of agreed upon instructions, a verdict form, and, if necessary, special interrogatories.

/ / /

If lead counsel agree upon one complete set of jury instructions, they shall file a joint set of proposed jury instructions, arranged in a logical sequence with each instruction sequentially numbered, and identified as "Stipulated Instruction No. __ Re ______," with the blanks filled in as appropriate. If the parties cannot agree upon one complete set of jury instructions, they shall file the following two joint documents with the Court:

(1) A joint set of proposed jury instructions arranged in a logical sequence with each instruction sequentially numbered. If undisputed, an instruction shall be identified as "Stipulated Instruction No. __ Re ________," with the blanks filled in as appropriate. If disputed, each alternate version of the disputed instruction shall be inserted together (back to back) in their logical place in the overall sequence. Each such disputed instruction shall be identified as "Disputed Instruction No. __ Re ________ Proposed By ________," with the blanks filled in as appropriate. All disputed versions of an instruction shall bear the same instruction number. If a party does not have a counter-version of an instruction and simply contends no such instruction should be given, then that party should so state (and explain why) on a separate page inserted in lieu of an alternate version; and

(2) A joint memorandum of law in support of each party's disputed instructions, organized by instruction number. The joint memorandum of law shall quote the text of each disputed instruction and shall set forth each party's

respective position and legal authority, immediately after the text of each disputed instruction.

Each proposed instruction, whether agreed upon or disputed, shall (a) be set forth in full on a separate page; (b) embrace only one subject or principle of law; (c) cite to the legal authority for or source of the instruction; and (d) reference the claim for relief to which the instruction relates with a citation to Section 7 of the PTCO.

**A Table of Contents shall be included with all jury instructions submitted to the Court.** The Table of Contents shall set forth the following:

(1) The number of the instruction;

(2) A brief title of the instruction;

(3) Whether it is undisputed or disputed;

(4) The source of the instruction; and

(5) The page number of the instruction.

For example:

| Number | Title | Source | Page No. |
| --- | --- | --- | --- |
| 1 | Burden of Proof (Undisputed) | 9th Cir. Man. of Model Jury Instr. 5.1 | 5 |

The Court directs counsel to use the instructions from the Ninth Circuit Manual of Model Jury Instructions (West Publishing, most recent edition) where applicable. Where California law is to be applied and the above instructions are not applicable, the Court prefers counsel to use the Judicial Council of California Civil Jury Instructions ("CACI") (LexisNexis Matthew Bender, most recent edition). If neither of these sources is applicable, counsel are

directed to use the instructions from O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (West Group, most recent edition). Any modifications made to the original form instruction from the foregoing sources (or any other form instructions) must be specifically identified, along with the authority supporting the modification. **Counsel shall not submit proposed preliminary instructions that are given to the jury prior to opening statements.**

If the parties agree upon a verdict form and/or special interrogatories, they shall file a joint verdict form and/or special interrogatories, with the questions arranged in a logical sequence. If the parties cannot agree upon a verdict form and/or special interrogatories, they shall file a joint document containing each party's alternative version along with a brief explanation of each party's respective position.

The joint set of proposed jury instructions, the joint memorandum of law, and verdict form(s) and/or special interrogatories are to be filed with the PTCO and other Local Rule 16 documents. Courtesy Copies shall be provided to the Court in accordance with Section 3 of the Court's Standing Order. **In addition, the parties shall e-mail the joint set of proposed jury instructions, joint memorandum of law, and verdict form(s) and/or special interrogatories in WordPerfect or Word format to the Chambers' e-mail address (JFW_Chambers@cacd.uscourts.gov) at the time of filing.**

Immediately after the Court's final ruling on the disputed jury instructions, counsel shall file one final "clean set" of jury instructions, which shall be sent into

the jury room for the jury's use during deliberations. The "clean set" shall contain only the text of each instruction set forth in full on each page, with the caption "Court's Instruction No. ___" (eliminating supporting authority, citations to the PTCO, etc.). Counsel shall also e-mail the final "clean set" of jury instructions in WordPerfect or Word format to the Chambers' e-mail address (JFW_Chambers@cacd.uscourts.gov) at the time of filing.

**Caveat: The failure of any counsel to comply with or cooperate in all of the foregoing procedures regarding jury instructions and/or verdict forms will constitute a waiver of all objections to the jury instructions and/or verdict form used by the Court or will constitute a waiver of jury trial and/or the striking of the jury demand.**

**(g) Real-Time Reporting Requirement**

Each party must file with the Court, at the same time counsel submit the PTCO, a document for the Court Reporter which contains proper names, unusual or scientific terms, or any foreign or uncommon words that are likely to be used by the parties during the PTC and the Trial. Each party shall also e-mail a copy of the document to the Chambers' e-mail address (JFW_Chambers@cacd.uscourts.gov) at the time of filing.

**(h) Joint Statement of the Case and Requests for Voir Dire**

Three days prior to the Pre-Trial Conference, the parties shall file their proposed voir dire questions and their joint statement of the case which the Court shall read to all

prospective jurors prior to the commencement of voir dire. The statement should be not longer than two or three paragraphs.

The Court conducts voir dire of all prospective jurors. The parties need not submit requests for standard voir dire questions, such as education, current occupation, marital status, prior jury service, etc., but should include only proposed questions specifically tailored to the parties and issues of the case.

**7. COURT TRIALS**

**(a) Declarations of Witness Direct Testimony**

Counsel in non-jury trials shall submit the direct testimony of their witnesses in writing in declarations executed under penalty of perjury. These declarations shall be in admissible form with an appropriate foundation established for the declarant's statements. Paragraphs in each declaration shall be numbered consecutively to facilitate the identification of paragraphs for evidentiary objections. Any exhibits which are attached to a witness declaration shall be numbered consistently with the number of the exhibit on the Pre-Trial Exhibit Stipulation.

Counsel are to exchange and file these declarations at least fourteen calendar days before trial, unless otherwise ordered by the Court. Courtesy Copies shall be provided to the Court in accordance with Section 3 of the Court's Standing Order.

Eleven calendar days before trial, counsel may file evidentiary objections to those declarations. Counsel shall prepare a separate document for each declaration for which

they have an evidentiary objection in which they shall quote the specific language from the declaration to which they object, followed by the objection and any relevant argument.

Counsel shall meet and confer in person and attempt to resolve the objections to the declarations. For each declaration to which there is an objection, counsel shall file a separate joint statement by noon on the sixth calendar day before trial in the following format:

<u>Joint Statement Re: Objections to Witness Jane Doe</u>

The parties were able to resolve the objections as to the following testimony: [name of witness, declaration paragraph and line].

The parties were not able to resolve the objections as to the following testimony:

<u>Disputed Testimony</u> [name of witness, declaration paragraph and line, followed by quote of the disputed testimony]

<u>Plaintiff's/Defendant's Grounds for the Objection</u>: [Cite the basis for the objection and the argument].

<u>Plaintiff's/Defendant's Response to the Objection</u>:

In conjunction with the joint statement, Counsel shall also file a separate "Ruling Chart" for each witness in the following format:

<u>Plaintiff's/Defendant's Objections to Declaration of Jane Doe</u>

| Testimony | Objection | Ruling |
|---|---|---|
| Doe ¶ 3, 1:25-2:3 | Fed. R. Evid. 602 | |

Courtesy Copies of the evidentiary objections, Joint Statements, and Ruling Chart shall be provided to the Court in accordance with Section 3 of the Court's Standing Order. **DO NOT SUBMIT BLANKET OR BOILERPLATE OBJECTIONS TO THE OPPOSING PARTY'S WITNESS DECLARATIONS. THESE WILL BE DISREGARDED AND OVERRULED.**

At trial, the Court will rule on the evidentiary objections and, depending upon the ruling, the declarations will be received in evidence, either in whole or in part, or rejected. Counsel will then conduct the cross-examination and re-direct examination at trial.

Failure to comply with the terms of this Order will result in sanctions or the Court may refuse to allow that witness to testify.

**(b) Trial Briefs**

Counsel for each party shall file and serve a trial brief, not to exceed 15 pages in length, fourteen calendar days before trial.

**(c) Findings of Fact and Conclusions of Law**

Counsel for each party shall file and serve initial proposed findings of fact and conclusions of law fourteen calendar days before trial. Counsel for each party shall also e-mail a copy of their proposed findings of fact and conclusions of law to the Chambers' e-mail address (JFW_Chambers@cacd.uscourts.gov) on the date due. Counsel for each party shall then:

(1) Underline in red the portions which it disputes;

(2) Underline in blue the portions which it admits; and

(3) Underline in yellow the portions which it does not dispute, but deems irrelevant.

Counsel may agree with a part of a finding or conclusion, disagree with a part of it, and/or consider a part of it irrelevant.

The marked copy of opposing counsel's proposed findings of fact and conclusions of law shall be filed with the Court and served on opposing counsel eight calendar days before trial. Courtesy Copies shall be provided to the Court in accordance with Section 3 of the Court's Standing Order.

**8. SETTLEMENT**

This Court will not conduct settlement conferences in non-jury cases which the Court will try unless counsel for all parties and their respective clients agree either in writing or on the record. In jury cases, the Court will conduct a settlement conference at the parties' joint request if three conditions exist: (1) the parties are satisfied that the fact issues in the case will be tried to a jury; (2) all significant pre-trial rulings which the Court must make have been made; and (3) the parties desire the Court to conduct the conference, understanding that if settlement fails, the Court will preside over trial of the case.

The parties must file a Status Report re: Settlement at the time they lodge the Proposed Pre-Trial Conference Order. The Status Report shall include the name and phone number of

the Settlement Officer who assisted the parties with their settlement conference.

**<u>Caveat</u>: If counsel fail to cooperate in the preparation of the required Pre-Trial documents, fail to file the required Pre-Trial documents, or fail to appear at the Pre-Trial Conference and such failure is not otherwise satisfactorily explained to the Court: (1) the cause shall stand dismissed for failure to prosecute if such failure occurs on the part of the plaintiff; (2) default judgment shall be entered if such failure occurs on the part of the defendant; or (3) the Court may take such action as it deems appropriate.**

IT IS SO ORDERED.

DATED: February 12, 2026

JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

# JUDGE JOHN F. WALTER
# SCHEDULE OF TRIAL AND PRE-TRIAL DATES

| Matter | Time | Weeks before trial | Plaintiff(s) (Request) | Defendant(s) (Request) | Court Order |
|---|---|---|---|---|---|
| **Trial (jury)**<br>**Estimated length: _3_ days** | 8:30 am | | | | 9/28/27 |
| **[Jury trial] Hearing on Motions in Limine; Hearing on Disputed Jury Instructions** | 8:00 am | | | | 9/17/27 |
| **[Court trial] Hearing on Motions in Limine** | 8:00 am | | | | X |
| **Pre-Trial Conference (File Proposed Voir Dire Qs and Agreed-to Statement of Case three days prior to PTC)** | 8:00 am | | | | 9/3/27 |
| **Submit Pre-Trial Conf. Order; File Motions in Limine; Memo of Contentions of Fact and Law; Pre-Trial Exhibit Stipulation; Summary of Witness Testimony and Time Estimates; File Status Report re: Settlement; File Agreed Upon Set of Jury Instructions and Verdict Forms; File Joint Statement re Disputed Instructions, Verdicts, etc.** | | | | | 8/10/27 |
| **Last day for hearing motions *** | 1:30 pm | | | | 6/28/27 |
| **Discovery cut-off** | | | | | 6/1/27 |

## ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

| | | | | | |
|---|---|---|---|---|---|
| **Last day to conduct Settlement Conference/Mediation** | | | | | 11/2/26 |
| **Last day to file Joint Report re: results of Settlement Conference/Mediation** | | | | | 11/6/26 |

* Motions for class certification shall be filed within 120 days after service of a pleading purporting to commence a class action (or, if applicable, within 120 days after service of the Notice of Removal), unless otherwise ordered by the Court.

Rev. 12-17-2024

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Beagle Labs, Inc., et al.**<br>Plaintiff(s)<br>v.<br>**AppFolio, Inc.**<br>Defendant(s). | CASE NUMBER:<br>**CV 25-12248-JFW(SSCx)** |
| | **ORDER VACATING SCHEDULING CONFERENCE, REFERRAL TO PRIVATE MEDIATION, and DISMISSING ANY UNSERVED DOE DEFENDANTS** |

The Court has reviewed the parties' Joint Rule 26(f) Report and finds that a Scheduling Conference is not necessary.

- **The hearing on February 23, 2026 is vacated and taken off calendar**
- **A Scheduling and Case Management Order will issue**
- **Any unserved DOE defendants are dismissed at this time**

The Court, having considered the parties' Request: ADR Procedure Selection, the Notice to Parties of Court-Directed ADR Program, or the report submitted by the parties pursuant to Fed. R. Civ. P. 26(f) and Civil L.R. 26-1, hereby orders this case referred to:

- **ADR Procedure No. 3: Private mediation**

  - The ADR proceeding is to be completed no later than: **November 2, 2026**
  - The Joint Report re: Results of Settlement Conference is due on: **November 6, 2026**

Counsel are responsible for contacting the private mediator at the appropriate time to arrange for further proceedings.

**Dated: February 12, 2026**

United States District Judge

CC: ADR

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiff, Beagle Labs, Inc., Beagle Technologies, Inc., and Big Beagle Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF LODGING [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE ECF NO. 39**

PLEASE TAKE NOTICE that Plaintiffs hereby lodge the attached [Proposed] Order Granting Plaintiffs' Motion for Reconsideration regarding the Court's January 7, 2026 Order (ECF No. 39). This proposed order is submitted in accordance with Local Rule 5-4.4 and Judge Walter's Standing Order requiring the lodging of proposed orders.

DATED: February 11, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE ECF NO. 39**

The Court, having considered Plaintiffs' Motion for Reconsideration of the Court's January 7, 2026 Order Denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Dkt. 39), the supporting declarations and exhibits, the prior filings in connection with the underlying motion, and all other evidence and matters of record, and good cause appearing, **HEREBY ORDERS AS FOLLOWS:**

1. Plaintiffs' Motion for Reconsideration is **GRANTED**.
2. An evidentiary hearing is **ORDERED** on the issues raised in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.
3. An evidentiary hearing is set for [DATE], at Courtroom 7A.

So **ORDERED**.

DATED: _______________, 2026 ________________________________

Honorable John F. Walter

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39**

*[Motion for Reconsideration, Declaration of Anthony D'Angelo, and Declaration of Ayanga Okpokowuruk filed concurrently herewith]*

| | |
|---|---|
| Date: | March 23, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 7A, 7th Floor |
| Judge: | Hon. John F. Walter |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** Please take notice that on March 23, 2026 at 1:30 p.m., in the Courtroom of the Honorable John F. Walter, United States District Court for the Central District of California, First Street U.S. Courthouse, Los Angeles, California, Courtroom 7A, 7th Floor, Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and Yrig Retention Group, Inc. (collectively, "Beagle") will move for reconsideration of the Court's January 7, 2026 Order denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [ECF. No. 39] (the "Order"). Beagle makes this motion on the grounds that new facts have emerged since the Order around AppFolio beginning to implement its blocking of Beagle from the AppFolio platform without functioning alternative access, as well as the growing harms caused by AppFolio's disparaging statements. Beagle accordingly respectfully requests the Court reconsider holding an evidentiary hearing on Beagle's preliminary injunction motion.

This reconsideration motion is based on this Notice of Motion and Motion, the accompanying declarations, arguments of counsel, and the papers, records, and pleadings on file in this matter.

DATED: February 11, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39**

*[Notice of Motion for Reconsideration, Declaration of Anthony D'Angelo, and Declaration of Ayanga Okpokowuruk filed concurrently herewith]*

| | |
|---|---|
| Date: | March 23, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 7A, 7th Floor |
| Judge: | Hon. John F. Walter |

## I. INTRODUCTION

Beagle respectfully requests the Court reconsider whether to hold an evidentiary hearing on Beagle's preliminary injunction motion, based on new facts arising after the Court's January 7, 2026 Order.[1]

Since the Order, despite AppFolio's representations that Beagle could work through alternative methods to service its customers, AppFolio has communicated to customers that it does not intend to permit Beagle to work with its platform. Beagle has directly requested AppFolio provide an explanation for how Beagle can work with the API or alternative methods, but has received no response or path forward. (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

Also since the Order, Beagle has further investigated AppFolio's claim that Scheduled Reports, the API, and other means can permit Beagle to service its customers' contracts. Beagle had only two days to review and respond to AppFolio's Opposition to the TRO and PI. AppFolio filed its papers on December 29, and Beagle responded in the afternoon on December 31. AppFolio asserted that these alternative routes could work, and Beagle was not able to sufficiently review in that time. Beagle now understands that AppFolio's API is not available to customers who do not have an enterprise account and does not permit the specific form of access that Beagle requires to service its customer contracts, and neither do the Scheduled Reports. (Okpokowuruk Decl., ¶¶ 2-5.)

Beagle respectfully submits that given the factual disputes, an evidentiary hearing on its preliminary injunction request is appropriate to permit Beagle an opportunity cross-examine AppFolio's witnesses on their representations about alternative methods, given the new facts. The irreparable harm to Beagle is ongoing, as AppFolio after the Order has taken new action to mar Beagle's reputation through its conduct and customer messaging—

---

[1] On January 7, 2026 the Court issued an Order denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [ECF. No. 39] (the "Order"). Beagle's deadline to appeal the Order on legal grounds has not yet expired, but Beagle understands the local rule and this Court's precedent with respect to motions to reconsider limiting the nature of the permissible reconsideration requests.

grounds which support a preliminary injunction. The extinction of Beagle's business is also still at risk, as AppFolio appears to be gradually implementing its blocking measures.

This motion for reconsideration is intentionally narrow and focused on the need for an evidentiary hearing to explore fairly whether or not 1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle. If the Court does not reconsider its Order and the additional relevant facts and grant Plaintiffs' Motion for Temporary Restraining Order outright—which the Court is empowered to do—Plaintiffs seek at least the narrow relief of a short evidentiary hearing focused on substitutability and operational feasibility of AppFolio's suggested alternative solutions, along with further scrutiny into the irreparable reputational harms at issue here.

## II. <u>LEGAL STANDARD</u>

Local Rule 7-18 provides for reconsideration "on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

Similarly, Fed. R. Civ. P. 59(e) provides four grounds for reconsideration: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *IV Sols. Inc. v. TakeCare Ins. Co.*, No. CV 13-4592-JFW MANX, 2014 WL 8515781, at *2 (C.D. Cal. Feb. 28, 2014) (Walter, J.) (*citing Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.2011)). *See also White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." (citation

modified)); *Banister v. Davis*, 590 U.S. 504, 507 (2020) (The Rule enables a party to request that a district court reconsider a just-issued judgment.").

In addition, Fed. R. Civ. P. 54(b) provides: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) (granting motion for reconsideration due to intervening change in controlling law).

Beagle's request meets these standards.

## III. ARGUMENT

### A. Accelerated Briefing Limited Beagle's Opportunity to Test AppFolio's Proffered Substitutes

Certainly, given the existential threat to its business caused by AppFolio's abrupt severance of its platform access, Beagle worked to implement AppFolio's suggested alternatives, and to find other potential solutions, as swiftly as possible. As this Court recognized, "as soon as Beagle became aware that AppFolio intended to [sever its existing access], Beagle began working on developing or engineering such integrations." (Order at 6.) Nevertheless, during the accelerated briefing schedule, while also managing a business crisis and a flood of customer inquiries, Beagle was not provided and did not learn all the relevant facts about Scheduled Reports and Database API it has discovered since this Court's Order. The statement from Mr. Brown was made on December 9, 2025, when AppFolio first began sabre rattling. That hopeful statement, made during desperate times in an effort to reassure Beagle's customers, turned out to be incorrect. But, AppFolio cited that statement, which, in a disappointing turn, has turned out to be factually untrue, in asking this Court to accept the fact as true that Scheduled Reports could solve Beagle's harm.

Beagle had only two days to investigate AppFolio's claims after AppFolio filed its opposition on December 29, 2025. Since the Order on January 7, 2026, Beagle has confirmed that these mechanisms do not work. (Okpokowuruk Decl. ¶¶ 2-5.) They do not have the write access necessary for Beagle to service its customer contracts.

This demonstrates both "a material difference in fact . . . from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered" and "new material facts . . . occurring after the Order was entered." LR. 7-18.

### B. Beagle's Attempt to Implement AppFolio's Proffered Solutions Post-Order has Revealed they are Operationally Insufficient

In the time since the Court's Order, Beagle has attempted to implement the Scheduled Reports and Database API solutions upon which the Court rested its conclusion that Beagle had not shown irreparable harm. Beagle's effort to use these alternatives has revealed a material limitation that was not apparent from the briefing record: Scheduled Reports and Database API do not permit the write operations that Beagle requires. They permit passive receipt of static data snapshots but do not allow Plaintiffs to take action (*i.e.*, write-in) within AppFolio's system, remediate compliance issues, validate or correct records, execute workflows, or perform other active functions required by Plaintiffs' customer contracts. In other words: these tools only allow Beagle to access frozen copies of data. If Beagle's access is limited to these read-only functions, Beagle cannot service its customers because it cannot make changes, fix problems, confirm accuracy, run processes, or actually do the work Beagle's customers expect and have contracted with Beagle to do through the AppFolio platform.

As set forth in the accompanying declarations, while Beagle made a good faith effort to investigate AppFolio's suggested solutions, the limitations inherent in read-only access make it impossible for Plaintiffs to perform the services their customers contracted for. *Id.*

AppFolio's API offerings are similarly limited, and do not qualify as a substitute. First, the API apparently is not available to most of the relevant customer cohort because it

is limited to enterprise customers. *Id.* Second, even for customers who have access to AppFolio's API, the available endpoints do not furnish the operations needed to sustain Plaintiffs' workflows or contractual obligations. *Id.* Beagle cannot accomplish its goals via API access unilaterally. AppFolio would itself have to work with Beagle on a new custom integration. Despite Beagle's requests (*see* D'Angelo Decl. Exh. A), AppFolio is not helping and instead is telling customers that it will not work with Beagle.

These facts, understood through Beagle's exploration of and attempts to implement the proposed substitute methods after the Order, demonstrate that AppFolio's assertions were incorrect, and that the actual facts involved in using Scheduled Reports and Database API cannot preserve the status quo for Beagle and do not prevent AppFolio's blocking of Beagle's access from causing irreparable and existential harm. This mismatch between AppFolio's representations to the Court and the realities on the ground support reconsideration under Rule 59(e) and the Local Rule 7-18.

An evidentiary hearing would permit cross-examination and submission of evidence to assist the Court in determining a resolution to the factual disputes on these questions.

**C. Post-Order Evidence of AppFolio's Communications to Beagle Customers Reveals Irreparable Reputational Harms to Beagle**

In the time since the entry of the Order, Beagle has learned that it faces an additional, independent form of irreparable harm from AppFolio's post-order disparaging communications to Beagle's customers. On January 9, 2026, AppFolio emailed a Beagle customer and told them that "the method by which Beagle has chosen to operate their business places you at risk," claiming Beagle could "access the personally identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

These post-Order statements, made directly to Beagle's customers, go beyond competitive positioning; they accuse Plaintiffs of dishonesty, noncompliance, and security risk, striking at core attributes that underpin Plaintiffs' reputation in the property

management field. The resulting harms are immediate and non-quantifiable: they chill existing customer relationships, impede renewals and expansion opportunities, and deter prospective customers who receive or hear of these accusations through AppFolio's channels. The January 9 communication was disseminated to at least one active customer evaluating whether to "unlock" Plaintiffs' user account, and, after AppFolio's message, that customer declined. *Id.* Continued repetition of these assertions to other customers will compound the reputational injury, erode goodwill, and destabilize customer confidence in ways that cannot be remedied by *post hoc* damages. This fallout from the Order provides new facts demonstrating that the premises behind the Order's irreparable harm holding—having to do with business extinction rather than reputational harm—merit reconsideration.

**D. These New Facts Warrant Reconsideration in this Jurisdiction**

Local Rule 7-18 permits reconsideration of a decision where new facts emerge that could not have been demonstrated prior to the Order. In *Rubin v. Grill Concepts Servs., Inc.*, the Ninth Circuit held that "[i]t was not an abuse of discretion for the district court to reconsider its earlier decision to deny injunctive relief" where the defendant refused to negotiate in good faith and an administrative law judge issued a decision that the district court regarded as "a useful benchmark against which the Director's prospects of success may be weighed." *Rubin v. Grill Concepts Servs., Inc.*, No. 22-55620, 2023 WL 334017, at *2 (9th Cir. Jan. 20, 2023) (affirming grant of TRO after initial denial and reconsideration, *citing City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) for the principle that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.").

Here, pursuant to LR 7-18, the Court could review and evaluate the new and developing facts around AppFolio beginning to implement its blocking of Beagle from the AppFolio platform without functioning alternative access, as well as the growing harms caused by AppFolio's disparagement, and determine that the new facts satisfy the standards for a TRO to preserve the status quo for Beagle pending further proceedings. *See also Van Derheydt v. Cnty. of Placer,* 32 F. Appx. 221, 223 (9th Cir. 2002) (reversing E.D. Cal.'s

denial of motion for reconsideration where counsel for movant had failed to research and present a crucial defense, distinguishing its decision from "routinely giv[ing] litigants a second bite at the apple").

**E. An Evidentiary Hearing is Appropriate under the Circumstances**

Under these circumstances, Beagle requests the opportunity to test AppFolio's technical theories, which were proffered without factual development on a compressed schedule. AppFolio first advanced the Scheduled Reports as a functional substitute for direct access in its Opposition, filed on December 29, 2025. Plaintiffs' reply was due two days later, on December 31. At that point, Plaintiffs had no meaningful opportunity to conduct technical validation or testing of AppFolio's representation. Accordingly, the record before the Court reflected only generalized descriptions of Scheduled Reports' availability, not their functional limitations in practice, and Beagle had no opportunity to test the processes or to question their advocates.

Plaintiffs submit that an evidentiary hearing would allow the Court to resolve these factual disputes reliably. On the paper record, with competing positions without an opportunity for live testimony and cross-examination, AppFolio's representations are untested.

The Ninth Circuit has recognized that a hearing is appropriate when the parties submit "opposing declarations" on a material fact to avoid irreparable harm. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) (finding fault in district court's having decided injunction without evidentiary to resolve factual disputes found in dueling declarations); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) ("Where sharply disputed facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate."). Other circuits have noted that "where factual disputes *are* presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted" or denied. *Com. Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984); *see, also,*

*e.g.*, *Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) (differences on the facts "must be resolved by oral testimony" before deciding preliminary injunction); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) ("Where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held."); *cf. also, e.g., Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[I]t may be improper to resolve a preliminary injunction motion on a paper record alone.").

Where, as here, the parties assert diametrically opposed facts related to complex technologies, an evidentiary hearing is essential to test those claims and ensure the Court's ruling rests on accurate facts.

## IV. CONCLUSION

For the foregoing reasons, Beagle respectfully requests reconsideration of the Court's Order. A narrow evidentiary hearing would clarify the dueling technical assertions presented in the parties' preliminary injunction briefing.

DATED: February 11, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF ANTHONY D'ANGELO IN SUPPORT OF RECONSIDERATION RE DKT 39**

I, Anthony D'Angelo, declare as follows:

1. I am Chief Executive at Beagle Labs, Inc. (hereinafter "Beagle" or "Plaintiff"). I have personal knowledge of the facts surrounding the present action and Beagle's business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.

2. Customer Complaints Post January 7 Order. On January 9, 2026, AppFolio contacted at least one of our customers and told them—incorrectly—that Beagle "places you at risk," that Beagle could "access the personally identifiable information of your residents," that Beagle could "issue payments," and that Beagle could "take action across your entire account database." These statements are false and damaging to Beagle's goodwill and reputation. After receiving AppFolio's communication, that customer declined to "unlock" Beagle's access, directly harming our business and reputation. We are aware of risks that similar statements will be disseminated to other customers, causing irreparable reputational injury and jeopardizing customer relationships.

3. Attached as Exhibit A is a letter Beagle sent to AppFolio enclosing this AppFolio customer communication and Beagle's request for AppFolio to provide a route for Beagle to work with AppFolio's platform. AppFolio has not made any substantive response to Beagle.

4. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 21, 2026, in Chicago, Illinois.



Anthony D'Angelo

# EXHIBIT A

GT GreenbergTraurig

Michael Burshteyn
Tel 415.655.1300
Fax 415.707.2010
mburshteyn@gtlaw.com

January 14, 2026

Jeremiah Levine
Procel Levine
401 Wilshire Blvd., Fl. 12
Santa Monica, CA 90401
Email: jeremiah@procellevine.com

**VIA EMAIL**

**Re: Compliant Access Path for Beagle on AppFolio Platform**

Counsel:

Beagle is eager to serve its customers who use AppFolio, as AppFolio knows. AppFolio has represented to the Court that Beagle has the ability to do that through the AppFolio Stack Marketplace and the AppFolio Database API.

AppFolio did not, however, make clear to the Court that it already rejected Beagle in the Stack Marketplace in November 2024. Nonetheless, AppFolio has made representations to the Court about the viability of this path for Beagle to work with AppFolio's platform, and so AppFolio should follow through on those representations. AppFolio should tell Beagle what, exactly, Beagle needs to do to move forward in the AppFolio Stack Marketplace and the AppFolio Database API.

Here is what AppFolio stated in its opposition to Beagle's request for a TRO:

> **[C]ustomers can work with Point Solutions in the AppFolio Stack Marketplace . . . customers can use AppFolio's Database API[3] offering to build an automated data link between their database and any Point Solution they like . . . [and] customers can use scheduled reports to automate data sharing with Point Solutions.**
>
> Dkt. 33 at 9 (emphasis added).

AppFolio further characterized these as "the secure methods of working with AppFolio's customers." *Id.* at 11.

Despite claiming to the Court that Beagle has this alternative path, AppFolio has contradicted itself in communications with Beagle's customers. For example, a Beagle customer using the AppFolio platform has reported to Beagle that "AppFolio placed a lock on the [Beagle] profile," and "made it clear that we are not allowed to add another user for Beagle." ***See*** **Exhibit A**.

In a second example, AppFolio has told Beagle customers:

> [T]he method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to: access the personally identifiable information of your residents[,] issue payments through the AppFolio payments platform[, and] view and take action across your entire account database.

***See*** **Exhibit B**. AppFolio characterized these as "serious security risks" and then concluded "[t]o keep our ecosystem safe, we cannot allow Beagle's noncompliant access." *Id*.

These customer statements are further examples of AppFolio's false claims about Beagle. Worse, they are not consistent with AppFolio's representations to the Court. This follows prior representations AppFolio made to the Northern District of California Judge about consenting to maintaining the status quo, while telling Beagle's customers that Beagle was already banned. AppFolio continues to unfairly compete and tortiously interfere with Beagle's business, among other things, through this conduct.

AppFolio's arguments and claims about Beagle's security are pure pretext and nothing more. By this letter, Beagle seeks for AppFolio to clearly lay out what Beagle must do to gain the partnership approval AppFolio claims Beagle has available to it.

The Court's Order reinforces this expectation. The Court noted that customers can share the needed "data with Beagle through other authorized means, including by using AppFolio's Database API." *Id*. at 6. The Court observed that Beagle had no basis to conclude that AppFolio would ban it from using the API because "AppFolio has made no such statement to its customers, and in fact advised its customers in connection with its plan to disable Beagle's user names that it supports 'multiple safe methods for you to work with [third party providers], including AppFolio Stack, Database API, and scheduled reports.'" *Id*. at 6.

Yet to date, AppFolio's actions conflict starkly with the Court's expectations and the representations AppFolio made in generating those expectations.

They are more consistent with AppFolio's 2024 denial of Beagle in its Stack Marketplace, which AppFolio has not disclosed in these proceedings. (Beagle applied for AppFolio's Stack Program and was rejected, receiving an email stating "Thank you for submitting your application for AppFolio's Stack Program. We reviewed the information provided and are unable to move forward at this time as we currently do not support integrations in the insurance space.") ***See*** **Exhibit C**.

Now, either AppFolio is prepared to provide a compliant path forward for Beagle customers using the AppFolio platform, or its representations to the Court were inaccurate.

Please have AppFolio immediately provide Beagle with clear instructions for the compliant paths AppFolio represented are available to Beagle, including API endpoints, technical requirements, and any security protocols necessary to address the concerns AppFolio previously raised.

Despite AppFolio's continued unlawful conduct, Beagle believes the parties should work together in partnership while they can resolve their disputes, rights, and remedies in Court. Working collaboratively with Beagle is what is in the interests of AppFolio's customers as well.

Sincerely,

Michael Burshteyn

# EXHIBIT A

A

**Ashlee Malone**
to me

9:10 AM (37 minutes ago)

HI Trevor,

Sorry for the delay. When I attempted to delete the previous user and add the new one, AppFolio placed a lock on the old user profile and informed us that we had violated their terms and conditions by adding a user in that manner. Their response was that if we choose to continue working with Beagle, they support several safe methods, including AppFolio Stack, Database API, and scheduled reports.

However, they made it clear that we are not allowed to add another user for Beagle. Let me know which method you think is the best path forward. I know you mentioned you were working on an alternative approach for partnering with AppFolio customers, so I'm hoping we can still work with Beagle.

Thanks,
Ashlee

# EXHIBIT B

**From:** John from AppFolio <john.t@appfolio.intercom-mail.com>
**Sent:** Friday, January 9, 2026 9:29 AM
**To:** [redacted]
**Subject:** Re: Help Using AppFolio



Hi [redacted]

We have received reports from several customers that Beagle - an insurance and resident services company - recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our integration partners go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but *the method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. As a result, we will ***not*** be unlocking this beagle user account.

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

Sincerely,
John

**We're here to help**

Reply directly to this email or through our Messenger

# EXHIBIT C

---------- Forwarded message ---------
From: <lizzie.jackson@appfolio.com>
Date: Wed, Dec 18, 2024 at 7:45 AM
Subject: Corgi Insure | AppFolio Stack™ Application
To: <srulik.lowenstein@corgi.insure>

Hi Yisroel,

Thank you for submitting your application for AppFolio's Stack™ Program. We reviewed the information provided and are unable to move forward at this time as we currently do not support integrations in the insurance space. We will keep your information on hand should we open up this area.

Thank you,

Lizzie

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED SATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF AYANGA OKPOKOWURUK IN SUPPORT OF RECONSIDERATION RE DKT 39**

I, Ayanga Okpokowuruk, declare as follows:

1. I am an engineer employed by Beagle. I have been responsible for system integrations, data workflows, and engineering support for Beagle's services involving the AppFolio platform. I have personal knowledge of the facts below.

2. Beagle's services require write-access and bi-directional interaction with customer data inside AppFolio, including the ability to (a) create or update records, (b) remediate compliance issues, (c) validate and correct entries, (d) execute workflow logic, and (e) initiate processes triggered by data changes. These functions cannot be performed through passive receipt of static data exports (i.e., via read-only capabilities).

3. In January, I was tasked of conducting engineering evaluations and implementation attempts using the "Scheduled Reports" functionality. My evaluation shows that AppFolio's Scheduled Reports (a) only deliver periodic data snapshots, (b) contain no write-capable endpoints, and (c) are not real-time. From an engineering perspective, these limitations make it impossible to support any of Beagle's required service workflows as the Scheduled Reports are read-only and cannot serve as a functional replacement for direct platform access.

4. I also attempted to evaluate AppFolio's API. I discovered that (a) the API is not available to most of the relevant customer base because it is restricted to enterprise-tier accounts; and (b) my understanding based on the limited information I'm able to review without AppFolio's cooperation is that the API would not permit the type of operations Beagle needs. The development of endpoints requires AppFolio's assistance and cooperation.

5. The Scheduled Reports and the Database API do not allow Beagle to fix errors, remediate compliance issues, or make required data updates because these avenues offer only static reports or read-only endpoints. In technical terms, AppFolio's proposed substitutes are not substitutes at all.

6. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 21, 2026, in Atlanta, Georgia.



______________________________

Ayanga Okpokowuruk

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED SATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF MICHAEL BURSHTEYN IN SUPPORT OF RECONSIDERATION RE DKT 39**

I, Michael Burshteyn, declare as follows:

1. I am an attorney and shareholder at the law firm of Greenberg Traurig LLP, counsel for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rentral Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

2. Pursuant to Local Rule 7-3, I met and conferred on February 4, 2026, to address Beagle's contemplated re-filing of its motion for reconsideration of the order denying temporary restraining order and order to show cause for a preliminary injunction. (ECF No. 52)

3. On February 6, 2026, both parties filed a Joint Statement pursuant to paragraph 5(b) of the Court's Standing Order. (ECF No. 62)

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 11, 2026, in Baltimore, Maryland.

*/s/ Michael Burshteyn*
Michael Burshteyn

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

FILED

FEB 6 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**PRELIMINARY INJUNCTION TIME SCHEDULE NOTICE**

| | |
|---|---|
| Docket Number: | 26-769 |
| Originating Case Number: | 2:25-cv-12248-JFW-SSC |
| Short Title: | Beagle Labs, Inc., et al. v. AppFolio, Inc. |

Dear Appellant/Counsel

Your notice of appeal has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. You must indicate this Court of Appeals docket number whenever you communicate with this court regarding this case.

Motions filed along with the notice of appeal in the district court are not automatically transferred to this court for filing. Any motions seeking relief from this court must be separately filed in this court's docket.

Please furnish this docket number immediately to the court reporter if you place an order, or have placed an order, for portions of the trial transcripts. The court reporter will need this docket number when communicating with this court.

You must file a Disclosure Statement (Form 34) within 14 days of this notice if your case: (1) involves a non-governmental corporation, association, joint venture, partnership, limited liability company, or similar entity; (2) is a bankruptcy case; (3) is a criminal case involving an organizational victim; or (4) involves review of state court proceedings. See Ninth Circuit Rule 26-1.1.

**Failure of the appellant(s) to comply with the time schedule order will result in dismissal of the appeal.**

**Please read the enclosure materials carefully.**

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

## PRELIMINARY INJUNCTION TIME SCHEDULE NOTICE

---

| | |
|---|---|
| Docket Number: | 26-769 |
| Originating Case Number: | 2:25-cv-12248-JFW-SSC |
| Case Title: | Beagle Labs, Inc., et al. v. AppFolio, Inc. |

---

**2/11/2026**

| | |
|---|---|
| Beagle Labs, Inc. | Mediation Questionnaire due |
| Beagle Technologies, Inc. | Mediation Questionnaire due |
| Rental Property Managers Association, LLC | Mediation Questionnaire due |
| YRIG Risk Retention Group, Inc. | Mediation Questionnaire due |
| Big Beagle, Inc. | Mediation Questionnaire due |

**3/6/2026**

| | |
|---|---|
| Big Beagle, Inc. | Preliminary Injunction Opening Brief Due |
| Rental Property Managers Association, LLC | Preliminary Injunction Opening Brief Due |
| YRIG Risk Retention Group, Inc. | Preliminary Injunction Opening Brief Due |
| Beagle Labs, Inc. | Preliminary Injunction Opening Brief Due |
| Beagle Technologies, Inc. | Preliminary Injunction Opening Brief Due |

**4/3/2026**

| | |
|---|---|
| AppFolio, Inc. | Preliminary Injunction Answering Brief Due |

If there were reported hearings, the parties shall designate and, if necessary, cross-designate the transcripts pursuant to 9th Cir. R. 10-3. If there were no reported hearings, the transcript deadlines do not apply.

The optional reply may be filed within 21 days of service of the answering brief. See Fed. R. App. P. 31 and 9th Cir. R. 31-2.1.

**Failure of the appellant to comply with the time schedule order may result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.**

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**PROCEL LEVINE LLP**
Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. 2:25-cv-12248-JFW-SSC

Hon. John F. Walter

**JOINT STATEMENT PURSUANT TO LOCAL RULE 7-3 AND STANDING ORDER**

Complaint Filed: December 15, 2025

# JOINT STATEMENT

Plaintiffs Beagle Labs, Inc., et al. ("Beagle") and Defendant AppFolio, Inc. ("AppFolio"), by and through their respective counsel, submit this Joint Statement regarding the meeting of counsel, as required by Local Rule 7-3 and Section 5(b) of the Court's Standing Order.

## I. DETAILS OF CONFERRAL

On February 4, 2026, counsel for the parties met and conferred via video call—because counsel for Beagle is located in San Francisco and counsel for AppFolio is located in Los Angeles—to discuss Beagle's contemplated re-filing of its motion for reconsideration of the order denying temporary restraining order and order to show cause for a preliminary injunction RE ECF No. 39. (ECF No. 52.) Beagle's motion for reconsideration was stricken due to the failure to fully comply with Local Rule 7-3. (ECF No. 56.)

Participants in the conference:

- For Beagle: Michael Burshteyn and Marcelo Barros
- For AppFolio: Jeremiah Levine
- Duration of the conference: approximately 16 minutes

## II. ISSUES DISCUSSED

During the meeting, counsel for the parties discussed whether and on what basis Beagle should re-file its motion for reconsideration of the denial of its request for injunctive relief.

**Beagle's Position**:

Counsel for Beagle, firstly, apologizes to the Court for its oversight with respect to the pre-motion conference. Counsel for Beagle mistakenly misunderstood the Local Rule and the Court's Standing Order to require pre-motion conferences for motions such as a motion to dismiss, but not a motion for reconsideration of an underlying motion for a preliminary injunction. Counsel now understands that the rule does apply and will be mindful of this going forward.

Respectfully, Beagle requests that the Court permit it to re-file its motion for reconsideration. There is good cause based on the ongoing irreparable harm to Beagle based on AppFolio's conduct and AppFolio's refusal to permit Beagle to work with it, as detailed in the motion.

This jurisdiction has considered the possibility of re-filing stricken motions upon a showing of good cause. *See e.g.*, *R.H. v. Cty. of San Bernardino*, No. 5:18-cv-01232-JLS-KK, 2019 WL 10744836, at *1-2 (C.D. Cal. Sep. 25, 2019) (striking motions for summary judgment where defendant "actively resisted any true meet and confer" but leaving open possibility for refiling upon showing of good cause); *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, No. SACV150736DOCDFMX, 2019 WL 8348314, at *2 (C.D. Cal. Oct. 16, 2019) (striking motion but stating plaintiff may refile upon showing good cause for not timely meeting and conferring).

Beagle believes that re-filing the motion remains appropriate and timely. Substantively, in the time since the Court's January 7, 2026 Order, new facts have emerged demonstrating that the alternatives identified by AppFolio are not operationally viable for Beagle to service its customer contracts. AppFolio has communicated to customers that it does not intend to permit Beagle to work with its platform. Beagle has further investigated and learned that AppFolio's API is not available to customers without enterprise accounts and does not provide the specific access Beagle requires, nor do Scheduled Reports.

**AppFolio's Position**:

AppFolio opposes Beagle's request. It amounts to a motion to reconsider denial of a motion to reconsider an application for injunctive relief. That is three bites at the apple, and it is prejudicial to AppFolio for that reason.[1]

Beagle's request is particularly outlandish because the conduct sought to be enjoined already happened. That is, Beagle sought to restrain AppFolio from disabling Beagle's user

[1] Beagle has also filed a notice of appeal of the denial of its request for injunctive relief, thereby seeking yet another bite at the apple and reducing Beagle's need for reconsideration.

access, and, after the Court denied Beagle's TRO application, AppFolio disabled that access. Beagle wants to put the toothpaste back in the tube.

Moreover, Beagle offers no cases in which a court reconsidered the denial or striking of a motion to reconsider for failure to comply with Local Rule 7-3. On the contrary, both the cases that Beagle cites herein evidence strict enforcement of Local Rule 7-3. In both cases, the court states that a party may refile its motion upon a showing of good cause—but neither case demonstrates a court finding good cause for such refiling.

Beagle offers no good cause for failing to comply with Local Rule 7-3: it simply misread the rule. The deadline for reconsideration has passed—a deadline that is meaningful so that the parties can reach resolutions and move on with resolving their dispute. Beagle should not be allowed a third bite at the apple.

## III. ISSUES RESOLVED AND REMAINING

Counsel for the parties were unable to reach a resolution.

Respectfully Submitted,

Dated: February 6, 2026 GREENBERG TRAURIG, LLP

By: */s/ Michael Burshteyn*
Michael Burshteyn
*Attorneys for Plaintiffs*

Dated: February 6, 2026 PROCEL LEVINE, LLP

By: */s/*
Jeremiah Levine
*Attorneys for Defendant AppFolio, Inc.*

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. 25-cv-12248-JFW-SSC

**DEFENDANT'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant AppFolio, Inc. ("Defendant" or "AppFolio"), by and through its attorneys, responds to the Complaint (the "Complaint") filed by Plaintiffs Beagle Labs, Inc.; Beagle Technologies, Inc.; Big Beagle, Inc.; Rental Property Managers Association LLC; and YRIG Risk Retention Group, Inc. ("Beagle") as follows:

## INTRODUCTION

1. Paragraph 1 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 1.

2. Paragraph 2 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 2.

3. Paragraph 3 contains legal conclusions, arguments, and characterizations to which no response is required. Paragraph 3 also contains allegations about which Defendant does not have sufficient knowledge to respond. Defendant admits that customers add access for Beagle, and that Beagle can access customer data and provide services. To the extent a response is required to the remaining allegations, Defendant denies the allegations in Paragraph 3.

4. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 4, and denies those allegations on that basis.

5. Defendant admits that it has known about Beagle for over a year; that Beagle approached AppFolio about certain cooperation in November 2024; and that AppFolio declined. Defendant denies the remaining allegations in Paragraph 5.

6. Paragraph 6 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 6.

7. Paragraph 7 contains legal conclusions, arguments, and characterizations to which no response is required. Defendant admits that it has informed AppFolio customers of the risks that improper methods of working with Beagle imposes; and that AppFolio users have provided Beagle access. To the extent a response is required to the remaining allegations, Defendant denies the allegations in Paragraph 7.

8. Paragraph 8 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 8.

9. Paragraph 9 contains legal conclusions, arguments, and characterizations to which no response is required. Defendant admits that it informed Beagle and AppFolio customers that it would disable Beagle's user access on December 16, 2025. To the extent a response is required to the remaining allegations, Defendant denies the allegations in Paragraph 9.

10. Paragraph 10 contains legal conclusions, arguments, and characterizations to which no response is required. Defendant admits that it informed Beagle and AppFolio customers that it would disable Beagle's user access on December 16, 2025. Defendant admits that it partners with Second Nature. To the extent a response is required to the remaining allegations, Defendant denies the allegations in Paragraph 10.

11. Paragraph 11 contains legal conclusions, arguments, and characterizations to which no response is required.

## THE PARTIES

12. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 12, and denies those allegations on that basis.

13. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 13, and denies those allegations on that basis.

14. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 14, and denies those allegations on that basis.

15. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 15, and denies those allegations on that basis.

16. Defendant lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 16, and denies those allegations on that basis.

17. Defendant admits the allegations in Paragraph 17.

## JURISDICTION AND VENUE

18. Paragraph 18 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 8.

19. Paragraph 19 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 19.

20. Defendant admits that it is a citizen of California. The remainder of Paragraph 20 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 20.

21. Defendants admits that events giving rise to the claims occurred in the Central District of California. The remainder of Paragraph 21 contains legal

conclusions, arguments, and characterizations to which no response is required. Paragraph 21 also contains allegations about which Defendant does not have sufficient knowledge to respond. To the extent a response is required, Defendant denies the allegations in Paragraph 20.

## FACTUAL BACKGROUND

22. Paragraph 22 contains allegations about which Defendant does not have sufficient knowledge to respond, and Defendant denies the allegations on that basis.

23. Paragraph 23 contains allegations about which Defendant does not have sufficient knowledge to respond. Paragraph 23 also contains legal conclusions, arguments, and characterizations to which no response is required. Defendant denies the allegations on these bases.

24. Defendant admits that AppFolio customers created access for Beagle, which provided access to certain categories of data. Defendant further admits advertising an online portal for vendors. Paragraph 24 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. Defendant denies the remaining allegations in Paragraph 24.

25. Defendant admits that Beagle publishes "Beagle Reports," which Defendant can see. Defendant denies the remaining allegations in Paragraph 25.

26. Defendant admits that it is a publicly traded company. Defendant denies the remaining allegations in Paragraph 26.

27. Paragraph 27 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments,

and characterizations to which no response is required. On those bases, Defendant denies the allegations in Paragraph 27.

28. Defendant admits the allegations in Paragraph 28.

29. Defendant admits that Beagle approached it in 2024 regarding certain cooperation. Paragraph 29 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. Defendant denies the remaining allegations in Paragraph 29.

30. Paragraph 30 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 30.

31. Defendant admits that it emailed its customers who use Beagle on December 9, 2025, about improper methods of working with Beagle. AppFolio admits that it said that "the method by which Beagle has chosen to operate their business places you at risk"; that "noncompliant access" may cause "serious security risks." Elsewhere, Defendant referenced protecting the "integrity of customer and user data." Paragraph 31 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 31.

32. Defendant admits that its customers own their data, and that they are free to contract with Beagle. Paragraph 32 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 32.

33. Paragraph 33 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 33.

34. Defendant admits that it works with Second Nature, and that it stated it would disable Beagle's unpermitted access to AppFolio databases on December 16, 2025. Paragraph 34 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 34.

35. Paragraph 35 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 35.

36. Paragraph 36 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 36.

37. Paragraph 37 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 37.

38. Paragraph 38 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 38.

39. Paragraph 39 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 39.

**CLAIM 1**

**(Tortious Interference with Contractual Relations)**

40. Paragraph 40 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

41. Paragraph 41 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 41.

42. Defendant admits that its customers grant access to certain types of third parties. AppFolio admits that it was aware that Beagle's email domain was associated with certain user access. AppFolio denies the remaining allegations in Paragraph 42.

43. Defendant admits that it sought a temporary restraining order against Beagle, Inc., in Santa Barbara Superior Court, and that Beagle has recruited AppFolio customers. Defendant denies the remaining allegations in Paragraph 43.

44. Paragraph 44 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 44.

45. Defendant admits that it gave notice to customers that Defendant intended to disable Beagle's user access. Defendant admits it said that improper

methods of working with Beagle can pose a "security risk", and that improper methods of working with Beagle may not be compliant with Defendant's terms of service. Defendant admits that its customer service AI, after being fed information by a user, stated that Beagle is not listed as an official partner; used the words "potential scam", and "concerning." Paragraph 45 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 45.

46. Paragraph 46 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 46.

47. Paragraph 47 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 47.

48. Paragraph 48 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 48.

49. Paragraph 49 contains a statement of Beagle's future intent about which Defendant does not have sufficient knowledge to respond.

50. Paragraph 50 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 50.

**CLAIM 2**

**(Tortious Interference With Prospective Economic Relations)**

51. Paragraph 51 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

52. Paragraph 52 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 52.

53. Defendant does not have sufficient knowledge to respond to Beagle's allegations regarding Beagle's customers base or economic relationships. Defendant denies the remaining allegations in Paragraph 53.

54. Defendant admits that it gave notice that it would disable Beagle's user access. Paragraph 54 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 54.

55. Paragraph 55 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 55.

56. Paragraph 56 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 56.

57. Paragraph 57 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 57.

58. Paragraph 58 contains allegations about which Defendant does not have sufficient knowledge to respond; and contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 58.

59. Paragraph 59 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 59.

**CLAIM 3**

(**Violation of Lanham Act § 43(a) – False Advertising**)

60. Paragraph 60 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

61. Defendant admits that it has informed customers of the security risks posed by improper methods of working with Beagle. Paragraph 61 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 61.

62. Paragraph 62 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 62.

63. Paragraph 63 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 63.

64. Paragraph 64 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 64.

65. Paragraph 65 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 65.

66. Paragraph 66 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 66.

67. Paragraph 67 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 67.

**CLAIM 4**

**(Violations of Cal. Bus. & Prof. Code §17500, et seq. – False Advertising)**

68. Paragraph 68 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

69. Paragraph 69 is a statement of law to which no response is required.

70. Defendant admits that it has informed customers of the security risks posed by improper methods of working with Beagle. Paragraph 70 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 70.

71. Defendant admits that it has informed customers of the security risks posed by improper methods of working with Beagle. Paragraph 71 contains legal

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 167 of 281

conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 71.

72. Paragraph 72 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 72.

**CLAIM 5**

**(Violations of Cal. Bus. & Prof. Code §17200, et seq. – Unfair Competition)**

73. Paragraph 73 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

74. Paragraph 74 is a statement of law to which no response is required.

75. Paragraph 75 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 75.

76. Defendant admits that it gave notice that it would disable Beagle's user access on December 16, 2025. Paragraph 76 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 76.

77. Paragraph 77 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 77.

78. Defendant denies the allegations in Paragraph 78.

79. Paragraph 79 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 79.

80. Paragraph 80 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 80.

## CLAIM 6

### (Violation of the Sherman Act § 2 – Monopolization / Attempted Monopolization)

81. Paragraph 81 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

82. Defendant admits that it claims to be the system of record for more than 20,000 property managers and over eight million units. Paragraph 82 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 82.

83. Paragraph 83 contains allegations about which Defendant does not have sufficient knowledge to respond; and legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 83.

84. Defendant denies the allegations in Paragraph 84.

85. Paragraph 85 contains allegations about which Defendant does not have sufficient knowledge to respond; and legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 85.

86. Defendant admits Beagle is a direct competitor; that it partners with Second Nature for a resident benefit package; that Defendant offers FolioGuard Smart Ensure and liability to landlord insurance; that it has its "own internal insurance solution through FolioGuard Smart Ensure and the coinciding liability to landlord insurance policy." Defendant further admits that Smart Ensure is one of its most important services; and that renters obtain insurance through AppFolio Insurance Services or another provider. Defendant denies the remaining allegations in Paragraph 86.

87. Defendants admits that it said "Beagle does not and will not integrate with AppFolio—not now, and not ever." Paragraph 87 contains legal conclusions, arguments, and characterizations to which no response is required. Defendant denies the remaining allegations in Paragraph 87.

88. Defendant admits that in public filings, it has filed exhibits showing AppFolio representatives stating that "Under our Terms of Service and in order to protect the integrity of customer and user data and our systems, direct competitors such as Beagle are not permitted to access any portion of our services or application programming interface." Paragraph 88 contains legal conclusions, arguments, and characterizations to which no response is required. Defendant denies the remaining allegations in Paragraph 88.

89. Paragraph 89 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 89.

90. Paragraph 90 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 90.

91. Paragraph 91 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 91.

92. Paragraph 92 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 92.

93. Paragraph 93 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 93.

94. Paragraph 94 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 94.

95. Paragraph 95 contains statements of Beagle's future intent to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 95.

**CLAIM 7**

**(Defamation and Trade Libel)**

96. Paragraph 96 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

97. Paragraph 97 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 97.

98. Paragraph 98 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 98.

99. Defendant admits that its customer service AI, after being fed information by a user, stated that Beagle is not listed as an official partner; used the words "potential scam", and "concerning" and encouraged the user to verify Beagle's identify on information. Paragraph 99 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 99.

100. Defendant admits the allegations in Paragraph 100.

101. Paragraph 101 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 101.

102. Paragraph 102 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 102.

103. Paragraph 103 contains allegations about which Defendant does not have sufficient information to respond; and legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 103.

104. Paragraph 104 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 104.

105. Paragraph 105 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 105.

106. Paragraph 106 contains a statement of Beagle's future intent to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 106.

**CLAIM 8**

**(Unjust Enrichment)**

107. Paragraph 107 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

108. Paragraph 108 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 108.

109. Paragraph 109 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 109.

110. Paragraph 110 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 110.

111. Paragraph 111 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 111.

112. Paragraph 112 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 112.

**CLAIM 9**

**(Declaratory Judgment)**

113. Paragraph 113 incorporates certain paragraphs of the Complaint by reference. No response by Defendant is required.

114. Paragraph 114 contains legal conclusions, arguments, and characterizations to which no response is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 114.

115. Paragraph 115 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegation in Paragraph 115.

116. Paragraph 116 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegation in Paragraph 116.

**PRAYER FOR RELIEF**

Defendant admits that Plaintiffs' Prayer for Relief sets forth the relief Plaintiffs are seeking in this case. Defendant denies this Paragraph in all other respects.

**DEFENDANT'S AFFIRMATIVE DEFENSES**

As separate and distinct affirmative defenses, Defendant states as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure To State A Claim)**

The Complaint, and each and every remaining claim for relief against Defendant, fails to state a claim upon which relief may be granted against

Defendant, and further fails to entitle Plaintiffs to the relief sought or to any relief whatsoever against Defendant.

**SECOND AFFIRMATIVE DEFENSE**

**(Legitimate Business Conduct)**

The Complaint is barred because Defendant's actions, as alleged in the Complaint, were within its contractual rights, were justified, were undertaken in good faith, with the absence of malicious intent, and were the result of lawful conduct carried out in furtherance of Defendant's mission.

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

The Complaint, and each and every claim for relief against Defendant, is barred in whole or in part because Plaintiffs failed to make reasonable efforts to mitigate such purported injury or damage, which reasonable efforts would have prevented injury or damages, if any.

**FOURTH AFFIRMATIVE DEFENSE**

**(Adequate Remedies at Law)**

Equitable and injunctive relief are barred because Plaintiffs have available remedies at law.

**FIFTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Plaintiffs' conduct with respect to the matters alleged in the Complaint deprive Plaintiffs of clean hands and, by reason of not coming into court with clean hands, Plaintiffs are precluded from recovery from Defendant.

**SIXTH AFFIRMATIVE DEFENSE**

**(Speculative Damages)**

Plaintiffs' claims are barred in whole or in part, or alternatively Plaintiffs' recovery should be reduced, because the alleged damages, if any, are speculative.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

Plaintiffs have not been injured and therefore do not have standing to bring the Complaint.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Mootness)**

Plaintiffs' requests for injunctive relief are mooted because Defendant has disabled Beagle's access.

**NINTH AFFIRMATIVE DEFENSE**

**(Truth)**

Plaintiffs' claims for defamation, trade libel, Lanham Act violations, and violations of the False Advertising Law fail because Defendant's statements were true.

**TENTH AFFIRMATIVE DEFENSE**

**(Opinion)**

Plaintiffs' claims for defamation, trade libel, Lanham Act violations, and violations of the False Advertising Law fail because Defendant's statements were opinion.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Procompetitive Rational)**

Plaintiffs' claims are barred because Defendant had procompetitive justifications for its actions.

**TWELTH AFFIRMATIVE DEFENSE**

**(Privilege)**

Defendant's alleged conduct was privileged, justified, and undertaken pursuant to lawful contractual, economic, and business interests, and therefore not tortious.

## THIRTEENTH AFFIRMATIVE DEFENSE

**(Additional Affirmative Defenses)**

Defendant hereby gives notice that it intends to rely upon such other affirmative defenses as may become available or apparent during the course of discovery and thus reserves the right to amend this Answer to assert such defenses.

DATED this 4th day of February, 2026.

*/s/*

Brian Procel
Jeremiah Levine
Marty Pritikin
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Plaintiff
AppFolio, Inc.

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Notice of Electronic Filing**

The following transaction was entered on 2/4/2026 at 10:37 AM PST and filed on 2/4/2026

| | |
|---|---|
| **Case Name:** | Beagle Labs, Inc. et al v. AppFolio, Inc. |
| **Case Number:** | 2:25-cv-12248-JFW-SSC |
| **Filer:** | |
| **Document Number:** | 56(No document attached) |

**Docket Text:**
**Text Entry Order: Plaintiffs Motion for Reconsideration of Denial of Order Denying TRO and OSC Preliminary Injunction Re ECF No. 39 (Docket No. [52]) is STRICKEN for failure to comply with Local Rule 7-3, which requires the conference of counsel to take place at least seven days prior to the filing of the Motion, and paragraph 5(b) of the Court's Standing Order, which requires the Joint Statement to be filed not more than 2 days after the Local Rule 7-3 conference. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY**

**2:25-cv-12248-JFW-SSC Notice has been electronically mailed to:**

Brian Procel brian@procel-law.com

Jake Evans jake.evans@gtlaw.com

James C. Evans jake.evans@gtlaw.com

Jeremiah Michael Levine Jeremiah@ProcelLevine.com

Jordana R. Sternberg jordana.sternberg@gtlaw.com

Marcelo Meirelles Leao de Barros Marcelo.Barros@gtlaw.com

Martin H Pritikin marty@procel-law.com

Michael Burshteyn michael.burshteyn@gtlaw.com, knightj@gtlaw.com, michael--burshteyn-5563@ecf.pacerpro.com

Sajni Patel sajni.patel@gtlaw.com, debi.delgrande@gtlaw.com, sajni-patel-0572@ecf.pacerpro.com

**2:25-cv-12248-JFW-SSC Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. 25-cv-12248-JFW-SSC

**APPFOLIO'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION**

**[Declarations of Nathan Delage Sean Saxena and]**

# Table of Contents

Introduction ..... 1

Factual and Procedural Background ..... 3

Legal Standards ..... 7

Argument ..... 8

The Read-Only Nature of Scheduled Reports and Database API Are Not New Facts, So There is No Basis for Reconsideration ..... 8

The Capabilities of Scheduled Reports and Database API Are Not New Facts Because They Did Not Change After the Court's Order ..... 9

The Capabilities of Scheduled Reports and Database API Were Either Known to Beagle or Knowable with a Modicum of Diligence ..... 9

The Capabilities of Scheduled Reports and Database API Were Accurately Presented to the Court ..... 9

Beagle Knew the Capability of Scheduled Reports ..... 11

Beagle Could Have Known the Capability of Database API with Even a Modicum of Diligence ..... 12

AppFolio's Post-Order Statements Are Not New and Do Not Justify Reconsideration ..... 13

Even if Reconsideration Was Warranted, The Outcome Would Not Change ..... 14

Beagle is Not Entitled to an Evidentiary Hearing ..... 16

Conclusion ..... 17

# Table of Authorities

## Cases

*Collins v. U.S. Citizenship & Naturalization Serv.*, 2013 WL 776244 (C.D. Cal. Feb. 6, 2013) .......... 14

*Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604 (9th Cir. 1985) .......... 11

*Hanson v. La Flamme*, 761 F. App'x 685 (9th Cir. 2019) .......... 8

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547 (9th Cir. 1986) .......... 16

*Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877 (9th Cir. 2000) .......... 8

*Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147 (D. Haw. 2013) .......... 13

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) .......... 14

*Thomas v. Cnty. of Los Angeles*, 978 F.2d 504 (9th Cir. 1992) .......... 16

*Trust Corp. v. Aetna Casualty and Surety Co.*, 873 F.Supp. 1386 (D.Ariz.1994) .......... 14

## Statutes

Federal Rule of Civil Procedure 59(e) .......... 7, 11

## Rules

C.D. Cal. L.R. 7-18 .......... 8, 14

## **Introduction**

In its original motion (the "TRO Motion"), Plaintiffs ("Beagle") claimed they faced an "extinction level event" because AppFolio "planned to block Beagle's access" to "limited categories of" its customers' "operational data." The Court, however, denied Beagle's TRO Motion for failure to show irreparable harm after AppFolio demonstrated that its scheduled reports feature could "provide the exact information that Beagle claimed it needed in its moving papers." The Court further found AppFolio's database API feature may also provide the required data, as Beagle "fail[ed] to identify what data fields are missing." Beagle now asks the Court to grant the extraordinary remedy of reconsidering its order denying Beagle's TRO Motion (the "Order") without providing any evidence—much less *new* evidence—that scheduled reports and database API cannot provide the data Beagle claims to need.

Beagle's Reply in Support of the TRO Motion (the "Reply") moved away from the data blocking theory, and the instant motion for reconsideration (the "Motion"), abandons it altogether. Instead, they both argue that Beagle is entitled to write information into AppFolio databases; in the words of the instant Motion, Beagle is entitled to "take action (i.e., write-in) within AppFolio's system." It is this theory on which Beagle rests its motion for reconsideration, claiming it discovered post-Order that Scheduled reports and database API do not provide the desired write access. Among other failings, these purportedly newly discovered facts do not meet the standard for reconsideration.

First, the fact that scheduled reports are read-only is not new: AppFolio and Beagle both addressed this while briefing the TRO Motion. In its Opposition to the TRO Motion, AppFolio explained scheduled reports, including the fact that, as

the name suggests, scheduled reports provide a report—not access to the functionality of AppFolio's system. And in its Reply in Support of the TRO Motion (the "Reply"), Beagle challenged the sufficiency of scheduled reports on the basis that they do not allow Beagle to "add or remove charges"—i.e., scheduled reports do not have write capability. Moreover, AppFolio's records show that Beagle has used scheduled reports over *fifty-four thousand* times since it began working with AppFolio's customers.

Second, new facts only justify reconsideration if the moving party could not have discovered them before the Court's order with reasonable diligence. Beagle offers no declaration or other evidence that it lacked prior knowledge. Beagle also had ample time to discover any complaints about scheduled reports and database API. Beagle told its own customers on December 9—the week before filing its *original* TRO Motion—that scheduled reports were the "fix" to losing direct access to AppFolio's databases, and that this was "simple" and "already in motion." Beagle should have checked the veracity of this representation *before* making it to its customers. At a minimum, Beagle could and should have investigated this immediately afterward. Tellingly, the declaration submitted by a Beagle engineer in support of the renewed Motion states that he wasn't even *asked* to investigate the viability of scheduled reports and database API until *January*. (Dkt. 52-3, ¶¶ 3-4.) That delay is only Beagle's fault.

Third, distinct from its alternate "write access" theory, Beagle also accuses AppFolio of "new and escalating" post-order conduct that it claims justifies reconsideration. Specifically, Beagle complains of four statements made to a customer in a January 9, 2026, email. What Beagle fails to mention is these four statements are *identical* to those sent in the December 9, 2025, communications.

AppFolio merely sent an updated version of *the same message* on January 9 to users who did not receive the December 9 message because they did not yet have Beagle users in their database. These statements are not new. They were already fully briefed and decided on by the Court and, as such, are not grounds for reconsideration.

Lastly, Beagle claims it is entitled to an evidentiary hearing "to test" and "explore" whether "1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle." Beagle offers no authority for the proposition that a court must hold an evidentiary hearing when a party seeks an ex parte TRO. Beagle suggests—incorrectly—that evidentiary hearings are mandatory when the parties present sharply conflicting declarations. Beagle identifies no false statement of any AppFolio declarant and provides no opposing testimony of its own. Beagle is not entitled to substitute the Court's resources for its own diligence. Beagle's motion should be denied.

## **Factual and Procedural Background**

**December 9, 2025: AppFolio Gives Beagle Notice That AppFolio Will Enforce its Terms of Service.**

Seeking to enforce its Terms of Service, which prohibit third parties from having user access to customer databases, AppFolio notified its customers with Beagle user access that AppFolio intended to disable the noncompliant access. (Dkt. 33-8 ¶ 3; Dkt. 33-3 ¶ 19.) In the same communication, AppFolio identified alternative methods by which its customers could work with Beagle and provided five business days (until December 16) for its customers to transition. (Dkt. 4-5 Exh. C.) To assist with this transition, AppFolio also contacted Beagle directly,

identifying alternate methods and offering that, if Beagle had "questions about compliant access paths or need[s] clarification on transition steps, we are happy to provide additional guidance." (Saxena Decl. ¶ 4.) Beagle never responded. (*Id.*)

That same day, Beagle CEO, Mike Brown, emailed customer stating that the "fix" was "simple and already in motion" and that it could "continue to run your Beagle program using scheduled reports from AppFolio instead of direct logins." (Dkt. 33-3 Exh. D.)

**December 15, 2025: Beagle Seeks a TRO and OSC re Preliminary Injunction, Leading to Forum Shopping Finding**

The day before AppFolio intended to disable Beagle's user access, Beagle filed a complaint and application for a temporary restraining order and order to show cause why a preliminary injunction should not be issued. (Dkt. 1, 4.) In that motion, Beagle accused AppFolio of "data blocking" and creating an "extinction level event" by "plan[ning] to block Beagle's access" to "limited categories of" its customers' "operational data." (Dkt. 4 at 2, 6.) Beagle specifically identified four categories of required data: "tenant rosters, unit identifiers, lease and billing information, and insurance compliance." (*Id.* at 5.) Beagle emphasized that "AppFolio does not own or create this data," but "merely hosts the data on its software platform." (*Id.* at 6.)

Further briefing on Beagle's motion was, however, delayed by two weeks while the case was transferred from the Northern District of California to this Court, following a finding that "the apparent forum shopping by Beagle strongly favor[ed]" the transfer." (Dkt. 24.) The Northern District court directed AppFolio to stay enforcement of its Terms of Service until the case could be transferred and the motion heard. (*Id.*)

**December 29, 2025: AppFolio Files its Opposition Brief, Identifying That Scheduled Reports Only Transmit Data**

In its Opposition Brief, AppFolio explained that scheduled reports "allows Beagle to *receive* exactly the same data it receives through its unauthorized user accounts" (emphasis added) and provided a sample scheduled report. (Dkt. 33 at 5; Dkt. 33-3 Exh. B.) Because Beagle's CEO admitted scheduled reports would work, AppFolio focused on its capabilities and made no representations as to database API. (Dkt. 33-3 Exh. D.) AppFolio also posited that Beagle had filed this lawsuit—despite scheduled reports' ability to provide the required data—because Beagle was not after data, but after free access to AppFolio's functionality (i.e., write capability). (Dkt. 33 at 6.) As AppFolio explained, "user logs show Beagle is not just accessing data, it is *using AppFolio's platform* to issue charges to residents for its products" in violation of AppFolio's Terms of Service (emphasis in original). (*Id.*)

**December 31, 2025: Beagle Files Its Reply, Demanding the Write Access That Beagle Now Alleges It Just Discovered It Needs**

In its Reply, Beagle acknowledged that it sought not only read-access to data, but also the ability to write in AppFolio databases, including the ability issue residents charges for its products. It argued scheduled reports "will not work" as an alternative to user access because they "make[] it so Beagle cannot add or remove charges." (Dkt. 36 at 6.) Beagle said that without AppFolio's functionality (meaning write access), "the entire Beagle value proposition" is negated. (*Id.*) In addition, Beagle made a host of arguments about database API, but did not identify any data fields missing from its capabilities. (*Id.* at 7.)

**January 7, 2026: The Court Denies Beagle's Motion**

The Court denied Beagle's motion for failure to show irreparable harm citing the ability of scheduled reports to "provide the exact information that Beagle claimed it needed in its moving papers." (Dkt. 39 at 6.) The Court further found AppFolio's database API feature may provide the required data, as Beagle "fail[ed] to identify what data fields are missing." (*Id.*) In addition, the Court noted Beagle's failure to provide any evidence that transitioning to scheduled reports or database API would be overly arduous, despite having "presumably" begun "working on developing or engineering such integrations" as "soon as [it] became aware that AppFolio intended to enforce its Terms of Service." (*Id.*)

**Post-January 7, 2026: Beagle Begins to Investigate Alternatives**

In January, Beagle assigned an engineer to begin "exploration of and attempts to implement the proposed substitute methods." (Mot., Okpokowuruk Decl. at 1.)

**January 9, 2026: AppFolio Enforces its Terms of Service, and Beagle's Parent Company Announces that it Raises $108 million**

Following the Court's Order, and no longer bound by its agreement to maintain the status quo, AppFolio implemented security measures to identify and disable Beagle's user access. (Delage Decl. ¶ 3.) These measures identified customers who had not received the December 9, 2026, email because Beagle did not have user access to their database at that time. (*Id.*) AppFolio provided these customers the *same notice* it had previously sent, updating only the dates and timing. (*Id.*) Both the December and January notices contain the exact language complained of in Beagle's Motion: "the method by which Beagle has chosen to operate their business places you at risk;" Beagle can "access the personally

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 188 of 281

identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." (*Id.*) Beagle CEO, Mike Brown had previously admitted these are things Beagle "*could* technically do in your account" (emphasis in original) (Dkt. 33-3 Exh. D.)

Also on January 9, 2026, Beagle's parent company, Corgi, announced it had raised $108 million in funding. (Saxena Decl. ¶ 6.) Corgi said that it was valued at $630 million, based in part on its $40 million in annual recurring revenue. (*Id.*) Based on Beagle's claim of $12.5 million in revenue (Dkt. 4 at 18), approximately one fourth of Corgi's revenue underlying the valuation appears to come from the purportedly imperiled Beagle.

**January 21, 2026: Beagle Files this Motion for Reconsideration**

Two weeks after the Court's Order, Beagle sought reconsideration of its ex parte motion, a motion based on the threat of "immediately" facing "an extinction-level event." As its primary relief, Beagle seeks an evidentiary hearing, to be held sometime after the noticed February 23 hearing on its Motion. The Motion offers no new evidence of unavailable data, but instead contends AppFolio must provide it the ability "to take action (i.e., write-in) within AppFolio's system" and claims AppFolio's January 9, 2026, communications are a new source of irreparable harm. (Mot. at 5.)

**Legal Standards**

Federal Rule of Civil Procedure 59(e) permits a "motion to alter or amend a judgment." The Ninth Circuit has elaborated that Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources. Indeed, a motion for reconsideration should

not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted).

Central District of California 7-18 provides more specific criteria for reconsideration, stating that:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

C.D. Cal. L.R. 7-18; *Hanson v. La Flamme*, 761 F. App'x 685, 689 (9th Cir. 2019) (affirming denial of motion for reconsideration based on failure to comply with Local Rule 7-18).

## Argument

### I. The Read-Only Nature of Scheduled Reports and Database API Are Not New Facts, So There is No Basis for Reconsideration

Beagle claims the purported read-only capabilities of scheduled reports and database API constitute both "new material facts occurring after the Order was entered" and "a material difference in fact from that presented to the Court that in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered." (Mot. at 5.) Neither is true.

**A. The Capabilities of Scheduled Reports and Database API Are Not New Facts Because They Did Not Change After the Court's Order**

Beagle's claim that the purported read-only capability of scheduled reports and database API are "new material facts occurring after the Order" can be dismissed out of hand. Beagle does not make any claim that the capabilities of these features changed after the Order. Indeed, the capabilities of scheduled reports and database API have not changed since before this litigation began. (Delage Decl. ¶ 5.) The argument appears to be no more than a throwaway line in Beagle's brief and should be treated accordingly.

**B. The Capabilities of Scheduled Reports and Database API Were Either Known to Beagle or Knowable with a Modicum of Diligence**

Beagle claims that its purported recent discovery that scheduled reports and database API "do not have the write access necessary for Beagle to service its customer contracts" constitutes "a material difference in fact from that presented to the Court that in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered." (Mot. at 5.) The argument fails.

**a. The Capabilities of Scheduled Reports and Database API Were Accurately Presented to the Court**

Beagle claims that it has recently discovered that scheduled reports and database API do not have write capabilities and that this is a material difference in fact from "AppFolio's claim that scheduled reports, the API, and other means can permit Beagle to service its customers' contracts." (Mot. at 3.) The argument has three problems.

*First*, AppFolio never claimed that any of its features would allow Beagle to service its customers' contracts. To the contrary, AppFolio expressly stated that because Beagle had not attached a contract or identified any term thereof, AppFolio "does not know what Beagle has actually promised its customers." (Dkt. 33 at 21.) AppFolio instead focused on the data Beagle told the Court itneeded. [1] (*Id*. at 9-10.)

*Second*, AppFolio never claimed that scheduled reports or database API have write capability. To the contrary, AppFolio argued only that scheduled reports "allows Beagle to receive exactly the same data it receives through its unauthorized user accounts."[2] (*Id.* at 5.) AppFolio then provided "a sample scheduled report showing the data Beagle claims to require." (*Id*. at 15.) As the name suggests, scheduled reports provide a report—not write access to AppFolio's system. AppFolio never represented otherwise. [3]

*Third,* Beagle itself told the Court scheduled reports did not have the write access it claims to require (the same fact it now claims to have newly discovered). In its Reply in Support of the TRO Motion, Beagle argued that scheduled reports were insufficient because it "makes it so Beagle cannot add or

[1] Given the shifting nature of Beagle's claims, AppFolio does not claim to know what data Beagle actually needs.

[2] While database API does in fact have robust write capability (Delage. Decl. ¶ 5.), AppFolio made no representations regarding its capabilities, choosing instead to focus on scheduled reports, given that Beagle's own CEO claimed it would provide the data required. (Dkt. 33 at 22.)

[3] AppFolio, in fact, posited that Beagle sued AppFolio, rather than use Scheduled reports, because Beagle was "not just accessing data, it is using AppFolio's platform to issue charges to residents for its products." (Opp. at 6.) In other words, Beagle wanted write capability.

remove charges" —i.e., it did not allow Beagle to write into the customer's database. (Dkt. 36 at 7.)

Because, in briefing the original motion, both parties accurately represented the capability of scheduled reports (and AppFolio made no representation as to database API), there is no "material difference in fact from that presented to the Court."

**b. Beagle Knew the Capability of Scheduled Reports**

The law is clear that reconsideration cannot be justified by evidence that was already known to the moving party. *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (Applying FRCP 59 and affirming denial of motion for reconsideration where moving party's "new" fact was known before disposition of the order for which he sought reconsideration).

Beagle's motion claims that it did not know that scheduled reports were read-only until after the Court issued its Order. (Mot. at 4-5.) That is simply not true. As detailed above, AppFolio fully explained and demonstrated scheduled reports read-only functionality in its Opposition. (Dkt. 33 at 5.) And Beagle itself argued on Reply that scheduled reports were insufficient because they did not allow it to make changes to charges in the customer's database. (Dkt. 36 at 7.) In addition, AppFolio's user logs show that Beagle is familiar with scheduled reports, having used them with 346 AppFolio customers, sending over *fifty-four thousand* scheduled reports. (Delage Decl. ¶ 6.) Perhaps this is why no Beagle declarant states that Beagle was unaware, prior to the Court's Order, that scheduled reports were read-only.

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 193 of 281

### c. Beagle Could Have Known the Capability of Database API with Even a Modicum of Diligence

As explained above, Beagle cannot establish that database API's capability is materially different than that presented to the Court in the prior motion because AppFolio made no representations as to database API's capabilities. But even if it had, Beagle would still need to establish that "the exercise of reasonable diligence" would not have revealed those capabilities prior to the Court's Order. That it cannot do.

The Court has already recognized that "[p]resumably, as soon as Beagle became aware that AppFolio intended to enforce its Terms of Service, Beagle began working on developing or engineering such integrations." (Dkt. 39 at 6.) But that is not the case. Beagle's own declarant, Ayanga Okpokowuruk, states that he was not tasked with evaluating Scheduled reports and Database API *until January*. (Mot. Okpokowuruk Decl. ¶ 3.) And Beagle's Motion further specifies that its "exploration of and attempts to implement the proposed substitute methods" occurred sometime "after the Order" on January 7.[4]

Placing this in context, AppFolio notified Beagle of its intent to enforce its Terms of Service on December 9, 2025, and, in that same letter, offered to answer Beagle's "questions about compliant access paths" and provide "clarification on transition steps." (Saxena Decl. ¶ 4.) Beagle never responded. Beagle instead told its customers they could "continue to run [their] Beagle program using scheduled

---

[4] Beagle's motion does separately claim it began working on solutions "as soon as Beagle became aware that AppFolio intended to sever its existing access." (Mot at 4.) But Beagle cites no evidence to support this claim; and it is inconsistent with Mr. Okpokowuruk's declaration.. (Mot. Okpokowuruk Decl. ¶ 3.)

reports" (Dkt. 33-3 Exh. D); brought this lawsuit against AppFolio; and filed an *ex parte* motion based on the threat of "extinction;" and fully briefed that motion all before assigning Mr. Okpokowuruk to investigate viable alternatives.

If Beagle had wanted to know the capabilities of database API, all it had to do was ask. When Beagle did ask on January 14—after the Order—AppFolio provided explanatory materials on January 30. (Delage Decl. ¶ 5.) Beagle's lack of diligence is fatal to its motion. *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1157 (D. Haw. 2013) (denying motion for reconsideration based on new fact because party could have obtained new fact by diligent investigation).

## II. AppFolio's Post-Order Statements Are Not New and Do Not Justify Reconsideration

Beagle accuses AppFolio of "new and escalating" post-order conduct that it claims justifies reconsideration. (Mot. at 3.) Specifically, Beagle complains of four statements made to a customer in a January 9, 2026, email. (*Id.* at 6.) What Beagle fails to mention is these four statements are *identical* to those sent in the December 9, 2025, communications.

| **December 9 Communication (Dkt. 4-5 Exh. C)** | **January 9, 2026 Communication (Mot. D'Angelo Decl., Ex B)** |
|---|---|
| We value your ability to choose providers, but the *method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:<br><br>• access the personally identifiable information of your residents<br>• issue payments through the AppFolio payments platform<br>• view and take action across your entire account database | We value your ability to choose providers, but the *method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:<br><br>• access the personally identifiable information of your residents<br>• issue payments through the AppFolio payments platform<br>• view and take action across your entire account database |

AppFolio merely sent an updated version of *the same message* on January 9, 2026, to users who did not receive the December 9, 2025, message because they did not yet have Beagle user access to their databases. (Delage Decl. ¶¶ 3-4.) Far from new, these statements were already fully briefed in response to Beagle's TRO Motion and, as such, are not grounds for reconsideration. *Trust Corp. v. Aetna Casualty and Surety Co.,* 873 F.Supp. 1386, 1393 (D.Ariz.1994) (denying motion for reconsideration where new deposition testimony merely reinforced old facts that court previously addressed) (cited approvingly in *Collins v. U.S. Citizenship & Naturalization Serv.*, 2013 WL 776244, at *1 (C.D. Cal. Feb. 6, 2013) (Walter, J.) (denying motion for reconsideration for failure to meet Local Rule 7-18).

Even if these statements were new and therefore warranted reconsideration, they would not change the outcome. First, Beagle does not even contend they are false. Indeed, Beagle's CEO admitted these are "things a user *could* technically do in your account" (emphasis in original). (Dkt. 33-3 Exh. D.) And, as also fully briefed, *see* Opp. at 18 fn. 8, false statements would not support Beagle's request that the Court enjoin AppFolio from disabling Beagle's user access. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged.")

## III. Even if Reconsideration Was Warranted, The Outcome Would Not Change

In its original motion, Beagle claimed it faced an "extinction level event" because AppFolio "planned to block Beagle's access" to "limited categories of" its customers' "operational data." (Dkt. 4 at 2, 6.) The Court, however, denied Beagle's motion for failure to show irreparable harm after AppFolio demonstrated that its scheduled reports feature could "provide the exact information that Beagle

claimed it needed in its moving papers." (Dkt. 39 at 6.) The Court further found AppFolio's database API feature may also be a viable alternative, with Beagle having "fail[ed] to identify what data fields are missing." (*Id.*) Beagle's purportedly new facts do not change this outcome: Beagle still has no evidence that scheduled reports and database API cannot provide the data Beagle claimed to need as the basis for its original motion.

But even if write access were relevant to Beagle's motion, it would still fail to show a likelihood of irreparable harm because Beagle has not offered any evidence that its contracts require it to take action in its customer's databases. Beagle attached a customer contract to its reply in support of the TRO Motion, but that contract showed only that Beagle is obligated to provide insurance to its customers. (Dkt. 36-1 Exh. A.) The contract made no mention of AppFolio, much less promise to use its functionality.

In addition, the credibility of Beagle's claim of irreparable harm is called into question by the recent announcement that Beagle's parent company, Corgi, raised $108 million dollars in funding, with a $630 million valuation, based in part on $40 million in annual recurring revenue. Whether true or not, Corgi's announcement—*made two days after the Court's Order*—tells a different story than Beagle, which claimed that, by disabling its user access, AppFolio would "with the click of a button . . . collapse more than $10 million dollars of revenue and "eviscerate hundreds of millions of dollars in enterprise value." (Dkt. 4 at 18.)

## IV. Beagle is Not Entitled to an Evidentiary Hearing

Lastly, Beagle claims it is entitled to an evidentiary hearing "to test" and "explore" whether "1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle." But, according to Beagle's own authority in *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), *as amended* (Feb. 12, 1993), evidentiary hearings are appropriate where there are "diametrically opposing declarations and counter-declarations" on a material fact, not just because a party seeks to explore an issue. Beagle identifies no false statement of any AppFolio declarant, and it is not entitled to a hearing to "explore" the technical issues it should have investigated a month ago.

Unsurprisingly, Beagle offers no authority for the proposition that a court must hold an evidentiary hearing to enter an ex parte TRO. The Ninth Circuit cases Beagle does cite address preliminary injunctions, not TROs. Beagle's cases are inapplicable for that reason.

Beagle's cases are inapt for additional reasons. In *Thomas*, the Ninth Circuit criticized the District Court for failing to hold an evidentiary hearing because there were conflicting declarations *and the district made no specific factual findings*. *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), *as amended* (Feb. 12, 1993). Here, by contrast, the Court made detailed factual findings about each category of data Beagle sought, and each way Beagle could get it. (Dkt. 39 at 6-7.) Beagle's other Ninth Circuit case helps Beagle even less because it went *against* Beagle's current position. It found that "The district court did not abuse its discretion in granting the preliminary injunction without an

evidentiary hearing." *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986).

**Conclusion**

For the foregoing reasons, the Court should deny the Motion in its entirety.

DATED this 2nd day of February, 2026.

*/s/*

Brian Procel
Jeremiah Levine
Marty Pritikin
**PROCEL LEVINE, LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

Attorneys for Plaintiff
AppFolio, Inc.

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 199 of 281

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendants.

Case No. 25-cv-12248-JFW-SSC

**DECLARATION OF SEAN SAXENA IN SUPPORT OF APPFOLIO, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION**

**DECLARATION OF SEAN SAXENA**

I, Sean Saxena, declare:

1. I make this declaration in support of AppFolio, Inc.'s ("AppFolio's") Opposition To Plaintiffs' Motion for Reconsideration of Order Denying TRO and OSC re Preliminary Injunction. If called as a witness, I could and would testify competently hereto.

2. My job title is Senior Director, Insurance, for AppFolio. I have been employed by AppFolio for approximately 13 years.

3. On December 9, 2025, AppFolio notified its customers with Beagle user accounts that AppFolio intended to disable the noncompliant access. (Dkt. 4-5 Exh. C.)

4. Also on December 9, 2025, AppFolio sent an email to Beagle stating that if Beagle had "questions about compliant access paths or need[s] clarification on transition steps, we are happy to provide additional guidance."[1] Beagle never responded. Attached as Exhibit A is a true and correct copy of that email.

5. On or about January 7, 2026, the Court denied Beagle's motion for a temporary restraining order in this matter. (Dkt. 39 at 6.)

6. On or about January 9, 2026, Beagle's parent company, Corgi Insurance, announced on LinkedIn that it had raised $108 million in funding. Corgi

[1] I make this statement not for the truth of the matter asserted, but to demonstrate notice to Beagle.

said that it was valued at $630 million, based in part on its $40 million in annual recurring revenue.[2]

7. Beagle issued a press release, on August 6, 2025, confirming that "Corgi Insurance" is "the parent company behind Beagle."[3]

I declare under penalty of perjury according to the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was signed by me on February 2, 2026, in Goleta, California.

Sean Saxena

[2] I make this statement not for the truth of Corgi's statement, but for the fact that Corgi made it.

[3] The press release is available at: https://www.prnewswire.com/news-releases/entrata-co-founder-johnny-hanna-joins-beagle-as-president-to-drive-expansion-302523573.html

Exhibit A

appfolio

Matthew Kaddatz <matthew.kaddatz@appfolio.com>

## Notification from AppFolio

1 message

**Account Security** <account.security@appfolio.com> Tue, Dec 9, 2025 at 2:06 PM
To: support@beagleforpm.com

Hi Beagle team,

We are reaching out to inform you that **all Beagle-associated user accounts in AppFolio customer databases will be disabled on December 16, 2025**. This action is necessary to uphold the security and integrity of our platform and to ensure compliance with AppFolio's terms of service.

AppFolio is committed to protecting our customers and delivering a safe, high-quality user experience. We support our customers' ability to choose the providers they work with, and access must occur through compliant, secure channels.

To support customers who wish to continue using your services, **you can offer multiple secure methods, including scheduled reports** from AppFolio. These methods ensure data security, maintain compliance, and provide a safe framework for third-party collaboration.

We have notified our customers of this action this morning (December 9th) and provided guidance for how they can continue to utilize your service in a method that is compliant with our terms of service and does not create a security risk.

If you have questions about compliant access paths or need clarification on transition steps, we are happy to provide additional guidance.

Thank you,
AppFolio

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendants.

Case No. 25-cv-12248-JFW-SSC

**DECLARATION OF NATE DELAGE IN SUPPORT OF APPFOLIO, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC RE PRELIMINARY INJUNCTION**

**DECLARATION OF NATE DELAGE**

I, Nathaniel Delage, declare:

1. I make this declaration in support of AppFolio, Inc.'s ("AppFolio's") Opposition To Plaintiffs' Motion for Reconsideration of Order Denying TRO and OSC re Preliminary Injunction. If called as a witness, I could and would testify competently hereto.

2. My job title is Director, Software Engineering, for AppFolio. I have been employed by AppFolio for approximately eight years.

3. Following the Court's Order on January 7, 2025, AppFolio implemented security measures to identify and disable Beagle's user access to AppFolio's customers' databases. These measures identified customers who had not received AppFolio's prior, December 9, 2025, notice, because Beagle did not have user access to their database at that time.

4. On January 9, 2025, AppFolio provided these customers the *same notice* it had previously sent, updating only the dates and timing. Both the December and January 9 notices contain this language: "the method by which Beagle has chosen to operate their business places you at risk;" Beagle can "access the personally identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." *Compare* Dkt. 4-5 Exh. C with Dkt. 50-2 Exh. B.

5. I am familiar with AppFolio's features, including scheduled reports and database API. The capabilities of scheduled reports and database API have not changed since before this litigation began. At all times relevant to this

litigation, database API has had a robust capability to write in AppFolio databases. Customers can use this write capablity without the need for AppFolio to engineer new endpoints. If Beagle had wanted to know the capabilities of database API, all it had to do was ask. When Beagle did ask on January 14—after the Order—AppFolio provided explanatory materials on January 30.

6. AppFolio's user logs[1] show that Beagle has used scheduled reports with 346 AppFolio customers, sending over fifty-four thousand scheduled reports.

I declare under penalty of perjury according to the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was signed by me on February 2, 2026, in San Diego, California.

[signature]

Nathaniel Delage

[1] I am a duly authorized custodian of records for AppFolio. AppFolio's user logs are records of regularly conducted activity, made and kept in the ordinary course of business, prepared automically and accurately, and made near the time of the facts reflected therein.

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiff, Beagle Labs, Inc., Beagle Technologies, Inc., and Big Beagle Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF LODGING [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE ECF NO. 39**

PLEASE TAKE NOTICE that Plaintiffs hereby lodge the attached [Proposed] Order Granting Plaintiffs' Motion for Reconsideration regarding the Court's January 7, 2026 Order (ECF No. 39). This proposed order is submitted in accordance with Local Rule 5-4.4 and the Court's Standing Order.

DATED: January 21, 2026

Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION RE ECF NO. 39**

The Court, having considered Plaintiffs' Motion for Reconsideration of the Court's January 7, 2026 Order Denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (Dkt. 39), the supporting declarations and exhibits, the prior filings in connection with the underlying motion, and all other evidence and matters of record, and good cause appearing, **HEREBY ORDERS AS FOLLOWS:**

1. Plaintiffs' Motion for Reconsideration is **GRANTED**.
2. An evidentiary hearing is **ORDERED** on the issues raised in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.
3. An evidentiary hearing is set for [DATE], at Courtroom 7A.

So **ORDERED**.

DATED: ______________, 2026 ________________________________

United States District Court Judge

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF WITHDRAWAL OF ECF NOS. 50 AND 51**

Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and Yrig Retention Group, Inc. (collectively, "Beagle") hereby file this notice of withdrawal of the Notice of Motion and Motion for Reconsideration (ECF Nos. 50 and 51), pursuant to instructions from the Clerk. ECF Nos. 50 and 51 were inadvertently filed using the incorrect credentials. The correct Notice of Motion and Motion for Reconsideration are reflected in ECF No. 52.

DATED: January 21, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' NOTICE OF MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39**

*[Motion for Reconsideration, Declaration of Anthony D'Angelo, and Declaration of Ayanga Okpokowuruk filed concurrently herewith]*

| | |
|---|---|
| Date: | February 23, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 7A, 7th Floor |
| Judge: | Hon. John F. Walter |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** Please take notice that on February 23, 2026 at 1:30 p.m., in the Courtroom of the Honorable John F. Walter, United States District Court for the Central District of California, First Street U.S. Courthouse, Los Angeles, California, Courtroom 7A, 7th Floor, Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and Yrig Retention Group, Inc. (collectively, "Beagle") will move for reconsideration of the Court's January 7, 2026 Order denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [ECF. No. 39] (the "Order"). Beagle makes this motion on the grounds that new facts have emerged since the Order around AppFolio beginning to implement its blocking of Beagle from the AppFolio platform without functioning alternative access, as well as the growing harms caused by AppFolio's disparaging statements. Beagle accordingly respectfully requests the Court reconsider holding an evidentiary hearing on Beagle's preliminary injunction motion.

This reconsideration motion is based on this Notice of Motion and Motion, the accompanying declarations, arguments of counsel, and the papers, records, and pleadings on file in this matter.

DATED: January 21, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39**

*[Notice of Motion for Reconsideration, Declaration of Anthony D'Angelo, and Declaration of Ayanga Okpokowuruk filed concurrently herewith]*

| | |
|---|---|
| Date: | February 23, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 7A, 7th Floor |
| Judge: | Hon. John F. Walter |

# I. INTRODUCTION

Beagle respectfully requests the Court reconsider whether to hold an evidentiary hearing on Beagle's preliminary injunction motion, based on new facts arising after the Court's January 7, 2026 Order.[1]

Since the Order, despite AppFolio's representations that Beagle could work through alternative methods to service its customers, AppFolio has communicated to customers that it does not intend to permit Beagle to work with its platform. Beagle has directly requested AppFolio provide an explanation for how Beagle can work with the API or alternative methods, but has received no response or path forward. (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

Also since the Order, Beagle has further investigated AppFolio's claim that Scheduled Reports, the API, and other means can permit Beagle to service its customers' contracts. Beagle had only two days to review and respond to AppFolio's Opposition to the TRO and PI. AppFolio filed its papers on December 29, and Beagle responded in the afternoon on December 31. AppFolio asserted that these alternative routes could work, and Beagle was not able to sufficiently review in that time. Beagle now understands that AppFolio's API is not available to customers who do not have an enterprise account and does not permit the specific form of access that Beagle requires to service its customer contracts, and neither do the Scheduled Reports. (Okpokowuruk Decl., ¶¶ 2-5.)

Beagle respectfully submits that given the factual disputes, an evidentiary hearing on its preliminary injunction request is appropriate to permit Beagle an opportunity cross-examine AppFolio's witnesses on their representations about alternative methods, given the new facts. The irreparable harm to Beagle is ongoing, as AppFolio after the Order has taken new action to mar Beagle's reputation through its conduct and customer messaging—

[1] On January 7, 2026 the Court issued an Order denying Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction [ECF. No. 39] (the "Order"). Beagle's deadline to appeal the Order on legal grounds has not yet expired, but Beagle understands the local rule and this Court's precedent with respect to motions to reconsider limiting the nature of the permissible reconsideration requests.

grounds which support a preliminary injunction. The extinction of Beagle's business is also still at risk, as AppFolio appears to be gradually implementing its blocking measures.

This motion for reconsideration is intentionally narrow and focused on the need for an evidentiary hearing to explore fairly whether or not 1) AppFolio's proffered alternatives actually cure the risk of Beagle's irreparable harm; and 2) whether AppFolio's new and escalating conduct is causing irreparable harm to Beagle. If the Court does not reconsider its Order and the additional relevant facts and grant Plaintiffs' Motion for Temporary Restraining Order outright—which the Court is empowered to do—Plaintiffs seek at least the narrow relief of a short evidentiary hearing focused on substitutability and operational feasibility of AppFolio's suggested alternative solutions, along with further scrutiny into the irreparable reputational harms at issue here.

## II. LEGAL STANDARD

Local Rule 7-18 provides for reconsideration "on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

Similarly, Fed. R. Civ. P. 59(e) provides four grounds for reconsideration: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *IV Sols. Inc. v. TakeCare Ins. Co.*, No. CV 13-4592-JFW MANX, 2014 WL 8515781, at *2 (C.D. Cal. Feb. 28, 2014) (Walter, J.) (*citing Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir.2011)). *See also White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982) (Rule 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." (citation

modified)); *Banister v. Davis*, 590 U.S. 504, 507 (2020) (The Rule enables a party to request that a district court reconsider a just-issued judgment.").

In addition, Fed. R. Civ. P. 54(b) provides: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) (granting motion for reconsideration due to intervening change in controlling law).

Beagle's request meets these standards.

## III. ARGUMENT

### A. Accelerated Briefing Limited Beagle's Opportunity to Test AppFolio's Proffered Substitutes

Certainly, given the existential threat to its business caused by AppFolio's abrupt severance of its platform access, Beagle worked to implement AppFolio's suggested alternatives, and to find other potential solutions, as swiftly as possible. As this Court recognized, "as soon as Beagle became aware that AppFolio intended to [sever its existing access], Beagle began working on developing or engineering such integrations." (Order at 6.) Nevertheless, during the accelerated briefing schedule, while also managing a business crisis and a flood of customer inquiries, Beagle was not provided and did not learn all the relevant facts about Scheduled Reports and Database API it has discovered since this Court's Order. The statement from Mr. Brown was made on December 9, 2025, when AppFolio first began sabre rattling. That hopeful statement, made during desperate times in an effort to reassure Beagle's customers, turned out to be incorrect. But, AppFolio cited that statement, which, in a disappointing turn, has turned out to be factually untrue, in asking this Court to accept the fact as true that Scheduled Reports could solve Beagle's harm.

Beagle had only two days to investigate AppFolio's claims after AppFolio filed its opposition on December 29, 2025. Since the Order on January 7, 2026, Beagle has confirmed that these mechanisms do not work. (Okpokowuruk Decl. ¶¶ 2-5.) They do not have the write access necessary for Beagle to service its customer contracts.

This demonstrates both "a material difference in fact . . . from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered" and "new material facts . . . occurring after the Order was entered." LR. 7-18.

**B. Beagle's Attempt to Implement AppFolio's Proffered Solutions Post-Order has Revealed they are Operationally Insufficient**

In the time since the Court's Order, Beagle has attempted to implement the Scheduled Reports and Database API solutions upon which the Court rested its conclusion that Beagle had not shown irreparable harm. Beagle's effort to use these alternatives has revealed a material limitation that was not apparent from the briefing record: Scheduled Reports and Database API do not permit the write operations that Beagle requires. They permit passive receipt of static data snapshots but do not allow Plaintiffs to take action (*i.e.*, write-in) within AppFolio's system, remediate compliance issues, validate or correct records, execute workflows, or perform other active functions required by Plaintiffs' customer contracts. In other words: these tools only allow Beagle to access frozen copies of data. If Beagle's access is limited to these read-only functions, Beagle cannot service its customers because it cannot make changes, fix problems, confirm accuracy, run processes, or actually do the work Beagle's customers expect and have contracted with Beagle to do through the AppFolio platform.

As set forth in the accompanying declarations, while Beagle made a good faith effort to investigate AppFolio's suggested solutions, the limitations inherent in read-only access make it impossible for Plaintiffs to perform the services their customers contracted for. *Id.*

AppFolio's API offerings are similarly limited, and do not qualify as a substitute. First, the API apparently is not available to most of the relevant customer cohort because it

is limited to enterprise customers. *Id.* Second, even for customers who have access to AppFolio's API, the available endpoints do not furnish the operations needed to sustain Plaintiffs' workflows or contractual obligations. *Id.* Beagle cannot accomplish its goals via API access unilaterally. AppFolio would itself have to work with Beagle on a new custom integration. Despite Beagle's requests (*see* D'Angelo Decl. Exh. A), AppFolio is not helping and instead is telling customers that it will not work with Beagle.

These facts, understood through Beagle's exploration of and attempts to implement the proposed substitute methods after the Order, demonstrate that AppFolio's assertions were incorrect, and that the actual facts involved in using Scheduled Reports and Database API cannot preserve the status quo for Beagle and do not prevent AppFolio's blocking of Beagle's access from causing irreparable and existential harm. This mismatch between AppFolio's representations to the Court and the realities on the ground support reconsideration under Rule 59(e) and the Local Rule 7-18.

An evidentiary hearing would permit cross-examination and submission of evidence to assist the Court in determining a resolution to the factual disputes on these questions.

### C. Post-Order Evidence of AppFolio's Communications to Beagle Customers Reveals Irreparable Reputational Harms to Beagle

In the time since the entry of the Order, Beagle has learned that it faces an additional, independent form of irreparable harm from AppFolio's post-order disparaging communications to Beagle's customers. On January 9, 2026, AppFolio emailed a Beagle customer and told them that "the method by which Beagle has chosen to operate their business places you at risk," claiming Beagle could "access the personally identifiable information of your residents," "issue payments through the AppFolio payments platform," and "view and take action across your entire account database." (D'Angelo Decl., ¶¶ 2-3, Ex. A.)

These post-Order statements, made directly to Beagle's customers, go beyond competitive positioning; they accuse Plaintiffs of dishonesty, noncompliance, and security risk, striking at core attributes that underpin Plaintiffs' reputation in the property

management field. The resulting harms are immediate and non-quantifiable: they chill existing customer relationships, impede renewals and expansion opportunities, and deter prospective customers who receive or hear of these accusations through AppFolio's channels. The January 9 communication was disseminated to at least one active customer evaluating whether to "unlock" Plaintiffs' user account, and, after AppFolio's message, that customer declined. *Id.* Continued repetition of these assertions to other customers will compound the reputational injury, erode goodwill, and destabilize customer confidence in ways that cannot be remedied by *post hoc* damages. This fallout from the Order provides new facts demonstrating that the premises behind the Order's irreparable harm holding—having to do with business extinction rather than reputational harm—merit reconsideration.

**D. These New Facts Warrant Reconsideration in this Jurisdiction**

Local Rule 7-18 permits reconsideration of a decision where new facts emerge that could not have been demonstrated prior to the Order. In *Rubin v. Grill Concepts Servs., Inc.*, the Ninth Circuit held that "[i]t was not an abuse of discretion for the district court to reconsider its earlier decision to deny injunctive relief" where the defendant refused to negotiate in good faith and an administrative law judge issued a decision that the district court regarded as "a useful benchmark against which the Director's prospects of success may be weighed." *Rubin v. Grill Concepts Servs., Inc.*, No. 22-55620, 2023 WL 334017, at *2 (9th Cir. Jan. 20, 2023) (affirming grant of TRO after initial denial and reconsideration, *citing City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) for the principle that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.").

Here, pursuant to LR 7-18, the Court could review and evaluate the new and developing facts around AppFolio beginning to implement its blocking of Beagle from the AppFolio platform without functioning alternative access, as well as the growing harms caused by AppFolio's disparagement, and determine that the new facts satisfy the standards for a TRO to preserve the status quo for Beagle pending further proceedings. *See also Van Derheydt v. Cnty. of Placer,* 32 F. Appx. 221, 223 (9th Cir. 2002) (reversing E.D. Cal.'s

denial of motion for reconsideration where counsel for movant had failed to research and present a crucial defense, distinguishing its decision from "routinely giv[ing] litigants a second bite at the apple").

**E. An Evidentiary Hearing is Appropriate under the Circumstances**

Under these circumstances, Beagle requests the opportunity to test AppFolio's technical theories, which were proffered without factual development on a compressed schedule. AppFolio first advanced the Scheduled Reports as a functional substitute for direct access in its Opposition, filed on December 29, 2025. Plaintiffs' reply was due two days later, on December 31. At that point, Plaintiffs had no meaningful opportunity to conduct technical validation or testing of AppFolio's representation. Accordingly, the record before the Court reflected only generalized descriptions of Scheduled Reports' availability, not their functional limitations in practice, and Beagle had no opportunity to test the processes or to question their advocates.

Plaintiffs submit that an evidentiary hearing would allow the Court to resolve these factual disputes reliably. On the paper record, with competing positions without an opportunity for live testimony and cross-examination, AppFolio's representations are untested.

The Ninth Circuit has recognized that a hearing is appropriate when the parties submit "opposing declarations" on a material fact to avoid irreparable harm. *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) (finding fault in district court's having decided injunction without evidentiary to resolve factual disputes found in dueling declarations); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986) ("Where sharply disputed facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate."). Other circuits have noted that "where factual disputes *are* presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted" or denied. *Com. Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 341 (5th Cir. 1984); *see, also,*

*e.g.*, *Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) (differences on the facts "must be resolved by oral testimony" before deciding preliminary injunction); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) ("Where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held."); *cf. also, e.g., Kos Pharm. v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[I]t may be improper to resolve a preliminary injunction motion on a paper record alone.").

Where, as here, the parties assert diametrically opposed facts related to complex technologies, an evidentiary hearing is essential to test those claims and ensure the Court's ruling rests on accurate facts.

## IV. CONCLUSION

For the foregoing reasons, Beagle respectfully requests reconsideration of the Court's Order. A narrow evidentiary hearing would clarify the dueling technical assertions presented in the parties' preliminary injunction briefing.

DATED: January 21, 2026 Respectfully Submitted,

By: */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF ANTHONY D'ANGELO IN SUPPORT OF RECONSIDERATION RE DKT 39**

I, Anthony D'Angelo, declare as follows:

1. I am Chief Executive at Beagle Labs, Inc. (hereinafter "Beagle" or "Plaintiff"). I have personal knowledge of the facts surrounding the present action and Beagle's business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.

2. Customer Complaints Post January 7 Order. On January 9, 2026, AppFolio contacted at least one of our customers and told them—incorrectly—that Beagle "places you at risk," that Beagle could "access the personally identifiable information of your residents," that Beagle could "issue payments," and that Beagle could "take action across your entire account database." These statements are false and damaging to Beagle's goodwill and reputation. After receiving AppFolio's communication, that customer declined to "unlock" Beagle's access, directly harming our business and reputation. We are aware of risks that similar statements will be disseminated to other customers, causing irreparable reputational injury and jeopardizing customer relationships.

3. Attached as Exhibit A is a letter Beagle sent to AppFolio enclosing this AppFolio customer communication and Beagle's request for AppFolio to provide a route for Beagle to work with AppFolio's platform. AppFolio has not made any substantive response to Beagle.

4. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 21, 2026, in Chicago, Illinois.



Anthony D'Angelo

# EXHIBIT A

GreenbergTraurig

Michael Burshteyn
Tel 415.655.1300
Fax 415.707.2010
mburshteyn@gtlaw.com

January 14, 2026

Jeremiah Levine
Procel Levine
401 Wilshire Blvd., Fl. 12
Santa Monica, CA 90401
Email: jeremiah@procellevine.com

**VIA EMAIL**

**Re: Compliant Access Path for Beagle on AppFolio Platform**

Counsel:

Beagle is eager to serve its customers who use AppFolio, as AppFolio knows. AppFolio has represented to the Court that Beagle has the ability to do that through the AppFolio Stack Marketplace and the AppFolio Database API.

AppFolio did not, however, make clear to the Court that it already rejected Beagle in the Stack Marketplace in November 2024. Nonetheless, AppFolio has made representations to the Court about the viability of this path for Beagle to work with AppFolio's platform, and so AppFolio should follow through on those representations. AppFolio should tell Beagle what, exactly, Beagle needs to do to move forward in the AppFolio Stack Marketplace and the AppFolio Database API.

Here is what AppFolio stated in its opposition to Beagle's request for a TRO:

> **[C]ustomers can work with Point Solutions in the AppFolio Stack Marketplace . . . customers can use AppFolio's Database API[3] offering to build an automated data link between their database and any Point Solution they like . . . [and] customers can use scheduled reports to automate data sharing with Point Solutions.**
>
> Dkt. 33 at 9 (emphasis added).

AppFolio further characterized these as "the secure methods of working with AppFolio's customers." *Id.* at 11.

Despite claiming to the Court that Beagle has this alternative path, AppFolio has contradicted itself in communications with Beagle's customers. For example, a Beagle customer using the AppFolio platform has reported to Beagle that "AppFolio placed a lock on the [Beagle] profile," and "made it clear that we are not allowed to add another user for Beagle." ***See*** **Exhibit A**.

In a second example, AppFolio has told Beagle customers:

> [T]he method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to: access the personally identifiable information of your residents[,] issue payments through the AppFolio payments platform[, and] view and take action across your entire account database.

***See*** **Exhibit B**. AppFolio characterized these as "serious security risks" and then concluded "[t]o keep our ecosystem safe, we cannot allow Beagle's noncompliant access." *Id*.

These customer statements are further examples of AppFolio's false claims about Beagle. Worse, they are not consistent with AppFolio's representations to the Court. This follows prior representations AppFolio made to the Northern District of California Judge about consenting to maintaining the status quo, while telling Beagle's customers that Beagle was already banned. AppFolio continues to unfairly compete and tortiously interfere with Beagle's business, among other things, through this conduct.

AppFolio's arguments and claims about Beagle's security are pure pretext and nothing more. By this letter, Beagle seeks for AppFolio to clearly lay out what Beagle must do to gain the partnership approval AppFolio claims Beagle has available to it.

The Court's Order reinforces this expectation. The Court noted that customers can share the needed "data with Beagle through other authorized means, including by using AppFolio's Database API." *Id*. at 6. The Court observed that Beagle had no basis to conclude that AppFolio would ban it from using the API because "AppFolio has made no such statement to its customers, and in fact advised its customers in connection with its plan to disable Beagle's user names that it supports 'multiple safe methods for you to work with [third party providers], including AppFolio Stack, Database API, and scheduled reports.'" *Id*. at 6.

Yet to date, AppFolio's actions conflict starkly with the Court's expectations and the representations AppFolio made in generating those expectations.

They are more consistent with AppFolio's 2024 denial of Beagle in its Stack Marketplace, which AppFolio has not disclosed in these proceedings. (Beagle applied for AppFolio's Stack Program and was rejected, receiving an email stating "Thank you for submitting your application for AppFolio's Stack Program. We reviewed the information provided and are unable to move forward at this time as we currently do not support integrations in the insurance space.") ***See*** **Exhibit C**.

Now, either AppFolio is prepared to provide a compliant path forward for Beagle customers using the AppFolio platform, or its representations to the Court were inaccurate.

Please have AppFolio immediately provide Beagle with clear instructions for the compliant paths AppFolio represented are available to Beagle, including API endpoints, technical requirements, and any security protocols necessary to address the concerns AppFolio previously raised.

Despite AppFolio's continued unlawful conduct, Beagle believes the parties should work together in partnership while they can resolve their disputes, rights, and remedies in Court. Working collaboratively with Beagle is what is in the interests of AppFolio's customers as well.

Sincerely,

Michael Burshteyn

# EXHIBIT A

A

**Ashlee Malone**
to me

9:10 AM (37 minutes ago)

HI Trevor,

Sorry for the delay. When I attempted to delete the previous user and add the new one, AppFolio placed a lock on the old user profile and informed us that we had violated their terms and conditions by adding a user in that manner. Their response was that if we choose to continue working with Beagle, they support several safe methods, including AppFolio Stack, Database API, and scheduled reports.

However, they made it clear that we are not allowed to add another user for Beagle. Let me know which method you think is the best path forward. I know you mentioned you were working on an alternative approach for partnering with AppFolio customers, so I'm hoping we can still work with Beagle.

Thanks,
Ashlee

# EXHIBIT B

**From:** John from AppFolio <john.t@appfolio.intercom-mail.com>
**Sent:** Friday, January 9, 2026 9:29 AM
**To:** [redacted]
**Subject:** Re: Help Using AppFolio



Hi [redacted]

We have received reports from several customers that Beagle - an insurance and resident services company - recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our integration partners go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but *the method* by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. As a result, we will ***not*** be unlocking this beagle user account.

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

Sincerely,
John

**We're here to help**

Reply directly to this email or through our Messenger

# EXHIBIT C

---------- Forwarded message ---------
From: <lizzie.jackson@appfolio.com>
Date: Wed, Dec 18, 2024 at 7:45 AM
Subject: Corgi Insure | AppFolio Stack™ Application
To: <srulik.lowenstein@corgi.insure>

Hi Yisroel,

Thank you for submitting your application for AppFolio's Stack™ Program. We reviewed the information provided and are unable to move forward at this time as we currently do not support integrations in the insurance space. We will keep your information on hand should we open up this area.

Thank you,

Lizzie

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED SATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,,

Plaintiffs,

v.

APPFOLIO, INC. a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF AYANGA OKPOKOWURUK IN SUPPORT OF RECONSIDERATION RE DKT 39**

I, Ayanga Okpokowuruk, declare as follows:

1. I am an engineer employed by Beagle. I have been responsible for system integrations, data workflows, and engineering support for Beagle's services involving the AppFolio platform. I have personal knowledge of the facts below.

2. Beagle's services require write-access and bi-directional interaction with customer data inside AppFolio, including the ability to (a) create or update records, (b) remediate compliance issues, (c) validate and correct entries, (d) execute workflow logic, and (e) initiate processes triggered by data changes. These functions cannot be performed through passive receipt of static data exports (i.e., via read-only capabilities).

3. In January, I was tasked of conducting engineering evaluations and implementation attempts using the "Scheduled Reports" functionality. My evaluation shows that AppFolio's Scheduled Reports (a) only deliver periodic data snapshots, (b) contain no write-capable endpoints, and (c) are not real-time. From an engineering perspective, these limitations make it impossible to support any of Beagle's required service workflows as the Scheduled Reports are read-only and cannot serve as a functional replacement for direct platform access.

4. I also attempted to evaluate AppFolio's API. I discovered that (a) the API is not available to most of the relevant customer base because it is restricted to enterprise-tier accounts; and (b) my understanding based on the limited information I'm able to review without AppFolio's cooperation is that the API would not permit the type of operations Beagle needs. The development of endpoints requires AppFolio's assistance and cooperation.

5. The Scheduled Reports and the Database API do not allow Beagle to fix errors, remediate compliance issues, or make required data updates because these avenues offer only static reports or read-only endpoints. In technical terms, AppFolio's proposed substitutes are not substitutes at all.

6. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 21, 2026, in Atlanta, Georgia.



________________________________

Ayanga Okpokowuruk

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.: **CV 25-12248-JFW(SSCx)** Date: January 13, 2026

Title: Beagle Labs, Inc., et al. -*v*- AppFolio, Inc.

---

**PRESENT: HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS): COURT ORDER**

Counsel are hereby notified that a Scheduling Conference has been set for ***February 23, 2026***, at ***1:15 p.m.*** before Judge John F. Walter in Courtroom 7A, 350 W. 1st St, Los Angeles, CA 90012. Lead Trial Counsel shall attend all proceedings before this Court, including the Scheduling Conference.

Counsel are directed to comply with Rule 26 of the Federal Rules of Civil Procedure and Local Rule 26-1 in a timely fashion and to file a Joint Report, on or before ***February 6, 2026***. The title page of the Joint Report must state the date and time of the Scheduling Conference.

The parties must include the following information in their Joint Report which, except in unusually complex cases, should not exceed ten pages: (1) the basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, the date by which service will be completed and an explanation as to why service has not been completed; (2) a brief chronology of the facts and a statement of the principal factual issues in dispute; (3) a brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions; (4) all prior and pending motions, their current status, and any anticipated motions; (5) the extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings; (6) whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made; (7) discovery taken to date, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f); (8) any related cases or proceedings pending before another judge of this court, or before another court or administrative body; (9) all relief sought by the complaint or counterclaim, including the amount of any damages sought and a description of

the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established; (10) whether each party has filed the "Certification as to Interested Parties or Persons" required by the Local Rules. In addition, each party must restate in the joint report the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding; (11) an appropriate last date for the completion of discovery and the hearing of motions, a date for a final pretrial conference and a trial date; (12) whether the case will be tried to a jury or to the Court and a preliminary estimate of the time required for trial; (13) efforts made to settle or resolve the case to date, and the parties' views as to an appropriate plan for maximizing settlement prospects; (14) whether the case is complex or requires reference to the procedures set forth in the Manual on Complex Litigation; (15) what motions the parties are likely to make that may be dispositive or partially dispositive; (16) any unusual legal issues presented by the case; and (17) proposals regarding severance, bifurcation, or other ordering of proof.

Lead Trial Counsel for each party shall also confirm that they are registered as "ECF Users" and shall provide their "E-Mail Address of Record." Courtesy copies shall be provided to the Court in accordance with the Court's Standing Order.

If counsel fail to file the required Joint Report or fail to appear at the Scheduling Conference and such failure is not otherwise satisfactorily explained to the Court: (a) the cause shall stand dismissed for failure to prosecute, if such failure occurs on the part of the plaintiff; (b) default judgment shall be entered if such failure occurs on the part of the defendant; or (c) the Court may take such action as it deems appropriate.

**Plaintiff's counsel is directed to give notice of the Scheduling Conference to all parties that have appeared in this action, and is directed to give notice of the Scheduling Conference immediately to each party that makes an initial appearance in the action after this date.**

Initials of Deputy Clerk sr

rev 1/18/18

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 242 of 281

Brian Procel (Cal. Bar No. 218657)
Brian@Procel-Law.com
Jeremiah Levine (Cal. Bar No. 288377)
Jeremiah@ProcelLevine.com
Marty Pritikin (Cal. Bar No. 210845)
Marty@Procel-Law.com
**PROCEL LEVINE LLP**
401 Wilshire Blvd, Fl 12
Santa Monica, CA 90401-1456
Phone: 424-788-4538

*Attorneys for Defendant AppFolio, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

Case No. 25-cv-12248-JFW-SSC

**STIPULATION TO EXTEND TIME TO RESPOND TO INITIAL COMPLAINT BY NOT MORE THAN 30 DAYS (L.R. 8-3)**

**(First Request)**

**Complaint served Dec. 15, 2025**
**Current response date: Jan. 5, 2026**
**New response date: February 4, 2026**

Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc., ("Plaintiffs"), by and through their counsel of record, Greenberg Traurig LLP; and AppFolio, Inc. ("Defendant"), by and through its counsel of record, Procel Levine, LLP, hereby stipulate as follows:

1. Plaintiff filed the complaint on December 15, 2025. A response would be due January 5, 2026.

2. The Court has not yet set a discovery cut-off date, Pre-Trial Conference date, or trial date.

3. Defendant recently retained the undersigned as counsel, who are in the process of investigating the underlying factual allegations in the complaint.

///

Case: 26-769, 04/07/2026, DktEntry: 11.3, Page 244 of 281

4. Counsel for Plaintiffs has agreed to extend the deadline for Defendant to answer or otherwise respond to the complaint to February 4, 2026. This is the first request for an extension.

| | |
|---|---|
| Dated this 8th day of January, 2026.<br><br>By: /s/ ______________________<br>JEREMIAH LEVINE<br>BRIAN PROCEL<br>MARTIN PRITIKIN<br>*Attorneys for Defendant, AppFolio, Inc.* | Dated this 8th day of January, 2026.<br><br>By: /s/ ________<br>MICHAEL BURSHTEYN<br>MARCELO BARROS<br><br>*Attorneys for Plaintiffs, Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.* |

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*
*Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**NOTICE OF LODGING OF [PROPOSED] STATEMENT OF DECISION OF PLAINTIFFS' TEMPORARY RESTRAINING ORDER**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the Court's Order dated December 30, 2025 (Dkt. 34), and in conformity with Local Rule 5.4.4.1 and Item 5(g) of the Court's Standing Order, Plaintiffs Beagle Labs, Inc., et al., hereby lodges a copy of its [Proposed] Statement of Decision on Beagle's Motion for a Temporary Restraining Order.

DATED: January 5, 2026

Respectfully Submitted,

By: */s/ Michael Burshteyn*
GREENBERG TRAURIG, LLP
*Attorney for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**[PROPOSED] STATEMENT OF DECISION OF PLAINTIFFS' TEMPORARY RESTRAINING ORDER**

## PROPOSED STATEMENT OF DECISION

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and Yrig Risk Retention Group, Inc., (collectively "Plaintiffs" or "Beagle"), filed a Temporary Restraining Order to prevent Defendant AppFolio, Inc., from deploying or directing technical or policy measures that would allegedly block, degrade, or otherwise interfere with Plaintiffs' ability to provide services to mutual customers who use AppFolio's platform, pending a hearing on a preliminary injunction.

The Court, having considered the Complaint, the TRO Application and supporting declarations and exhibits, Defendant's opposition papers, Plaintiffs' Reply submissions, the parties' prior filings and proceedings following transfer from the Northern District of California, for the reasons below, the Court **GRANTS** Plaintiffs' motion and enters a narrowly tailored TRO to preserve the status quo.

### I. PROCEDURAL HISTORY

Plaintiffs filed this action and sought emergency relief after learning that AppFolio planned to disable customer-authorized accounts associated with Plaintiffs on or around December 16, 2025, an action Plaintiffs alleged would cause extensive immediate and irreparable harm to their business and to property managers and renters who rely on Plaintiffs' services. The Northern District convened a same-day status conference and raised transfer under 28 U.S.C. § 1404(a). AppFolio Status Conf. Statement, N.D. Cal. Dkt. 14 (Dec. 15, 2025).

During the conference, AppFolio acknowledged it would delay implementing the alleged technical measure while the transfer issue was addressed. The parties submitted motions related to transfer and the Northern District of California transferred the matter to this Court. Following transfer to this Court, the parties submitted further briefing on the TRO in accordance with the Court's procedures for emergency relief. (Standing Order, C.D. Cal. Dkt. 32 (Dec. 29, 2025); AppFolio Opp'n to TRO, C.D. Cal. Dkt. 33 (Dec. 29, 2025); Plaintiffs' Reply, Dkt. 36 (Dec. 31, 2025).)

### II. LEGAL STANDARD

The standard for issuing a TRO and a preliminary injunction is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted*); see also Stuhlbarg Int'l Sales Co. v. John D.*

*Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is an "extraordinary remedy" that may be awarded upon a "clear showing" that the plaintiff is entitled to relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a TRO, a plaintiff must establish: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this Circuit also apply a "serious questions" or "sliding scale" variant under which the Winter factors are balanced, so that a stronger showing on one element may offset a weaker showing on another. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). The Ninth Circuit recognizes a sliding-scale approach under which serious questions going to the merits coupled with a balance of hardships sharply favoring the movant can support relief. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022). If the Court issues a TRO, it must also issue an Order to Show Cause why a preliminary injunction should not issue under C.D. Cal. L.R. 65-1.

## III. FINDINGS OF FACT

The Court **FINDS**:

1. AppFolio provides a cloud-based property management platform that functions as an operating system for property managers and housing providers nationwide, integrating accounting, leasing, payments, communications, and a marketplace of third-party integrations. (Compl., Dkt. 1 ¶¶ 26-28; Plaintiffs' TRO Mot., Dkt. 4; AppFolio Opp'n to TRO, Dkt. 33 at 7 (citing Saxena Decl. ¶¶ 3, 7).)
2. Plaintiffs provide interoperable software and related services that connect to AppFolio to deliver complementary functionality to mutual customers; Plaintiffs' services depend on customer-created accounts and uninterrupted connectivity to process data and provide services. (Compl., Dkt. 1 ¶¶ 22–23; Pls.' TRO Mot., Dkt. 4 at 5–9; Brown Decl., Dkt. 4-2, Ex. A (AppFolio T&Cs § 1.4); D'Angelo Decl., Dkt. 4-7 ¶¶ 2–4.)
3. At the status conference following Plaintiffs' initial filings, AppFolio agreed to maintain the

status quo temporarily to permit briefing on transfer. AppFolio subsequently removed an in-app banner regarding Beagle accounts. (Order Setting Status Conf., N.D. Cal. Dkt. 9 (Dec. 15, 2025); AppFolio Status Conf. Statement, N.D. Cal. Dkt. 14 at 1–2 (Dec. 15, 2025); AppFolio Opp'n to TRO, C.D. Cal. Dkt. 33 at 18, n.7 (noting removal); Saxena Decl., Dkt. 33-3 ¶ 27.)

4. Plaintiffs have made a sufficient showing that AppFolio has developed and will imminently deploy a software patch, update, or other technical measure designed to block, degrade, or otherwise interfere with traffic to or from Plaintiffs' domain(s) and related endpoints used to deliver Plaintiffs' services and integrations with AppFolio's platform ("Blocking Measures"). (Compl., Dkt. 1 ¶¶ 10, 45-47; Pls.' TRO Mot., Dkt. 4 at 2-4, 9-11; Brown Decl., Dkt. 4-2 ¶¶ 6-13 & Exs. C–D; Pls.' Reply, Dkt. 36 at 2-3.)

5. On this record, Plaintiffs have shown that AppFolio's imminent Blocking Measures will disrupt service for tens of thousands of customers across the United States that use Plaintiffs' services through AppFolio and thousands more of downstream end users (i.e. renters). Pls.' Reply, Dkt. 36 at 4-6; *see also* Compl., Dkt. 1 ¶¶ 22–23, 38 (nationwide property managers and renters; disruptions to move-ins/utilities/insurance).

6. Plaintiffs have further shown that the Blocking Measures have the potential to affect Plaintiffs' business by up to 80%, and halt or nearly halt Plaintiffs' business operations and services. Compl., Dkt. 1 ¶¶ 4, 35, 47, 56, 82; Brown Decl., Dkt. 4-2 ¶¶ 2, 10–11, 16 (affidavit stating 80% of revenue and $10M in revenue would be impacted); Pls.' Reply, Dkt. 36 at 2, 6.

7. Plaintiffs have further shown that the ultimate consumer's ability to procure renters insurance will likely be affected. (Compl., Dkt. 1 ¶¶ 22–23, 38; Pls.' TRO Mot., Dkt. 4 at 9-10; Pls.' Reply, Dkt. 36 at 6-7, 9.)

8. Plaintiffs have shown that the Blocking Measures, if not restrained, will cause immediate and irreparable harm, including disruption of services, loss of goodwill, and reputational damage for which monetary relief is inadequate, cannot be readily quantified, or both. (Pls.' TRO Mot., Dkt. 4 at 10, 17–20; Brown Decl., Dkt. 4-2 ¶¶ 11–14 & Exs. C–F; Pls.' Reply, Dkt. 36 at 6–8.)

9. Plaintiffs have made a sufficient showing, at this juncture, that AppFolio's apparent motivation for the Blocking Measures—security and/or safety—do not outweigh the irreparable and drastic consequences to Plaintiffs, if the Blocking Measures are rolled out, and that AppFolio's proposed "Scheduled Reports" alternative is inadequate. (AppFolio Opp'n, Dkt. 33 at 14–16 (scheduled reports argument); Saxena Decl., Dkt. 33-3 ¶¶ 12 & Ex. D; D'Angelo Decl., Dkt. 36-2 ¶¶ 2–3; Pls.' Reply, Dkt. 36 at 6–7.)

10. The balance of hardships favors preserving the status quo, as the harm to Plaintiffs and their customers far outweighs any temporary harm to AppFolio in delaying the software update rollout, pending a fuller evidentiary hearing. At minimum, the Court finds that the harm to AppFolio is substantially outweighed by the harm to Plaintiffs.

11. That serious questions going to the merits are raised and that Plaintiffs are likely to prevail, and that the balance of hardships tips in Plaintiffs' favor given the risk of irreversible disruption to Plaintiffs' operations and relationships compared to the lesser burden on AppFolio in preserving the status quo, pending a fuller evidentiary hearing.

12. The public interest favors continuity of services, avoidance of customer disruption, and preservation of competition pending adjudication on a fuller record.

## IV. CONCLUSIONS OF LAW

Based on the allegations in the Complaint, the evidence presented, together with the sworn statements verifying the facts alleged, and the motion papers before the Court, the Court **CONCLUDES** that Plaintiffs have demonstrated that immediate relief is necessary to prevent irreparable injury before the Court can hear and decide Plaintiffs' request for a preliminary injunction, and the requirements of Federal Rule of Civil Procedure 65 are satisfied, including the showing of immediate and irreparable injury, a likelihood of success on the merits or, at minimum, serious questions with the balance of hardships tipping in Plaintiffs' favor. Moreover, the requested relief is narrowly tailored to preserve the status quo, and the balance of equities, on this record, favor grant of a Temporary Restraining Order.

### A. Likelihood of Success or Serious Questions on the Merits

On the present record and at this preliminary juncture, Plaintiffs have at minimum raised serious

questions going to the merits of their interference and unfair competition theories. Plaintiffs provide evidence that AppFolio announced and prepared targeted "Blocking Measures" to terminate or degrade customer-authorized access used by Plaintiffs to serve mutual customers, following a period in which AppFolio knew of, and did not prohibit, that access. Plaintiffs further allege AppFolio's asserted security rationale is pretextual and that the contemplated measures would exclude Plaintiffs as a competitor and disrupt existing customer relationships. On this record, those allegations, supported by sworn declarations and filings, suffice to demonstrate at least serious questions meriting preservation of the status quo pending fuller proceedings. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (serious questions/ sliding scale); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

While AppFolio asserts contractual and security-based justifications and disputes Plaintiffs' factual narrative, the Court need not resolve those disputes on an emergency record. The TRO standard permits narrowly tailored relief where the balance of hardships tips sharply toward the movant, so long as the remaining *Winter* factors are met. *All. for the Wild Rockies*, 632 F.3d at 1132; *Fraihat*, 16 F.4th at 635. Plaintiffs have made such a showing here.

**B. Irreparable Harm**

The record supports a finding that disabling Plaintiffs' customer-authorized access would precipitate immediate and irreparable harm to Plaintiffs' business, including the loss of customers and goodwill, damage to reputation, interruption of mission-critical workflows for property managers and renters, and disruption not readily remediable by monetary damages.

AppFolio contends that Plaintiffs can continue operations using AppFolio's "Scheduled Reports" functionality and therefore face no irreparable harm; Plaintiffs contend those measures are insufficient to perform required services and that deplatforming would significantly impact their business. (*See* AppFolio Opp'n to TRO, C.D. Cal. Dkt. 33 (Dec. 29, 2025); D'Angelo Decl., Dkt. 36-2 (Dec. 31, 2025); Pls.' Reply, Dkt. 36 (Dec. 31, 2025).) The Court is satisfied that at this stage, Plaintiffs' sworn submissions explain that purported "scheduled report" alternatives do not replicate operative functionality or prevent the imminent disruptions that would ensue from the planned blocking measures.

AppFolio's opposition argues Plaintiffs can operate without emergency relief, but the Court finds the record at this preliminary stage demonstrates concrete and near-term risks of irreparable harm absent a narrow TRO.

**C. Balance of Equities**

The equities favor preserving the status quo. Plaintiffs' evidence shows severe and irreversible harm to Plaintiffs and their customers if AppFolio implements the blocking measures now, whereas AppFolio's asserted harms are minimized by a TRO that preserves AppFolio's ability to deploy emergency, non-discriminatory security measures that are necessary, narrowly tailored, and unrelated to Plaintiffs' identity.

The Court notes that on the same day Plaintiffs filed the Complaint and sought a TRO, AppFolio consented to the maintenance of the status quo, which, as the Court understands it, has been in place since December 15, 2025, without overwhelming prejudice to AppFolio. Plaintiffs have contended that AppFolio's banners and communications violate the spirit of that consent and are harmful. On this record, the balance of hardships tips sharply in Plaintiffs' favor, justifying TRO relief under the Ninth Circuit's sliding-scale approach. *See hiQ Labs*, 31 F.4th at 1188.

**D. Public Interest**

The public interest supports continuity of services for property managers and renters, avoidance of abrupt disruptions in insurance-compliance workflows, and preservation of competition pending adjudication on a fuller record. In addition, "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Narrow, status-quo-preserving relief respecting legitimate platform security aligns and harmonizes the public interest for security and lawful competition.

**V. ORDER**

**IT IS THEREFORE ORDERED**, effective immediately, and until further order of the Court:

**1.** AppFolio, Inc. and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them who receive actual notice of this Order (collectively, AppFolio), are **RESTRAINED AND ENJOINED** from deploying, activating, implementing, otherwise rolling out any software patch, update, configuration, policy, or otherwise technical

measure(s) to block degrade, interfere with, or otherwise restrict network, API, or other electronic communications by or to Plaintiffs' domain(s), subdomain(s), IP address(es), endpoint(s), integration point(s) used to provide Plaintiffs' services to customers, including any measure intended to block or blacklist Plaintiffs' domain(s) or associated traffic (collectively, the Blocking Measures).

**2.** AppFolio is enjoined from instructing, inducing, causing, or permitting any third party acting in concert with AppFolio to implement or effectuate the Blocking Measures, or any portion thereof.

**3.** AppFolio is enjoined from threatening the blocking measures described in paragraph one through in-application banners, or otherwise.

**4.** Nothing in this Order prohibits AppFolio from undertaking emergency, non-discriminatory security measures that are: (a) necessary to address a bona fide, specific, and imminent security threat unrelated to Plaintiffs' identity; (b) narrowly tailored to the identified threat; and (c) not targeted at blocking or degrading Plaintiffs' domains or traffic because of Plaintiffs' ("Beagle") identity or services.

**5.** Corrective Notice. To mitigate any confusion created by prior in-app banners or related communications regarding "Beagle" accounts, AppFolio shall, within three (3) business days of entry of this Order: (a) remove or disable any remaining banners, notices, or messages stating or implying that Beagle accounts will be disabled while this TRO is in effect; and (b) issue a corrective statement via the same communication channels (including an in-app banner and email to the same recipient population, to the extent used) clarifying that Beagle accounts and related integrations will not be disabled, blocked, or degraded while this TRO remains in effect, and that AppFolio will preserve the status quo pending further order of the Court. The corrective statement shall be neutral in tone and limited to these clarifications.

**6.** This Order binds AppFolio, its officers, agents, employees, attorneys, and other persons who are in active concert or participation with AppFolio and receive actual notice of this Order, consistent with Federal Rule of Civil Procedure 65(d)(2).

**IT IS FURTHER ORDERED** that this injunction shall remain in effect until [14 days from entry], unless extended by the Court for good cause or by consent of the parties, or until further order of the Court.

The Court sets an **ORDER TO SHOW CAUSE** hearing on Plaintiffs' request for a preliminary injunction. A hearing on the Order to Show Cause is set for __________at ________, in Courtroom ________, before the Honorable ___________.

AppFolio's opposition to the Order to Show Cause shall be filed by _________. Plaintiffs' reply shall be filed by __________.

So **ORDERED**.

DATED: ______________, 2026

United States District Court Judge

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION APPLICATION**

## I. INTRODUCTION AND BACKGROUND

Unless enjoined, AppFolio plans to ban Beagle from its platform.[1] It will do so by prohibiting Beagle from logging into any customer-supplied account to the customers' AppFolio account with any domain name AppFolio can find that Beagle uses. Customers have for over a year contracted with Beagle to provide vital services including insurance verification for events like fires, move-in help for tens of thousands of rental doors, utility set up, and other vital services that impact day-to-day life for tens of thousands of residents and many building managers. AppFolio's deplatforming will destroy over 80% of Beagle's business and impact at least $10 million in annual revenue. Beagle has been valued in the hundreds of millions of dollars in enterprise value, much of which is based on the high velocity of its sales engine which AppFolio has already bogged down through its tortious interference and unfair competition.

Why does AppFolio want to do this now? Because Beagle has seen incredible growth in 2025. It is threatening AppFolio's in-house products and a competitor, Second Nature, in whom AppFolio invested $75 million earlier this year.[2]

AppFolio's deplatforming strategy is designed to drive Beagle out of the market by making it impossible for Beagle to work with its own customers in ways that they have contracted with Beagle for over a year. AppFolio is attempting to justify its approach through false pretexts about Beagle's security, even though Second Nature (AppFolio's corporate venture capital portfolio company) and many others use the same approach as Beagle. This is tortious interference and violates California's Unfair Competition Law. The situation is similar to others where preliminary injunctions to stop platform blocks have been granted. The Ninth Circuit stopped LinkedIn from a similar type of platform block in

---

[1] Plaintiffs collectively refer to themselves in this brief and litigation as "Beagle."

[2] https://ir.appfolioinc.com/static-files/9c6db62e-cde3-47b3-aa5d-695d3fb2fd13 ("In connection with entering into the Strategic Partnership, on April 11, 2025, AppFolio purchased a minority, non-controlling equity interest in Second Nature Holdings, L.P., the indirect parent of Second Nature, for $75 million, paid with cash on hand.")

the *HiQ* case, because it would destroy HiQ's business. There were serious questions on the merits of whether LinkedIn's purported justifications were real or whether LinkedIn was selectively attempting to block access to promote its own internal services in a way that would not be "within the realm of fair competition." HiQ, like Beagle, had strong commercial interests in fulfilling its contractual obligations to clients who benefited from its services.[3]

AppFolio's opposition attempts to relitigate arguments it already lost twice in Santa Barbara Superior Court. AppFolio advanced its false advertising claims against Beagle there and sought a TRO twice. That court denied it twice, the second time as recently as December 17, 2025. AppFolio also argued in that proceeding that its false advertising claims against Beagle (that are unsubstantiated) were distinct and unrelated to Beagle's request for its own TRO, because Beagle's TRO is based on tortious interference and unfair competition.

AppFolio is presently under an order from the transferor court to preserve the status quo, meaning not to deplatform Beagle as it wishes to do. AppFolio first consented to not deplatform Beagle during a December 15, 2025 hearing from that date through December 22, 2025. Although AppFolio did not deplatform Beagle, it did continue to tell customers it was going to do so on December 16. Then after December 16, AppFolio kept a banner up inside its software telling customers that Beagle was already banned earlier on December 16. This caused Beagle to lose more than $500,000 in revenue in a matter of days.[4] Beagle's customers believed it had already been banned based on AppFolio's continued messaging, despite AppFolio's commitment to the court in the Northern District of California not to do

---

[3] AppFolio attempts to distinguish *HiQ* because the data was public in that case. But that is not why the injunction issued there – the reason was that LinkedIn's desired ban would destroy HiQ's business. Also, here the situation is even worse. AppFolio is attempting to ban Beagle while explicitly stating in its Terms that its customers control their own data and have rights to it. Those customers want Beagle to have access using regular methods and AppFolio is selectively attempting to stop it.

[4] The evidence for this is laid out in Beagle's submission on December 19, 2025, Dkt. 22.

the ban. Then when Judge Martínez-Olguín transferred the case, it was with an order requiring AppFolio maintain the status quo. The transfer order stated as to the alleged violation of the status quo consent:

> *"To the extent Beagle contends that Defendant has failed to maintain status quo through December 22, 2025, as it agreed on the record during the status conference held December 15, 2025, it may raise that issue to the transferee court."* (Dkt. No. 24, p. 7.)

Now the issues are before this Court. Beagle satisfies each *Winter* factor and a TRO is appropriate given the situation while the Court considers a preliminary injunction.

## I. <u>Likelihood of Success on the Merits</u>

First, AppFolio's Opposition does not effectively rebut Beagle's tortious interference and unfair competition claims.

**Tortious interference.** AppFolio is well aware of Beagle's contracts with its customers. A sample is attached to the accompanying declaration of Michael Brown from Beagle. (Brown Decl. ¶ 1.) It is not credible that AppFolio is not aware that Beagle's customers have contracts with Beagle for Beagle to provide its services to those customers. AppFolio is on notice and has been of these contractual obligations through the litigation as well.

AppFolio's goal is to stop Beagle from working with its customers. This is clear based on AppFolio attempting to pitch those customers to stop working with Beagle and switch to Second Nature and AppFolio's in-house products. An example of this as recent as yesterday, December 30, 2025, is enclosed in the Brown Declaration. (Brown Decl. ¶ 2.)

AppFolio's conduct is independently wrongful for multiple reasons. It undertakes its interference through false statements about Beagle being insecure. These statements are reckless and in disregard to the truth—Beagle does not have a single login as AppFolio claims in its papers. Beagle uses sophisticated enterprise security password management

software and multi-factor authentication so that those that work with its customers through AppFolio have permissions that can be revoked. Beagle limits access to only those customer success personnel who need the access. When a person leaves Beagle, their access is revoked. (*See* Declaration of Anthony D'Angelo ¶ 7.) There is zero basis for any of AppFolio's security claims.

AppFolio cannot hide behind its Terms of Use with its own customers. It does not respond to the point that its own Terms say that its customers own their data. It also does not respond to the point made in Beagle's opening brief that AppFolio updated its Terms to create a pretext to target Beagle. LinkedIn tried the same Terms of Use argument and the Ninth Circuit still enjoined LinkedIn from deplatforming HiQ. Even under AppFolio's own Terms, its customers are permitted to allow their own contractors and service providers to create accounts. Indeed, this is happening *en masse* across the AppFolio platform with other vendors, including with Second Nature. AppFolio is selectively attempting to interpret its Terms to only exclude Beagle. This does not provide a defense to tortious interference.

AppFolio has already disrupted over $500,000 in customer contracts. Its threats to deplatform have also slowed down pipeline velocity and cost Beagle numerous deals, amounting to millions of dollars in lost opportunity just in December 2025.

All of AppFolio's tortious interference arguments fall apart under scrutiny.

**Unfair competition.** AppFolio spends much of its brief discussing antitrust law, but Beagle did not move for a TRO or PI based on its antitrust claims. If AppFolio wishes to make a Rule 12 motion, Beagle will respond to it. At this stage, Beagle is only moving for a TRO and PI on tortious interference and Unfair Competition. All Beagle needs to show for its injunction request here is that AppFolio's conduct "significantly threatens or harms competition." *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F. Supp. 3d 1070, 1080 (S.D. Cal. 2024). It does. *HiQ* is instructive here as well. Without analyzing antitrust law, the Ninth Circuit observed that where someone "knew about" the "reliance" on its platform and then planned to create a new product, selective bans of competitors could well be unfair competition under California law. That's what is happening here.

The Fourth Circuit's *Real Time* case is helpful too. (Mot. at 16-17.) AppFolio tries to make that case out to be just about the Cures Act, but there is a separate analysis that the Fourth Circuit looked at as to whether there was unfair competition. There was because the software platform cited security concerns that were actually just a cover for its true motivations of hurting a competitor. AppFolio's attempts to distinguish the Wordpress case also fail. The issue there was an out-of-the-blue ban that reversed course of allowing the plugin at issue to work. That is what AppFolio is attempting to do here.

AppFolio also fails to address the arguments Beagle made that its conduct is fraudulent under the UCL because it is making knowingly false statements about Beagle to justify its threats and ban.

## II. <u>Irreparable Harm</u>

AppFolio's Opposition brief does not dispute that 80% of Beagle's business is on AppFolio. A platform ban would cost Beagle over $10,000,000 in revenue out of the gate and destroy over one hundred million in enterprise value. AppFolio's opposition is also silent on the $500,000+ in lost revenue Beagle has already suffered in the days after AppFolio departed from its consent, on the record, not to alter the status quo. Since AppFolio began making threats, it has impacted over $5,000,000 in lost sales pipeline as well. (Brown Decl. ¶ 4.)

AppFolio attempts to argue that Beagle will not be harmed because it claims there are alternative integration methods. These alternative integration methods are a red herring.

**Scheduled Reports,** AppFolio's primary alternative proposal, will not work and will still result in the destruction of Beagle's business. The whole point of Beagle's value proposition to customers is that they don't have to go through the onerous process of setting up Scheduled Reports in AppFolio. All they have to do is create an account for Beagle and then Beagle handles the rest. The Scheduled Reports also do not provide the necessary information that Beagle needs. This approach makes it so Beagle cannot view the existing insurance policies that relate to specific tenants. Beagle can only see whether coverage

exists in a binary (yes or no) manner, but cannot see and verify coverage amounts, expiration dates, or whether an interested party is listed. It also makes it so Beagle cannot add or remove charges. Beagle would be stuck with a blind binary and cannot actually inspect the underlying policies. It precludes Beagle from fundamental and basic operations that its customers contract with Beagle to manage. The Scheduled Reports approach shifts the labor from Beagle to property managers who are Beagle's customers, inverting the entire Beagle value proposition. AppFolio's emphasis on scheduled reports is disingenuous. (D'Angelo Decl. ¶ 2-3.); (Brown Decl. ¶ 5.)

AppFolio makes much of an email that Beagle sent to customers about Scheduled Reports. This email is obviously, on its face, damage control. It was sent to try to stop customers from panicking—and it didn't even work as Beagle still lost over $500,000 in revenue as well as thousands of doors of lost opportunity. Beagle's sales team has observed over $5,000,000 in deal pipeline leads that either expressed concerns about AppFolio's threats or slowed down deals starting at the time that AppFolio began making its threats. (Brown Decl. ¶ 4.) Beagle has submitted example such messages from existing and potential customers in briefing so far. Of course Beagle would try to send a message telling customers not to worry, but this does not mean that Beagle will not suffer irreparable harm if AppFolio is permitted to actually ban Beagle from its platform.

**API Access.** AppFolio API access does not solve the issue either. AppFolio designed its API so that it would not expose all the data fields that Beagle customers contract with Beagle to manage. AppFolio will simply ban Beagle from use of the API, just as it wishes to ban Beagle from use of its platform. API access is not universally granted by AppFolio and it is likely to throttle and restrict Beagle's access. Implementing a new API would require AppFolio itself to engineer new API endpoints and Beagle to spend months engineering new integrations. (D'Angelo Decl. ¶ 4.) Beagle's customers already contract with Beagle to use a method that is seamless, that works, and that AppFolio supports for many others. (Brown Decl. ¶ 2.)

**AppFolio Marketplace.** Similar issues here. AppFolio will not allow Beagle into

its marketplace. (D'Angelo Decl. ¶ 4.) It already sends customers mass-messages about how they should not use Beagle and making false statements about how Beagle is purportedly insecure. It is not a real or functional solution.

Even if these alternatives could work, and they cannot come close to working, AppFolio should not be permitted to selectively ban Beagle from logging into its platform on behalf of AppFolio's own customers while allowing Second Nature and others to keep using that integration, after allowing Beagle to use the integration for over a year and only starting to make a fuss once Beagle grew in the market.

**Other Domains.** AppFolio also argues that Beagle used other domains and that can be a workaround. This does not make sense, because AppFolio has shown it can detect those domains and will block them too. (D'Angelo Decl. ¶ 6.) AppFolio also tries to argue that using these domains somehow shows Beagle does not deserve injunctive relief against AppFolio's unlawful conduct. But Beagle was justified in using new domains given that AppFolio has been threatening to ban it and that AppFolio actually told customers Beagle was banned after representing to a federal court that it would not ban Beagle. Beagle did not trust AppFolio would hold up its consent, so it had to prepare for the worst. These alternative domains would force Beagle to play a game of whack-a-mole where AppFolio would constantly be disrupting Beagle's contracts and ability to work with its customers. Only a Court injunction that stops AppFolio from deplatforming Beagle, regardless of what domain Beagle uses, would be effective.

## III. Balance of Equities and Public Interest

A TRO and later a PI is merited because AppFolio has allowed Beagle to do what it is doing for over a year. There is no harm to AppFolio from this. It just facilitates lawful competition and AppFolio does not like the fact that customers choose Beagle instead of Second Nature and AppFolio's competing in-house offerings.

AppFolio's attempts to relitigate its false advertising claims that it already lost in an early injunctive relief context in Santa Barbara Superior Court do not justify permitting

AppFolio to deplatform Beagle. Beagle does not claim to be an official partner of AppFolio—it obviously would not make sense to do that given the companies are engaged in a high-profile public litigation. The issue of the domain names is addressed above. It does not change the equities balance, as Beagle had no choice, its customers permitted it to use any domain it wished, and AppFolio allows any domain a customer would want to be used to log into the customers' AppFolio account by its nature.

AppFolio's security concerns are unsupported. Beagle actually has strong enterprise security on its end, using multi-factor authentication, password management tools, and minimizing access to credentials to only those who need it. Beagle regularly rotates its credentials and also disables access for departing employees. AppFolio allows the same type of access that Beagle has to Second Nature and many others and has not raised any security issues. AppFolio can point to no security incident and does not even attempt to do so. (D'Angelo Decl. ¶ 6.)

The Ninth Circuit and other courts that have stopped platform bans while litigation is pending do so because there is a public interest in allowing software companies to service their customers. It is not in the public's interest and it is not equitable to allow a software platform to selectively target competitors who contract with customers that desire the provided services, make up false narratives about those competitors, all to promote their own competing products. The services Beagle provides are not abstract services. They impact thousands of people's lives. Verifying renter's insurance is critical so that if there is a fire, for instance, the building actually is able to cover that damage. Helping a renter set up their utilities and Internet when they move in has a major impact on their day-to-day life.

## II. <u>CONCLUSION</u>

AppFolio, if not enjoined, will upend tens of thousands of renters and a multitude of buildings that rely on Beagle. It will stop at nothing to destroy Beagle's business and unlawfully funnel its customers towards Second Nature and AppFolio's in-house products. AppFolio has already shown its cavalier approach when it told a federal court it would

preserve the status quo and then two days later ran a banner in its software telling customers that Beagle had already been banned. A TRO is supported under *Winter* in this case and is a reasonable measure to continue preserving the status quo until a preliminary injunction determination can be made.

DATED: December 31, 2025

Respectfully Submitted,

By *<u>/s/ Michael Burshteyn</u>*

**GREENBERG TRAURIG, LLP**

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF MICHAEL BROWN IN FURTHER SUPPORT OF PLAINTIFFS' EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION APPLICATION**

# DECLARATION OF MICHAEL BROWN

I, Michael Brown, declare as follows:

1. I am Chief Executive at Big Beagle, Inc. I have personal knowledge of the facts surrounding the present action and Plaintiffs' (collectively referenced as "Beagle") business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.

2. An example of the contracts Beagle has with its customers is attached as **Exhibit A**. AppFolio works with many Beagle customers and should be familiar with Beagle's business and the services Beagle's customers contract for Beagle to do for them. AppFolio has studied Beagle's business and invested in Second Nature, a Beagle competitor, as well as developing its own in-house solutions to compete with Beagle.

3. Attached as **Exhibit B** is a message Beagle received from a customer where AppFolio attempted to persuade that customer to stop using Beagle based on the same types of false statements AppFolio has already made throughout the last few weeks and reflected in the prior messages Beagle has submitted with its papers.

4. In addition to the prior revenue at risk numbers ($10m) and lost revenue numbers ($500,000+) submitted in our prior papers, I have also conducted a careful review of AppFolio's conduct on our sales pipeline at Beagle. A conservative estimate of the deal value of the pipeline that has slowed down or said they would not move forward with Beagle since AppFolio began its platform ban threats earlier in December, 2025 is over $5,000,000 and over 10,000 doors, or individual rental units. These numbers are based on our individual sales leaders pipeline review, slowdown of expected to close deals, and direct communications from customers. Because the majority of Beagle's customers use AppFolio, I believe based on the information and business records I've reviewed that it is likely that AppFolio's platform ban threats are impacting the majority of Beagle's sales pipeline. Because there is no explicit order requiring AppFolio not ban Beagle, the customers we do speak with express confusion and do not believe the Beagle team when

Beagle states that AppFolio has not banned Beagle.

5. The email I sent about alternatives should AppFolio ban Beagle was meant to be damage control to stop customer panic. The idea of using Scheduled Reports is something we might try to pitch customers on if AppFolio were to ban Beagle, but it is not workable. Beagle's value proposition to customers is that they do not have to go through the onerous process of setting up Scheduled Reports in AppFolio. The Scheduled Reports approach shifts the labor from Beagle to property managers who are Beagle's customers, inverting the entire Beagle value proposition. Customers are not excited to sign up for Beagle when we discuss Scheduled Reports.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on December 31, 2025 in Salt Lake City, Utah.

Michael Brown

# EXHIBIT A

Rental Property Managers Association LLC

# MEMBERSHIP AGREEMENT

This is a contract (the "Membership Agreement") between Rental Property Managers Association LLC ("RPMA") and test__________________________ ("Member"). RPMA and Member are referred to collectively as "Parties". Both Parties are bound by the terms of this Membership Agreement. In exchange for valuable consideration, the sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

## 1. Benefits Provided by RPMA to Member

The Member is entitled to the following potential benefits, if selected in the Exhibit to this Agreement and subject to the amounts reflected in the Exhibit to this Agreement.

a. Liability Protections

If selected in the applicable **Lease Addendum**, RPMA will reimburse the **Member** for the following:

i) *Renter Contents* – RPMA will reimburse the **Member** for a maximum of [$A] in the aggregate during the **Lease Term** for the **Actual Cash Value** or **Replacement Cost** (as selected in the **Lease Addendum**) of a **Renter Contents Liability Loss**.

ii) *Renter Premises Legal Liability* – RPMA will reimburse the **Member** for a maximum of [$C] in the aggregate during the **Lease Term** for a **Renter Premises Legal Liability Loss**. As indicated on the **Lease Addendum**, **Bodily Injury** is:

1. excluded from **Renter Premises Legal Liability Loss**; or
2. included in **Renter Premises Legal Liability Loss**, subject to a [$D] sublimit per each **Renter Premises Legal Liability Loss.**

iii) *Accidental Pet Damages* – RPMA will reimburse the **Member** for a maximum of [$E] the aggregate during the **Lease Term** for damage to **Covered Property**, or other property owned or leased by the **Member**, caused by a pet owned or controlled by the **Renter**. However, this reimbursement excludes carpet cleaning and landscaping. RPMA also will reimburse the **Member** for a maximum of [$F] for **Bodily Injury** to others, caused by a pet owned or controlled by the **Renter**. RPMA does not agree to reimburse the **Member** for any cost associated with any legal defense provided to the **Renter** for such matters.

b. Security Deposit

If the "Security Deposit" box is checked in the **Lease Addendum**:

i) RPMA understands that the **Member**, has waived collection of the one-time **Security Deposit** during the **Lease Term**.

ii) RPMA will reimburse **Member** for amounts contractually recoverable from the **Renter** under the **Lease Agreement**, but not more than a total of the equivalent of one month's rent under the **Lease Agreement**.

c. Automated Tenant Communications

i) RPMA will utilize automated technology to promptly notify **Renters**, in the name of the **Member**, of:

1. Overdue rent;
2. Upcoming termination or renewal of the **Lease Term**;
3. Other informational messages reasonably requested by **Member** to be distributed to **Renters.**

d. Beagle Tenant Kit

i) RPMA will provide secure data management and supply the data to preferred vendors offering the benefits:
   1. ID Theft Protection
   2. Credit reporting services
   3. Move in concierge services
   4. Air filter delivery
   5. Marketing material will be provided such as Tenant Flyers and Videos
   6. Pest control services
   7. Deals dashboard

## 2. Defined Terms

a. **Actual Cash Value** means the cost to repair or replace **Renter Contents**, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

b. **Bodily Injury** means bodily injury, bodily harm, sickness, disease, or death of a natural person who is not the **Renter**, directly resulting from a **Renter Premises Legal Liability Loss**.

c. **Covered Property** means the dwelling or unit occupied by the **Renter** and described in the **Lease Agreement**, including any accompanying physical property not owned by the **Renter**, but does not include any dwelling or unit vacant for 30 or more consecutive days.

d. **Lease Addendum** means the addendum provided to the **Renter** in conjunction with the **Lease Agreement** that indicates the benefits selected by the **Renter** and incorporated in to this Membership Agreement.

e. **Lease Agreement** means the contract between the **Member** and the **Renter** governing the **Covered Property**.

f. **Lease Term** means the period reflected on the **Lease Agreement**.

g. **Member** means the landlord, owner, lessor or similarly identified person or entity indicated on the **Lease Agreement**, or entity providing services ancillary to the **Lease Agreement**. The **Member** is limited to the signatory to this Membership Agreement.

h. **Peril** means:

   i. Fire or lightning;
   ii. smoke, but not smoke caused by agricultural smudging or industrial operations;
   iii. explosion;
   iv. accidental discharge or overflow of water or steam;
   v. sprinkler leakage;
   vi. falling objects, but only if the roof or exterior wall of the **Covered Property** is damaged by the falling object, and damage to the falling object itself is not covered;
   vii. freezing of plumbing, heating or air conditioning;
   viii. discharge or overflow from appliances;
   ix. weight of **Renter's** personal property, but not for purposes of a **Renter Contents Liability Loss**;
   x. the unlawful taking of property within premises that has been closed and in which there are visible marks evidencing forcible entry (burglary), but only if a police report was promptly filed by the **Renter**, and this does not include mysterious disappearance, or lost or misplaced property; Proof of purchase is required.
   xi. riot and civil commotion; or
   xii. collapse of the building if directly caused by any of the aforementioned

**Peril** does not include any:

xiii. ordinance or law, the compliance with which results in the theft or destruction of **Renter Contents**;
xiv. earth movement, including earthquake, landslide, or sink hole;
xv. named storm or flood within a flood zone;
xvi. electrical power failure;
xvii. war, including undeclared war, civil war, insurrection, rebellion, or revolution;
xviii. nuclear hazard, however caused; or
xix. action caused by the **Renter** or the **Renter's** guests or agents, whether intentionally, recklessly, or negligently, provided that this is a **Peril** for purposes of **Renter Premises Legal Liability Loss**.
xx. Sewage or septic overflow

i. **Property Damage** means the damage to, destruction of, or loss of use of the specific part of the **Covered Property** or other property owned or leased by the **Member**, and does not include any:

i. contractual or vicarious liability;

ii. normal wear and tear;

iii. property owned by the **Renter**; or

iv. damage to, destruction of, or loss of use due to:

1. the ownership, maintenance, occupancy, operation, use, loading or unloading of any motorized vehicle;

2. actions expected or intended by a **Renter** over the age of 13, even if the resulting damage is of a different kind, quality or degree than initially expected or intended;

3. any business conducted or engaged in by the **Renter**, whether or not the business is owned or operated by the **Renter**, or employs the **Renter**; or

4. war including undeclared war, civil war, insurrection, rebellion, or revolution.

If Accidental Pet Damage is selected, **Property Damage** includes damage directly resulting from a pet owned or controlled by the **Renter**.

j. **Renter** means the renter, resident, lessee or similarly identified person or entity indicated on the **Lease Agreement**.

k. **Renter Contents** means personal property owned by the **Renter**, but does not include:

i. animals, birds, or fish;
ii. motorized vehicles or trailers;
iii. property owned by any roomer, boarder, or guest;
iv. commercial or business property;
v. property rented or held for rental to others by the **Renter**; or
vi. electronic data, however, **Renter Contents** does include blank storage media.

l. **Renter Contents Liability Loss** means the **Actual Cash Value** or **Replacement Cost** due to burglary or destruction of **Renter Contents** due to a **Peril** located within the **Covered Property**. **Renter Contents Liability Loss** cannot exceed:

i. $200 for money, bank notes, negotiable instruments, bullion, gold other than goldware, silver other than silverware, platinum, coins, medals, and numismatic property;

ii. $500 for any one item subject to a maximum of $1,000 for loss by burglary of jewelry, watches, furs, precious and semi-precious stones;
iii. $500 for loss by burglary of firearms or accessories;
iv. $500 on electronic data processing equipment and the recording or storage software used with such equipment; and
v. $1,000 for loss by burglary of tools while at the residence premises unless considered business personal property.

m. **Renter Premises Legal Liability Loss** means:

i. settlements or judgments fully or partially resolving the **Renter's** liability for **Property Damage** resulting from a **Peril**; and

ii. the cost of a lawyer, selected by the **Member**, to defend the **Renter** from liability for **Property Damage** resulting from a **Peril**.

Provided, the **Member** shall not accept any further obligation to settle or defend the **Renter** once the **Member** has paid the maximum amount of **Renter Premises Legal Liability Loss** selected by the **Renter** on the **Lease Addendum**. Further provided, **Renter Premises Legal Liability Loss** does not include amounts incurred by or on behalf of any person or entity other than the **Renter**, unless constituting covered **Bodily Injury**.

If Accidental Pet Damages is selected, **Bodily Injury** and **Peril** include injury directly resulting from a pet owned or controlled by the **Renter**.

n. **Replacement Cost** means the cost to repair or replace **Renter Contents**, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, without a deduction for deterioration, depreciation and obsolescence.

o. **Security Deposit** means the amount indicated as the Security Deposit on the **Lease Agreement**.

## 3. Member's Obligations

a. As an express condition precedent to RPMA's obligation to pay a **Renter Contents Liability Loss**, the **Member** must:

i. provide written notice to the **RPMA** of any **Renter Contents Liability Loss** as soon as possible, and not later than 60 days following the cessation of the **Peril**;

ii. protect **Renter Contents** from further loss; and

iii. send RPMA, within 60 days of RPMA's request, a sworn affidavit setting forth the following to the best of the **Member's** knowledge and belief:

1. the time and date of the **Peril**;
2. the interests of all **Renters** and all others in the **Renter Contents**, including all liens on the **Renter Contents**;
3. the identity of any insurance that may provide coverage for the **Renter Contents**; and
4. a detailed inventory of all claimed **Renter Contents** and value claimed by the **Renter**.

b. As an express condition precedent to RPMA's obligation to pay a **Renter Premises Legal Liability Loss**, the **Renter** must:

i. provide written notice to RPMA of any written or oral demand or assertion that the **Renter** may be liable for **Renter Premises Legal Liability Loss** as soon as possible and thereafter:

   1. promptly forward to RPMA every notice, demand, summons or other process relating to the **Renter Premises Legal Liability Loss**;

ii. provide written notice to RPMA of any **Property Damage** knowingly caused by the **Renter** (or any pet owned or controlled by the **Renter**) as soon as possible, and not later than 60 days following the **Member's** knowledge of the **Property Damage**;

iii. not voluntarily make any payment, assume any obligation, make any admission, or incur any expense in connection with any **Property Damage**;

iv. send RPMA, within 60 days of RPMA's request, a sworn affidavit setting forth the following to the best of the **Member's** knowledge and belief:

   1. the time and date of the **Peril**;
   2. any reasonably available information concerning the time, place and circumstances of the **Property Damage**;
   3. the names and addresses of any witnesses to the **Property Damage** and the **Peril**; and
   4. the identity of any insurance that may provide coverage for the **Property Damage**; and

v. fully cooperate with RMPA's investigation, settlement, and defense of any claim or suit based upon or arising out of the **Property Damage** or **Peril**, including assisting with:

   1. securing and giving evidence;
   2. attending depositions, hearings, mediations, and trials.
   3. obtaining the attendance and testimony of witnesses; and
   4. enforcing any right of contribution or indemnity against any person or entity potentially liable to the **Renter**.

4. Subrogation

   a. Upon any payment by RPMA to **Member**, RPMA shall be subrogated to all of **Member's** rights against the **Renter** and may commence action against the **Renter** in **Member's** name.
   b. If **Member** receives payment by or on behalf of the **Renter** for any amount reimbursed by RPMA, **Member** shall immediately remit same to RPMA.
   **c.** Upon payment of **Renter Contents Liability Loss**, RPMA is deemed to have been transferred unencumbered title in the **Renter Contents** by the **Member**.

5. Other Terms

   a. The Member and the **Renter** must be separate unrelated entities. The **Member** must not be a direct or indirect, full or partial, owner of the **Renter**.
   b. This Membership Agreement shall have a twelve month term commencing on the last date both Parties have executed this Membership Agreement, and will automatically renew for additional twelve month terms until written notice of cancellation is provided to the other Party with thirty days' notice before such cancellation shall be effective.

c. RPMA is not an insurer and this Membership Agreement is not insurance. This Membership Agreement is a contract between the Parties dictating the rights and obligation of the Parties.

READ AND AGREED BY:

| | |
|---|---|
| **Rental Property Managers Association LLC** | test |
| Signed: Nicolas Laqua | Signed: test test |
| Name: Nicolas Laqua | Name: test test |
| Position: Manager | Position: test |
| Date: 13th day of October , 20 25 | Date: 13th day of October , 20 25 |

# Rental Property Managers Association LLC

## MEMBERSHIP AGREEMENT

## EXHIBIT – BENEFIT SELECTIONS

Please check the applicable box to select the following Benefits and fill in the respecting amounts.

☐ a.i) Renter Contents

☐ **Actual Cash Value (in excess of $500)** only;

☐ **Replacement Cost (in excess of $250)** only; or

☐ as indicated on **Lease Addendum**

Indicate:
[A] – Maximum aggregate during **Lease Term** $

☐ a.ii) Renter Premises Legal Liability

**Bodily Injury** is:

☐ included only;

☐ excluded only; or

☐ as indicated on **Lease Addendum**

Indicate:
[C] – Maximum aggregate during **Lease Term** $

☐ a.iii) Accidental Pet Damage

**Bodily Injury** is:

☐ included only;

☐ excluded only; or

☐ as indicated on **Lease Addendum**

Indicate:
[E] – Maximum aggregate during **Lease Term** $
[F] – **Bodily Injury** Maximum aggregate during **Lease Term** $

☐ b. Security Deposit

☐ c. Automated Tenant Communications

☐ d. Beagle Tenant Kit

# EXHIBIT B

---------- Forwarded message ---------
From: **Arjun Vivek** <arjun-vivek@beagleforpm.com>
Date: Tue, Dec 30, 2025 at 6:31 PM
Subject: Fwd: Disabling FolioGuard
To: Bryce Hase <bryce@beagleforpm.com>

On Tue, Dec 30, 2025 at 6:06 PM [redacted] wrote:

Hi Arjun,

Sorry to bother you, but I'd like to respond to AppFolio on this and I'm fairly certain Beagle has some information as to the inaccuracies in what they're saying because this rings of the "beware of Beagle" message they sent out a couple of weeks ago. If you have a canned response that addresses this, please send or give me a call so that we can discuss.

From AppFolio:

" Hi [redacted]

This is Lisa with Appfolio Customer Care. I'm happy to help!

Before I send this case over to the team that would disable Folioguard, I need to make you aware of a few important details. I see that a user role has been created for Beagle in your database.

**AppFolio does not partner with Beagle and has no plans to integrate with their solutions. Any claims regarding a partnership are not true.**

All of our integration partners undergo a rigorous security and compliance vetting process. We evaluate every partner to ensure your technology ecosystem is not only secure but also optimized for your business and the customer experience.

To keep our ecosystem and your business safe, we cannot allow Beagle's noncompliant access. ***By creating user accounts in your database, Beagle has the ability to access the personally identifiable information of your residents, issue payments through the AppFolio payments platform and view and take action across your entire account database.***

We value your ability to choose the providers that work best for your business. Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports.

The method by which Beagle has chosen to operate their business places your business at risk and violates our Terms of Service. As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences.

Let me know if you have any questions and how you would like to proceed.

Best,
Lisa

Lisa C • 11m

I just tried to give you a phone all at 661-303-0253. I went to voicemail so I left a message. I will be logging off shortly but will follow up with you first thing tomorrow morning to assist you with your request.

Thank you for your understanding and have a nice evening!"

**Best regards,**

[redacted]

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

**DECLARATION OF ANTHONY D'ANGELO IN FURTHER SUPPORT OF PLAINTIFFS' EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION APPLICATION**

# DECLARATION OF ANTHONY D'ANGELO

I, Anthony D'Angelo, declare as follows:

1. I am the Chief Executive Officer for Beagle Labs, Inc. I have personal knowledge of the facts surrounding the present action and Plaintiffs' (collectively, "Beagle") business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.

2. If AppFolio bans Beagle from its platform, this will impact over 80% of Beagle's business. The alternative methods AppFolio claims will work are not viable.

3. Scheduled Reports, AppFolio's primary alternative proposal, will not work and will still result in the destruction of Beagle's business. The Scheduled Reports also do not provide the necessary information that Beagle needs. This approach makes it so Beagle cannot view the existing insurance policies that relate to specific tenants. Beagle can only see whether coverage exists in a binary (yes or no) manner, but cannot see and verify coverage amounts, expiration dates, or whether an interested party is listed. It also makes it so Beagle cannot add or remove charges. Beagle would be stuck with a blind binary and cannot actually inspect the underlying policies. It precludes Beagle from fundamental and basic operations that its customers contract with Beagle to manage. Beagle would not be able to compete with others like Second Nature who do not have to rely on the limited Scheduled Reports functionality if AppFolio selectively banned Beagle from its platform.

4. The Beagle team has extensively studied AppFolio's API as a potential alternative, but this too is unworkable. AppFolio designed its API so that it would not expose all the data fields that Beagle customers contract with Beagle to manage. AppFolio will simply ban Beagle from use of the API, just as it wishes to ban Beagle from use of its platform. API access is not universally granted by AppFolio and it is likely to throttle and restrict Beagle's access. Implementing a new API would require AppFolio itself to engineer new API endpoints and Beagle to spend months engineering new integrations.

5. AppFolio will be able to restrict Beagle from its marketplace as well, just as

with its API, and has already stated to customers it has no intent of ever partnering with Beagle. The marketplace will not permit Beagle the access it needs that customers contract with Beagle to provide, similar to Scheduled Reports limitations.

6. To the extent Beagle has used other domains than those with Beagle in the name, Beagle only has done so in the face of AppFolio's threats to ban Beagle and inconsistent actions with the consent not to change the status quo that it previously committed to. Those other domains would not survive if AppFolio was permitted to ban Beagle from its platform. Beagle's customers consent to Beagle's use of whatever domain Beagle uses and contract with Beagle so that we can provide services to them using domains to log into AppFolio. This is how the platform has worked since we began using it and how it works for many other third parties, including Second Nature.

7. Beagle adopts security measures including password management and multi-factor authentication, as well as limiting access to credentials to those that need it on its team. It is not correct that Beagle's implementation of AppFolio results in sharing a single credential across Beagle's entire company. When a person leaves Beagle, Beagle's team revokes their access to any credentials, including those for AppFolio that Beagle's customers provide. Beagle also rotates the credentials it needs to service its customer contracts periodically in line with enterprise security best practices. AppFolio, despite claiming that Beagle is not secure, has not pointed to any security incident or breach that has occurred. Beagle's integration is no different than others' that AppFolio permits.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on December 31 in Chicago, Illinois.



Anthony D'Angelo