**Case No. 26-769**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

BEAGLE LABS, INC.; BEAGLE TECHNOLOGIES, INC.; BIG BEAGLE, INC.; RENTAL PROPERTY MANAGERS ASSOCIATION LLC; and YRIG RISK RETENTION GROUP, INC.,
Plaintiffs-Appellants,

v.

APPFOLIO, INC.,
Defendant-Appellee.

---

Appeal from the United States District Court for the Central District of California
Case No. 2:25-cv-12248-JFW-SSC
Honorable John F. Walter

---

**APPELLANTS' EXCERPTS OF RECORD VOLUME 4 OF 4**

---

Michael Burshteyn
Marcelo Barros
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 590-5141

Jake Evans (pro hac vice)
Jordana R. Sternberg (pro hac vice)
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE, Suite 2500, Terminus 200
Atlanta, GA 30305
Telephone: (678) 553-2100

*Counsel for Plaintiffs-Appellants*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. **25-cv-106 0-AMO**

**DECLARATION OF MARCELO BARROS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER ENUE**

**DECLARATION OF MARCELO BARROS**

I, Marcelos Barros, declare as follows:

1. I am an attorney at law with the law firm Greenberg Traurig, LLP ("GT"), counsel of record for Plaintiffs in the above-captioned matter. I make this declaration in support of Plaintiffs' Opposition to Motion to Transfer Venue. Except where indicated on information and belief, the matters set forth herein are based upon my personal knowledge. If called as a witness, I could and would testify competently to the facts stated.

2. On December 15, 2025, my colleague Michael Burshteyn and I attended the hearing in Santa Barbara County Superior Court on AppFolio's second application for a temporary restraining order against two Beagle entities. Judge Geck denied AppFolio's TRO request. During that hearing, AppFolio's counsel represented that AppFolio's TRO sought in state court was distinct from Plaintiffs' TRO pending before this Court.

3. **Exhibit A** is a true and correct copy of a webpage from AppFolio's careers site showing open roles for remote positions in San Francisco, California, available at https://jobs.jobvite.com/appfolio/jobs. I accessed and captured this webpage on December 19, 2025.

4. **Exhibit B** is a true and correct copy of a webpage from AppFolio's careers site showing information about AppFolio's Bay Area Remote Hub, available at https://www.appfolio.com/company/careers_Locations. I accessed and captured this webpage on December 19, 2025.

5. The statements above are true and correct to the best of my knowledge.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. This declaration was executed on this 19th day of December 2025 in Albany, California.

*<u>/s Marcelo Barros</u>*

Marcelo Barros

# EXHIBIT A

Introducing Real Estate Performance Management. **Learn More.** Login Contact Us

Products Why AppFolio Resources Pricing **Book a Free Demo**

# Make your move at AppFolio

Sign Up For Job Alerts

Showing only Remote - San Francisco, CA. View All

| | |
|---|---|
| Director, Corporate Finance | 5 Locations |
| Mobile Software Engineer II | 7 Locations |
| Real-Time Data Engineer II | 8 Locations |
| Software Engineer II - Accounting | 8 Locations |
| Software Engineer II - Investment Manager | 8 Locations |
| Sr. Campaign Manager | 8 Locations |
| Sr. Deal Desk Manager | 3 Locations |
| Sr. Internal Audit Manager | 4 Locations |
| Sr. Machine Learning Engineer - Realm-X | 9 Locations |
| Sr. Product Manager | 8 Locations |
| Sr. Site Reliability Engineer - Observability | 9 Locations |
| Sr. Site Reliability Engineer - Observability | 9 Locations |
| Sr. Software Engineer - Data Query | 8 Locations |
| Sr. Software Engineer - Mixed Portfolio Foundation | 9 Locations |
| Sr. Software Engineer - Platform/CI | 8 Locations |
| Sr. Tax Manager | 4 Locations |
| Staff Data Science Engineer, Data Operations | 5 Locations |
| Staff Software Engineer - Communications | 9 Locations |
| Staff Software Engineer, Enterprise Data Integration | 8 Locations |
| SVP, Client Services | 8 Locations |
| Technical Product Manager - Developer Productivity | 8 Locations |

1-21 of 21

powered by JOBVITE

Learn more and stay connected

LinkedIn 'GLASSDOOR COMPARABLY

**Product**

PROPERTY MANAGEMENT

- Overview
- Workflow Automation
- Resident Experience
- Accounting & Reporting
- Marketing & Leasing
- Maintenance
- Communication & Service
- Integrations & Partnerships

MORE FROM APPFOLIO

- Investment Management
- Realm-X AI
- What's New

**Solutions**

- Single-Family
- Multifamily
- Student Housing
- Affordable Housing
- Community Associations
- Commercial
- Investment Management

**Pricing**

- Property Management
- Investment Management

Book a Free Demo

Contact Us

**Our Company**

- Who We Are
- Careers
- Diversity & Inclusion
- Investor Relations ↗

**Resources**

- Blog
- Events
- Newsroom
- Contact Us

**Why AppFolio**

- Performance Method
- Customer Experience
- Customer Stories
- Customer Trust

**Login**

- Property Manager Login
- Investment Manager Login
- Resident Portal Login
- Owner Portal Login
- Vendor Portal Login
- Investor Portal Login

© 2025 AppFolio, Inc Privacy Notice ↗ Do Not Sell or Share My Personal Information ↗

# EXHIBIT B

# Your Key to an Extraordinary Career

At AppFolio, we're a community of dreamers, big thinkers, problem solvers, active listeners, and multipliers.

We own our potential and inspire one another to do the most meaningful work of our careers.

Together, we have the power to transform our industry with a relentless drive to do better.

Search Open Roles




# What Makes Us AppFolio

**Grow**

We enable a culture where big thinkers and problem solvers thrive. We recognize and reward AppFolians who deliver meaningful work and drive results, powering individual growth alongside company success.

**Learn**

We invest in you from day one by empowering a community of active listeners and multipliers. Through coaching, mentorship, and dedicated time and tools for development, we cultivate a culture that is inspired and equipped to power the future of our industry.

Impact

We innovate with purpose, connected by our values to be a force for good. The knowledge we gather from our customers, our communities, and each other inspires our relentless drive to do better.

Introducing Real Estate Performance Management. **Learn More.** Login Contact Us

appfolio

Products
Why AppFolio
Resources
Pricing

Book a Free Demo

# Living the AppFolian Way

The AppFolian Way is a promise all AppFolians make to each other about how we'll show up each day – for our teams, for our customers, and for ourselves.

Paddle as One

Customer Obsessed

Raise the Bar

Set the Pace

Deliver Results

About Us Locations Benefits Inclusion Interview Guide

We solve for our customers and our business above all.

We embrace change together and lead through uncertainty.

# Flexible Work, Collaborative Teams

We foster an inclusive and connected culture that fuels high performance, innovation, and collaboration, set up to support you in doing your best work no matter where you are. Most roles enjoy the flexibility to work from home when they need to, and in-person when it matters most. And all AppFolians get to experience our unique traditions and perks.

Wherever we are, we believe spending time together sparks innovation, drives customer success, and keeps us connected.

Search Open Roles



Office Hubs

Remote Hubs

## Remote Hubs

Whether it's through co-working in shared spaces, participating in team-building activities, or giving back with volunteer events, our Remote Hubs bring AppFolians together in meaningful ways. Located in five dynamic cities—Atlanta, the Bay Area, Chicago, Denver, and Washington, D.C.—these hubs are where current and future team members can collaborate, connect, and make a lasting impact.
















Search Open Roles

# Benefits for Your Best Life

At AppFolio, our benefits support your whole self—across health, finances, and work-life balance—today and for the long term.




**Health and Wellness** +

**Financial Wellbeing** +

**Time Off and Leaves** +

**Beyond Benefits** +

Search Open Roles

Ashleigh_(

# "We have an innovative product! We're progressive, creative, and very focused on helping our customers."

**Ashleigh Gallego**
Senior Manager, Sales, Santa Barbara, Joined in 2013

Learn More About Why We're a Great Place to Work

## Inclusion Sparks Innovation

We're committed to fostering diversity, inclusion, and equity at AppFolio because unique perspectives make us a stronger company.

Our Commitment to a Diverse, Equitable, and Inclusive Workplace

Benefits_for_Best_Life

# Creating a Brighter Future

AppFolio is actively working to improve access to affordable housing by partnering with Habitat for Humanity in a long-term effort to address the challenges faced by our customers and communities.

How We're Giving Back

PROPERTY MANAGEMENT

Overview

Workflow Automation

Resident Experience

Accounting & Reporting

Marketing & Leasing

Maintenance

Communication & Service

Integrations & Partnerships

MORE FROM APPFOLIO

Investment Management

Realm-X AI

What's New

**Solutions**

Single-Family

Multifamily

Student Housing

Affordable Housing

Community Associations

Commercial

Investment Management

**Pricing**

Property Management

Investment Management

**Our Company**

Who We Are

Careers

Diversity & Inclusion

Investor Relations ↗

**Resources**

Blog

Events

Newsroom

Contact Us

**Why AppFolio**

Performance Method

Customer Experience

Customer Stories

Customer Trust

**Login**

Property Manager Login

Investment Manager Login

Resident Portal Login

Owner Portal Login

Vendor Portal Login

Investor Portal Login

Book a Free Demo

Contact Us

© 2025 AppFolio, Inc

Privacy Notice ↗

Do Not Sell or Share My Personal Information ↗

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 3:25-cv-10670-AMO Beagle Labs, Inc. et al v. AppFolio, Inc. Status Conference |
| **Date:** | Monday, December 15, 2025 4:01:30 PM |

***EXTERNAL TO GT***

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**California Northern District**

## Notice of Electronic Filing

The following transaction was entered on 12/15/2025 at 4:00 PM PST and filed on 12/15/2025

| | |
|---|---|
| **Case Name:** | Beagle Labs, Inc. et al v. AppFolio, Inc. |
| **Case Number:** | 3:25-cv-10670-AMO |
| **Filer:** | |
| **Document Number:** | 15(No document attached) |

**Docket Text:**
**Minute Entry for proceedings held before Judge Araceli Martinez-Olguin: Status Conference held on 12/15/2025. Parties to submit blind briefs regarding venue, no longer than 5 pages, by no later than 12:00 PM PST on 12/19/2025. On Defendant's agreement, status quo to be maintained through 12/22/2025.**

**Total Time in Court: 13 minutes.**
**Court Reporter: Recorded via Zoom.**

**Plaintiff Attorney: Michael Burshteyn and Marcelo Barros.**
**Defendant Attorney: Jeremiah Levine and Martin Pritikin.**
***(This is a text-only entry generated by the court. There is no document associated with this entry.)*** **(ads, COURT STAFF) (Date Filed: 12/15/2025)**

**3:25-cv-10670-AMO Notice has been electronically mailed to:**

**Martin Howard Pritikin     marty@procel-law.com**

**Michael Burshteyn     michael.burshteyn@gtlaw.com, knightj@gtlaw.com, michael--burshteyn-5563@ecf.pacerpro.com**

**3:25-cv-10670-AMO Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEAGLE LABS, INC., et al.,

Plaintiffs,

v.

APPFOLIO, INC.,

Defendant.

Case No. 25-cv-10670-AMO

**ORDER SETTING STATUS CONFERENCE RE MOTION FOR EX PARTE RESTRAINING ORDER**

Re: Dkt. No. 4

Before the Court is a motion for an ex parte temporary restraining order ("TRO") filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. The Court hereby sets a status conference for today, **December 15, 2025 at 3:30 p.m. via Zoom**. At the status conference, the parties should be prepared to discuss the timing of Defendant AppFolio, Inc.'s response to the TRO motion, whether Defendant will voluntarily agree to maintain the status quo for a short period of time to permit consideration of Plaintiffs' request on an adequate record and with sufficient briefing, Defendant's position on converting the TRO to a preliminary injunction motion to heard on a longer timeline while maintaining the current status quo, and why the case should not be transferred, pursuant to 28 U.S.C. § 1404(a),[1] to the United States District Court for the Central District of California, where among other things, Defendant has its principal place of business and is litigating its own action against Plaintiffs in state court. *See* Complaint (Dkt. No. 1) ¶¶ 17, 43 n.2.

[1] The statute provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Plaintiffs shall serve a copy of their moving papers and this order on Defendant, and file a certificate of service, by no later than **11:00 a.m. today, December 15, 2025.**

**IT IS SO ORDERED.**

Dated: December 15, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC., a California corporation,<br><br>Defendant. | CASE NO.<br><br>**PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

Case: 26-769, 04/07/2026, DktEntry: 11.5, Page 22 of 185

# I. INTRODUCTION

Unless this Court enjoins AppFolio, Inc. within the next 24 hours, this Tuesday December 16, 2025, AppFolio will destroy Beagle's business[1] through unlawful tortious interference with contract, violation of California's Unfair Competition Law and multiple federal statutes and common law doctrines.

AppFolio plans to block Beagle's access to its customers' data inside the AppFolio app on December 16, 2025. This is critical data that Beagle's customers own, that they contract with Beagle for access so that Beagle can provide vital services to renters across America, such as insurance for catastrophes like fire, and that Beagle has accessed lawfully with AppFolio's knowledge for over a year.

AppFolio's action will immediately destroy more than 80% of Beagle's business, valued in excess of hundreds of millions of dollars. It will be an extinction-level event for Beagle and cause it irreparable harm to its reputation, countless customer relationships, and put renters across the country at risk.

AppFolio is committed to its unlawful data-blocking plan and has refused to change course. It is doing so for one reason only: Beagle is growing and winning through fair market competition despite AppFolio's attempts to build its own copy-cat solution. AppFolio has now decided that instead of competing fairly, it will target Beagle and block its lawful access to customer data.

The Ninth Circuit has made clear that data blocking and targeting a competitor in precisely the way AppFolio plans to do is unlawful. *See WPEngine, Inc. v. Automattic Inc.,* No. 24-CV-06917-AMO, 2024 WL 5077610, at *16 (N.D. Cal. Dec. 10, 2024) (granting injunctive relief enjoining defendant from "blocking, disabling, or interfering with [plaintiff's] and/or its . . . customers' . . . access to wordpress.org" and from otherwise interfering with plaintiff's use of websites built with defendant's software, finding that "the termination of WPEngine's access to WordPress, the interference with the ACF plugin, and the additional burdens imposed on WPEngine's customers . . . demonstrates that WPEngine has a significant interest in obtaining preliminary injunctive relief"); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (affirming preliminary injunctive relief that required LinkedIn to "remove any existing technical barriers to hiQ's access" and "to refrain from putting in place any legal or technical measures

[1] Plaintiffs are Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. ("Beagle").

with the effect of blocking hiQ's access").[2]

Beagle consequently seeks a narrow injunction to stop AppFolio from unilaterally pulling the rug out from residential real-estate buildings across America and blocking their ability to use Beagle's services that they use on a daily basis. All the *Winters* factors support granting emergency relief here:

**First,** Beagle is likely to succeed on its claims for tortious interference and violation of California' UCL because AppFolio has no legitimate basis for its threatened action. Beagle's customers create accounts for Beagle to use in AppFolio—something AppFolio explicitly designed its platform to allow. The platform permits customers to create accounts for building employees, contractors, and vendors like Beagle. Many other third-parties use the exact same workflow as Beagle, including a company called Second Source that AppFolio works with to compete against Beagle.

AppFolio has lied to customers claiming that Beagle poses security risks, but this is a fabricated pretext. It is incoherent given that Beagle does not even create the accounts at issue, its customers do, and there is no automation or technical circumvention involved. Nor can AppFolio point to any security incidents or risks. AppFolio's planned blocking measures will interfere with customer contracts that comprise over 80% of Beagle's business, implicating more than $10 million dollars in revenue and hundreds of millions of dollars in enterprise value. AppFolio is doing this for no other reason than to unfairly promote its own competing service.

**Second**, Beagle will be irreparably harmed if AppFolio is allowed to enact its pretextual targeting plan. Beagle will immediately lose the ability to service all of its customers who use AppFolio. This is more than 80% of Beagle's business. This is precisely the sort of extinction level event that the Ninth Circuit has found merits emergency relief. Beagle's reputation in the market will be eviscerated on Tuesday if AppFolio is permitted to proceed—no amount of money in a judgment later on will remedy this. Beagle will be unable to perform the obligations its customers contracted with it to perform. This will leave thousands of renters in the lurch who rely on services Beagle facilitates for things like fire

[2] *See also Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 215 (4th Cir. 2025) (affirming injunctive relief enjoining defendant from blocking plaintiff where "for roughly eight years, [plaintiff] accessed [defendant]'s systems using bots without [defendant] raising any concerns about the practice" even though "the standard agreement [defendant] has used with its customers for at least five years instructed that" customers shall not use or permit bots).

insurance, plumbing services, electrical services, and other critical day-to-day necessities.

**Third**, the balance of equities leans heavily in Beagle's favor. AppFolio has known about Beagle and its operations for over a year. The two companies discussed a potential partnership as long ago as November 2024. AppFolio has manufactured urgency with no basis, insisting on the December 16, 2025 date. AppFolio tried to file an sweepingly overbroad TRO of its own to restrain Beagle from even talking to AppFolio's customers several days ago in Santa Barbara Superior Court.[3] The Superior Court denied AppFolio's TRO.

**Fourth**, the public interest supports Beagle's request for emergency relief. Renters should not have access to vital services cut off overnight. Further, online platforms that contain data belonging to their customers (here, data such as renter names and rent prices—nothing proprietary to AppFolio) should not be permitted to block competitor access to that data based on pretextual targeting. Allowing AppFolio to proceed would throw the Internet economy into chaos, as companies like mobile app stores, payment processors, social media platforms, and others would simply block any competitor that is gaining traction from access. This is not and should not be the law.

Beagle seeks a very narrow TRO that maintains the status quo—the status quo that has existed for over a year and has been driven by the market and AppFolio's own customers who select Beagle.

Beagle's request serves the most essential purpose of a TRO: to preserve the status quo and prevent AppFolio from destroying Beagle while this Court considers the merits. Courts, including this one, have repeatedly enjoined dominant platforms from terminating data access in precisely these circumstances, where the cutoff threatens immediate, irreparable harm to an existing business and interferes with customer relationships, and where the platform's asserted justifications are pretextual and constitute unlawful targeting.

If AppFolio abruptly severs Beagle's access to its customers, as it says it plans to do, this will immediately wipe out Beagle's ability to serve the vast majority of its customers, causing Beagle to breach existing contracts with those customers. This would likely force Beagle out of business altogether.

Notably, AppFolio's threatened shutdown is not motivated by security, privacy, or system integrity

[3] AppFolio filed in state court and did not assert federal claims. (Santa Barbara Superior, Case no. 25CV07670.)

concerns. There is no emergency for AppFolio.[4] Rather, AppFolio's threat is part of a coordinated campaign to target Beagle as a competitor, falsely label Beagle as a security risk, pressure shared customers to abandon Beagle's services, and foreclose competition in downstream markets that depend on access to AppFolio's platform.

Absent emergency relief, Beagle faces an existential threat to its business that cannot be remedied later by payment of damages. Although Beagle would have preferred to avoid requesting the Court's intervention, the alternative would be immediate extinction of a giant painstakingly built business beloved in the market this Tuesday December 16, 2025. Given the timing, the Court can put a narrow TRO in place to preserve the status quo before Tuesday while the parties prepare for a preliminary injunction hearing.

## II. FACTUAL BACKGROUND[5]

### A. Beagle's Innovative Offering is Winning in the Market.




Beagle provides insurance-related compliance services to property managers nationwide, including tenant liability waiver programs, renters' insurance verification, deposit alternative services, and pet damage waiver offerings. These services help property managers satisfy lease requirements, manage risk, and provide cost-effective protection to renters. Beagle's platform serves over 40,000 properties in all 50 states and helps property managers ensure coverage compliance, automate administrative tasks, and unlock new revenue streams. Property managers throughout the country voluntarily select Beagle because they prefer Beagle's products and service model over competing offerings, and they report real operational benefits:[6]

---

[5] The declarations of Anthony D'Angelo and Michael Brown, submitted concurrently here, support Beagle's factual allegations.

[6] https://www.joinbeagle.com/beagle-vs-second-nature (last visited 12-14-2025) (Declaration of Marcelo

To administer these programs, Beagle needs access to limited categories of the property managers' operational data, including tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status. Property managers and their residents store and use this data for a wide variety of purposes through AppFolio's platform. AppFolio does not own or create this data; rather, AppFolio merely hosts the data on its software platform. In fact, AppFolio's terms and conditions specifically provide: "You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. *You will retain all right, title and interest in and to your data*." (Declaration of Michael Brown ISO TRO ("Brown Decl.") Ex. A at 2 (2025 AppFolio Terms and Conditions, Section 1.4) (emphasis added).)

**B. AppFolio's User Account System Permits Beagle's Access.**

AppFolio is one of the principal providers of property management software in the United States. Industry research consistently ranks AppFolio among the largest property management SaaS vendors. AppFolio's gateway position in this market gives it substantial control over access to customer property data. For years, Beagle has relied on transparent, legitimate, customer-authorized access to the AppFolio Property Manager ("APM") platform pursuant to AppFolio's ordinary login and data-access functionality, with the express authorization of AppFolio's users. Beagle uses this access to provide insurance-related compliance services selected by hundreds of property managers and relied upon by thousands of renters. Beagle does not hack AppFolio, evade technical safeguards, scrape public data, or circumvent any security measures. Instead, Beagle provides a "soft" integration that operates exactly as AppFolio's customers direct it to operate, through channels AppFolio provides for this purpose.

In fact, AppFolio built its software so that property managers can permit outside vendors to see their information. Using AppFolio's system, a property manager can create separate user accounts for employees, accountants, auditors, or outside service providers and choose what each user is permitted to view or do. In fact, AppFolio's website touts this as an advantage of using their platform:[7]

---

Barros ("Barros Decl.") Ex. A).

[7] https://www.appfolio.com/property-manager/communication-service (last visited 12-14-2025) (Barros Decl., Ex. B).

**Online Portal for Vendors**
Give vendors access to view work order details, upload invoices, add notes and photos, and mark their work as complete all within the fully mobile Vendor Portal in AppFolio.

In addition, AppFolio's terms and conditions further state: "You are solely responsible for determining the appropriate set-up and configuration of the Services." Indeed, Second Nature, a company that AppFolio has promoted as an alternative to Beagle, accesses AppFolio in the same way that Beagle does.

Beagle's access works through these permissions that AppFolio has provided. Property managers themselves create a separate AppFolio user account for Beagle and choose the permissions Beagle receives. The property manager—not Beagle—controls that access at all times and can change or revoke it whenever they wish.

Moreover, Beagle never asks for a customer's password, never shares login credentials, and never bypasses AppFolio's security features. Beagle can see only the information the property manager has chosen to make available through AppFolio's own permission settings. Beagle also provides customers with a written Data Access Statement that clearly explains what information Beagle uses and why. Beagle's access has always followed this same process and has not changed over time.

**C. AppFolio Permitted Beagle's Access Without Objection Until It Was A Competitor.**

As early as November 2024, AppFolio was aware that customers granted Beagle access through additional user roles. Beagle operated openly, with full disclosure to customers, in reliance on AppFolio's longstanding acceptance of this access method. AppFolio never raised any objection, did not warn customers, and did not suggest any security concern. In fact, in 2024, AppFolio even discussed potential partnership with Beagle.

But AppFolio recently began selling its own insurance products that compete with Beagle, called FolioGuard and Smart Ensure. Because these in-house products are inferior to Beagle's offerings, AppFolio has struggled to convince customers to adopt them. Once Beagle's growth accelerated, with customers selecting Beagle over AppFolio's competing offerings, AppFolio abruptly reversed its prior position. Suddenly, and without any prior notice or warning to Beagle, AppFolio used its platform to send mass emails and dashboard alerts *to Beagle's customers* asserting that Beagle poses "security risks," made

"false claims," and was engaged in "noncompliant access." Reputational harm *alone* in a compliance-sensitive, insurance-adjacent industry like Beagle's can swiftly destroy a business, but then, AppFolio announced it would disable all Beagle-related user accounts within five business days, culminating in the December 16 cutoff date.

Specifically, on December 9 – the same day that AppFolio filed the application for TRO that was denied – AppFolio began emailing Beagle's customers to say that Beagle's access poses "serious security risks." An example of the AppFolio email[8] and a concerned response from a Beagle customer reads as follows:

[redacted] via beagleforpm.com
to Reports, soojee, soojee@beagleforpm.com, Esq.
View [redacted] Profile 11:10 AM (35 minutes ago)
Selected

It looks like APpfolio is going to be kicking Beagle off the account and my tenants will no longer be covered. This is getting messy. What do we need to do here?

[redacted]

**From:** AppFolio <updates@hello.appfolio.com>
**Sent:** Tuesday, December 9, 2025 12:01 PM
**To:** [redacted]
**Subject:** Attention Required: Beagle Access to Your Account

Hi [redacted]

We have received reports from several customers that Beagle – an insurance and resident services company – recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our **integration partners** go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but the method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

(Declaration of Michael Brown ("Brown Decl."), Ex. C at 3.)

This blast email that AppFolio sent to Beagle's customers warned them of the December 16 cutoff, as follows:[9]

---

[8] Beagle has received additional copies of this AppFolio email blast from several of its customers.

[9] In the context of evaluating the balance of the equities here, it is important to note that AppFolio's own messages prove there is no emergency for AppFolio. Instead, AppFolio has the time and flexibility to provide its customers notice and time "to facilitate any transition for your business."

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

(Brown Decl., Ex. C at 1-3.)

Beagle's customers then began emailing Beagle with confusion and concern:

See below, what are the steps moving forward ?

[redacted]

**From:** AppFolio <updates@hello.appfolio.com>
**Sent:** Tuesday, December 9, 2025 12:01:14 PM
**To:** [redacted]
**Subject:** Attention Required: Beagle Access to Your Account

Hi [redacted]

We have received reports from several customers that Beagle – an insurance and resident services company – recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our **integration partners** go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but the method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

(*Id.* at 2.)

Then, AppFolio broadly announced to its customers inside its application, through a banner, that it would disable all Beagle-related user accounts on December 16–exactly one week after its attempted TRO:

⚠

**Attention Required: Beagle Access to Your Account**

We recently identified that Beagle has been accessing AppFolio accounts in a way that violates our Terms of Service and creates risk for your business. To keep your account safe, we're removing their access on December 16, 2025. You can continue working with Beagle using approved options such as scheduled reports. For more information, please reference our full communication or contact Support if you need assistance.

(Brown Decl., Ex. D at 6.)

**D. AppFolio's Threatened December 16 Cutoff is an Existential Threat to Beagle.**

AppFolio's communications have set a firm deadline: on December 16, AppFolio will disable Beagle's customer-authorized APM user accounts. If AppFolio carries out this threat, Beagle will immediately lose access to the data on which it relies to serve more than eighty percent of its customers. This cutoff would prevent Beagle from verifying coverage, administering tenant-liability programs,

processing compliance data, and performing other essential functions. In addition, AppFolio's cutoff will harm not only Beagle and its customers, but also AppFolio's own customers. Customers who have contracted with Beagle would face sudden service disruptions, and renters could lose required liability coverage or fall out of compliance with lease requirements. Renters would be impacted too—they would be unable to move in, set up utilities, have air filters delivered, and would lose the ability to secure identity theft protection.

The December 16 lockout is therefore an existential threat to Beagle as a going concern.

**E. AppFolio's Accusations Have Already Triggered Irreparable Harm for which Beagle Needs Immediate Injunctive Relief.**

AppFolio's false and alarming statements caused immediate market disruption. Property managers forwarded AppFolio's messages to tenants, revoked Beagle's access, and terminated their relationships with Beagle. Some property managers described Beagle as a "scam" based on AppFolio's statements; others expressed concern that AppFolio's actions would leave their renters without coverage. Immediately, Beagle customers contacted Beagle about AppFolio's lies, terminating their contracts with Beagle and calling Beagle names like "scumbags":


From: [redacted]
Date: Tue, Dec 9, 2025 at 11:17 AM
Subject: Re: [redacted] | Beagle Follow Up
To: Walt Boxwell <walt@beagleforpm.com>, <joshualee@beagleforpm.com>
CC: [redacted]

Walt Joshua and all the scumbags at Beagle
,
It looks like AppFolio has identified your company as a scam! I have removed all your access and alerted all of our tenants regarding your malpractice. I hope that Karma prevails and that you and all of the individuals involved pay dearly for what you are doing on this earth in taking advantage of people. You slum.

Sincerely,

(Brown Decl., Ex. D at 3.)

As this example plainly demonstrates, reputational harm *alone* in a compliance-sensitive,

insurance-adjacent industry like Beagle's causes swift and irreparable destruction. Monetary damages cannot restore the lost trust, lost customers, or lost market position AppFolio has abruptly begun to inflict on Beagle. The impending December 16 cutoff threatens to compound that harm by eliminating Beagle's ability to serve the vast majority of its customers before this Court can hold a preliminary-injunction hearing.

Absent an immediate temporary injunction to preserve the status quo, AppFolio will proceed with the December 16 lockout, permanently disrupting Beagle's customer relationships, destroying goodwill Beagle has earned, and foreclosing Beagle's ability to compete in the market. For these reasons, a temporary restraining order is necessary to preserve the status quo and prevent irreparable harm pending further proceedings. Due to the timing and urgency, no notice should be required, and the Court can set the status quo in place while the parties prepare briefing and evidence for a preliminary injunction hearing.

## III. PROCEDURAL BACKGROUND

Less than one week ago, on Tuesday, December 9, AppFolio threatened Beagle with a TRO and lawsuit. This threat came out of the blue, with no warning. AppFolio did not send a demand letter or any prior communications, and it refused Beagle's request to hold off on its lawsuit in order to negotiate.

AppFolio filed its motion for TRO in the Superior Court of Santa Barbara that evening. The Court denied AppFolio's motion for TRO.

Beagle asked AppFolio to hold off before following through on its threat to cut off Beagle's access to the platform. AppFolio refused. Accordingly, facing the existential threat described in this motion, Beagle had no choice but to seek Court intervention and injunctive relief.

## IV. ARGUMENT

### A. Legal Standard

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (affirming preliminary injunction in favor of hiQ and against LinkedIn, preventing LinkedIn from blocking data-scraping bots sent by hiQ to LinkedIn's website). *See also Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 777 F. Supp. 3d 1039, 1044 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) (granting TRO). The Ninth Circuit uses a "sliding scale" approach to these factors, whereby "a stronger showing of one element may offset a weaker showing of another . . . So, when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only serious questions going to the merits." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (citation modified). *Accord Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (reversing denial of preliminary injunction). Under the "sliding scale" approach, "'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies, 632 F.3d at 1135.

**B. Beagle is Likely to Succeed on The Merits of Its Claims Against AppFolio.**

To establish a likelihood of success, Plaintiffs "need not conclusively prove their case or show that they are 'more likely than not' to prevail." *Stewart v. City & Cnty. of S.F., Cal.*, 608 F. Supp. 3d 902, 911 (N.D. Cal. 2022) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), aff'd sub nom. *Stewart v. City & Cnty. of S.F.*, No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023). Instead, Plaintiffs need only show a "fair chance" of success. *Stewart*, 608 F. Supp. 3d. at 911 (citing *Benda v. Grand Lodge of IAM*, 584 F.2d 308, 315 (9th Cir. 1978)). Here, AppFolio's tortious and unfair conduct provides a clear basis for imposing a TRO.

**1. AppFolio is Tortiously Interfering with Beagle's Contracts.**

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 791 P.2d 587, 589–90 (1990). In addition, "[b]ecause interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be

wrongful apart from the interference with the contract itself. Moreover, the tort of intentional interference with performance of a contract does not require that the actor's primary purpose be disruption of the contract." *Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal. 4th 26, 32, 960 P.2d 513 (1998), *as modified* (Sept. 23, 1998).

Here, there is no question that Beagle is likely to succeed on the merits as to the first two elements: Beagle has contracts with its customers and AppFolio unquestionably knows about those contracts. The emails that AppFolio sent to Beagle's customers demonstrate that AppFolio knows Beagle has contracted with these third parties because AppFolio specifically directed emails to those customers because they are Beagle customers. In addition, AppFolio's emails explicitly recognize the contractual relationship by stating to those customers that Beagle has "create[ed] user accounts in your database" and offering to these third party customers of Beagle: "we will allow them maintain (sic) access to your database . . . for five business days to facilitate any transition for your business[.]" (Ex. A at 1-3.)

As to the third element, there can be no question that AppFolio has taken intentional acts designed to induce a breach or disruption of the contractual relationship because AppFolio has announced that it plans to deliberately sever Beagle's ability to serve these customers through the AppFolio platform. Moreover, AppFolio explicitly recognizes that the customer may need to "transition . . . [its] business" and even notes in parenthetical that the customer may choose to end its contract with Beagle as a result, where AppFolio says "we will allow them maintain access to your database **(should you so choose)** for five business days[.]" (Ex. A at 1-3 (emphasis added).) *See hiQ Labs,* 31 F.4th at 1192 ("LinkedIn's threats to invoke the CFAA and implementation of technical measures selectively to ban hiQ bots could well constitute 'intentional acts designed to induce a breach or disruption' of hiQ's contractual relationships with third parties.")[10] AppFolio is making statements about Beagle's security that it knows are false, and its shut down of Beagle is pretextual. The real reason is that AppFolio wants to promote its own competing products.

Beagle can also prove the fourth element, actual disruption or breach of the contractual

[10] In addition to AppFolio's "threats to . . . implement[] . . . technical measures selectively" to sever Beagle's use of its platform, AppFolio's counsel explicitly threatened to bring a CFAA claim during a telephone call with counsel for Beagle on Friday, December 12. (Barros Decl. at ¶ 7.)

relationships, as this disruption has already begun. As described above, if AppFolio severs Beagle's access to its customers' data on the AppFolio platform, this will disrupt Beagle's contracts because it will not be able to serve 80% of its customers. In addition, the facts above show that AppFolio's actions have *already* caused disruption of Beagle's contracts with the customers who have contacted Beagle with their concerns about AppFolio's messages and threatened cutoff, and also with customers who have simply ended their relationships with Beagle in favor of AppFolio's options or those of some other provider. *hiQ Labs,* 31 F.4th at 1192 (noting that "the contractual relationships between hiQ and third parties have been disrupted and 'now hang[ ] in the balance.' Without access to LinkedIn data, hiQ will likely be unable to deliver its services to its existing customers as promised."). *See also_Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.,* 131 F.4th 205, 239 (4th Cir. 2025) (affirming grant of preliminary injunction where "the disruption of Real Time's ability to do its work with hundreds of facilities at a time . . . puts it at immediate risk of breach of its contracts with its customers and presents a real and imminent threat to its continued ability to do business." (citation modified)).

Finally, Beagle is likely to succeed on the merits of the fifth element: resulting damages. As explained above, 80% of Beagle's business is with customers that use AppFolio. AppFolio's threatened destruction of Beagle's ability to run 80% of its business is an existential threat to Beagle's entire business and goodwill. *hiQ Labs*, 31 F.4th at 1192 (finding fifth element of tortious interference satisfied where "hiQ is harmed by the disruption to its existing contracts and interference with its pending contracts. Without the revenue from sale of its products, hiQ will likely go out of business").

Therefore, Beagle has a high likelihood of success on its claim for tortious interference with contractual relations.

**2. Beagle is Likely to Prevail on its Tortious Interference Claim.**

Beagle is likely to prevail on its claims against AppFolio for tortious interference with prospective economic relations. In California, a claim for tortious interference with prospective economic relations is similar to that of tortious interference with contractual relations. To prevail, a party must establish: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and

(5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1108 (9th Cir. 2007). In addition, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful "by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 392–93 (1995).

First, Beagle has already shown, above, that it has economic relationships with its customers, and 80% of Beagle's business is with customers who use AppFolio. "The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Beagle has also established the other four elements: AppFolio's knowledge of the relationship, AppFolio's intentional acts designed to disrupt the relationship, actual disruption of the relationships, and economic harm to Beagle proximately caused by the acts of AppFolio. (*See* §IV(B)(1), *supra*.)

To establish the "independently wrongful act," the Ninth Circuit has held that a plaintiff need not allege different acts than those giving rise to the claim for tortious interference with prospective economic relations, the plaintiff need only show that the acts alleged "were unlawful for a reason other than that they interfered with [Beagle's] prospective economic advantage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2007). In reaching that conclusion, the Court found that violation of the California Unfair Competition Law (the "UCL") could satisfy this burden because the violation "is illicit" and that "even though the act that constitutes the violation of tort duties—the alleged solicitation []—is the same, it also violates the law, to wit, the UCL, independent of those tort duties." *CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1111 (9th Cir. 2007). Apart from the UCL, Beagle's interference is based on false statements and is pretextual—its real reason for interference is to promote its own competing products and services.

For these reasons, Beagle has a high likelihood of success on the merits as to all elements of its claim for tortious interference with prospective economic relations.

///

**3. Beagle is Likely to Succeed in its Claim Against AppFolio for Violations Of California's Unfair Competition Law.**

Blocking Beagle from access to AppFolio's platform based on pretextual targeting violates California's Unfair Competition Law. Conduct that constitutes "unlawful, unfair[,] or fraudulent business act or practice and unfair, untrue or misleading advertising" violates the UCL. Cal. Bus. & Prof. Code § 17200.

AppFolio's targeting of Beagle would violate all three prongs of the UCL.

California courts define "Unfair" conduct as that which "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F. Supp. 3d 1070, 1080 (S.D. Cal. 2024) (granting preliminary injunction for UCL violations).

Here AppFolio's conduct is patently unfair. AppFolio is targeting Beagle pretextually—in reality AppFolio is seeking to block Beagle to promote its own competing in-house products and other preferred partner. Doing so under the guise of security concerns and concerns about payment processing, that are false, is classic unfair competition under the UCL. *See, e.g.*, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1193–94 (9th Cir. 2022). In *hiQ*, the Ninth Circuit did not reach the UCL issue fully, because the conduct at issue constituted tortious interference and that was sufficient to impose a preliminary injunction to stop blocking. But the Ninth Circuit did observe that where the defendant "knew about" the "reliance" on its platform and the defendant "planned to leverage the data on its platform to create a new product" that had "some similarities," then as to the act of "selectively [working] to ban only potential competitors from accessing and using" data on the platform, the result "may well be considered unfair competition under California law." *Id.*[11]

In another case involving data access, the Fourth Circuit applied a standard for unfair competition

[11] That the data on LinkedIn was public is of no import here. Beagle's customer data in AppFolio does not belong to AppFolio—it belongs to the customers, as made clear by AppFolio's own terms. Those customers willingly contract with Beagle and require that Beagle access the data at issue to provide them services. The Ninth Circuit's logic is on-point in this situation given the nature of the relationships and data at issue.

under Maryland law that is similar to California's UCL, finding that unfair competition constituted "damaging or jeopardizing another's business by fraud, deceit, trickery, or unfair methods of any sort" based on a "case-by-case" analysis. *See Real Time Med. Sys., Inc. v. PointClickCare Techs., Inc.*, 131 F.4th 205, 225 (4th Cir. 2025). There, where a software platform similar to AppFolio in that it locked in customer data leveraged the control over its software system to lock out a third-party based on "cited reasons for its actions (security and system performance)" that "were a cover for its true motivations (hurting a competitor)," that constituted unfair competition. So too here. AppFolio's security rationale for blocking Beagle is completely fabricated. Beagle does not hack or circumvent any technical measures—it uses functionality that AppFolio designed into its app to permit third-party accounts. And Beagle's customers create the account for Beagle, not Beagle. There is no hiding on Beagle's part, as it uses its regular domain for the accounts. The pretext is even more egregious given that one of Beagle's services to renters, that AppFolio intends to unilaterally cut off this Tuesday, is facilitating identity theft protection.

AppFolio's conduct is also fraudulent under the UCL because AppFolio is making knowingly false statements about Beagle's security and payment processing to Beagle's customers *en masse.* Where the "public" is "likely to be deceived," that satisfies the fraudulent prong of the UCL. *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (2001).

The Court need not even reach the unlawful prong, but AppFolio's conduct is also unlawful because AppFolio is tortiously interfering with Beagle's contracts, making false statements in violation of the Lanham Act, violating California's False Advertising law, and violating the Sherman Act. Under the UCL, "[v]irtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718 (Nov. 20, 2001).

Where a UCL violation risks irreparable harm, such as AppFolio's plan to pretextually block all of Beagle's access to its platform this Tuesday, this supports granting early injunctive relief. *See, e.g.*, *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F. Supp. 3d at 1081 (S.D. Cal. 2024); *see also Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1079 (N.D. Cal. 2016) (granting TRO in part based on likelihood of success on UCL claim).

**C. AppFolio's Threats are Causing and will Cause Beagle Irreparable Harm**

The Ninth Circuit has held that "the threat of being driven out of business is sufficient to establish

irreparable harm . . . The loss of an ongoing business representing many years of effort and the livelihood of its owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by subsequent monetary damages. Thus, showing a threat of 'extinction' is enough to establish irreparable harm, even when damages may be available and the amount of direct financial harm is ascertainable." *hiQ Labs,* 31 F.4th at 1188 (9th Cir. 2022) (citation modified) (citing *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) and *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125–26 (2d Cir. 1984) (per curiam).).

Here, Beagle faces extinction if AppFolio abruptly cuts its access to 80% of its business within 24 hours. The Ninth Circuit has affirmed injunctive relief in similar circumstances, noting that "hiQ's entire business depends on being able to access public LinkedIn member profiles" in concluding that the district court did not abuse its discretion when it concluded that hiQ "has demonstrated a likelihood of irreparable harm absent a preliminary injunction." *hiQ Labs*, 31 F.4th 1180, 1189 (9th Cir. 2022).

**D. The Balance of Equities and Public Interest Tips Heavily in Beagle's Favor.**

AppFolio, with the click of a button, will destroy the business Beagle has spent years painstakingly building, collapse more than $10 million dollars of revenue, and eviscerate hundreds of millions of dollars in enterprise value. As to AppFolio, though, if Beagle merely continues the status quo where its customers contract with Beagle to help them offer services for renters, nothing bad will happen to AppFolio. It will simply have to continue competing in the market against Beagle, nothing more. There is no imminent security risk. No collapse of AppFolio's business. AppFolio is valued in excess of $8 billion dollars as of this filing, despite Beagle's continued business operations—which AppFolio has known about for over a year. In such situations, requiring AppFolio to permit Beagle its lawful access "imposes a minimal burden" that does not shift the balance of equities towards AppFolio in any way. *See, e.g.*, *WPEngine, Inc. v. Automattic Inc.,* No. 24-CV-06917-AMO, 2024 WL 5077610, at *16 (N.D. Cal. Dec. 10, 2024) (Finding balance of hardships weighed in favor of injunctive relief where "WordPress has been, until recently, available to WPEngine on the same terms as other users, or at least on the terms that were in place up until September 25, 2024. Requiring Defendants to restore access on those terms while this action proceeds imposes a minimal burden."); see also HiQ, 31 F.4th at 1202 ("we cannot, on the record before us, conclude that . . . LinkedIn's interest in preventing hiQ from scraping those profiles—are significant enough to

outweigh hiQ's interest in continuing its business, which depends on accessing, analyzing, and communicating information derived from public LinkedIn profiles"). The Ninth Circuit emphasized in the HiQ case that LinkedIn had "no protected property interest in the data contributed by its users, as the users retain ownership over their profiles." *Id.* That is the same as the situation here.

Just as the balance of equities weighs heavily in favor of granting Beagle's TRO request, so does the public interest. Beagle's services implicate day-to-day life for renters, including their insurance coverage for catastrophic events like fire. It helps them move in. It helps them connect their utilities—water, electricity, and Internet. It helps them protect themselves from identity theft. AppFolio seeks to unilaterally cut this off—tomorrow. In similar situations, courts in the Northern District and the Ninth Circuit have found that the public interest weighed in favor of early injunctive relief. *WPEngine, Inc. v. Automattic Inc.*, No. 24-CV-06917-AMO, 2024 WL 5077610, at *16 (N.D. Cal. Dec. 10, 2024) (granting injunctive relief) ("users rely on the stability of the plugin, and WordPress more broadly, to operate their websites, run their businesses, and go about their day online. Maintaining that continuity and preventing arbitrary disruption stemming from a corporate dispute is in the public interest."); *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th at 1202 ("the district court properly determined that, on balance, the public interest favors hiQ's position. We agree with the district court that giving companies like LinkedIn free rein to decide, on any basis, who can collect and use data—data that the companies do not own, that they otherwise make publicly available to viewers, and that the companies themselves collect and use—risks the possible creation of information monopolies that would disserve the public interest.").

**E. An Ex Parte TRO is Merited Given the Urgency and Timing**

Beagle found out about AppFolio's intent to shut off its access just days ago. Beagle has attempted to persuade AppFolio that its planned attack on Beagle is unlawful and that it should not do it. AppFolio has declined to stop—instead asking for Beagle's rationale. Beagle provided this rationale in the early hours of Thursday morning in its opposition briefing to AppFolio's TRO in Santa Barbara, which has been denied. AppFolio reiterated its request for more rationale on Friday, through counsel, and has not indicated any intent to change course or not shut Beagle's access off. Beagle is filing this TRO the next court day, Sunday evening / Monday morning, as soon as it possibly can. It has continued fielding confused customer calls and messages based on AppFolio's campaign of falsehoods in the meantime.

While there are "'very few' circumstances justifying the issuance of an ex parte TRO," *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)), those circumstances are present here. Rule 65 permits courts to enter a temporary restraining order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition" and the movant's counsel "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). The Barros declaration explains that AppFolio was put on notice of the unlawful nature of its conduct and that Beagle intended to seek injunctive relief through the TRO Opposition papers. Also, Beagle's counsel is conveying these papers to AppFolio concurrent with the filing. There is simply no time for full briefing before AppFolio brings the hammer down on Beagle's business. A reasonable course of action under Rule 65(b) would be issuance of a narrow status-quo preserving in junction while the parties brief and prepare for a preliminary injunction hearing.

## V. CONCLUSION

AppFolio should not be able to destroy more than 80% of a business valued in the hundreds of millions and impact more than 10 million dollars in revenue by pretextually blocking all access to its platform as part of a targeted campaign to tortiously interfere with Beagle's customer contracts and unfairly compete in violation of California and federal law. A narrow TRO is appropriate to maintain the status quo while the Court considers whether preliminary injunctive relief is appropriate.

DATED: December 15, 2025 Respectfully Submitted,

By */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**NOTICE OF PLAINTIFFS' MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER**

Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. ("Beagle" or "Beagle Entities") hereby give notice that on December 14, 2025, Beagle seeks Emergency Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65.

This is unfortunately a time-sensitive emergency. Days ago, Plaintiffs learned that Defendant AppFolio, Inc. intends to **disable all customer-authorized accounts used by Beagle on the AppFolio platform on December 16, 2025**, a move that will have catastrophic consequences for Beagle, through the destruction of more than 80% of Beagle's business, destruction of more than $10 million dollars in revenue, and hundreds of millions of dollars in enterprise value, while causing irreparable harm to property managers and renters nationwide procuring insurance who are Beagle's customers. AppFolio's planned cutoff is not based on any legitimate security concern—which has been pretextually put forth by AppFolio—but a desire to stamp out competition and foreclose consumer choice.

Absent immediate relief, Beagle will suffer an **extinction-level event** before this Court can hold a preliminary injunction hearing. The requested TRO is narrowly tailored to preserve the status quo and prevent irreparable harm, pending a fuller evidentiary hearing.

Plaintiffs have attempted to persuade AppFolio that its plans are unlawful but, as recently as the last court day on Friday, December 12, AppFolio did not express any willingness to refrain from tortiously interfering with all of Beagle's customer contracts that use AppFolio and destroying Beagle's business through unfair competition this coming Tuesday, December 16, 2025. Beagle thus has no choice but to seek an emergency ex parte TRO.

Plaintiffs respectfully request that the Court issue an ex parte TRO order enjoining AppFolio from disabling Beagle's customer-authorized accounts or otherwise interfering with Beagle's ability to access data through AppFolio's platform until the Court can consider Plaintiffs' motion for preliminary injunction.

This application is based on the accompanying memorandum of points and authorities, declarations, exhibits, and all pleadings and papers on file. Plaintiffs respectfully request that this Court grant their motion for a Temporary Restraining Order.

///

///

DATED: December 15, 2025

Respectfully submitted,

By */s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com

Jordana.Sternberg@gtlaw.com

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Associations LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**DECLARATION OF MICHAEL BROWN IN SUPPORT OF PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

## DECLARATION OF MICHAEL BROWN

I, Michael Brown, declare as follows:

I am the Chief Executive Officer of Big Beagle, Inc. (hereinafter "Beagle" or "Defendant"). I have personal knowledge of the facts surrounding the present action and Beagle's business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.:

**A. AppFolio is the Dominant Market Leader for Building Management Software**

1. AppFolio is the most dominant software for building management, and acknowledges this when it describes itself as the market leader. It is a public company valued at over $8 billion dollars.

2. AppFolio's market dominance is reflected in Beagle's customer base, as more than 80% of Beagle's business is with customers who use AppFolio.

3. Property managers and their residents store and use rental data in AppFolio's platform. But AppFolio does not own or create this data. AppFolio merely hosts the data, which belongs to the building owners and property managers. In fact, AppFolio's terms and conditions specifically provide: "You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. You will retain all right, title and interest in and to your data." Attached as **Exhibit A** is a copy of AppFolio's Terms (2025 Terms and Conditions, Section 1.4).

**B. AppFolio is Targeting Beagle through Pretextual Means and Unlawful Competition**

4. As early as November 2024, AppFolio was aware that customers granted Beagle access through additional user roles. Beagle operated openly, with full disclosure to customers, in reliance on AppFolio's longstanding acceptance of this access method. AppFolio never raised any objection, did not warn customers, and did not suggest any security concern. In fact, in 2024, AppFolio even discussed potential partnership with Beagle. Attached as **Exhibit B** are communications showing Beagle was in contact with and on AppFolio's radar in November of 2024.

5. But AppFolio recently began selling its own insurance products that compete with Beagle, called FolioGuard and Smart Ensure. Because these in-house products are inferior to Beagle's offerings, AppFolio has struggled to convince customers to adopt them. Once Beagle's growth accelerated, with customers selecting Beagle over AppFolio's competing offerings, AppFolio began unlawfully competing with Beagle.

6. First, AppFolio has engaged in a concerted campaign to spread intentional false statements about Beagle to stop customers from using Beagle. For instance, AppFolio sent a mass-email to Beagle customers on December 9, 2025 containing a multitude of falsehoods. AppFolio stated that "the method by which Beagle has chosen to operate their business places you at risk." It also claims that Beagle causes "serious security risks" and works through a "noncompliant access" process that "create[s] security risk" and undermine "integrity of [customer] data." AppFolio also claims in this message that Beagle can "issue payments through the AppFolio payments platform." Attached as **Exhibit C** are copies of AppFolio's false messages.

7. These statements are all false and pretextual. Beagle does not introduce any security risks to AppFolio's platform or Beagle's customers. AppFolio does not own any of the data at issue. Its customers are free to contract with Beagle and provide it with access to AppFolio's platform through a vendor account. There is no evidence of any data security incident or any data privacy issue. It is also false that Beagle can "issue payments through the AppFolio payments platform." Beagle does not do that.

8. AppFolio knows that the falsehoods it is spreading about Beagle are false. It knows this because it has full visibility into how Beagle is accessing AppFolio—through regular accounts. AppFolio knows that many others, including its own preferred partner Second Nature, uses the exact same method of authorized access. AppFolio also knows that it has no basis to assert any privacy or security risk from using Beagle's platform. To the contrary, Beagle provides vital security services to renters in the form of identity theft protection.

9. Only recently—after Beagle's growth accelerated and customers selected Beagle over AppFolio's competing offerings—did AppFolio quietly amend its Terms of Use and begin preparing the present lawsuit. AppFolio is now using the revised terms as the pretext for accusing Beagle of "unauthorized access" despite knowing customers have granted that access through AppFolio's own workflow.

10. Beyond false statements, AppFolio is doing other conduct to unlawfully compete with Beagle. It partnered with Second Nature, and distorts the market by permitting Second Nature to access it through the regular access method, while claiming that Beagle cannot. AppFolio also has stated its intention to completely shut off Beagle's domain access to AppFolio on December 16, 2025. This will end Beagle's business overnight, as over 80% of Beagle's business is based on working with customers who use AppFolio.

**C. AppFolio's is Bent on Destroying Beagle and Is Already Causing Irreparable Harm**

11. AppFolio, given its market dominance, comprises over 80% of Beagle's business. If AppFolio weaponizes this market dominance to target Beagle based on its false and pretextual security and payment processing claims, then its blocking of Beagle's domains will destroy Beagle's business overnight.

12. AppFolio's campaign of falsehoods has already irreparably damaged Beagle's ability to perform its customer contracts and its prospective economic relationships. AppFolio repeated these statements multiple times, including to customers and even to customers' tenants. One property manager notified all tenants that Beagle was a "scam," explicitly citing AppFolio as the source. Another panicked that "tenants will no longer be covered" solely because AppFolio threatened to cut off Beagle's access. Just the threat of this unlawful pretextual targeting has already caused damage to Beagle's reputation, caused

Beagle to lose customers, interfered with Beagle's prospective economic relationships, and frustrated Beagle's relationships with its vendors and partners as well.

13. Many customers have contacted Beagle accusing it of being "scumbags," and a "scam" based on AppFolio's false statements. Beagle has lost significant customers already and its sales pipeline has been impacted by AppFolio's defamatory campaign. AppFolio's misrepresentations have and continue to cause immediate reputational, operational, and financial harm to Beagle. Attached as **Exhibit D** are copies of the messages Beagle received from customers based on AppFolio's false statements.

14. Absent injunctive relief, Beagle faces immediate and irreparable harm: service disruption for mutual customers; loss of market access to AppFolio dependent portfolios; collapse of goodwill built on consistent performance; reputational harms from false statements; and network effects that are difficult to unwind once AppFolio's in house products supplant Beagle during the block. Monetary damages cannot restore lost customer trust or reverse system level exclusion once implemented.

15. Not only will Beagle be harmed, but so will countless building properties and renters nationwide. Building fires and damage will be unrecoverable absent proper insurance verification and damage waivers. Daily move-ins will be disrupted when properties that leverage Beagle cannot facilitate utility and Internet set up, air filter delivery, and other services. Renters without proper identity theft protection may suffer cyberattacks—the very thing AppFolio claims it cares about

16. Customers that use AppFolio constitute 80% or more of Beagle's revenue. Consequently, shutting off Beagle's access to AppFolio, which those customers contract with Beagle to maintain, would cost Beagle more than $10 million dollars in annual revenue and destroy hundreds of millions of dollars in enterprise value.

///

///

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 15, 2025, in Salt Lake City, Utah.

Michael Brown

# EXHIBIT A

Introducing Real Estate Performance Management. **Learn More.** Login Contact Us

appfolio Products Why AppFolio Resources Pricing Book a Free Demo

Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

# AppFolio Property Manager Core

Last updated: August 5, 2025

Welcome to AppFolio Property Manager Core! Please carefully review these AppFolio Property Manager Core Terms of Service (these "Terms of Service"), as they contain important information about your legal rights, remedies and obligations. By subscribing to or using any of our Services (as defined below), you are entering into a legally binding agreement with AppFolio, Inc. (also referred to as "AppFolio," "we," and "our") that governs your access to and use of the Services.

The agreement consists of (i) your order form and (ii) these Terms of Service, which incorporate by reference (a) the Add-On Service Terms for any Service to which you subscribe or use, including the AppFolio Value+ Terms, the AppFolio Tenant Screening Terms, the AppFolio Payments Terms, the AppFolio Sites Terms, the AppFolio Beta Terms and (b) any other terms or policies applicable to your use of the Services that we make available, such as through an online signup flow. Any terms contained in your order form will supersede these Terms of Service.

In addition, our Privacy Notice contains information on how we collect, use and share your personal information for our own purposes. The Privacy Notice is not a part of these Terms of Service and may be changed from time to time, but by agreeing to these Terms of Service, you acknowledge and consent to the collection, use, sharing and disclosure of your personal information and data as described in our Privacy Notice, as may be modified from time to time.

## 1. Scope of services

We offer a hosted suite of property management software services, which include our property management software solution, AppFolio Property Manager Core, and Add-On services to which you may subscribe or use in addition to your base subscription (collectively the "Services" and each a "Service").

Some Services are offered on a subscription basis, while others are made available per-use. To subscribe to or use a Service, you must sign an order form or complete the online sign-up flow, which identifies the Service,

additional terms, and the fees payable for such Service. You may access and use the Service to manage and account for the real property units (collectively, the "Units" and each a "Unit"). If the Service is billed on a per-unit basis, we will assess your Unit count at regular intervals and invoice you appropriately.

We reserve the right to modify the Services (or any part thereof) from time to time, and we are not liable to you or to any third party for any modification of the Services.

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

### 1.1 Intended Use

The Services are designed and intended to be used for property management purposes in the United States. Your use of the Services for any other purpose or in any other manner is at your own risk and may be grounds for termination.

### 1.2 No Legal Advice

The Services contain features and tools designed to assist you in the operation of your business and are capable of being used to comply with certain of your regulatory or other legal obligations. Notwithstanding the foregoing, we do not make any representations or warranties that your use of the Services will satisfy or ensure compliance with any legal obligations or laws, rules, or regulations. AppFolio does not provide legal advice and is not engaged in the practice of law. We encourage you to consult with your legal counsel before utilizing any of the Services that may have legal ramifications.

### 1.3 Expanding the Services

You may subscribe to or use additional Services and add additional databases. These additions may be subject to eligibility and your execution of an order form or completion of an additional online sign-up flow. All new Services are subject to these Terms of Service.

### 1.4 Migration of Data

Promptly following your initial subscription to the Services, we will coordinate and work with you to migrate certain of your data into the Services (referred to as "Onboarding"). You will be responsible for providing data in a format deemed acceptable to us and will provide materials and reasonable assistance for the migration of your data. You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. You will retain all right, title and interest in and to your data.

Together, we will mutually agree upon a date by which Onboarding will be completed and your access to the Services will go live (the "Go-Live Date"). If it becomes necessary to move back your Go-Live Date, we will mutually agree on a new date. But if the Go-Live Date is moved more than once due to your failure to provide us with the requested data, information, or assistance required to complete such onboarding, we reserve the right to charge you an additional Onboarding Fee (as defined below). You must complete migration of your data before receiving access to the Services.

In some instances, changes to your business may require setting up a new database and/or migrating the data within the existing database; for

example, a change of your business name, tax identification number, or business structure. If Such a "Re-Migration" is necessary we will charge an additional one-time non-refundable Onboarding Fee for setting up a new database and/or migrating the data within the existing database. We will help determine the optimal plan for Re-Migration based upon the individual situation. Additional Onboarding Fees are non-refundable and due and payable by you on the date of invoice.

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

**1.5 Set-Up and Configuration**

You are solely responsible for determining the appropriate set-up and configuration of the Services. In the event you request our assistance in the set-up or configuration of the Services, without in any way limiting Section 8.2, we make no representations or warranties with respect to any changes we may make or work we may perform on your behalf and at your request.

## 2. Modification of These Terms of Service

We work constantly to improve our Services with updates, new features, and new services. And we may need to change these Terms of Service from time to time to accurately reflect our Services and practices. If we do, those revised Terms of Service will supersede prior versions. Unless we say otherwise, changes will be effective upon the "Last Updated" date located at the top of this page. We agree that changes cannot be retroactive. We will provide you advance notice of any material changes to these Terms of Service. For any other changes, we will publish the revised Terms of Service and update the "Last Updated" date above. We hope that you will continue to use our Services, but if any change has a negative material impact on your business and you object to such changes, you may terminate your subscription to the Services without penalty and in accordance with the terms herein. Your continued use of the Services after we modify these Terms of Service constitutes your acceptance of any revisions.

## 3. Customer Support

We will use commercially reasonable efforts to provide complimentary technical support services to you and your authorized users of the Services. Our standard support is available Monday through Friday from 8:00 a.m. - 8:00 p.m. Eastern Time, excluding major holidays, which include Memorial Day, Independence Day, Labor Day, Thanksgiving, Christmas, and New Year's Day.

## 4. Training

We will make training materials and sessions available to you and your

authorized users. These include tutorials, which are accessible via the Help Articles and Training Sessions sections of our website at no additional charge. If you purchase custom training, the hours must be used within 90-days of contract signing or 90-days of your Go-Live date, whichever comes second. Custom training fees are considered Service Fees and are non-refundable.

Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

# 5. Your Rights and Restrictions

**5.1 Authorization to Use the Services**

Subject to (i) your timely payment of all fees set forth in the order form or online sign-up flow and (ii) your compliance with these Terms of Service, we authorize you to use (and permit your authorized users to use) the Services to which you have subscribed.

**5.2 Authorized Users**

You (i) are responsible for your authorized users' compliance with these Terms of Service, and (ii) will use commercially reasonable efforts to prevent unauthorized access to or use of the Services. If the authorized status of a user changes, it is your responsibility to promptly remove such user's access to the Services. Third parties are not permitted to access or use the Services or any application programming interface we may make available to you without our prior consent. Even if we provide prior consent for a third party to access or use the Services, we disclaim all liability for any actions taken by that third party with respect to the Services, and you assume all risk for any actions taken by that third party. We reserve the right to disable or delete access to the Services and any application programming interface for any of your authorized users to enforce these Terms of Service or otherwise protect our interests.

**5.3 Your Responsibilities; Use of the Services In Compliance With Laws**

The Services contain various features, tools and workflows that assist you in the conduct of your business. We do not make any representations or warranties that your use of the Service will satisfy or ensure compliance with any legal obligations or applicable laws, rules, or regulations. For example, you may be able to use the Services to, among other things, text, email, and accept and make payments. Such activities can be highly regulated, and while we assist you in carrying out such activities, you are solely responsible for ensuring compliance with all applicable laws and regulations including, without limitation, the Fair Credit Reporting Act, Equal Credit Opportunity Act, the Fair Housing Act, Title VII of the Civil Rights Act of 1964, the Telephone Consumer Protection Act of 1991, and utility billing practices. You are responsible for all activities that occur under your account or by your authorized users. Without limiting the foregoing, you will (i) have sole responsibility for the accuracy, quality, integrity, legality, reliability, and appropriateness of all data that you submit to the Services; (ii) use commercially reasonable efforts to prevent unauthorized control or tampering or any other unauthorized access to, or use of, the Services and notify us immediately of any unauthorized use or security breach; (iii) comply with all applicable local, state, federal, and foreign laws (including

laws regarding privacy and protection of personal or consumer information) in using the Services; and (iv) obtain and maintain all computer hardware, software and communications equipment needed to access the Services in connection with your use of the Services.

**5.4 Your Restrictions**

You may not, and you will ensure your authorized users do not, (i) disassemble, reverse engineer, decompile or otherwise attempt to decipher any code in connection with the Services, or modify, adapt, create derivative works based upon, or translate the Services; (ii) license, sublicense, sell, rent, assign, distribute, time share transfer, lease, loan, resell for profit, distribute, or otherwise commercially exploit, grant rights in or make the Services or any content offered therein available to any third party; (iii) use the Services except as expressly authorized under these Terms of Service or in violation of any applicable laws; (iv) engage in any illegal or deceptive trade practices with respect to the Services; (v) circumvent or disable any security or other technical features or measures of the Services or any other aspect of the software or, in any manner, attempt to gain unauthorized access to the Services or its related computer systems or networks; (vi) use the Services to transmit infringing, obscene, threatening, libelous, or otherwise unlawful, unsafe, malicious, abusive or tortious material, or to store or transmit material in violation of third-party privacy rights; (vii) use the Services to store or transmit any viruses, worms, time bombs, Trojan horses and other harmful or malicious code, files, scripts, agents or programs or to send spam or otherwise duplicative or unsolicited messages in violation of applicable laws; (viii) interfere with or disrupt the integrity or performance of the Services or third-party data contained therein; (ix) use any robot, spider, or other automated device, process or means to access, retrieve, scrape or index any portion of the Services; (x) reformat or frame any portion of the Services; or (xi) make available or otherwise provide all or any portion of the Services, our Confidential Information (as defined below), or any application programming interface we make available to you to any of our direct or indirect competitors.

Although we have no obligation to monitor your use of the Services, we may do so at our discretion and may prohibit any use of the Services we believe may be in violation of these Terms of Service or applicable laws and regulations.

**5.5 Reservation of Rights**

No other rights are granted except as expressly stated in these Terms of Service, and nothing herein conveys any rights or ownership or license in, or to, the Services or any underlying software or intellectual property. We own all rights, title and interest, including all intellectual property rights, in and to the Services and the underlying software, and any and all updates, upgrades, modifications, enhancements, improvements or derivative works thereof.

## Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

# 6. Term and Termination

**6.1 Term**

Case: 26-769, 04/07/2026, DktEntry: 11.5, Page 57 of 185

If a Service is subject to a term, the term will be set forth on the order form or in the online sign-up flow. Unless either party provides written notice of non-renewal at least thirty (30) days prior to the expiration of the current term of a Service, the Service will automatically renew. Your base Service subscription will automatically renew for the same period as your initial term; and add-on services will automatically renew to become coterminous with your base subscription.


## Terms of Service

AppFolio Property Manager Core

**Overview**

1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**


At least sixty (60) days prior to the expiration of your base Service Subscription, we will provide you with an updated order form reflecting the Services, rates, unit counts, and terms applicable to your next term. Any active addenda to your order form will remain incorporated and unchanged, unless replaced by a new addendum.

WRITTEN NOTICE OF NON-RENEWAL MUST BE SUBMITTED:

via email to: billing@appfolio.com

or via USPS or courier to: AppFolio, Inc.

70 Castilian Drive Santa Barbara, CA 93117

Attn.: Billing Department

### 6.2 Termination

Either party may terminate any subscription to Services (i) if the other party breaches any of its obligations under these Terms of Service and such breach is not cured within thirty (30) days of receipt of notice from the non-breaching party, or (ii) if the other party becomes insolvent or bankrupt, liquidated or is dissolved, or ceases substantially all of its business. Notwithstanding the foregoing, we may immediately terminate your subscription to the Services if: (a) you materially breach of these Terms of Service, as determined by us in our sole and absolute discretion; (b) we reasonably believe that you are associated with conduct that is illegal, fraudulent, or that could otherwise cause a real risk of harm to us or others (whether financial, legal, business or reputational harm); or (c) upon the request of any of our financial service providers. Upon termination of your subscription, you will immediately discontinue all use of the Services, cease to represent that you are a user of the Services, and destroy all our Confidential Information (as defined in Section 9 below) in your possession.

### 6.3 Handling of Your Data in the Event of Termination

You agree that following expiration or termination of any of your subscriptions to the Services, we may immediately deactivate the affected Services and that, following a reasonable period, we may delete your account and data. In the event you terminate your subscriptions, or allow them to expire, you are expected to retrieve your data prior to the termination or expiration. However, in the event that the Services are terminated by us, we will grant you temporary, limited access to the Services, not to exceed thirty (30) days, for the sole purpose of permitting you to retrieve your proprietary data, provided that you have paid in full all undisputed amounts owed to us. You further agree that we will not be liable to you or to any third party for any termination of your access to the Services or deletion of your data, provided that we are in compliance with the terms of this Section 6.3.

### 6.4. Termination for Convenience; Early Termination Fee

You have and may invoke an option terminate your subscription to the Services for convenience at any time by providing thirty (30) days' prior written notice and paying to us (a) any outstanding fees and (b) an early termination fee equal to fifty percent (50%) of the Service Fees (as defined below) payable for the remaining period of your subscription, calculated on a pro rata basis (the "Early Termination Fee"). You hereby expressly acknowledge and agree that we shall have the right to charge the Early Termination Fee to the payment method associated with your AppFolio account. You will not be entitled to a refund of any pre-paid amounts under any circumstances.

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

## 7. Fees

### 7.1 Service Fees

You will pay certain non-refundable fees for the Services in the amount set forth on the order form or in the online sign-up flow (the "Service Fees") and according to the billing frequency stated therein. Service Fees are due and payable on the date of invoice and are non-refundable. Service Fees may be based on usage; the minimum amounts set forth in your order form; or the minimums for each Service. Unless set forth on your order form, we may increase the minimum amounts for a Service from time to time by providing you with no less than thirty (30) days advance notice.

For Services offered on a subscription basis, the rate of the Service Fees is fixed for the term of the subscription and may only be increased at renewal. For Services offered on a per-use basis, we may increase Service Fees from time to time by providing you with no less than thirty (30) days advance notice.

### 7.2 Onboarding Fees

You will pay certain non-refundable fees for onboarding and data migration in the amount set forth on the order form,online sign-up flow, or as otherwise set forth in Section 1.4 (the "Onboarding Fees"). The Onboarding Fees are due and payable by you on the date of invoice. Onboarding Fees are non-refundable unless we fail to complete the onboarding for reasons other than your failure to provide us with the requested data, information, or assistance required to complete such onboarding.

### 7.3 Additional Fees

You may incur certain other non-refundable fees or charges based on your use of the Services in addition to those fees set forth on the order form or in the online sign-up flow (the "Additional Fees"). We will provide you with notice of any Additional Fees before they are incurred.

### 7.4 Late Payments

You acknowledge that your failure to pay any fees when due may result in suspension or termination of your subscription to the Service. If you fail to pay any of the fees or charges due hereunder, AppFolio reserves the right

to, among other things, engage an attorney or a collections agency to collect the delinquent fees and charges. You agree to pay all fees and costs incurred by AppFolio in connection with the collection of such delinquent amounts, including without limitation, any and all court and related costs, attorneys' and/or collections agencies' fees plus interest in an amount equal to the lesser of 1.0% per month or the maximum rate permitted by applicable law.

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

#### 7.5 Taxes

You are responsible for all sales tax, use tax, value added taxes, withholding taxes and any other similar taxes and charges of any kind imposed by federal, state or local governmental entities on the transactions contemplated by these Terms of Service. When we have the legal obligation to pay or collect taxes for which you are responsible pursuant to this Section, the appropriate amount will be invoiced to and paid by you unless you provide us with a valid tax exemption certificate authorized by the appropriate taxing authority.

## 8. Representations and Warranties; Disclaimer

#### 8.1 Representations and Warranties

You represent and warrant that (i) you have all necessary authority to enter into and perform your obligations under these Terms of Service without the consent of any third party or breach of any contract or agreement with any third party; and (ii) you will use the Services only for lawful purposes in accordance with these Terms of Service.

#### 8.2 Disclaimer of Warranties

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, WE MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, IN LAW OR FROM A COURSE OF DEALING OR USE OF TRADE, AS TO ANY MATTER, INCLUDING THOSE OF MERCHANTABILITY, SATISFACTORY QUALITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT. WE DO NOT WARRANT THAT THE SOFTWARE OR THE SERVICES WILL MEET ALL OF YOUR REQUIREMENTS OR THAT THE USE OF THE SOFTWARE OR THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. THE SOFTWARE AND SERVICES ARE PROVIDED TO YOU ON AN "AS IS" BASIS AND YOUR USE OF SOFTWARE AND SERVICES IS AT YOUR OWN RISK. WE HEREBY EXPRESSLY DISCLAIM ANY REPRESENTATIONS OR WARRANTIES THAT YOUR USE OF THE SERVICES WILL SATISFY OR ENSURE COMPLIANCE WITH ANY LEGAL OBLIGATIONS OR LAWS, RULES OR REGULATIONS. THIS DISCLAIMER APPLIES TO BUT IS NOT LIMITED TO ANY FEDERAL OR STATE STATUTES OR REGULATIONS THAT MAY BE APPLICABLE TO YOU. YOU ARE SOLELY RESPONSIBLE FOR ENSURING THAT YOUR USE OF THE SERVICES IS IN ACCORDANCE WITH APPLICABLE LAW.

IF YOU ARE DISSATISFIED WITH THE SERVICES OR THESE TERMS OF SERVICE, YOUR SOLE AND EXCLUSIVE REMEDY IS TO STOP USING THE

SERVICES. NOTWITHSTANDING THE FORGOING, NOTHING IN THIS SECTION (SECTION 8.2) SHALL BE CONSTRUED TO LIMIT OR DEPRIVE EITHER PARTY OF A REMEDY THAT IS OTHERWISE EXPRESSLY PROVIDED FOR UNDER THESE TERMS OF SERVICE.

THE PARTIES EXPRESSLY ACKNOWLEDGE THAT THE DISCLAIMER OF WARRANTY CONSTITUTES AN ESSENTIAL PART OF THE AGREEMENT BETWEEN THE PARTIES CONTAINED IN THESE TERMS OF SERVICE.

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

# 9. Confidential Information and Business Data

### 9.1 Confidential Information

Neither party shall disclose to any third party any information or materials provided by the other party hereunder and reasonably understood to be confidential ("Confidential Information") without the other party's prior written consent, except as otherwise expressly permitted under these Terms of Service; provided, however, AppFolio may use and disclose your Confidential Information (in accordance with our Privacy Notice) as necessary to provide the Services. The foregoing restrictions do not apply to (i) any information that is in the public domain or already in the receiving party's possession, (ii) was known to the receiving party prior to the date of disclosure, (iii) becomes known to the receiving party thereafter from a third party having an apparent bona fide right to disclose the information, or (iv) Confidential Information that the receiving party is obligated to produce pursuant to a court order or a valid administrative subpoena, providing receiving party provides disclosing party of timely notice of such court order or subpoena (unless receiving party is legally precluded from providing such notice).

You agree to ensure that your authorized users keep all passwords and other access information to the Services in strict confidence.

Each party agrees that its violation of this Section 9.1 may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to all legal remedies.

### 9.2 Your Business Data

While it may not constitute personal information (use of personal information is addressed in our Privacy Notice), if you use the Services, we may access and use data you provide us related to your business and obtain other information related to your business, such as your bank account balance and transaction history ("Business Data") to provide, improve, develop, and market the Services. Some examples include providing customer service, data analytics, and sending you advertising materials. We do not share your Business Data with anyone except as necessary to provide our Services. Some examples include sharing Business Data with third-party service providers, legally required disclosures to courts or law enforcement, and sharing Business Data with our wholly owned subsidiaries. We aggregate and anonymize your Business Data to create industry reports,

which may be made available or provided to the public. We do not and will not sell your Business Data.

This Section 9 will survive termination or expiration of your subscription to the Services.

## Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

# 10. Indemnification

### 10.1 Our Indemnification

We agree to defend, indemnify, and hold you harmless from and against all claims brought or threatened against you by a third party alleging that a provision of the Services as permitted hereunder infringes or misappropriates a third party copyright, trade secret, trademark or patent ("Infringement Claim"). If your use of the Services has become, or in our opinion is likely to become, the subject of any Infringement Claim, we may, at our option and expense: (i) procure for you the right to continue using the Services as set forth herein; (ii) modify the Services to make them non-infringing; or (iii) if the foregoing options are not reasonably practicable, terminate your subscription to the Services and refund you any unused prepaid Service Fees. This Section 10.1 states your exclusive remedy for any claim by a third party alleging that the use of the Services as permitted hereunder infringes or misappropriates a third party copyright, trade secret, trademark or patent. The indemnification obligations in this Section will survive termination or expiration of your subscription to the Services.

### 10.2 Limitations

We have no liability or obligation with respect to any costs or damages claimed under Section 10.1 if the Infringement Claim arises out of or is in any manner attributable to (i) any modification of any Services by you (or any of your authorized users), or (ii) use of Services in combination with services and products not provided by AppFolio if such infringement would have been avoided without such modification or combination, or (iii) our compliance with your designs or instructions (each an "Excluded Claim").

### 10.3 Your Indemnification

You agree to defend, indemnify, and hold us and all our affiliates, employees, officers, directors, contractors, agents, licensors, successors and assigns (collectively, the "AppFolio Parties") harmless from any and all claims, judgments, awards, demands, suits, proceedings, investigations, damages, costs, expenses, losses, and any other liabilities (including reasonable attorneys' fees, court costs and expenses) (collectively, "Costs") arising out of or relating to (i) your use of the Services in violation of these Terms of Service, (ii) an Excluded Claim, (iii) any actual or alleged breach by you of any representation, warranty, covenant or obligation under these Terms of Service, or (iv) your gross negligence or willful misconduct. Your indemnification obligations under this Section 10.3 will survive any termination or expiration of your subscription to the Services.

### 10.4 Conditions of Indemnification

Terms of Service

AppFolio Property Manager Core

Overview
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

AppFolio Property Manager Plus

The indemnification obligations under this Section 10 above are conditioned upon (i) the indemnified party notifying the indemnifying party promptly in writing upon knowledge of any claim for which it may be entitled to indemnification hereunder; (ii) to the extent applicable, the indemnified party ceasing use of the claimed infringing Services upon receipt of notice of an Infringement Claim; (iii) the indemnified party permitting indemnifying party to have the sole right to control the defense and settlement of any such claim (provided that the indemnifying party may not settle any claim without the indemnified party's consent unless the settlement unconditionally releases the indemnified party from all liability); (iv) the indemnified party providing reasonable assistance to the indemnifying party, at the indemnifying party's expense, in the defense of such claim; (v) the indemnified party not entering into any settlement agreement or otherwise settling any such claim without indemnifying party's express prior written consent or request (except as set forth in (iii) above); and (vi) the indemnified party complying with any settlement or court order made in connection with the claim (e.g., related to the future use of any infringing materials). For clarity, the indemnified party may participate in the defense or settlement of a claim with counsel of its own choice and at its own expense.

## 11. Limitation on Liability

EXCEPT IN CONNECTION WITH (I) EITHER PARTY'S INDEMNIFICATION OBLIGATIONS PURSUANT TO THIS AGREEMENT, (II) YOUR PAYMENT OBLIGATIONS PURSUANT TO SECTION 7 (FEES), (III) BREACH OF SECTION 5.3 (YOUR RESPONSIBILITIES), (IV) BREACH OF SECTION 5.4 (YOUR RESTRICTIONS), (V) BREACH OF SECTION 12 (DATA PROTECTION), OR (VI) AS OTHERWISE PROVIDED FOR IN THE TERMS OF ANY ADD-ON SERVICE TO WHICH YOU SUBSCRIBE OR USE, EACH OF OUR LIABILITY UNDER THESE TERMS OF SERVICE WILL BE LIMITED AS FOLLOWS:

TO THE FULLEST EXTENT PERMITTED BY LAW, EACH PARTY'S TOTAL LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS OF SERVICE IS LIMITED TO THE SUM OF THE AMOUNTS PAID BY YOU FOR THE SERVICES DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE DATE THE CAUSE OF ACTION AROSE.

TO THE FULLEST EXTENT PERMITTED BY LAW, NEITHER PARTY WILL BE RESPONSIBLE FOR LOST PROFITS, REVENUES, DATA, FINANCIAL LOSSES,OR INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR INCIDENTAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE SERVICES OR THESE TERMS OF SERVICE. IN ALL CASES NEITHER PARTY WILL BE LIABLE FOR ANY LOSS OR DAMAGE THAT IS NOT REASONABLY FORESEEABLE.

BECAUSE SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU, IN WHICH CASE OUR LIABILITY SHALL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY LAW.

## Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

# 12. Data Protection

**12.1 Your Obligations**

You will comply with all applicable privacy, data protection, anti-spam and other laws, rules, regulations and guidelines relating to protection, collection, use and distribution of Personal Information (as defined below). If required by applicable data protection legislation or other law or regulation, you will inform third parties that you are providing their Personal Information to us for processing and will ensure that any required third parties have given their consent to such disclosure and processing. "Personal Information" means any information that identifies, relates to, describes, or can be reasonably associated with or traced to, directly or indirectly, an individual or household, including an individual's name, address, telephone number, e-mail address, credit card information, social security number or other similar specific factual information, regardless of the media on which such information is stored (e.g., on paper or electronically).

**12.2 Service Provider Certification**

This Section 12.2 applies only where, and to the extent that, AppFolio processes Personal Information that is subject to the California Consumer Privacy Act ("CCPA") on your behalf as a service provider (as defined in the CCPA) in the course of providing the Services. AppFolio shall not (i) sell (as defined in the CCPA) any Personal Information; (ii) retain, use, or disclose any Personal Information for any purpose other than for the specific purpose of performing the Services, including retaining, using, or disclosing any Personal Information for a commercial purpose (as defined in the CCPA) other than for such specific purpose; or (iii) retain, use, or disclose any Personal Information outside of the direct business relationship between AppFolio and you. AppFolio certifies that it understands and will comply with the restrictions set out in this Section 12.2.

# 13. Ownership Disputes

Ownership of a database associated with the Services is sometimes disputed between one or more parties. While we will have no obligation to do so, we reserve the right, at any time and in our sole discretion, with or without notice to you, to determine rightful database ownership and to transfer a database to the rightful owner. If we can't reasonably determine the rightful owner, we reserve the right to suspend access to a database until the disputing parties reach a resolution. We also may request joint instructions or certain documentation from the disputing parties, such as a government-issued photo ID, a credit card invoice or a business license, to help determine the rightful owner.

# 14. Customer Interactions

## Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

**14.1 Customer Research**

We frequently engage with our customers, and may engage with our customers' customers or other third parties related to our customers, to understand how they interact with our Services and how to better develop our Services to meet their collective and ever-evolving needs. While transparency and candor are key to that process, you acknowledge and agree that you will not improperly use or disclose to us any confidential information or trade secrets of any third parties, and will not breach any obligation of confidentiality that you may have to any third party. You further acknowledge and agree that no jointly owned intellectual property shall be created as a consequence of our customer or third party engagement process or practices, and that AppFolio owns all right, title and interest in and to its intellectual property.

**14.2 Ownership of Feedback**

You and your authorized users may from time to time provide suggestions, comments, ideas or other feedback ("Feedback") to us with respect to the Services. You agree that we are free to use, disclose, reproduce, license or otherwise distribute and exploit the Feedback, entirely without obligation or restriction of any kind on account of intellectual property rights or otherwise.

**14.3 Services to Your Customers**

You acknowledge and agree that we may make certain services available directly to your tenants, homeowners, or other customers; and may communicate with them regarding these services. These services, such as our Online Portal, payments offerings, and renters insurance,may be provided by us, through our licensed subsidiaries, and/or partners. Furthermore, any information that we make available to you about renters insurance is for informational purposes only and is not a solicitation or offer. You acknowledge and agree that renters insurance is offered by AppFolio Insurance Services, Inc. ("AIS"), a licensed insurance producer, and not through AppFolio, Inc. Any questions regarding and requests to purchase renters insurance should be directed only to AIS.

# 15. Third Party Products and Services

**15.1 Third Party Products and Services**

The Services and our website may contain links to or integrations with products, services, and websites provided by third parties, which may include our affiliates or subsidiaries. You may choose to use such third party products or services in connection with the Services, including Third Party Applications (see Section 15.2, (AppFolio Stack Marketplace)), however, your receipt or use of any third party products, services or Third Party Applications, and the third parties' use or access to any of your data, is subject to a separate agreement between you and the third party provider. Once you enable or use third party products, services, or Third Party Applications in connection with the Services, you consent to us allowing

that third party provider to access or use your data as required for the interoperation of their products and services with the Services. Such access and use by third party providers may include transmitting, transferring, deleting, or modifying your data, or storing your data on systems belonging to that third party provider and their vendors. You acknowledge and agree that this access and use of your data by a third party provider is subject to the applicable agreement between you and that third party provider. AppFolio makes no guarantee that any third party products, services, or Third Party Applications will work properly with the Services or that third party products, services, or Third Party Applications will continue to work with the Services as they change over time.

**15.2 AppFolio Stack Marketplace**

We provide a variety of integrations with third party products and services and the Services through our AppFolio Stack Marketplace ("Third Party Applications"). Third Party Applications are not AppFolio Services and remain subject to their own applicable third party providers' terms. We may enable interoperation of the Services with Third Party Applications as set forth in Section 15.1 above (Third Party Products and Services). We may, at any time, remove any Third Party Applications from the AppFolio Stack Marketplace and the third party providers may also update, modify, or remove their own applications at any time.

**15.3 Disclaimer of Liability**

AppFolio has no liability or responsibility whatsoever for any third party provider's websites, products, services, or Third Party Applications, including their accuracy, reliability, availability, security, data handling, data processing, completeness, usefulness, or quality, even if AppFolio has reviewed, certified, or approved the product, service, or Third Party Application for use in connection with the Services. Use of third party websites, products, services, or Third Party Applications is at your sole discretion and risk and you are solely responsible for your decision to permit any third party provider to use or access your data. The third party provider is solely responsible for ensuring that any information submitted through their websites, products, services, or Third Party Applications to the Services is accurate, complete, and correct. AppFolio is not responsible for the standards or business practices of any third party provider and WE DISCLAIM ALL LIABILITY AND RESPONSIBILITY FOR ANY THIRD PARTY WEBSITES, PRODUCTS, SERVICES, AND THIRD PARTY APPLICATIONS (WHETHER SUPPORT, AVAILABILITY, SECURITY OR OTHERWISE) OR FOR THE ACTS OR OMISSIONS OF ANY THIRD PARTY PROVIDERS OR VENDORS.

# 16. General Provisions

**16.1 Independent Parties**

No joint venture, partnership, agency or employment relationship exists between you and AppFolio. You are solely responsible for managing your employees and for any and all compensation, taxes, benefits and liabilities

**Terms of Service**

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

to your employees and any of your other representatives or service providers.

**16.2 Assignment**

You will not assign or transfer the Services or any of your rights and/or obligations under these Terms of Service without our prior written consent. We may without restriction assign or transfer our rights and/or obligation hereunder, at our sole discretion. Subject to the foregoing, these Terms of Service will bind to the parties' respective successors and assigns.

**16.3 Force Majeure**

No failure, delay or default in performance of any obligation of a party will constitute an event of default or breach of these Terms of Service to the extent that such failure to perform, delay or default arises out of a cause that is beyond the control and without negligence of such party, including (but not limited to) natural disasters (e.g. lightning, earthquakes, hurricanes, floods); wars, riots, terrorist activities, and civil commotions; a local exchange carrier's activities, and other acts of third parties; explosions and fires; embargoes, strikes, and labor disputes; governmental decrees; failures of telecommunications providers or internet service providers; and failures of third party suppliers, service providers or vendors. The party affected by such cause shall take all reasonable actions to minimize the consequences of any such cause.

**16.4 Applicable Law**

These Terms of Service and any dispute arising out of or relating to the Services and/or these Terms of Service will be interpreted in accordance with the laws of the State of California, without regard to conflict-of-law provisions. All disputes arising out of or related to these Terms of Service shall be subject to the exclusive jurisdiction and venue of the California state courts located in Santa Barbara, California and federal courts of the Central District of California (unless we both agree to some other location). We each hereby expressly consent to the personal and exclusive jurisdiction of such courts.

**16.5 Notices**

You agree that we will provide notices, statements and other messages to you in the following ways: (i) within the Service, or (ii) to the contact information you last provided us (e.g., e-mail, mobile number, physical address, etc.). You agree to keep your contact information up to date.

**16.6 No Waiver; Cumulative Remedies**

Either party's failure to enforce any right or provision under these Terms of Service will not constitute a waiver of that right or provision. Except as expressly set forth in these Terms of Service, the exercise by either party of any of its remedies under these Terms of Service are in addition to (and not exclusive of) any other remedies permitted at law or in equity.

**16.7 Severability**

If any provision of these Terms of Service is deemed invalid, then that provision will be limited or eliminated by the court to the minimum extent

## Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

necessary, and the remaining provisions of these Terms of Service will remain in full force and effect.

#### 16.8 Entire Agreement

The sole and entire agreement between you and us consists of (i) your order form and (ii) these Terms of Service, which incorporate by reference (a) the Add-On Service Terms for any Service to which you subscribe or use, including the AppFolio Value+ Terms, the AppFolio Tenant Screening Terms, the AppFolio Payments Terms, the AppFolio Sites Terms, the AppFolio Beta Terms and (b) any other terms or policies applicable to your use of the Services that we make available, such as through an online signup flow. This agreement supersedes all prior and contemporaneous oral or written understandings or agreements with AppFolio with respect to the Services. You acknowledge and agree that your agreement is not contingent upon the delivery of any future functionality or features not specified herein or in an order form or in the online sign-up flow, as applicable, or dependent upon any oral or written, public or private comments made by us with respect to future functionality or features for the Services.

#### 16.9 Export

You understand and acknowledge that the Services may be subject to United States export control laws and regulations. You and your authorized users agree that: (i) you will comply with all applicable United States export control laws and regulations; (ii) you are not located within, or a resident of, any country or territory for which the United States maintains export control laws and regulations, and trade and economic sanctions or embargoes; (iii) you will not use the Services from or in any territory that is subject to export and import laws and regulations, and trade and economic sanctions (currently including, but not limited to, Cuba, Iran, North Korea, Syria, the Crimea region of Ukraine, the Luhansk People's Republic region of Ukraine, and the Donetsk People's Republic of Ukraine); (iv) you are not a person on the List of Specially Designated Nationals and Blocked Persons, or any other list of sanctioned persons administered by the Office of Foreign Assets Control or any other governmental entity; and (v) you will not use the Services for any purpose prohibited by applicable export control laws and regulations.

#### 16.10 Copyright Policy

AppFolio respects the intellectual property rights of others, and asks that everyone utilizing the Services do the same. Anyone who believes that their work has been reproduced on the Services in a way that constitutes copyright infringement may notify us here.

## Terms of Service

AppFolio Property Manager Core

**Overview**
1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

**Product**

Book a Free Demo

PROPERTY MANAGEMENT

Overview
Workflow Automation
Resident Experience
Accounting & Reporting
Marketing & Leasing
Maintenance
Communication & Service
Integrations & Partnerships

Contact Us

MORE FROM APPFOLIO

Investment Management
Realm-X AI
What's New

**Solutions**

Single-Family
Multifamily
Student Housing
Affordable Housing
Community Associations
Commercial
Investment Management

**Pricing**

Property Management
Investment Management

**Our Company**

Who We Are
Careers
Diversity & Inclusion
Investor Relations ↗

**Resources**

Blog
Events
Newsroom
Contact Us

**Why AppFolio**

Performance Method
Customer Experience
Customer Stories
Customer Trust

**Login**

Property Manager Login
Investment Manager Login
Resident Portal Login
Owner Portal Login

Vendor Portal Login

Investor Portal Login

© 2025 AppFolio, Inc

Privacy Notice ↗

Do Not Sell or Share My Personal Information ↗

**Overview**

1. Scope of services
2. Modification of These Terms of Service
3. Customer Support
4. Training
5. Your Rights and Restrictions
6. Term and Termination
7. Fees
8. Representations and Warranties; Disclaimer
9. Confidential Information and Business Data
10. Indemnification
11. Limitation on Liability
12. Data Protection
13. Ownership Disputes
14. Customer Interactions
15. Third Party Products and Services
16. General Provisions

**AppFolio Property Manager Plus**

# EXHIBIT B

-----------------------

From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Thu, Dec 19, 2024 at 9:14 AM
To: <sean.saxena@appfolio.com>

Hi Sean,

I've sent over an NDA via DocuSign for your review and signature. When you have a chance, please complete it. Additionally, please share your NDA with us, and we'll be happy to sign it as well.

I'm looking forward to having a more in-depth conversation with you.

Best regards,
Srulik Lowenstein
YRIG
267-432-8518

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Sun, Dec 29, 2024 at 6:31 PM
To: <sean.saxena@appfolio.com>
Cc: Doug Keys <dkeys@yrig.com>

Hi Sean,

Happy New Year! I hope you had a restful holiday season and that your year is off to a great start.

I wanted to follow up on the partnership opportunity we discussed. As a reminder, this collaboration has the potential to generate approximately ~$110 per unit annually for AppFolio, and we're excited about the prospect of working together.

To keep things moving forward, I would greatly appreciate it if you could kindly review and sign the NDA I sent via DocuSign at your convenience. Once we have your signed copy, we'll be happy to promptly execute your NDA as well.

I believe this partnership could bring significant value to AppFolio, and I'm more than happy to provide any additional details or clarification if needed. Please feel free to reach out if you have any questions or need anything from my side.

Looking forward to hearing your thoughts and taking the next steps together!

Best regards,
Srulik Lowenstein
Partnerships, YRIG

267-432-8518

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Thu, Jan 9, 2025 at 1:14 PM
To: <sean.saxena@appfolio.com>
Cc: Doug Keys <dkeys@yrig.com>

Hi Sean,

Happy New Year! I hope 2025 has started off well for you.

I wanted to circle back on the partnership opportunity we discussed. As a reminder, this collaboration has the potential to generate approximately ~$110 per unit annually for AppFolio, and we're excited about the value it could bring to both our organizations.

If there's anything you'd like to dive deeper into or clarify, I'd be happy to set up a time to connect. Let me know how I can assist in moving things forward.

By the way, if you haven't had a chance to review the NDA I sent via DocuSign, feel free to complete it whenever it's convenient. Once that's done, we can promptly sign your NDA as well.

Looking forward to your thoughts and next steps!

Best regards,
Srulik Lowenstein
Partnerships, YRIG
267-432-8518

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Tue, Jan 28, 2025 at 2:35 PM
To: <sean.saxena@appfolio.com>

Hi Sean,

I hope you're doing well. I wanted to touch base one last time regarding the partnership opportunity we discussed. Given the potential to generate ~$110 per unit annually for AppFolio, I believe this collaboration could bring meaningful value to both of our organizations.

If this is not the right time or if priorities have shifted, I completely understand. Please let

me know either way, as I'd appreciate the clarity and can focus efforts accordingly.

If you're still interested, I'd be happy to answer any questions or help move things forward. The NDA via DocuSign is ready for your review and signature whenever it's convenient.

Looking forward to hearing from you soon!

----------
From: **Sean Saxena** <sean.saxena@appfolio.com>
Date: Tue, Jan 28, 2025 at 2:59 PM
To: Srulik Lowenstein <srulik.lowenstein@beagleforpm.com>

Hi Srulik,

So sorry for the very delayed response! Given our current priorities, it does not make sense for us to continue this conversation right now. That said let's stay in touch and if things change we can pick this up. Hope all is well.

Best,
Sean
--
**Sean Saxena**
Senior Director, Insurance | AppFolio
P: 805.308.6308 | F: 805.968.0646
sean.saxena@appfolio.com

----------
From: **Srulik Lowenstein** <srulik@beagleforpm.com>
Date: Tue, Apr 29, 2025 at 4:49 PM
To: Sean Saxena <sean.saxena@appfolio.com>

Hi Sean,

I hope you're doing well!

I wanted to circle back in regarding our previous conversations around a potential insurance partnership. I completely understand if priorities have shifted, but I still believe the opportunity we discussed could bring meaningful value to both of our organizations.

If it makes sense to revisit the conversation now or in the near future, I'd love to connect and explore how we might be able to collaborate.

Looking forward to hearing from you!

Best regards,
Srulik Lowenstein
Head of Partnerships, Beagle by YRIG
267-432-8518

----------
From: **Sean Saxena** <sean.saxena@appfolio.com>
Date: Mon, May 5, 2025 at 3:51 PM
To: Srulik Lowenstein <srulik@beagleforpm.com>

Hi Srulik,

Hope all is well - our priorities have shifted but thank you for reaching out!

Best,
Sean

----------
From: **Srulik Lowenstein** <srulik@beagleforpm.com>
Date: Tue, Dec 9, 2025 at 6:54 PM
To: Emily Yuan <emily@corgi.insure>

## Forwarded Conversation
**Subject: Follow-up from our call**
**------------------------**

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Sun, Dec 29, 2024 at 6:31 PM
To: <sean.saxena@appfolio.com>
Cc: Doug Keys <dkeys@yrig.com>

Hi Sean,

Happy New Year! I hope you had a restful holiday season and that your year is off to a great start.

I wanted to follow up on the partnership opportunity we discussed. As a reminder, this collaboration has the potential to generate approximately ~$110 per unit annually for AppFolio, and we're excited about the prospect of working together.

To keep things moving forward, I would greatly appreciate it if you could kindly review and sign the NDA I sent via DocuSign at your convenience. Once we have your signed copy, we'll be happy to promptly execute your NDA as well.

I believe this partnership could bring significant value to AppFolio, and I'm more than happy to provide any additional details or clarification if needed. Please feel free to reach out if you have any questions or need anything from my side.

Looking forward to hearing your thoughts and taking the next steps together!

Best regards,
Srulik Lowenstein
Partnerships, YRIG
267-432-8518

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>
Date: Thu, Jan 9, 2025 at 1:14 PM
To: <sean.saxena@appfolio.com>
Cc: Doug Keys <dkeys@yrig.com>

Hi Sean,

Happy New Year! I hope 2025 has started off well for you.

I wanted to circle back on the partnership opportunity we discussed. As a reminder, this collaboration has the potential to generate approximately ~$110 per unit annually for AppFolio, and we're excited about the value it could bring to both our organizations.

If there's anything you'd like to dive deeper into or clarify, I'd be happy to set up a time to connect. Let me know how I can assist in moving things forward.

By the way, if you haven't had a chance to review the NDA I sent via DocuSign, feel free to complete it whenever it's convenient. Once that's done, we can promptly sign your NDA as well.

Looking forward to your thoughts and next steps!

Best regards,
Srulik Lowenstein
Partnerships, YRIG
267-432-8518

----------
From: **Srulik Lowenstein** <srulik.lowenstein@beagleforpm.com>

Date: Tue, Jan 28, 2025 at 2:35 PM
To: <sean.saxena@appfolio.com>

Hi Sean,

I hope you're doing well. I wanted to touch base one last time regarding the partnership opportunity we discussed. Given the potential to generate ~$110 per unit annually for AppFolio, I believe this collaboration could bring meaningful value to both of our organizations.

If this is not the right time or if priorities have shifted, I completely understand. Please let me know either way, as I'd appreciate the clarity and can focus efforts accordingly.

If you're still interested, I'd be happy to answer any questions or help move things forward. The NDA via DocuSign is ready for your review and signature whenever it's convenient.

Looking forward to hearing from you soon!

----------
From: **Sean Saxena** <sean.saxena@appfolio.com>
Date: Tue, Jan 28, 2025 at 2:59 PM
To: Srulik Lowenstein <srulik.lowenstein@beagleforpm.com>

Hi Srulik,

So sorry for the very delayed response! Given our current priorities, it does not make sense for us to continue this conversation right now. That said let's stay in touch and if things change we can pick this up. Hope all is well.

Best,
Sean
--
**Sean Saxena**
Senior Director, Insurance | AppFolio
P: 805.308.6308 | F: 805.968.0646
sean.saxena@appfolio.com

----------
From: **Srulik Lowenstein** <srulik@beagleforpm.com>
Date: Tue, Apr 29, 2025 at 4:49 PM
To: Sean Saxena <sean.saxena@appfolio.com>

Hi Sean,

I hope you're doing well!

I wanted to circle back in regarding our previous conversations around a potential insurance partnership. I completely understand if priorities have shifted, but I still believe the opportunity we discussed could bring meaningful value to both of our organizations.

If it makes sense to revisit the conversation now or in the near future, I'd love to connect and explore how we might be able to collaborate.

Looking forward to hearing from you!

Best regards,
Srulik Lowenstein
Head of Partnerships, Beagle by YRIG
267-432-8518

----------
From: **Sean Saxena** <sean.saxena@appfolio.com>
Date: Mon, May 5, 2025 at 3:51 PM
To: Srulik Lowenstein <srulik@beagleforpm.com>

----------
From: **Srulik Lowenstein** <srulik@beagleforpm.com>
Date: Wed, Dec 10, 2025 at 11:15 AM
To: Anthony D'Angelo <anthony@beagleforpm.com>

Srulik Lowenstein
Head of Partnerships
267-432-8518
Linkedin | JoinBeagle.com

Date: Tue, Dec 9, 2025 at 6:54 PM
To: Emily Yuan <emily@corgi.insure>

## Forwarded Conversation
**Subject: Follow-up from our call**

[redacted]

From: **Kyle Triplett** <kyle.triplett@appfolio.com>

Date: Mon, Nov 25, 2024 at 6:33 PM
To: Srulik Lowenstein <srulik@yourrenterskit.com>
Cc: steven.biringer@appfolio.com <steven.biringer@appfolio.com>

Hi Srulik, I am adding @steven.biringer@appfolio.com to this email chain and he will reach out to you to connect.

Thank you.

On Fri, Nov 22, 2024 at 1:15 PM Srulik Lowenstein <srulik@yourrenterskit.com> wrote:

> Hi Kyle, I've been trying to get in touch with Appfolio to discuss an insurance partnership. Can you help me?

--
**Kyle Triplett**
SVP, Product | AppFolio
kyle.triplett@appfolio.com
**appfolioinc.com**

----------
From: **Srulik Lowenstein** <srulik@yourrenterskit.com>
Date: Mon, Dec 2, 2024 at 9:21 AM
To: Kyle Triplett <kyle.triplett@appfolio.com>
Cc: steven.biringer@appfolio.com <steven.biringer@appfolio.com>

Hey Steven, I hope you had a nice Thanksgiving weekend. Let's connect for a few minutes whenever you're available. Feel free to schedule here whenever it works for you.
In short, we set up insurance captives for Software companies so they can earn the actual underwriting profits from the insurance policies they offer (renters insurance, etc). Based on our research of AppFolio this is something that would fit perfectly into your current offering.
Best,
Srulik Lowenstein,
Head of Partnerships @ YRIG

----------
From: **Steven Biringer** <steven.biringer@appfolio.com>
Date: Tue, Dec 3, 2024 at 3:52 PM
To: Srulik Lowenstein <srulik@yourrenterskit.com>
Cc: Kyle Triplett <kyle.triplett@appfolio.com>

Sent time for next Monday. Talk soon!

> **Steven Biringer**
> VP of Strategy
> m. 412.860.0660
> **steven.biringer@appfolio.com www.appfolio.com**

----------
From: **Srulik Lowenstein** <srulik@yourrenterskit.com>
Date: Tue, Dec 9, 2025 at 6:55 PM
To: Emily Yuan <emily@corgi.insure>

## Forwarded Conversation
**Subject: Re: Insurance Partnership**
------------------------

From: **Kyle Triplett** <kyle.triplett@appfolio.com>
Date: Mon, Nov 25, 2024 at 6:33 PM
To: Srulik Lowenstein <srulik@yourrenterskit.com>
Cc: steven.biringer@appfolio.com <steven.biringer@appfolio.com>

Hi Srulik, I am adding @steven.biringer@appfolio.com to this email chain and he will reach out to you to connect.

Thank you.

On Fri, Nov 22, 2024 at 1:15 PM Srulik Lowenstein <srulik@yourrenterskit.com> wrote:

> Hi Kyle, I've been trying to get in touch with Appfolio to discuss an insurance partnership. Can you help me?

--
**Kyle Triplett**
SVP, Product | AppFolio
kyle.triplett@appfolio.com
**appfolioinc.com**

----------
From: **Srulik Lowenstein** <srulik@yourrenterskit.com>

Date: Mon, Dec 2, 2024 at 9:21 AM
To: Kyle Triplett <kyle.triplett@appfolio.com>
Cc: steven.biringer@appfolio.com <steven.biringer@appfolio.com>

Hey Steven, I hope you had a nice Thanksgiving weekend. Let's connect for a few minutes whenever you're available. Feel free to schedule here whenever it works for you.
In short, we set up insurance captives for Software companies so they can earn the actual underwriting profits from the insurance policies they offer (renters insurance, etc). Based on our research of AppFolio this is something that would fit perfectly into your current offering.
Best,
Srulik Lowenstein,
Head of Partnerships @ YRIG

----------
From: **Steven Biringer** <steven.biringer@appfolio.com>
Date: Tue, Dec 3, 2024 at 3:52 PM
To: Srulik Lowenstein <srulik@yourrenterskit.com>
Cc: Kyle Triplett <kyle.triplett@appfolio.com>

----------
From: **Mail Delivery Subsystem** <mailer-daemon@googlemail.com>
Date: Tue, Dec 9, 2025 at 6:55 PM
To: Srulik Lowenstein <srulik@beagleforpm.com>

You no longer have access to srulik@yourrenterskit.com. To send this email, choose a different "from" address and try again. Learn more at
https://support.google.com/mail/answer/22370?hl=

----------
From: **Srulik Lowenstein** <srulik@beagleforpm.com>
Date: Tue, Dec 9, 2025 at 6:57 PM
To: Emily Yuan <emily@corgi.insure>

## Forwarded Conversation
**Subject: Re: Insurance Partnership**
------------------------

From: **Kyle Triplett** <kyle.triplett@appfolio.com>
Date: Mon, Nov 25, 2024 at 6:33 PM
Date: Tue, Dec 9, 2025 at 6:55 PM

To: Emily Yuan <emily@corgi.insure>

# EXHIBIT C

**From:** AppFolio <updates@hello.appfolio.com>
**Sent:** Tuesday, December 9, 2025 12:01 PM
**To:** [redacted]
**Subject:** Attention Required: Beagle Access to Your Account

Hi [redacted]

We have received reports from several customers that Beagle – an insurance and resident services company – recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our **integration partners** go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but the method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

Sincerely,
AppFolio

See below, what are the steps moving forward ?

[redacted]

**From:** AppFolio <updates@hello.appfolio.com>
**Sent:** Tuesday, December 9, 2025 12:01:14 PM
**To:** [redacted]
**Subject:** Attention Required: Beagle Access to Your Account

Hi [redacted]

We have received reports from several customers that Beagle – an insurance and resident services company – recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our **integration partners** go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but the method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

Case: 26-769, 04/07/2026, DktEntry: 11.5, Page 86 of 185

[redacted] via beagleforpm.com
to Reports, soojee, soojee@beagleforpm.com, Esq.

View [redacted] Profile 11:10 AM (35 minutes ago)

Selected

It looks like APpfolio is going to be kicking Beagle off the account and my tenants will no longer be covered. This is getting messy. What do we need to do here?

[redacted]

**From:** AppFolio <updates@hello.appfolio.com>
**Sent:** Tuesday, December 9, 2025 12:01 PM
**To:** [redacted]
**Subject:** Attention Required: Beagle Access to Your Account

Hi [redacted]

We have received reports from several customers that Beagle – an insurance and resident services company – recently made false claims about AppFolio, representing themselves as an AppFolio partner in an attempt to win business and gain noncompliant access to customer accounts. Beagle is not an AppFolio integration partner and we have no plans to partner with them in the future.

Third-party providers are an important part of our industry and we support multiple safe methods for you to work with them, including AppFolio Stack, Database API, and scheduled reports. All of our **integration partners** go through a rigorous vetting process to ensure they meet our standards and share in our commitment to provide a high-quality experience to you and your customers.

We value your ability to choose providers, but the method by which Beagle has chosen to operate their business places you at risk. By creating user accounts in your database, Beagle has the ability to:

- access the personally identifiable information of your residents
- issue payments through the AppFolio payments platform
- view and take action across your entire account database

In addition to the serious security risks this noncompliant access poses for you, your residents, and your customers, it also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property.

To keep our ecosystem safe, we cannot allow Beagle's noncompliant access. We have notified Beagle we are removing their access and outlined a path to provide you continued service that is compliant with our terms of service and does not create security risk. **To facilitate any transition for your business, we will allow them maintain access to your database (should you so choose) for 5 business days, until December 16, 2025, before removing those users.**

As your trusted technology partner, we work to protect the integrity of your data and provide integrated experiences that enable you to have stable, seamless user experiences. If we can provide any additional support, please contact our Customer Care team by clicking on Support from your AppFolio database and a dedicated representative would be happy to follow up.

Sincerely,

# EXHIBIT D

[redacted]

[redacted] 1:09 PM (1 hour ago)

to me, Kris

Thank you for the info. This isn't the first time Appfolio has done something like this, there was a big ordeal with [redacted] at the beginning of the year too. We are ok with the scheduled reports, just let us know if we need to do anything on our end. Thank you!

[redacted]

◂ Phone

From: [redacted]
Date: Tue, Dec 9, 2025 at 11:17 AM
Subject: Re: [redacted] | Beagle Follow Up
To: Walt Boxwell <walt@beagleforpm.com>, <joshualee@beagleforpm.com>
CC: [redacted]

Walt Joshua and all the scumbags at Beagle

,
It looks like AppFolio has identified your company as a scam! I have removed all your access and alerted all of our tenants regarding your malpractice. I hope that Karma prevails and that you and all of the individuals involved pay dearly for what you are doing on this earth in taking advantage of people. You slum.

Sincerely,

[redacted]

On Dec 9, 2025, at 7:53 AM, Walt Boxwell <walt@beagleforpm.com> wrote:

Hi team!

Reply    Forward

[redacted] [redacted]

12:25 PM (10 minutes ago)

to me, Alex, Noah

Hi Ryan,

When we spoke on Friday, the information I mentioned was true and correct in that if you found a better solution for Insurance instead of what we have to offer, that's completely fine.

Fast forward to yesterday, our entire company was briefed about a situation going on with Beagle where our Legal team needed to get involved. Once that was announced, I could not proactively communicate any details until our company released official communications, as instructed by our Legal team.

If you'd like, I can escalate your request to our team that is specializing in this area. Please let me know and I'd be happy to have them reach out to you.

Thank you,
[redacted]

Ne

[redacted] 2:30 PM

Hi Beagle team - we received this from [redacted]. Do you know anything about AppFolio "denouncing" Beagle?

Sorry I missed you guys today. I've been swamped. The whole issue with AppFolio denouncing Beagle has us in a bind.

The CFO thinks our software with them could have bene compromised so I'm taking a pause for now. Maybe we can touch base after the holidays.

[redacted]

[redacted]

to me

10:25 AM (0 minutes ago)

Steven,

We have choses to not to use Beagle and choose to reimburse all the tenants that have paid and revere any payments that have been made if any to Begle.

I know it is all business and competition and AppFolio is removing your ability to operate within their platform.

Begle method of billing all of the tenants and forcing them to spend their time proving they had insurance is the Stop light for me.

Regards,

[redacted]

...

⚠

**Attention Required: Beagle Access to Your Account**

We recently identified that Beagle has been accessing AppFolio accounts in a way that violates our Terms of Service and creates risk for your business. To keep your account safe, we're removing their access on December 16, 2025. You can continue working with Beagle using approved options such as scheduled reports. For more information, please reference our full communication or contact Support if you need assistance.

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Associations LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,<br><br>Plaintiffs,<br><br>v.<br><br>APPFOLIO, INC., a California corporation,<br><br>Defendant. | CASE NO.<br><br>**DECLARATION OF ANTHONY D'ANGELO IN SUPPORT OF PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER** |

**DECLARATION OF ANTHONY D'ANGELO**

I, Anthony D'Angelo, declare as follows:

1. I am the Chief Executive Officer for Beagle Labs. (hereinafter "Beagle" or "Defendant"). I have personal knowledge of the facts surrounding the present action and Beagle's business, and all facts stated herein, unless otherwise stated on information and belief. If called upon to testify, I could and would competently do so under oath as to the truth of the matters stated herein.:

**A. Beagle Is an Innovative Competitor Offering Services Customers Love Through Lawful Competition**

2. Beagle is a fast-growing emerging technology company offering AI-driven services for building managers. Beagle's offering includes insurance-related compliance services to property managers nationwide as well as residential living services. The compliance services include rent and pet insurance verification, tenant liability waiver programs, and deposit alternative services, among others. Beagle also enables buildings to provide core services to renters, including move-in services, including utility and Internet set up, air filter delivery, and identity theft protection.

3. Beagle's services help property managers satisfy lease requirements, manage risk, and provide cost-effective protection to renters. They also enable day-to-day living and thousands of renters to move into their rentals seamlessly. Without Beagle, a building that suffers a fire may not have properly insured renters. Renters might not be able to get clean air filters. Utilities would not be properly set up. Nor would pets be properly insured. Property managers throughout the country work with Beagle because they prefer Beagle's products and service model over competing offerings.

4. To administer these programs, Beagle's customers provide it with access to limited categories of the property managers' operational data, including tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status. They do so by creating a new account for Beagle in the software that the building uses to manage the property. Customers use AppFolio's built-in user-management features in a manner that is safe, controlled, and secure. Indeed, this industry-standard

workflow is used by AppFolio's customers to grant access to many other third-party vendors. AppFolio's website even touts third-party vendor integration as an advantage of using their platform

> **Online Portal for Vendors**
> Give vendors access to view work order details, upload invoices, add notes and photos, and mark their work as complete all within the fully mobile Vendor Portal in AppFolio.

5. Beagle's workflow is so transparent that it goes as far as publishing "Beagle Reports" of accounts with Beagle email domains. AppFolio has full visibility into this through its own administration of the AppFolio platform. Beagle does not circumvent technical measures and does not use any kind of automated access without authorization. All Beagle does is use the accounts its customers provide for it.

6. When a customer creates a new account for Beagle in AppFolio, they use Beagle's email domain and create new passwords for Beagle. Beagle does not use the customers' primary login information. Customers are able to fully control the permissions that Beagle is granted in its accounts and limit those permissions to facilitate what Beagle is needed. When Beagle works with customers, it provides them with a description of how it accesses data and for what purpose. Attached as **Exhibit A** is a copy of a document explaining how Beagle works with AppFolio.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 14, 2025, in Chicago, Illinois.



Anthony D'Angelo

# EXHIBIT A

beagle Home Waiver Programs Resident Kit AI Tools Company Login Book a Demo

# Autopilot for Renters Insurance Compliance

Get peace of mind by closing any protection gaps with insurance verification and liability waivers that boost NOI.

Book a Demo Learn More →



As featured in NBC NEWS FOX NEWS MORNINGSTAR AP BENZINGA



Close Any Coverage Gaps

## Protect & minimize risk

Property owners face significant risk when residents lack renters insurance or resident liability waivers. For every resident-caused damage, owners are exposed to greater losses, declining loss ratios, and rising insurance premiums.

Single Family and Multifamily Rentals

Learn why Beagle is the #1 renters insurance compliance platform for property management companies.

**AI Insurance Verification**

Save hours of manual work by automating verification of third party insurance policies.

**Liability Waiver Program**

Residents are automatically enrolled into our liability waiver programs when a coverage gap is detected.

**100% Hands-off**

Beagle programs are 100% fully managed and automated, so you don't need to do a thing.



**"Beagle was exactly the solution I was looking for when I was searching for a way to manage renters insurance."**



Raven Reinmuth
Founder & CEO

RAVEN REAL ESTATE MANAGEMENT

**"Beagle has been helping us increase our bottom line since we joined. The easiest program ever to launch."**



John Szymanski
President

URBAN EQUITIES



Beagle integrates with all property management softwares, enabling seamless setup and automating insurance verification within minutes.

beagle

Autopilot for Renters Insurance Compliance

473 Pine St Floor 5
San Francisco, CA 94104

support@beagleforpm.com

**Product**

Features

Resident Kit

Waiver Programs

FAQ

**Company**

Careers

**Resources**

Blog

Book a Demo

Beagle vs. Second Nature

Support

Nothing on this website is intended to act as a solicitation or offer for the purchase or sale of insurance in any state where it is forbidden.

These benefits to Association members should not be construed as an offer to provide insurance or construed as an insurance

product in any state where where it would be prohibited by law.

Member benefits are not available to residents; they can only be accessed by landlord Association members.

© 2025 Beagle. All rights reserved.

Privacy Policy

Terms of Service

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs, Beagle, Inc., Beagle Technologies, Inc., Big Beagle Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**DECLARATION OF MARCELO BARROS IN SUPPORT OF PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

# DECLARATION OF MARCELO BARROS

I, Marcelo Barros declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney at law with the law firm Greenberg Traurig, LLP ("GT"), counsel of record for Plaintiff in the above-captioned matter. I make this declaration in support of Plaintiffs' Motion for Temporary Restraining Order ("Motion") filed concurrently. Except where indicated on information and belief, the matters set forth herein are based upon my personal knowledge, and if called as a witness in this matter, I could and would testify competently thereto; as to the matters stated upon information and belief, I believe them to be true.

2. Counsel for Beagle notified AppFolio last Thursday in writing in court papers filed in a case AppFolio filed (containing no federal claims and less than all overlapping parties as this case) pending in Santa Barbara Superior Court that Beagle intended to seek injunctive relief and assert affirmative claims.

3. Counsel for Beagle, my colleague Michael Burshteyn, also notified AppFolio's counsel repeatedly on Wednesday, Thursday, and Friday that AppFolio's planned attack would constitute tortious interference and unfair competition.

4. Counsel for Beagle is providing notice to AppFolio of this evenings / early morning's TRO papers concurrently with filing. Further notice should not be required given the timing—if AppFolio is permitted to continue with its block, it will cause irreparable harm to Beagle's business. Preserving the status quo is appropriate where the parties can brief and prepare for a preliminary injunction hearing in the meantime.

5. The screenshot shown was captured from https://www.joinbeagle.com/beagle-vs-second-nature on December 14, 2025. Attached as **Exhibit A** is a true and correct copy of this webpage.

6. **Exhibit B** is a true and correct copy of a screenshot from AppFolio's website at https://www.appfolio.com/property-manager/communication-service, last visited Dec. 14, 2025).

7. On Friday, December 12, 2025, counsel for AppFolio represented to my colleague Mr. Burshteyn that AppFolio had and would consider Computer Fraud and Abuse Act claims against Beagle if Beagle took the parties' dispute to federal court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 15, 2025, in San Francisco, California.

*/s/ Marcelo Barros*
Marcelo Barros

# EXHIBIT A

beagle

Home | Waiver Programs | Resident Kit | AI Tools | Company

Login | Book a Demo



Beagle vs. Second Nature

# Stuck in second place with Second Nature?

Second Nature partners with a third party for their benefits. With Beagle, you can provide better experience for your tenants while doubling your revenue.

Book a Demo

✓ No fees ✓ No long-term contracts ✓ Cancel anytime

The Second Nature Flip

## Why people are switching to Beagle

### 2x Your Revenue

Offer the same tenant benefits and liability protection for a fraction of the cost (starting at $4). You keep all the extra margin.

### We're the Carrier

No brokers, no middlemen. Get direct insight and influence over claims. More control. More clarity. More power.

### Seamless Frontend, Better Backend.

Nothing changes on your end. We handle the switch behind the scenes. Fast, simple, and zero lift from your team.

Switch to Beagle

How the flip works

## Better experience. Way better margins.




1

### Create Beagle Account

Set up takes minutes, not hours. Our onboarding team will walk you through everything. No tech headaches, no learning curve.

2

### Put in GL codes, etc.

We'll help you map everything from GL codes to any internal tracking you need. Your accounting stays clean and you stay in control.







3

### Give 30/60 days notice

Let your current provider know you're making the switch. We'll help you manage the transition to ensure no gaps in protection.

4

### Same or better services.

Beagle covers everything you're used to, but without the bloat. And because we're the carrier, you get faster claims handling, better margins, and more control.




Get better margins

## Comparing Beagle vs. Second Nature

| | ★ Beagle | Second Nature |
|---|---|---|
| RBP Pricing | Starting $4/mo | $$$ |
| Insurance Compliance Platform (Revenue-driving) | ✓ | ✗ |
| Security Deposit Alternative (Revenue-driving) | ✓ | ✗ |
| Pet Damage Waiver (Revenue-driving) | ✓ | ✗ |
| AI-driven Tools (Free) | ✓ | ✗ |
| 24/7 Customer Support | ✓ | ✗ |
| Upfront Costs and Long Term Contracts | ✗ | ✓ |

Double your revenue

## Don't take our word for it

"Beagle was exactly the solution I was looking for when I was searching for a way to manage renters insurance."


Raven Reinmuth
Founder & CEO

RAVEN REAL ESTATE MANAGEMENT

"Beagle has been helping us increase our bottom line since we joined. The easiest program ever to launch."


John Szymanski
President

URBAN EQUITIES

# Get started today

Automate renters insurance compliance.

Book a Demo

✓ No fees ✓ No long-term contracts ✓ Cancel anytime

beagle

Autopilot for Renters Insurance Compliance

473 Pine St Floor 5
San Francisco, CA 94104

support@beagleforpm.com

**Product**

Features

Resident Kit

Waiver Programs

FAQ

**Company**

Careers

**Resources**

Blog

Book a Demo

Beagle vs. Second Nature

Support

Nothing on this website is intended to act as a solicitation or offer for the purchase or sale of insurance in any state where it is forbidden.

These benefits to Association members should not be construed as an offer to provide insurance or construed as an insurance product in any state where where it would be prohibited by law.

Member benefits are not available to residents; they can only be accessed by landlord Association members.

© 2025 Beagle. All rights reserved.

Privacy Policy Terms of Service

# EXHIBIT B

Property Manager    Communication & Service

# An Exceptional Experience with Every Interaction

AppFolio's effortless communication tools keep all stakeholders happy. Your residents, owners, and investors stay in the loop, all in one place.

Book a Free Demo




COMING SOON

## Explore FolioSpace, our All-New Resident Experience

Exceed resident expectations throughout the entire rental lifecycle with FolioSpace — the next generation resident app.

Learn More

## Key Advantages For Your Team



### Access Anytime, Anywhere

Operations run smoothly when your residents have instant access to an easy-to-navigate mobile app and online portal.



### Empower Your Team with AI

Transform your service and act on every incoming message instantly by using AppFolio Realm-X Performers.



### Conquer Inbox Overwhelm

AppFolio Realm-X Messages is a central inbox that helps teams quickly act on every incoming message. Provide better service for residents, owners, and investors, all from a single location.

## Seamless Resident Living, Right at Their Fingertips

### Online Resident Portal and Mobile App




Empower residents and make their lives easier with a one-stop shop to access everything they need. With convenient, on-demand access to their Online Portal, residents can submit maintenance requests, make payments, and more. Plus, your team can upload shared documents to ensure everyone has on-demand access to critical information.

Benefits:

- More satisfied customers due to faster self-service offerings
- Fewer one-off phone calls and emails required
- Residents can stay connected and take action from anywhere with the mobile app

## Agentic AI Workflows

With the power of Realm-X Performers, residents get a more convenient and responsive experience. This agentic AI is built into the AppFolio platform and works around the clock, so you don't have to. You can sleep easily knowing that residents' needs are being met instantly.

Benefits:

- Fast, 24/7 response and multilingual support
- Quick issue resolution: Leveraging the Realm-X Maintenance Performer, residents can easily submit maintenance requests and get a technician dispatched without delay
- Smooth leasing experience: Leads will be contacted, tours scheduled, and questions answered with the Realm-X Leasing Performer







## Centralized Inbox

With AppFolio Realm-X Messages, property managers can easily and promptly contact residents through text and email via a central inbox. Teams can quickly act on every incoming message and provide superior service for customers.

Benefits:

- All inbound messages can be viewed in one place, filtered, and sorted
- Suggested actions use a message's context to guide users toward appropriate steps to address the resident's needs
- Suggested responses make replies quick, clear, and relevant with personalized details automatically included



## "AppFolio is a central structural pillar to the operation of our company, and through their continuous innovation, we have improved customer service,

reduced the use of paper, and improved the ability for our team to communicate effectively.”

**Darus Trutna**
President, Real Property Management

All Case Studies

## One Powerful Platform for All Your Communication and Service Needs

**Online Portal for Renters**
The Online Portal lets your

**Online Portal for Homeowners & Board Members**

**Online Portal for Vendors**
Give vendors access to view work

**Online Owner Portal**
Keep owners happy with timely

Introducing Real Estate Performance Management. **Learn More.** Login Contact Us

appfolio Products Why AppFolio Resources Pricing Book a Free Demo

way.

**Text Communication**
Quickly and easily send individual or mass texts to your residents and vendors through AppFolio, and be immediately notified of replies.

**Email Communication**
Email residents individually or in bulk from AppFolio for quick and convenient communication.

**Payment Plans**
Track and account for deferred rent, association dues, and other charges with payment plans.

**Shared Documents & Folders**
Quickly share important documents with residents directly through their AppFolio Online Portal. Documents can be easily organized and unshared as needed.

**Online Board Approvals**
Board members can easily sign checks and approve invoices through their AppFolio Online Portal, ensuring that association business can move quickly.

**Architectural Reviews**
Give homeowners the best customer experience, from the minute they submit an architectural request to when they complete the update to their home.

**Board Member Management**
From online board approvals for voting on invoices and architectural requests, to shared documents and reports just for board members, empower your board with modern tools that make their job a breeze.

**Tenant Insurance**
Tenants have the option to either provide proof of renters insurance or to purchase renters insurance, offered by Appfolio Insurance Services, available through their tenant portal.

**Surveys**
Automatically send surveys to receive immediate feedback from residents and measure their satisfaction with your services over time.

**Text Templates**
Simplify and streamline your text communication process with text templates.

**Mobile App**
AppFolio's Online Portal maximizes convenience with a mobile app, so your team can work from the field or at home, while your residents and vendors can access their tools and important information from anywhere.

## Customer Stories



### Chamberlin & Associates: Space for More Peace of Mind

Explore how Chamberlin has optimized their workflows, empowered teams, and delivered real-time insights to owners, all while maintaining their signature standard of excellence.




### 2B Living: Space to Innovate with Exceptional People

From streamlining workflows to providing real-time insights, see how AppFolio enables 2B Living to scale their portfolio effectively.



### The Breeden Company: Space to Build a Legacy

Discover how AppFolio supports The Breeden Company's growth, improves resident satisfaction, and helps them build a lasting legacy for generations to come.

See More

# Find Your Fit with Our Flexible Plans

No hidden fees. No overpaying for features you don't need. With AppFolio's pricing plans, you'll know exactly what you're paying for and get exactly what you need.

Explore Pricing

## Insights You Might Like

Renter_Preferences_Report

### 2025 Renter Preferences Report: Strategies to Increase Satisfaction and Occupancy

Vacancy rates are up — are you aligned with what today's renters expect? The 2025 Renter Preferences Report reveals insights from 2,000+ renters.

Benchmark_Report

### Aim High for 2025 Performance With Insights From the AppFolio Benchmark Report

See how the real estate industry is adapting to a changing landscape, and discover actionable steps to position your business for success.

Performance_Gap

### Performance Gap: You're Mistaking Efficiency for Real Results

Dive into "the performance gap" — the disconnect between operational efficiency and real performance, and explore why our industry gets stuck in reactive, task-based management.

See More

Property Manager

## Popular Workflows

### Maintenance & Efficiency

Run seamless online maintenance workflows, grow property values, and gain better internal control in one place.

Learn More

### Staffing & Training

Your team will operate at the top of their game with an intuitive user experience, configurable workflows, and smart automation.

Learn More

### Marketing & Leasing

Fill vacancies and keep revenue predictable, all while delighting your customers with our frictionless prospect and resident experiences.

Learn More

# Meet Your New Partner in Tech

We want you to win. Discover all the ways AppFolio communication tools can help improve service and resident relations with a free demo today.

Book a Free Demo

**Product**

PROPERTY MANAGEMENT

- Overview
- Workflow Automation
- Resident Experience
- Accounting & Reporting
- Marketing & Leasing
- Maintenance
- Communication & Service
- Integrations & Partnerships

MORE FROM APPFOLIO

- Investment Management
- Realm-X AI
- What's New

**Solutions**

- Single-Family
- Multifamily
- Student Housing
- Affordable Housing
- Community Associations
- Commercial
- Investment Management

**Pricing**

- Property Management
- Investment Management

Book a Free Demo

Contact Us

**Our Company**

- Who We Are
- Careers
- Diversity & Inclusion
- Investor Relations ↗

**Resources**

- Blog
- Events
- Newsroom
- Contact Us

**Why AppFolio**

- Performance Method
- Customer Experience
- Customer Stories
- Customer Trust

**Login**

- Property Manager Login
- Investment Manager Login
- Resident Portal Login
- Owner Portal Login
- Vendor Portal Login
- Investor Portal Login

© 2025 AppFolio, Inc Privacy Notice ↗ Do Not Sell or Share My Personal Information ↗

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**PROPOSED ORDER GRANTING PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

**PROPOSED ORDER**

Having considered Plaintiffs' Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.'s Motion for Temporary Restraining Order ("Motion"), any statements or declarations submitted in support of the Motion, this Court determines that the Motion is **GRANTED**.

The Court **FINDS**:

1) AppFolio provides a cloud-based property management platform that functions as an operating system for property managers and housing providers nationwide, integrating accounting, leasing, payments, communications, and a marketplace of third-party integrations.
2) The Beagle entities (Plaintiffs) provide interoperable software and related services that connect to AppFolio to deliver complementary functionality to mutual customers nationwide. Plaintiffs' services depend on uninterrupted domain-level and endpoint connectivity to process data and provide services to its users.
3) Plaintiffs have made a sufficient showing that AppFolio has developed and will imminently deploy, on or around December 16, 2025, a software patch, update, or other technical measure designed to block, degrade, or otherwise interfere with traffic to or from Plaintiffs' domain(s) and related endpoints used to deliver Plaintiffs' services and integrations with AppFolio's platform (the "Blocking Measures").
4) Plaintiffs have shown that AppFolio's imminent Blocking Measures will disrupt service for thousands of customers across the United States that use Plaintiffs' services through AppFolio and thousands more of downstream end users (i.e. renters). Plaintiffs have further shown that the Blocking Measures have the potential to affect Plaintiffs' business by up to 80%, and halt or nearly halt Plaintiffs' business operations and services. Plaintiffs have further shown that the ultimate consumer's ability to procure renters insurance will likely be affected.
5) Plaintiffs have shown that the Blocking Measures, if not restrained, will cause immediate and irreparable harm, including disruption of services, loss of goodwill, and reputational damage for which monetary relief is inadequate, cannot be readily quantified, or both.

6) Plaintiffs have made a sufficient showing, at this juncture, that AppFolio's apparent motivation for the Blocking Measures—security and/or safety—do not outweigh the irreparable and drastic consequences to Plaintiffs, if the Blocking Measures are rolled out.

7) Plaintiffs have made a sufficient showing, at this juncture, that any asserted security rationale does not outweigh the severe and irreparable harm that would result from implementing the Blocking Measures.

8) The balance of hardships favors preserving the status quo, as the harm to Plaintiffs and their customers far outweighs any temporary harm to AppFolio in delaying the December 16, 2025 rollout (Blocking Measures), pending a fuller evidentiary hearing. At minimum, the Court finds that the harm to AppFolio is substantially outweighed by the harm to Plaintiffs.

9) That serious questions going to the merits are raised and that Plaintiffs are likely to prevail, and that the balance of hardships tips in Plaintiffs' favor given the risk of irreversible disruption to Plaintiffs' operations and relationships compared to the minimal burden on AppFolio in preserving the status quo, pending a fuller evidentiary hearing.

10) The public interest favors continuity of services, avoidance of customer disruption, and preservation of competition pending adjudication on a fuller record.

Based on the allegations in the Complaint, the evidence presented, together with the sworn statements verifying the facts alleged, and the motion papers before the Court, the Court **CONCLUDES** that Plaintiffs have demonstrated that immediate relief is necessary to prevent irreparable injury before the Court can hear and decide Plaintiffs' request for a preliminary injunction, and the requirements of Federal Rule of Civil Procedure 65 are satisfied, including the showing of immediate and irreparable injury, a likelihood of success on the merits or, at minimum, serious questions with the balance of hardships tipping in Plaintiffs' favor, that the requested relief is narrowly tailored to preserve the status quo, and that the balance of equities, on this record, favor grant of a Temporary Restraining Order.

**IT IS THEREFORE ORDERED**, effective immediately, and until further order of the Court:

1) AppFolio, Inc. and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them who receive actual notice of this Order (collectively,

AppFolio), are **RESTRAINED AND ENJOINED** from deploying, activating, implementing, otherwise rolling out any software patch, update, configuration, policy, or otherwise technical measure(s) to block degrade, interfere with, or otherwise restrict network, API, or other electronic communications by or to Plaintiffs' domain(s), subdomain(s), IP address(es), endpoint(s), integration point(s) used to provide Plaintiffs' services to customers, including any measure intended to block or blacklist Plaintiffs' domain(s) or associated traffic (collectively, the Blocking Measures).

2) AppFolio is **ENJOINED** from instructing, inducing, causing, or permitting any third party acting in concert with AppFolio to implement or effectuate the Blocking Measures, or any portion thereof.

3) This paragraph is intended to preserve and maintain AppFolio's genuine security operations and capabilities, without authorizing the Blocking Measures referenced. Accordingly, nothing in this Order prohibits AppFolio from undertaking emergency, non-discriminatory security measures that are:

   a. necessary to address a bona fide, specific, and imminent security threat unrelated to Plaintiffs' identity, data breaches, or other cybersecurity threat or event;

   b. narrowly tailored to the identified threat;

   c. not targeted at blocking or degrading Plaintiffs' domain(s) or traffic *because of* Plaintiffs' identity or services.

4) This Order binds AppFolio, its officers, agents, employees, attorneys, and other persons who are in active concert or participation with AppFolio and receive actual notice of this Order, consistent with Federal Rule of Civil Procedure 65(d)(2).

**IT IS FURTHER ORDERED** that notice to AppFolio is not required prior to issuance of this Temporary Restraining Order. Under Rule 65(b)(1), the Court concludes that immediate and irreparable injury will result before Defendants can be heard in opposition, because AppFolio plans to act on December 16, 2025. The circumstances consequently justify issuance of this Order without notice.

**IT IS FURTHER ORDERED** that this injunction shall remain in effect until [14 days from entry], unless extended by the Court for good cause or by consent of the parties, or until further order of the Court.

AppFolio is **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue continuing the relief set forth pending final adjudication of this action. A hearing on the Order to Show Cause is set for                     at           , in Courtroom           , before the Honorable                .

Plaintiffs shall serve this Order, the Application, the supporting papers, and the summons and complaint on AppFolio by method(s) of service reasonably calculated to provide prompt notice, and shall file proof of service promptly thereafter.

AppFolio's opposition to the Order to Show Cause shall be filed by                . Plaintiffs' reply shall be filed by                .

So **ORDERED**.

DATED:                         , 2025

_______________________________

United States District Court Judge

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**CERTIFICATION OF CONFLICTS AND INTERESTED ENTITIES OR PERSONS**

I, Michael Burshteyn, counsel for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc., certify as follows:

Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date:

Conflicts: I am not aware of any conflict, financial or otherwise, that the presiding judge may have with the parties to this litigation.

Interested Entities or Persons: The following entities have a financial interest in the subject matter in controversy or in a party to the proceeding, or have a non-financial interest that could be substantially affected by the outcome of this proceeding: Corgi Insurance Services, Inc. – Parent corporation of Beagle Labs, Inc. and Beagle Technologies, Inc.

If additional information becomes known, I will promptly file a supplemental certification.

DATED: December 15, 2025 Respectfully submitted,

By *\/s/ Michael Burshteyn*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

*Plaintiff(s)*

v.

APPFOLIO, INC., a California corporation

*Defendant(s)*

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* AppFolio, Inc.
Corporation Service Company Which will Do Business in California as CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Michael Burshteyn
Greenberg Traurig, LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
Michael.Burshteyn@gtlaw.com
(415) 655-1300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ______________________

______________________
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________
was received by me on *(date)* ______________ .

❐ I personally served the summons on the individual at *(place)* ______________________
______________________ on *(date)* ______________ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________ , a person of suitable age and discretion who resides there,
on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* ______________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________ on *(date)* ______________ ; or

❐ I returned the summons unexecuted because ______________________ ; or

❐ Other *(specify)*:

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc:

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice* forthcoming)
Jordana R. Sternberg (*pro hac vice* forthcoming)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO.

**COMPLAINT FOR:**

1) **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
2) **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**
3) **VIOLATION OF THE LANHAM ACT § 43(a), FALSE ADVERTISING**
4) **VIOLATIONS OF CAL. BUS. & PROF. CODE § 17500, FALSE ADVERTISING**
5) **VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200, UNFAIR COMPETITION**
6) **VIOLATION OF SHERMAN ACT § 2, MONOPOLIZATION**
7) **DEFAMATION AND TRADE LIBEL**
8) **UNJUST ENRICHMENT**
9) **DECLARATORY JUDGMENT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. ("Beagle" or "Beagle Entities") file this Complaint against Defendant AppFolio, Inc. ("AppFolio" or "Defendant"), and allege as follows:

## INTRODUCTION

1. AppFolio is the incumbent in the residential real-estate management software market. It is engaged in a systematic campaign to destroy Beagle's business through interference with Beagle customer contracts. AppFolio is doing this so that it can maintain and increase its market share while blocking Beagle from accessing data with consent and authorization that Beagle's customers own (not AppFolio) and to interfere with those customers' contracts with Beagle. Unless enjoined, AppFolio plans to fully block Beagle's access to its platform on December 16, 2025, two days from this filing—eviscerating Beagle's business in a brazen act of tortious interference and unfair competition.

2. Beagle provides a beloved solution for building managers involving insurance-related compliance services, including insurance verification and waiver programs. Without Beagle, property managers bear significant risks of catastrophic events such as fires. Beagle also facilitates resident services critical to day-to-day living, such as air quality filter delivery, utility, Internet, and cable set-up, and protection against identity theft.

3. The way Beagle works is that customers add a vendor account for Beagle in their AppFolio or other building management software. Beagle then can access the customer's data and provide its services to the building. AppFolio is set up to allow this explicitly—AppFolio advertises that building managers can add accounts for vendors and makes this easy to do. Beagle does not circumvent any technical measures or access anything without authorization. Indeed, it is the customers who add the Beagle account using Beagle's email.

4. More than eighty percent (80%) of Beagle's business, implicating at least hundreds of millions of dollars in enterprise value, is with customers who use AppFolio.

5. AppFolio has known about Beagle and how it works for over a year. Beagle engaged in discussions with AppFolio's senior executives on or around November 2024 regarding a potential partnership between the companies. At the time AppFolio was not interested.

///

6. Now, though, that Beagle has grown exponentially and is driving enormous value for its customers who use AppFolio, AppFolio is interested in Beagle. Unfortunately, AppFolio is not interested in lawful competition. It is instead committed to pursuing multiple unlawful avenues to destroy Beagle's business and maintain its unfair hold on the market for building residential management software.

7. First, AppFolio is defaming Beagle by intentionally making false statements about the company and its services. AppFolio has told Beagle customers that Beagle creates a cybersecurity risk for them. This is false, which AppFolio knows, given that it has full visibility into how Beagle uses the platform. Its interaction with AppFolio's platform uses the very same functionality AppFolio developed to support third-party vendor access to building AppFolio accounts. Beagle's customers are the ones who provision its accounts. Beagle does not access anything without authorization or consent. Indeed, its customers contract with it to access the customer data at issue. Not only is AppFolio's claim about cybersecurity totally fabricated, but it is particularly egregious given one of the services Beagle provides for renters is identity theft protection.

8. AppFolio is leveraging its false statements to interfere with Beagle's existing customer contracts and prospective relationships with new customers and partners.

9. AppFolio has also threatened to fully block Beagle's domains from accessing its platform across the board in a matter of days, on **December 16, 2025**. This would eviscerate Beagle's business overnight, destroy its reputation, and cause a slew of other irreparable harms.

10. AppFolio's conduct is that of a classic monopolist and is precisely the sort of blocking and tying that the Sherman Act exists to stop. When Beagle began to gain traction earlier this year, AppFolio decided to put forth its own in-house insurance verification solution and partnered with another vendor, Second Nature, that integrates in the same way as Beagle. Now AppFolio threatens to block Beagle based on a pretextual and unlawful justification. This intentional conduct violates federal antitrust law and California's Unfair Competition Law.

11. Beagle files this action as a last resort to seek relief from the Court to stop AppFolio from weaponizing its market dominance to unlawfully spread false information, block, and interfere with Beagle's important work for buildings and renters across the country.

///

**THE PARTIES**

12. Plaintiff Beagle Labs, Inc. is a Delaware corporation with principal places of business in Chicago and Dallas.

13. Plaintiff Beagle Technologies, Inc. is a Delaware corporation.

14. Plaintiff Big Beagle, Inc. is a Delaware corporation with a principal place of business in South Salt Lake.

15. Plaintiff Rental Property Managers Association LLC is an Alabama limited liability company in Alabama.

16. Plaintiff YRIG Risk Retention Group, Inc. is an Alabama corporation with a principal place of business in Alabama.

17. Defendant AppFolio, Inc. is a California corporation with a principal place of business in Goleta, California.

**JURISDICTION AND VENUE**

18. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 for claims arising under the Lanham Act, 15 U.S.C. § 1125(a), and the Sherman Act, 15 U.S.C. § 2. The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States, Delaware, California, and Alabama, and the amount in controversy exceeds $75,000. The Court also has supplemental jurisdiction over the Beagle Entities' state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

19. The Court has personal jurisdiction over Defendant because Defendant is a citizen of California and has directed its activities to California residents, including to residents of this District.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant is a resident of the State of California and is subject to this Court's jurisdiction with respect to the civil action in question.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims occurred in this District. Material negotiations, communications, and misrepresentations were carried out and received by persons located in this District. AppFolio's implementation of the complained-of conduct,

customer effects, and injury was also felt by Plaintiffs in this District. Beagle has many customers in the San Francisco Bay Area, including its largest customer, who is an AppFolio user and whose access to Beagle would be cut off by AppFolio's intended blocking.

## FACTUAL BACKGROUND

### A. Beagle is a fast-growing innovator in the residential building services market.

22. Beagle is a fast-growing emerging technology company offering AI-driven services for building managers. Beagle's offering includes insurance-related compliance services to property managers nationwide as well as residential living services. The compliance services include rent and pet insurance verification, tenant liability waiver programs, and deposit alternative services, among others. Beagle also enables buildings to provide core services to renters, including move-in services, such as utility and Internet set up, air filter delivery, and identity theft protection.

23. Beagle's services help property managers satisfy lease requirements, manage risk, and provide cost-effective protection to renters. They also enable day-to-day living and thousands of renters to move into their rentals seamlessly. Without Beagle, a building that suffers a fire may not have properly insured renters. Renters might not be able to get clean air filters. Utilities would not be properly set up. Nor would pets be properly insured. Property managers throughout the country work with Beagle because they prefer Beagle's products and service model over competing offerings.

24. To administer these programs, Beagle's customers provide it with access to limited categories of the property managers' operational data, including tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status. They do so by creating a new account for Beagle in the software that the building uses to manage the property. Customers use AppFolio's built-in user-management features in a manner that is safe, controlled, and secure. Indeed, this industry-standard

workflow is used by AppFolio's customers to grant access to many other third-party vendors. AppFolio's website even touts third-party vendor integration as an advantage of using their platform:[1]

> **Online Portal for Vendors**
> Give vendors access to view work order details, upload invoices, add notes and photos, and mark their work as complete all within the fully mobile Vendor Portal in AppFolio.

25. Beagle's workflow is so transparent that it goes as far as publishing "Beagle Reports" of accounts with Beagle email domains. AppFolio has full visibility into this through its own administration of the AppFolio platform. Beagle does not circumvent technical measures and does not use any kind of automated access without authorization. All Beagle does is use the accounts its customers provide for it.

**B. AppFolio is the Dominant Market Leader for Building Management Software.**

26. AppFolio is the most dominant software for building management, and acknowledges this when it describes itself as the market leader. It is a public company valued at over 8 billion dollars.

27. AppFolio's market dominance is reflected in Beagle's customer base, as more than eighty percent (80%) of Beagle's business is with customers who use AppFolio.

28. Property managers and their residents store and use rental data in AppFolio's platform. But AppFolio does not own or create this data. AppFolio merely hosts the data, which belongs to the building owners and property managers. In fact, AppFolio's terms and conditions specifically provide: "You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. You will retain all right, title and interest in and to your data." (2025 T&C, section 1.)

**C. AppFolio is Targeting Beagle through Pretextual Means and Unlawful Competition.**

29. As early as November 2024, AppFolio was aware that customers granted Beagle access through additional user roles. Beagle operated openly, with full disclosure to customers, in reliance on AppFolio's longstanding acceptance of this access method. AppFolio never raised any objection, did not

[1] https://www.appfolio.com/property-manager/communication-service

warn customers, and did not suggest any security concern. In fact, in 2024, AppFolio even discussed potential partnership with Beagle.

30. But AppFolio recently began selling its own insurance products that compete with Beagle, called FolioGuard and Smart Ensure. Because these in-house products are inferior to Beagle's offerings, AppFolio has struggled to convince customers to adopt them. Once Beagle's growth accelerated, with customers selecting Beagle over AppFolio's competing offerings, AppFolio began unlawfully competing with Beagle.

31. First, AppFolio has engaged in a concerted campaign to spread intentional false statements about Beagle to stop customers from using Beagle. For instance, AppFolio sent a mass-email to Beagle customers on December 9, 2025, containing a multitude of falsehoods. AppFolio stated that "the method by which Beagle has chosen to operate their business places you at risk." It also claims that Beagle causes "serious security risks" and works through a "noncompliant access" process that "create[s] security risk" and undermine "integrity of [customer] data." AppFolio also claims in this message that Beagle can "issue payments through the AppFolio payments platform."

32. These statements are all false and pretextual. Beagle does not introduce any security risks to AppFolio's platform or Beagle's customers. AppFolio does not own any of the data at issue. Its customers are free to contract with Beagle and provide it with access to AppFolio's platform through a vendor account. There is no evidence of any data security incident or any data privacy issue. It is also false that Beagle can "issue payments through the AppFolio payments platform." Beagle does not do that.

33. AppFolio knows that the falsehoods it is spreading about Beagle are false. It knows this because it has full visibility into how Beagle is accessing AppFolio—through regular accounts. AppFolio knows that many others, including its own preferred partner Second Nature, use the exact same method of authorized access. AppFolio also knows that it has no basis to assert any privacy or security risk from using Beagle's platform. To the contrary, Beagle provides vital security services to renters in the form of identity theft protection.

34. Beyond false statements, AppFolio is doing other conduct to unlawfully compete with Beagle. It partnered with Second Nature, and distorts the market by permitting Second Nature to access it through the regular access method, while claiming that Beagle cannot. AppFolio also has stated its

intention to completely shut off Beagle's domain access to AppFolio on December 16, 2025. This will end Beagle's business overnight, as over eighty percent (80%) of Beagle's business is based on working with customers who use AppFolio.

**D. AppFolio is Bent on Destroying Beagle and Is Already Causing Irreparable Harm.**

35. AppFolio, given its market dominance, comprises over eighty percent (80%) of Beagle's business. If AppFolio weaponizes this market dominance to target Beagle based on its false and pretextual security and payment processing claims, then its blocking of Beagle's domains will destroy Beagle's business overnight.

36. AppFolio's campaign of falsehoods has already irreparably damaged Beagle's ability to perform its customer contracts and its prospective economic relationships. Many customers have contacted Beagle accusing it of being "scumbags," and a "scam" based on AppFolio's false statements. Beagle has lost significant customers already and its sales pipeline has been impacted by AppFolio's defamatory campaign.

37. Absent injunctive relief, Beagle faces immediate and irreparable harm: service disruption for mutual customers; loss of market access to AppFolio-dependent portfolios; collapse of goodwill built on consistent performance; reputational harms from false statements; and network effects that are difficult to unwind once AppFolio's in-house products supplant Beagle during the block. Monetary damages cannot restore lost customer trust or reverse system-level exclusion once implemented.

38. Not only will Beagle be harmed, but so will countless building properties and renters nationwide. Building fires and damage will be unrecoverable absent proper insurance verification and damage waivers. Daily move-ins will be disrupted when properties that leverage Beagle cannot facilitate utility and Internet set up, air filter delivery, and other services. Renters without proper identity theft protection may suffer cyberattacks—the very thing AppFolio claims it cares about.

39. Federal and California law against unfair competition, tortious interference, defamation, and unlawful monopolization exists to prevent precisely the sort of market-dominant tying and blocking that AppFolio is engaging in. While Beagle would have liked to avoid bringing this dispute to the Court (and indeed has attempted multiple times to reach a commercial resolution with AppFolio), AppFolio is

committed to using its market dominance to kill Beagle and take over its business. Beagle consequently has no choice but to enforce its rights against AppFolio's unlawful behavior.

**CLAIM 1**
**(Tortious Interference with Contractual Relations)**

40. Beagle realleges and incorporates by reference the prior paragraphs in the Complaint.

41. Beagle maintains valid, binding, and enforceable contracts with property-manager customers nationwide, pursuant to which Beagle provides liability-waiver and resident-protection products and services.

42. AppFolio, while not a party to the contracts between Beagle and its customers, possesses actual knowledge of these contracts because Beagle and AppFolio share a large customer base. AppFolio's platform is expressly designed to enable customers to grant account access to third-party vendors and contractors, including Beagle, via designated user accounts. Beagle's email domain is routinely used for this purpose, and AppFolio is aware of such usage. Numerous other vendors utilize identical access protocols.

43. AppFolio is further aware of contracts with Beagle because in its own filings against Beagle in Santa Barbara County Superior Court, AppFolio admitted that it was losing customers to Beagle.[2]

44. AppFolio's conduct has intentionally and unjustifiably impeded Beagle's ability to perform its contractual obligations and deliver contracted services to its customers.

45. AppFolio has knowingly, willfully, and intentionally interfered with Beagle's contractual relations by: (i) disseminating false and disparaging communications to customers, including statements that Beagle is a "security risk," "sounds like a potential scam," "concerning," and is not "compliant" with AppFolio's Terms of Use; (ii) threatening Beagle's customers who continue to utilize Beagle's products, based on pretextual and unfounded assertions; and (iii) threatening to block Beagle's domain from the

[2] AppFolio sought a TRO in Santa Barbara last week, which the Superior Court denied. (Santa Barbara Superior Court, Case No. 25CV07670.) Notably, AppFolio's TRO was limited to speech-related restrictions trying to stop Beagle from communicating with AppFolio customers. AppFolio did not ask the Court to block Beagle's access to AppFolio's platform. It did not assert any hacking or unauthorized access claims. Perhaps knowing that it had no legal basis to restrict Beagle's access, that is why AppFolio intends to take "self-help" to block Beagle's access to its platform in a pretextual and targeted way.

AppFolio platform, thereby preventing Beagle from accessing customer accounts and fulfilling its obligations.

46. AppFolio's intentional actions were calculated to harm Beagle's lawfully conducted business activities, namely the liability-waiver and resident-protection products it provides. As a direct and proximate result of AppFolio's actions, multiple Beagle customers have terminated, suspended, or otherwise curtailed their contractual relationships with Beagle.

47. Should AppFolio block Beagle's access to its platform on December 16, 2025, as it has stated it intends to do, this will cause an immediate interference with 80% of Beagle's business and make it impossible for Beagle to perform its contractual obligations to its customers.

48. Beagle has suffered, and continues to suffer, substantial harm, including loss of business relationships, lost profits, reputational injury, and other economic damages, as a direct and proximate result of AppFolio's tortious interference with Beagle's contractual relations.

49. Beagle seeks compensatory damages in an amount to be proven at trial, as well as injunctive relief enjoining further interference.

50. Because AppFolio's conduct was committed with malice and oppression, Beagle also seeks punitive damages.

**<u>CLAIM 2</u>**
**(Tortious Interference with Prospective Economic Relations)**

51. Beagle incorporates by reference all preceding paragraphs.

52. At all relevant times, Beagle maintained and continues to maintain numerous prospective and ongoing economic relationships with property-manager customers, which presented a reasonable probability of future economic benefit to Beagle.

53. AppFolio is, and at all relevant times was, aware of these prospective economic relationships and the attendant economic advantage to Beagle. As previously alleged, Beagle and AppFolio share over seventy percent (70%) of their customer base. AppFolio's platform is specifically structured to permit customers to grant account access to third-party vendors (including Beagle) using designated user accounts associated with Beagle's email domain, of which AppFolio is fully aware.

///

54. AppFolio has knowingly, willfully, and intentionally interfered with Beagle's prospective business relations by (i) disseminating false and disparaging statements to Beagle's current and prospective customers that were, and continue to be, injurious to Beagle's reputation; (ii) engaging in conduct designed to disrupt Beagle's access to the AppFolio platform, and to steer Beagle's current and prospective customers toward AppFolio's own products and services; and (iii) threatening to block Beagle's domain from the AppFolio platform, thereby precluding Beagle from servicing its existing and potential customers.

55. AppFolio is taking intentional actions designed to disrupt the prospective economic relationships between Beagle and its customers. Beagle has already lost multiple business opportunities, including onboarding and expansion deals with customers who withdrew from or declined to enter into business with Beagle.

56. Should AppFolio block Beagle's access to its platform on December 16, 2025, as it has stated it intends to do, this will cause an immediate interference with 80% of Beagle's business and make it impossible for Beagle to generate new business. Beagle's sales pipeline will collapse, as will its reputation and ability to generate business in the future.

57. AppFolio has no privilege, justification, or lawful excuse for disseminating false disparagements concerning Beagle's safety and compliance. The actions taken to interfere with Beagle's relationships are being undertaken with the specific intent to harm Beagle's prospective economic advantage.

58. Beagle has sustained harm and economic injury as a direct and proximate result of AppFolio's tortious interference with prospective economic relations. Accordingly, Beagle seeks compensatory damages in an amount to be proven at trial, as well as injunctive relief barring further interference.

59. Because AppFolio's conduct was committed with malice and oppression, Beagle also seeks punitive damages.

**CLAIM 3**
**(Violation of Lanham Act § 43(a) – False Advertising)**

60. Beagle incorporates by reference all preceding paragraphs.

61. By engaging in the above-described activities, AppFolio has made, and continues to make,

false and misleading representations of fact regarding the nature, characteristics, and quality of Beagle's products and services, including by misrepresenting the functionality of Beagle's products, stating that Beagle performs "risky financial transactions," makes customers non-compliant, and is generally not effective. AppFolio has stated to Beagle's customers that Beagle poses security and privacy risks. Simultaneously, AppFolio has misrepresented the functionality, safety, and compliance of its own in-house product by claiming it is safer and more compliant than Beagle's offerings.

62. AppFolio made its false and misleading representations of fact in interstate commerce, including through mass email communications, written correspondence, and in-product banners directed to Beagle's current and prospective customers.

63. AppFolio knows that its statements are false, because it knows how Beagle's software works through its administration of the AppFolio platform. Beagle has put AppFolio on notice of its false statements, but AppFolio has refused to correct them or stop making them.

64. AppFolio's conduct is likely to cause, and has caused, actual confusion, deception, and mistake among customers regarding the functionality, safety, and compliance of Beagle's products, as well as the relative quality of AppFolio's own product. Such conduct materially influences purchasing decisions and improperly diverts business from Beagle to AppFolio.

65. AppFolio's actions constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66. Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and significant harm to its goodwill and reputation. Accordingly, Beagle seeks monetary damages in an amount to be proven at trial, as well as disgorgement of AppFolio's ill-gotten gains, and injunctive relief barring further injury. Beagle seeks damages, disgorgement, attorney's fees, and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 15 U.S.C. § 1117. Beagle will prove the full extent of monetary damages it has suffered by reason of AppFolio's acts through this action.

67. On information and belief, AppFolio's actions are willful and done with the intention of causing confusion, mistake, or deception. This is accordingly an exceptional case entitling Beagle to recover the costs of this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

**CLAIM 4**
**(Violations of Cal. Bus. & Prof. Code § 17500, *et. seq.* – False Advertising)**

68. Beagle incorporates by reference all preceding paragraphs.

69. Pursuant to California's False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500, et. seq., it is unlawful for any person "to make or disseminate or cause to be made or disseminated before the public… in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

70. AppFolio is violating § 17500 by making and disseminating, both directly and indirectly, false, deceptive, untrue, and misleading statements regarding Beagle's products and services to its current and prospective customers. These statements include, but are not limited to, false representations that Beagle engages in "risky financial transactions," that customers using Beagle's products are rendered non-compliant, and that Beagle's offerings are otherwise deficient or ineffective. AppFolio has stated to Beagle's customers that Beagle poses security and privacy risks. Simultaneously, AppFolio has misrepresented the functionality, safety, and compliance of its own in-house product by claiming it is safer and more compliant than Beagle's offerings.

71. AppFolio's statements were specifically designed with the intent to disparage Beagle and to induce reasonable property-manager customers to purchase AppFolio's competing products and services instead. For example, AppFolio told Beagle's customers that its in-house "Smart Ensure" product is required or uniquely compliant, as compared to Beagle's.

72. Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and harm to goodwill and reputation. Accordingly, Beagle seeks all remedies available under § 17500, including compensatory damages, restitution, disgorgement of profits, and injunctive relief barring further injury.

///

**CLAIM 5**

**(Violations of Cal. Bus. & Prof. Code § 17200, *et. seq.* – Unfair Competition)**

73. Beagle incorporates by reference all preceding paragraphs.

74. Pursuant to California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200, et. seq., unfair competition includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

75. AppFolio has engaged in unlawful, unfair, and fraudulent business acts and practices, and has disseminated deceptive, untrue, and misleading advertising in violation of § 17200. Specifically, AppFolio's conduct violates public policy and constitutes actionable misconduct under the Lanham Act § 43(a), California False Advertising Law § 17500, the Sherman Act § 2, common-law defamation/trade libel, and the interference torts set forth herein, among other laws.

76. AppFolio's unfair actions have damaged and jeopardized Beagle's business by threatening to block Beagle's domain from its platform on December 16, 2025, which would interfere with Beagle's ability to perform contractual obligations to its customers. AppFolio's conduct is pretextual and designed to promote its own competing service rather than to accomplish any of its stated goals around security or otherwise.

77. AppFolio's conduct is fraudulent within the meaning of § 17200 because it includes making and disseminating false, deceptive, untrue, and misleading statements regarding Beagle's products and services to customers, with the intent to deceive and mislead reasonable consumers.

78. AppFolio's actions and statements were specifically designed with the intent to disparage Beagle, and induce reasonable consumers, like Beagle's property-management customers, to purchase AppFolio's competing products and services instead. For example, AppFolio told Beagle's customers that its in-house "Smart Ensure" product is required or uniquely compliant, as compared to Beagle's. AppFolio's Terms of Use changes and domain blocks are not grounded in security or privacy, rather in eliminating Beagle, a growing rival.

79. Upon information and belief, AppFolio's business practices, alleged herein, were committed in bad faith and with unlawful intent. Further, their actions are continuing in nature and are widespread.

80. Beagle has suffered, and is likely to continue suffering, injury as a direct and proximate result of AppFolio's conduct, including lost sales, diminished market share, and harm to goodwill and reputation. Accordingly, Beagle seeks all remedies available under § 17200, including compensatory damages, as well as restitution, disgorgement of profits, and injunctive relief barring further injury.

**CLAIM 6**

**(Violation of Sherman Act § 2 – Monopolization / Attempted Monopolization)**

81. Beagle incorporates by reference all preceding paragraphs.

82. AppFolio possesses monopoly power in the Property Management Software Platform Market for residential property managers in the United States. On information and belief, AppFolio claims to be an industry leader with a platform that is the system of record for more than 20,000 property managers and over eight million units. AppFolio holds a dominant position, exerting substantial barriers to entry, including data lock-in, gating workflow integration via its AppFolio Stack, and network effects. This is because buildings must use AppFolio's platform to manage a broad array of services, and are unable to switch even if they think the platform is stagnant and inferior to competing products. That 80% of Beagle's business is with customers who use AppFolio underscores the dominant market power AppFolio holds over buildings and property managers.

83. AppFolio controls access to its platform and the associated distribution channel to AppFolio-using property managers, making it an unavoidable gatekeeper for third-party insurance compliance services in its ecosystem. Access to this platform and the associated distribution channel is indispensable for companies, such as Beagle, seeking to provide insurance compliance services to AppFolio's customer base.

84. AppFolio is the dominant player in the relevant market for property management software, as admitted by AppFolio itself. Competitors are, by comparison, smaller firms lacking the scale and resources to constrain AppFolio's pricing power. As a result, on information and belief, AppFolio maintains monopoly power and can increase rates by 5% or more without losing customers.

85. New entrants face high barriers to entry due to AppFolio's entrenched position. Switching costs and contractual lock-in prevent customers from migrating to alternative, and better, solutions.

///

86. From AppFolio's own filings in state court, AppFolio admits Beagle is a "direct competitor." AppFolio admits, through automated AI services and customer service representatives, that it "partner[s] with Second Nature for a resident benefit package" and that AppFolio has its "own internal insurance solution through FolioGuard Smart Ensure and the coinciding Liability to Landlord Insurance policy." AppFolio further admits that "[o]ne of [its] most important services is called Smart Ensure," and that renters obtain insurance "through AppFolio Insurance Services" or another provider. AppFolio further admits that it subjects and enforces auto-enrolling and monetizes this workflow.

87. AppFolio, in public filings, admits that "Beagle does not and will not integrate with AppFolio—not now, and not ever." This admission alone proves that any rationale used by AppFolio to block Beagle is pretextual.

88. AppFolio, in public filings, has filed exhibits showing AppFolio representatives stating that "Under our Terms of Service and in order to protect the integrity of customer and user data and our systems, direct competitors such as Beagle are not permitted to access any portion of our services or application programming interface." AppFolio's conduct is an admission to raising barriers to interoperability and competitor access.

89. Through its exclusionary conduct, AppFolio has willfully maintained its monopoly power by anticompetitive and unnecessarily exclusionary means, rather than by competition on the merits. AppFolio's exclusionary conduct to maintain and enhance its power includes, at least:

a. manipulating and weaponizing its Terms of Use;

b. blocking and/or threatening to block Beagle's domain and logins;

c. spreading false and disparaging communications regarding Beagle's services as "cybersecurity risk" to foreclose Beagle and steer demand to AppFolio's in-house products;

d. discriminatorily denying access to its vendor/point-solution functionality while enabling preferred or favored integrations (e.g., Second Nature), and threatening to exclude Beagle wholesale, despite Beagle's customer-authorized access via the same vendor pathway;

e. tying and self-preferencing of access to AppFolio's platform for the adoption of AppFolio's own Smart Ensure insurance product or favored preferential vendors, while obstructing rivals such as Beagle, via platform dominance leveraging.

f. interfering with Beagle's contracts by instructing AppFolio customers to revoke Beagle's vendor access under pretextual claims, while continuing to allow comparable, or substantially the same, type of services to favored vendors.

90. AppFolio's conduct raises and maintains barriers to entry by retarding interoperability, creating artificial barriers where none existed, denying customer-authorized access to data, spreading false risk claims, and self-preferencing its own insurance products and integrations. These are textbook harms to competition, not merely to a competitor, outside the realm of lawful competition.

91. Alternatively, AppFolio has engaged in anticompetitive conduct with specific intent to monopolize, and with a dangerous probability of achieving monopoly power, in the relevant market by engaging in unlawful, fraudulent, and other anticompetitive business practices. As a result of its exclusionary conduct, AppFolio has been able to obstruct rival products and services (like Beagle's) from competing in the market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

92. As a proximate result of AppFolio's wrongful acts alleged herein, Beagle has sustained, and will continue to sustain, injuries of the type the antitrust laws are designed to prevent, including exclusion from access otherwise authorized by customers, lost sales, increased costs, and reputational harm resulting from AppFolio's disparagement.

93. AppFolio's intentional conduct to maintain monopoly power, in violation of § 2, enables AppFolio to charge supra-competitive prices, and coerces adoption of Smart Ensure and related services. AppFolio's conduct thus degrades customer choice and suppresses innovation.

94. Competition in the relevant market has been, and will continue to be, substantially harmed by AppFolio's anticompetitive conduct, regardless of whether monopoly power is ultimately attained. Through its exclusionary practices, AppFolio threatens to, and has the ability to, unilaterally exclude Beagle and other competitors from the market. Indeed, AppFolio's specific intent to monopolize the market carries a dangerous probability of success where Beagle's services can be eradicated overnight.

95. Beagle seeks all available remedies under the Sherman Act, including treble damages in an amount to be proven at trial, attorneys fees, as well as injunctive relief enjoining AppFolio from further anticompetitive practices.

///

**CLAIM 7**
**(Defamation and Trade Libel)**

96. Beagle incorporates by reference all preceding paragraphs.

97. By the acts described herein, AppFolio published false and defamatory statements to Beagle's clients regarding Beagle's business methods and the reliability, efficiency, and security of Beagle's products.

98. AppFolio's statements were of the character that would tend to degrade Beagle's public standing, impugn its business methods, integrity and competence, and cast aspersions on Beagle's services and products.

99. AppFolio has made and disseminated false statements misrepresenting Beagle's services as a "scam" or "security risk." AppFolio has made repeated insinuations of illegitimacy via AppFolio's customer service AI and responses. AppFolio's customer service AI further states Beagle is not listed as an official partner and immediately frames Beagle outreach as "concerning" and "a potential scam," directing customers not to provide any information and to "verify" Beagle's identity—falsely implying Beagle is untrustworthy or impersonating a partner, despite customers expressly authorizing Beagle access and AppFolio's long-standing awareness of that workflow.

100. AppFolio's representatives have gone as far as stating that "Under our Terms of Service and in order to protect the integrity of customer and user data and our systems, direct competitors such as Beagle are not permitted to access any portion of our services or application programming interface."

101. These statements were carried out in reckless disregard for the truth. AppFolio knows its statements are wrong because it has the ability to see how Beagle's software works in its system. It also could have spoken with Beagle about any concerns, but chose not to and instead to ambush Beagle in state court several days before this filing. AppFolio did not properly investigate its claims, or if it did, chose to make false statements knowing that they were unsubstantiated. AppFolio acted with intent to harm Beagle, or with conscious indifference to the consequences of its actions.

102. AppFolio's statements are false or misleading statements of fact made in commercial advertising or promotion setting, meant to divert customers away from Beagle and into AppFolio and its competing products and services. AppFolio's statements falsely implied Beagle's industry standard,

customer-authorized access was illegitimate or unsafe, despite the absence of any identified security incident, breach, or misuse.

103. Customers have relied on these statements, further diverting business from Beagle to AppFolio and resulting in losses to Beagle's reputation.

104. AppFolio's statements are defamatory per se as they injure Beagle in its business, and they disparage the quality of Beagle's services with malice (knowledge of falsity or reckless disregard), causing special damages, including lost customers, lost deals, and identifiable economic harm, beyond reputational and goodwill harm.

105. As a direct result of AppFolio's actions, Beagle has been, and will continue to be, substantially injured, in the form of economic loss and harm to Beagle's goodwill and reputation.

106. Beagle seeks punitive damages and injunctive relief prohibiting further defamatory publications.

**CLAIM 8**
**(Unjust Enrichment)**

107. Beagle incorporates by reference all preceding paragraphs.

108. AppFolio unjustly retained benefits when it blocked Beagle's domain to further frustrate Beagle's services and relationships with its customers. Upon information and belief, AppFolio received benefits in the form of increased revenue and margins from its competing product, Smart Ensure, and related insurance products.

109. Upon information and belief, AppFolio acted in order to gain a competitive advantage over the services and products Beagle provides. Further, AppFolio acted on Beagle's expense as Beagle suffered harm as a result.

110. Equity requires restitution to Beagle of the benefits AppFolio obtained through exclusionary and deceptive acts.

111. As a result of AppFolio's unjust enrichment, Beagle has suffered damages in an amount to be proven at trial, plus interest from and after the time of unjust enrichment.

112. Equity allows for the restitution of the benefits AppFolio obtained.

///

**CLAIM 9**
**(Declaratory Judgment)**

113. Beagle incorporates by reference all preceding paragraphs.

114. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists regarding AppFolio's right to block or remove Beagle's access and to disseminate false statements about Beagle and its services.

115. Pursuant to 28 U.S.C. 2201(a), this Court is authorized to issue a declaratory judgment.

116. Beagle seeks a declaration that AppFolio's conduct is unlawful and an injunction prohibiting AppFolio from:

a. blocking or removing Beagle's domain names and users created by joint customers;

a. making false and misleading statements about Beagle;

b. otherwise engaging in the unlawful and anticompetitive conduct alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Beagle respectfully requests that the Court enter judgment in its favor and against AppFolio as follows:

A. Preliminary and permanent injunctive relief enjoining AppFolio from blocking Beagle's access and domain and from making or disseminating false and misleading statements regarding Beagle and its services;

B. Disgorgement of profits and restitution of benefits unjustly obtained under California's Unfair Competition laws;

C. Compensatory, consequential, and special damages in amounts to be proven at trial, including for lost customers, lost profits, and diminution of goodwill;

D. Treble damages and attorneys' fees as permitted by law, pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15(a);

E. Injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26;

F. Punitive damages for defamation/trade libel and intentional torts as permitted by law;

G. Pre- and post-judgment interest;

H. Declaratory relief that AppFolio's conduct is unlawful; and

I. Such other and further relief as the Court deems just and proper under the circumstances.

DATED: December 15, 2025

Respectfully submitted,

By *_/s/ Michael Burshteyn_*
Michael Burshteyn
Marcelo Barros

**GREENBERG TRAURIG, LLP**
*Attorneys for Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.*

**GREENBERG TRAURIG, LLP**
Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678.553.2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Attorneys for Plaintiff, Beagle Labs, Inc., Beagle Technologies, Inc., and Big Beagle Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BEAGLE LABS, INC., a Delaware corporation, BEAGLE TECHNOLOGIES, INC., a Delaware corporation, BIG BEAGLE, INC., a Delaware corporation, RENTAL PROPERTY MANAGERS ASSOCIATION LLC, an Alabama limited liability company, and YRIG RISK RETENTION GROUP, INC., an Alabama corporation,

Plaintiffs,

v.

APPFOLIO, INC., a California corporation,

Defendant.

CASE NO. 2:25-cv-12248-JFW-SSC

Ninth Circuit Case No. 26-769

**PLAINTIFFS' AMENDED NOTICE OF APPEAL**

[Filed Pursuant to Fed. R. App. P. 3(a)(1) and 4(a)(1)(A)]

Plaintiffs-Appellants Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc. (collectively, "Plaintiffs"), by and through their attorneys of record, Greenberg Traurig, LLP, hereby file this Amended Notice of Appeal pursuant to Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1)(A), amending the Notice of Appeal filed on February 6, 2026 (Dkt. 58).

Plaintiffs appeal to the United States Court of Appeals for the Ninth Circuit from the following orders of the Honorable John F. Walter, United States District Judge:

1. The Minute (In Chambers) Order Denying Plaintiffs' Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, entered on January 7, 2026 (Dkt. 39); and

2. The Minute (In Chambers) Order Denying Plaintiffs' Motion for Reconsideration of Denial of Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, entered on March 12, 2026 (Dkt. 72).

This Amended Notice of Appeal is timely filed within thirty (30) days of entry of the March 12, 2026 Order, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). No additional filing fee is required for an amended notice of appeal. *See* Ninth Circuit Rules, p. 12.

The Ninth Circuit's briefing schedule in Case No. 26-769 sets the opening brief deadline as April 6, 2026. Plaintiffs intend to address both orders in a single, unified opening brief. In the event this Amended Notice of Appeal is not processed and docketed in the Ninth Circuit before the opening brief deadline, Plaintiffs respectfully reserve the right to request a brief extension to ensure the opening brief may address both orders within the

scope of the appeal.

A representation statement pursuant to Ninth Circuit Rule 3-2 is attached hereto as **Exhibit 1.**

DATED: March 31, 2026

**GREENBERG TRAURIG, LLP**

By ______________________

Michael Burshteyn
Marcelo Barros
Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
Attorneys for Plaintiffs

# EXHIBIT 1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Michael Burshteyn, Marcelo Barros

Address: 101 Second Street, Suite 2200, San Francisco, CA 94105

Telephone number(s): 415-590-5141

Email(s): michael.burshteyn@gtlaw.com; marcelo.barros@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? (●) Yes ( ) No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

AppFolio, Inc.

Name(s) of counsel (if any):

Brian Procel, Jeremiah Michael Levine

Address: 401 Wilshire Blvd, Suite Fl 12, Santa Monica, CA 90401

Telephone number(s): 424-788-4538

Email(s): brian@procel-law.com, Jeremiah@ProcelLevine.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Case: 26-769, 04/07/2026, DktEntry: 11.5, Page 150 of 185

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Jake Evans (Appearing Pro Hac Vice), Jordana R. Sternberg (Appearing Pro Hac Vice)

Address: Terminus 200, Suite 2500, Atlanta, GA 30305

Telephone number(s): 678-553-2100

Email(s): jake.evans@gtlaw.com; jordana.sternberg@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellees**

Name(s) of party/parties:

AppFolio, Inc.

Name(s) of counsel (if any):

Martin H Pritikin

Address: 2029 Century Park East Blvd, Los Angeles, CA 90035

Telephone number(s): 323-533-0002

Email(s): marty@procel-law.com

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Sajni Patel

Address: 1840 Century Park East, Suite 1900 Los Angeles, CA 90067

Telephone number(s): 310-586-7700

Email(s): sajni.patel@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit ◉ Yes ○ No

---

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Name Michael Burshteyn, Marcelo Barros
Address 101 Second Street, Suite 2200
City, State, Zip San Francisco, California 94105-3668
Phone 415.655.1300
Fax
E-Mail Michael.Burshteyn@gtlaw.com; Marcelo.Barros@gtlaw.com
☐ FPD ☐ Appointed ☐ CJA ☐ Pro Per ☐ Retained

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.<br>PLAINTIFF(S),<br>v.<br>APPFOLIO, INC.<br>DEFENDANT(S). | CASE NUMBER:<br>2:25-cv-12248-JFW-SSC<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that Beagle Labs, Inc., et. al. hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
ORDER DENYING PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION (Document 39)
☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on January 7, 2026. Entered on the docket in this action on January 7, 2026.

A copy of said judgment or order is attached hereto.

February 6, 2026
Date

*/s/ Michael Burshteyn*
Signature
☐ Appellant/ProSe ☒ Counsel for Appellant ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No. **CV 25-12248-JFW(SSCx)** Date: January 7, 2026

Title: Beagle Labs, Inc., et al. *-v-* AppFolio, Inc.

**PRESENT: HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

**Shannon Reilly** — **Courtroom Deputy**
**None Present** — **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**
None

**ATTORNEYS PRESENT FOR DEFENDANTS:**
None

**PROCEEDINGS (IN CHAMBERS):** **ORDER DENYING PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [filed 12/15/2025; Docket No. 4]**

On December 15, 2025, Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc (collectively, "Plaintiffs" or "Beagle") filed a Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction. On December 29, 2025, Defendant AppFolio, Inc. ("Defendant" or "AppFolio") filed its Opposition. On December 31, 2025, Plaintiffs filed a Reply. The Court finds that this matter is appropriate for decision without oral argument. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. AppFolio's Property Management Software

AppFolio is one of the principal providers of property management software in the United States. Its software platform "AppFolio Property Manager" assists property managers to operate their businesses. To access AppFolio Property Manager, property managers must pay a monthly subscription fee. The software is not available to non-customers.

When a property manager subscribes to AppFolio Property Manager, the property manager receives a database, which provides it with a wide range of functionality, including accounting, payments, tenant screening, insurance-related services, maintenance management, and more. By design, a property manager can create multiple user accounts to provide its employees' access to its database. For example, an employee tasked with monitoring rent payments can use his or her user account to perform that function. For security and audit purposes, the actions of each employee's user account are logged in the system. When an employee leaves the company, the user account is deleted.

The property manager's database will contain a large amount of data, which comes from a

number of sources, including the property manager, the property manager's tenants, and vendors of both AppFolio and the property manager. Property managers and their residents store and use data for a wide variety of purposes through AppFolio's platform. AppFolio does not own or create this data, but merely hosts this data on its software platform. Indeed, the Terms of Service for AppFolio Property Manager (available on AppFolio's website) specifically provide: "You represent and warrant that you are the rightful owner of your data and have the requisite authority to perform the migration of such data. You will retain all right, title and interest in and to your data." Brown Decl., Ex. A (Docket No. 4-3) § 1.4; Saxena Decl., Exh. C (Docket No. 33-6), § 1.4.

AppFolio offers its customers the ability to work with third parties that offer a particular service to the property manager, including internet listing sites, tenant screening companies, debt collection agencies, and maintenance management services. While these third parties (known as "Point Solutions") sometimes compete with AppFolio's own offerings, AppFolio does not prohibit or penalize its customers for working with whatever Point Solutions they choose. Specifically, there are four authorized methods by which its customers can work with these third parties or "Point Solutions":[1]

(1) **AppFolio Stack Marketplace:** The AppFolio Stack Marketplace offers its customers Point Solutions that AppFolio has vetted for security and performance and with whom AppFolio has built dedicated integrations into its platform. Some of these Point Solutions compete directly with AppFolio.

(2) **Database API**: If a customer wishes to integrate with a Point Solution that is not available in the AppFolio Stack Marketplace, the customer can use AppFolio's Database Application Programming Interface ("API"), which is an automated means for two computer programs to communicate.

(3) **Scheduled Reports**: A customer can also use Scheduled Reports to share data with any Point Solution of their choice. Scheduled Reports allow the property manager to automate the data sharing process and share almost any data in the property manager's database. A customer can set up automated Scheduled Reports in a matter of five minutes.

(4) **Outside of AppFolio**: A customer may share any data they input into AppFolio (such as tenant rosters) with Point Solutions or other platforms.

While AppFolio permits (and even encourages) its customers to work with third parties through these four authorized means, AppFolio's Terms of Service prohibit its customers from allowing third parties' direct access to the customer's respective database: "Third parties are not permitted to access or use the Services or any application programming interface we make available to you without [AppFolio's] prior consent." Brown Decl., Ex. A (Docket No. 4-3) § 5.2; Saxena Decl., Exh. C (Docket No. 33-6), § 5.2. This provision prohibiting third party access has been part of AppFolio's Terms of Service since 2019. In the event a property manager violates

[1]Apart from these four methods, it appears that AppFolio offers a "Vendor Portal," which gives vendors access to view work order details, upload invoices, add notes and photos, and mark their work as complete. It is unclear from the current record how a customer sets up a vendor in the "vendor portal" and whether vendors differ from "Point Solutions."

this provision, AppFolio reserves the right to "disable or delete access to the Services and any application programming interface for any of your authorized users to enforce these Terms of Service or to otherwise protect our interests." *Id.*

**B. Beagle's Services**

Beagle provides insurance-related compliance services to property managers nationwide, including tenant liability waiver programs, renters' insurance verification, deposit alternative services, and pet damage waiver offerings. These services help property managers satisfy lease requirements, manage risk, and provide cost-effective protection to renters. Beagle's platform serves over 40,000 properties in all 50 dates.

To administer these programs, Beagle requires access to limited categories of the property managers' operational data, including "tenant rosters, unit identifiers, lease and billing information, and insurance-compliance status." D'Angelo Decl. (Docket No. 4-7) ¶ 4. Beagle, however, is not an AppFolio integration partner and its services are not available in AppFolio Stack Marketplace. Pursuant to Beagle's request, in order to give Beagle the access to the data it needs, its customers create user accounts giving Beagle direct access to their respective AppFolio Property Manager databases.[2] The property manager is able to fully control the permissions that Beagle is granted in its accounts and can limit those permissions to facilitate the sharing of data that is needed by Beagle. However, depending on the permissions granted by the property manager, Beagle could conceivably access the personally identifiable information of the property manger's residents, issue payments through the AppFolio payments platform, access and alter the customer's bank information, and view and take action across the property manager's entire account database.

When Beagle obtains user accounts, it allows Beagle to use the functionality that AppFolio provides only to its paying customers. For example, Beagle uses AppFolio to charge residents for its offerings and products. Notably, Beagle has never asked AppFolio for permission to access AppFolio's application programming interface and has never paid or provided any consideration for access to AppFolio's software.

**C. AppFolio's Partnership with Second Nature**

On April 11, 2025, AppFolio entered into a strategic partnership with Second Nature Brands, Inc. ("Second Nature") that enables AppFolio's property management customers to offer Second Nature's suite of residential property services within the AppFolio Stack Marketplace. Second Nature is a competitor of, and offers similar services as, Beagle. In connection with its strategic partnership, AppFolio purchased a minority, non-controlling equity interest in Second Nature Holdings, L.P., the indirect parent of Second Nature.

Beagle contends that Second Nature uses the same method of access to AppFolio Property Manager as Beagle. *See* Brown Decl. (Docket No. 4-2) ¶ 8. However, in light of Second Nature's partnership with AppFolio, it appears that Second Nature is operating in this manner with AppFolio's permission in accordance with AppFolio's Terms of Service (and after a vetting

---

[2]It is unclear how long Beagle has been operating in this manner, although it appears to be "over a year." *See* Reply (Docket No. 36) 2 ("Customers have for over a year contracted with Beagle to provide vital services . . . .").

 Initials of Deputy Clerk sr

process), whereas Beagle has never asked AppFolio for permission to access AppFolio's application programming interface.

**D. AppFolio's Actions to Disable Beagle's User Accounts**

On December 9, 2025, AppFolio emailed its customers who use Beagle's services notifying them they would remove Beagle's "noncompliant access" to the customers' accounts in five business days (on December 16, 2025). AppFolio explained: "In addition to the serious security risks the noncompliant access poses for you, your residents, and your customers, [Beagle's noncompliant access] also constitutes a breach of AppFolio's terms of service, which are in place both to protect your account and to safeguard AppFolio's intellectual property." Brown Decl. Ex. C. (Docket No. 4-5). AppFolio also noted that there are multiple safe and secure methods for property managers to work with third-party providers, such as Beagle, including through AppFolio Stack Marketplace, Database API, and Scheduled Reports. *Id.* In addition, AppFolio notified its customers through a banner inside its application that it would disable all Beagle-related user accounts on December 16, 2025.

Beagle's customers immediately began emailing Beagle, expressing confusion and concern. In order to allay one of its customer's concerns, Beagle's CEO advised its customer that the "fix" was "simple and already in motion" and that it could "continue to run your Beagle program using scheduled reports from AppFolio instead of direct logins." Brown Decl., Ex. C (Docket No. 4-5); Saxena Decl., Ex. D (Docket No. 33-7).

On December 15, 2025, Beagle filed a Complaint against AppFolio in the United States District Court for the Northern District of California alleging the following claims for relief: (1) tortious interference with contractual relations; (2) tortious interference with prospective economic relations; (3) violation of the Lanham Act § 43(a), false advertising; (4) violations of Cal. Bus. & Prof. Code § 17500, false advertising; (5) violations of Cal. Bus. & Prof. Code § 17200, unfair competition; (6) violation of Sherman Act § 2, monopolization; (7) defamation and trade libel; (8) unjust enrichment; and (9) declaratory judgment. On that same day, Beagle filed its Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("Motion for TRO"). On December 15, 2025, AppFolio agreed not to disable Beagle's accounts until December 22, 2025. On December 19, 2025, the district judge in the Northern District of California transferred the action to this Court, and ordered AppFolio to maintain the status quo pending further order of this Court.

Beagle has taken advantage of AppFolio's agreement and the transferor court's order to maintain the status quo. Since December 15, 2025, Beagle has changed fifty-seven of its user accounts in AppFolio's customers' databases to prevent AppFolio from locating those accounts and disabling them.

**E. Beagle's Motion for TRO**

In its Motion for TRO, Beagle asks the Court to enjoin AppFolio from disabling all of Beagle's customer-authorized accounts on the AppFolio Property Manager Platform or from otherwise interfering with Beagle's ability to access data through AppFolio's Property Manager Platform until the Court determines whether a preliminary injunction should be issued. Beagle contends that it faces "extinction" if AppFolio disables its user accounts and cuts off its access to

data, which it relies on to serve more than eighty percent of its customers. According to Beagle, it has already suffered harm, as property managers have forwarded AppFolio's messages to tenants, revoked Beagle's access, and terminated their relationships with Beagle.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order ("TRO") and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). And, like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## III. DISCUSSION

On this record, the Court concludes that Beagle has failed to demonstrate that it is entitled to the requested TRO.

Specifically, the Court concludes that Beagle has failed to demonstrate a likelihood that it will suffer irreparable harm. "[M]onetary injury is not normally considered irreparable." hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). "Nonetheless, the threat of being driven out of business is sufficient to establish irreparable harm." *Id.* (cleaned up). Beagle contends that it will face the threat of "extinction" if AppFolio disables its user accounts and cuts off its access to data, which it relies on to serve more than eighty percent of its customers.

In its moving papers, Beagle only identified four categories of data that is necessary for it to continue servicing its customers: "tenant rosters, unit identifiers, lease and billing information, and insurance compliance." However, that data is available through alternative authorized means, such as through the use of Scheduled Reports. Indeed, AppFolio has attached a sample Scheduled Report showing the data Beagle claims to require. *See* Saxena Decl., Ex. B (Docket No. 33-5). Moreover, in an email to a customer, Beagle's CEO expressly stated that the solution was "simple" and that Beagle could "continue to run your Beagle program using scheduled reports from AppFolio instead of direct logins." Saxena Decl., Ex. D (Docket No. 33-7)

In its Reply, contrary to its CEO's representation to its customer, Beagle now contends that Scheduled Reports are not a viable alternative because "[t]he whole point of Beagle's value proposition to customers is that they don't have to go through the onerous process of setting up Scheduled Reports in AppFolio. All they have to do is create an account for Beagle and then Beagle handles the rest." Plaintiff's Reply (Docket No. 36) at 6. However, Beagle has failed to demonstrate that the setting up of Scheduled Reports is particularly onerous (and, according to AppFolio, only takes five minutes), or that it is any more time consuming then a property manager setting up a user account with the appropriate permissions.

Beagle also contends that the Scheduled Reports do not provide the necessary information required by Beagle. However, AppFolio tailored the sample report filed in conjunction with its Opposition to provide the exact information that Beagle claimed it needed in its moving papers. For the first time in its Reply, and without any opportunity for AppFolio to respond, Beagle now contends that it needs to view existing insurance policies, and that Scheduled Reports do not give it access to that needed data. However, customers can share that data with Beagle through other authorized means, including by using AppFolio's Database API.

Beagle contends that AppFolio's Database API is also insufficient, asserting that "AppFolio designed its API so that it would not expose all the data fields that Beagle customers contract with Beagle to manage." D'Angelo Decl. (Docket No. 36-2) ¶ 4. Beagle, however, fails to identify what data fields are missing. Without knowing what data fields Beagle claims are missing, the Court is unable to determine the materiality of that data and the likelihood of irreparable harm. Perhaps recognizing that Database API is a workable solution, Beagle also speculates that AppFolio will simply "ban Beagle from use of the API." *Id.* However, AppFolio has made no such statement to its customers, and in fact advised its customers in connection with its plans to disable Beagle's user names that it supports "multiple safe methods for you to work with [third party providers], including AppFolio Stack, Database API, and scheduled reports." Brown Decl., Ex. C (Docket No. 4-5). Finally, Beagle also states that it would take them "months" to engineer new integrations using the Database API, without any meaningful explanation of what would be entailed. *See id.* It is unclear whether "months" means 2 months, 3 months, 4 months, or more. Presumably, as soon as Beagle became aware that AppFolio intended to enforce its Terms of Service, Beagle began working on developing or engineering such integrations. On this record, the Court cannot conclude that Beagle is likely to suffer irreparable harm.

Accordingly, the Court concludes that Beagle has failed to demonstrate that it is entitled to the extraordinary remedy of a temporary restraining order.

## IV. CONCLUSION

For the foregoing reasons, Beagle's Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction is **DENIED**.

IT IS SO ORDERED.



Initials of Deputy Clerk sr

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Michael Burshteyn, Marcelo Barros

Address: 101 Second Street, Suite 2200, San Francisco, CA 94105

Telephone number(s): 415-590-5141

Email(s): michael.burshteyn@gtlaw.com; marcelo.barros@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

AppFolio, Inc.

Name(s) of counsel (if any):

Brian Procel, Jeremiah Michael Levine

Address: 401 Wilshire Blvd, Suite Fl 12, Santa Monica, CA 90401

Telephone number(s): 424-788-4538

Email(s): brian@procel-law.com, Jeremiah@ProcelLevine.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Jake Evans (Appearing Pro Hac Vice), Jordana R. Sternberg (Appearing Pro Hac Vice)

Address: Terminus 200, Suite 2500, Atlanta, GA 30305

Telephone number(s): 678-553-2100

Email(s): jake.evans@gtlaw.com; jordana.sternberg@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ◉ No

---

**Appellees**

Name(s) of party/parties:

AppFolio, Inc.

Name(s) of counsel (if any):

Martin H Pritikin

Address: 2029 Century Park East Blvd, Los Angeles, CA 90035

Telephone number(s): 323-533-0002

Email(s): marty@procel-law.com

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association LLC, and YRIG Risk Retention Group, Inc.

Name(s) of counsel (if any):

Sajni Patel

Address: 1840 Century Park East, Suite 1900 Los Angeles, CA 90067

Telephone number(s): 310-586-7700

Email(s): sajni.patel@gtlaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? (•) Yes ( ) No

---

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Araceli Martinez-Olguin, District Judge

| | |
|---|---|
| BEAGLE LABS, INC., et al.,<br>Plaintiffs,<br>vs.<br>APPFOLIO, INC.,<br>Defendant. | Case No. C 25-10670-AMO |

San Francisco, California
Monday, December 15, 2025

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 3:36 - 3:49 = 13 MINUTES

APPEARANCES:

For Plaintiffs:

Greenberg Traurig, LLP
101 Second Street
Suite 2200
San Francisco, California 94105
BY: MICHAEL BURSHTEYN, ESQ.
BY: MARCELO L. DE BARROS, ESQ.

For Defendant:

2029 Century Park East Boulevard
Los Angeles, California 90035
BY: MARTIN H. PRITIKIN, ESQ.
BY: JEREMIAH LEVINE, ESQ.

Transcribed by:

Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

Monday, December 15, 2025 3:36 p.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Calling Civil Matter 25-10670, Beagle Labs, Incorporated, et al., v. AppFolio, Incorporated.

Counsel, please state your appearances for the record, starting with the Plaintiff.

MR. BURSHTEYN (via Zoom): Good afternoon, your Honor. This is Michael Burshteyn on behalf of the Plaintiffs.

THE COURT: Good afternoon.

MR. BARROS (via Zoom): Good afternoon, your Honor. My name is Marcelo Barros, also on behalf of Plaintiffs.

MR. LEVINE (via Zoom): Good afternoon, your Honor. Jeremiah Levine for Defendant AppFolio, and with me at virtual counsel table is Marty Pritikin. Also present by audio only is a representative of my client AppFolio, Billy Herbert.

THE COURT: Good afternoon to you all.

All right, folks, we're here on the TRO that was filed -- I was going to say this morning but perhaps yesterday -- by Plaintiffs. I was just made aware of it this morning.

I have also read the status report that came in from Defendants this afternoon. So, here's where I think we --

where we are.

I understand AppFolio to be agreeing to maintain status quo, and for what it's worth, I was planning to bring you all in to ask you all to do that so that we can just begin by briefing whether this case even belongs here, because I also see that you have another case going on in another district in this -- in this state. So, I'm not convinced you all belong here.

So, here's what I think. So, let me -- let me start here with just confirming that I think where we are. What I think Plaintiffs were seeking in their TRO was to maintain status quo so that Beagle Labs wasn't -- forgive me. In my head it's like deplatformed, but that's not quite the -- the verbiage. All right. You're nodding. So, I'm going to take it. Thank you for --

MR. BURSHTEYN: It works for us, your Honor.

THE COURT: Thank you for letting me stumble through the tech. So, the idea is to not be deplatformed. So, and I don't see any objection or at least I understand consent from -- from Defendant.

Is that right, Mr. Levine?

MR. LEVINE: Thank you for asking, your Honor. Defendant's position is that, as your Honor indicated, skepticism towards this case does not belong here and that the proper venue is the Central District of California.

So, what the Defendants were offering to do was maintain the status quo until the case can be fully briefed in the Central District, your Honor.

THE COURT: So, here's what I want to suggest to you. So, but that -- the problem with that as I see it is you're asking for transfer immediately, and I need to give them a chance to be heard on that.

So, what I'm suggesting you all do is agree to status quo, and I'm going to give you all -- I'm going to ask you to meet and confer on a schedule to brief transfer to the Central District.

MR. LEVINE: Your Honor, may I please be heard on that point?

THE COURT: By all means.

MR. LEVINE: I think that the Plaintiffs have been heard on that issue. They filed a complaint. They got to choose what they were going to put in it, and they didn't put in any allegations about venue. That was -- that was their choice, and then they decided to make this an emergency. So, to the extent that they don't get to have another say on it, that was also their choice.

THE COURT: So --

MR. BURSHTEYN: If I may?

THE COURT: Go ahead and finish.

MR. BURSHTEYN: So, just to briefly address it, we

would appreciate an opportunity to be heard. We put venue allegations, including that our client's biggest customer, who's on AppFolio is in the Bay Area. There are other venue allegations around the nature of the negotiations here. Beagle Technologies, one of the Plaintiffs, is located in San Francisco for -- for much of the relevant period. Plaintiffs' parent company, Corgi, is in San Francisco, and, you know, we can get into it. Mr. Barros and I have another case in the District of Maryland with a similar situation where Judge Maddox there is faced with two cross-TROs and a venue transfer motion that we actually filed, and we can -- again, there's a lot of case law on this. Any order the Court issues on the injunctive relief can travel with the case, but also it's -- it's far from, you know, clear that -- that Central District is the proper venue if we looked at all the factors, but, you know, we'd have to lay them out.

Of course, we've alleged it, but there's much more we could say in a -- in a brief.

THE COURT: You're limited to your complaint in the grand scheme, let's be clear. But here's the point.

So, Mr. Levine, I understand your position that you think it should just go now. What -- what authority -- I understand my authority to transfer it either to come from 1404 or other places, but I don't understand that I -- by your -- I'm curious what it is you would have me cite to

just transfer this case.

MR. LEVINE: I think that your Honor is right. I think that the venue statute at 1404 compared with the -- with the -- with the Plaintiffs' allegations just simply don't point to --

THE COURT: All right. So --

MR. LEVINE: -- venue. And, so, your Honor, I --

THE COURT: Go ahead. But -- go ahead.

MR. LEVINE: This isn't really your Honor's problem. It's the Plaintiffs' problem. They get to choose how they plead. They just didn't plead the facts. The -- the best that they can say is that they have customers here and that they --

THE COURT: Okay. Mr. Levine, I am going to stop you because to the extent that you all want to give -- put argument in front of me about whether or not this is the proper place, this is why I want the briefing.

So, here's what I'm going to ask you all to do. You're going to get five pages each to tell me why this is or isn't the right venue for this lawsuit. You are going to meet and confer and figure out a timeline for that to occur. If you want to make yourselves miserable over the holidays, I leave that to you. But I'm going to -- it's five pages. You all are going to get me briefs. You can decide if they are blind briefs or if they are submitted in unison. What I

want from you all is a schedule no later than Friday. And if you all get to it quicker, great. But I want it by noon Friday. You all tell me the pace at which you're going to brief this. I understand -- and maybe this is the question that I still have lingering for you, Mr. Levine, is whether -- your papers suggest that you are amenable to status quo until you're allowed to brief this in front of the Central District. I'm not going to transfer it without actually considering it and without giving you all at least some sort of brief opportunity to be heard on -- on venue. I'm not going to do it here on the fly for you all. I'm going to ask you all to brief it.

So, will you agree to maintain status quo till that briefing wraps and I'm able to issue a decision?

MR. PRITIKIN (via Zoom): Your Honor, if I could ask a question. How long does your Honor want from when the briefing is completed to have a hearing or to rule on this? Because that might affect --

THE COURT: Mr. Pritikin, the Federal Court does not tell you how quickly it moves. I understand it changes your -- so, that's the point. You all decide. Here are your options. You can consent or I can take it up.

MR. LEVINE: Your Honor, may -- I understand your Honor's question. I don't have authority here today to -- on behalf of my client to say they will withhold

indefinitely. Our -- the -- the authority that I had was something like until we can -- until the end of the week or early next week.

THE COURT: How quickly do you want to submit your five pages, Mr. Levine?

MR. LEVINE: We're happy to submit briefing along that timeline early next week or the end of this week regarding venue, your Honor. Absolutely.

THE COURT: All right. So, Mr. Levine, here's -- here's the problem with what you've just said. You have -- you have -- or here's the trouble as I see it. You have authority to maintain status quo until the beginning of next week, but you want until the beginning of next week to do your briefing.

To Mr. Pritikin's point, that's not allowing time for the Court to rule, right. So, there's -- there's one of -- there's sort of one of two ways you want to do this. The faster you all move, certainly the faster I can move, but you can't -- if you only came with seven days authority, it is not in your best interest to tell me you're going to take -- or I don't know then what you're -- what that consent is worth.

MR. LEVINE: Your Honor, may I please have a moment to confer with my client?

THE COURT: Certainly.

MR. LEVINE: Thank you, your Honor.

(Pause.)

MR. LEVINE: AppFolio thanks the Court and the parties for their patience.

THE COURT: Certainly. What's the word, Mr. Levine?

MR. LEVINE: Our -- our client feels that they do carry some risk in holding off. And, just for context, the risk is that as long as the Beagle entities have access to AppFolio's platform, they can change and view information. So, it's not a situation that AppFolio can maintain indefinitely.

With that context, your Honor, the client's proposal -- excuse me -- proposal is to have the TRO heard by your Honor at the earliest possible time that your Honor is available and to -- and to maintain the status quo until there -- your Honor has had an opportunity to rule on the TRO and then to brief venue subsequently.

THE COURT: I'm not doing that. So, here's what you're going to -- here's what we're going to do, folks. You said you had authority to maintain the TRO through Monday. By Friday I want the blind briefs on venue. I'm not doing work that should be done by someone in the Central District if that's what's supposed to happen here.

So, get me the briefs on -- on venue by Friday, and if

I need to take up the issue -- if I need to take up the substance of the TRO, I will pick it up at that point, but I'm not -- I'm not picking up the substance of it if it's not supposed to be mine.

MR. LEVINE: Yes, your Honor.

THE COURT: All right, folks.

MR. BURSHTEYN: Thank you, your Honor.

THE COURT: Well, keep talking.

MR. PRITIKIN: Your Honor, can I just clarify? So, five-page blind briefs both due Friday by noon?

THE COURT: Correct.

MR. PRITIKIN: Okay. Thank you.

THE COURT: Thank you all. We'll -- I'll set something if we need it. Thank you all.

ALL: Thank you, your Honor.

(Proceedings adjourned at 3:49 p.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Friday, December 19, 2025

(SSCx),APPEAL,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:25-cv-12248-JFW-SSC

Beagle Labs, Inc. et al v. AppFolio, Inc.
Assigned to: Judge John F. Walter
Referred to: Magistrate Judge Stephanie S. Christensen
Case in other court: 9th CCA, 26-00769
California Northern, 3:25-cv-10670
Cause: 28:1331 Fed. Question

Date Filed: 12/22/2025
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Federal Question

**Plaintiff**

**Beagle Labs, Inc.**
*a Delaware corporation*

represented by

**James C. Evans**
Greenberg Traurig LLP
3333 Piedmont Road, NE
Terminus 200, Suite 2500
Atlanta, GA 30305
678-553-2100
Fax: 678-553-2212
Email: jake.evans@gtlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordana R. Sternberg**
Greenberg Traurig LLP
3333 Piedmont Road, NE
Terminus 200, Suite 2500
Atlanta, GA 30305
678-553-2100
Fax: 678-553-2212
Email: jordana.sternberg@gtlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jake Evans**
Greenberg Traurig, P.A
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
678-553-2342
Email: jake.evans@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Marcelo Meirelles Leao de Barros**
Greenberg Traurig
101 2nd St., Ste 2200
San Francisco, CA 94105
415-590-5142
Fax: 415-707-2010

Email: Marcelo.Barros@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Michael Burshteyn**
Greenberg Traurig LLP
101 Second Street, Suite 2200
San Francisco, CA 94105
415-590-5141
Fax: 415-707-2010
Email: michael.burshteyn@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Sajni Patel**
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
310-586-7700
Fax: 310-586-7800
Email: sajni.patel@gtlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Beagle Technologies, Inc.**
*a Delaware corporation*

represented by **James C. Evans**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordana R. Sternberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jake Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcelo Meirelles Leao de Barros**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Burshteyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sajni Patel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Big Beagle, Inc.**
*a Delaware corporation*

represented by **James C. Evans**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordana R. Sternberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jake Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcelo Meirelles Leao de Barros**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Burshteyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sajni Patel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rental Property Managers Association, LLC**
*an Alabama limited liability company*

represented by **James C. Evans**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jordana R. Sternberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jake Evans**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcelo Meirelles Leao de Barros**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Burshteyn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sajni Patel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **YRIG Risk Retention Group, Inc.**<br>*an Alabama corporation* | represented by | **James C. Evans**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br><br>**Jordana R. Sternberg**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br><br>**Jake Evans**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Marcelo Meirelles Leao de Barros**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Michael Burshteyn**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Sajni Patel**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **AppFolio Inc**<br>*a California corporation* | represented by | **Brian Procel**<br>Procel Levine, LLP<br>401 Wilshire Blvd, Fl. 12<br>Santa Monica, CA 90401-1456<br>424-788-4538<br>Email: brian@procel-law.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Jeremiah Michael Levine**<br>Procel Levine<br>401 Wilshire Blvd, Suite Fl 12<br>Santa Monica, CA 90401<br>424-788-4538<br>Email: Jeremiah@ProcelLevine.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Martin H Pritikin**<br>Procel Levine LLP<br>401 Wilshire Blvd, 12th Floor<br>Santa Monica, CA 90401-1456<br>424-788-4538 |

Email: marty@procel-law.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2025 | 1 | COMPLAINT against AppFolio, Inc.. Filed by Rental Property Managers Association, LLC, Beagle Labs, Inc., Big Beagle, Inc., Beagle Technologies, Inc., YRIG Risk Retention Group, Inc.. (Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 2 | Proposed Summons. (Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 3 | Certificate of Interested Entities by Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc. identifying Corporate Parent Corgi Insurance Services, Inc. for Beagle Labs, Inc., Beagle Technologies, Inc.. re 1 Complaint (Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 4 | Ex Parte MOTION for Temporary Restraining Order filed by Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Notice of Motion for Ex Parte TRO, # 2 Declaration of Michael Brown ISO Motion for Ex Parte TRO, # 3 Exhibit A to Michael Brown Decl., # 4 Exhibit B to Michael Brown Decl., # 5 Exhibit C to Michael Brown Decl., # 6 Exhibit D to Michael Brown Decl., # 7 Declaration of Anthony D'Angelo ISO of Motion for Ex Parte TRO, # 8 Exhibit A to Anthony D'Angelo Decl., # 9 Declaration of Marcelo Barros ISO Motion for Ex Parte TRO, # 10 Exhibit A to Marcelo Barros Decl., # 11 Exhibit B to Marcelo Barros Decl, # 12 Proposed Order Proposed Order)(Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | | Filing fee: $ 405.00, receipt number ACANDC-21449667. (mbc, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 5 | Case assigned to Magistrate Judge Sallie Kim.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 12/29/2025. (mbc, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 6 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned. |

| | | |
|---|---|---|
| | | ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (bxl, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 7 | ORDER reassigning case: This matter is referred to the Clerk's office for reassignment to a District Judge, as the matter involves a temporary restraining order, and the parties have not consented to the jurisdiction of the magistrate judge. This is a text-only entry generated by the court. There is no document associated with this entry.(Kim, Sallie) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 8 | **ORDER REASSIGNING CASE**<br><br>IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Araceli Martinez-Olguin. Magistrate Judge Sallie Kim no longer assigned to the case.<br><br>Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.<br><br>Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras.<br><br>Mark B. Busby<br>Clerk, United States District Court<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br><br>(mbc, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 9 | **ORDER SETTING STATUS CONFERENCE re 4 Motion for Ex Parte Temporary Restraining Order. Signed by Judge Araceli Martinez-Olguin on December 15, 2025. (amolc1, COURTSTAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025)** |
| 12/15/2025 | 10 | Clerk's Notice Setting Zoom Hearing. Status Conference set for 12/15/2025 at 03:30 PM - Videoconference Only before Judge Araceli Martinez-Olguin. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://cand-uscourts.zoomgov.com/j/1603329440?pwd=OW1ZZWlZcklySHBMcStTVDZvZDJoUT09<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. **A list of names and emails must be sent to the CRD at amocrd@cand.uscourts.gov no later than December 15, 2025 at 12:00 PM PST.** |

| | | |
|---|---|---|
| | | **Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ads, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 11 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 3/19/2026. Initial Case Management Conference set for 3/26/2026 at 10:00 AM in San Francisco, Courtroom 10, 19th Floor.**<br><br>**Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras. (Attachments: # 1 Notice of Eligibility for Video Recording)(slh, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025)** |
| 12/15/2025 | 12 | Summons Issued as to AppFolio, Inc. (slh, COURT STAFF) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 13 | CERTIFICATE OF SERVICE by Beagle Labs, Inc. re 9 Order *Setting Status Conference re Motion for Ex Parte Temporary Restraining Order* (Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 14 | STATUS CONFERENCE STATEMENT by AppFolio, Inc. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Exhibit)(Pritikin, Martin) (Filed on 12/15/2025) Modified on 12/16/2025 (slh, COURT STAFF). [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 15 | **Minute Entry for proceedings held before Judge Araceli Martinez-Olguin: Status Conference held on 12/15/2025. Parties to submit blind briefs regarding venue, no longer than 5 pages, by no later than 12:00 PM PST on 12/19/2025. On Defendant's agreement, status quo to be maintained through 12/22/2025.**<br><br>**Total Time in Court: 13 minutes.**<br>**Court Reporter: Recorded via Zoom.**<br><br>**Plaintiff Attorney: Michael Burshteyn and Marcelo Barros.**<br>**Defendant Attorney: Jeremiah Levine and Martin Pritikin.**<br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*** **(ads, COURT STAFF) (Date Filed: 12/15/2025) Proceedings transcribed by Tara Jauregui of Echo Reporting (Echoreporting@yahoo.com) Modified on 12/16/2025 (bxl, COURT STAFF). [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025)** |
| 12/15/2025 | 16 | NOTICE of Appearance filed by Marcelo Leao de Barros on behalf of Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc. (Leao de Barros, Marcelo) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/15/2025 | 17 | TRANSCRIPT ORDER for proceedings held on 12/15/25 before Judge Araceli Martinez-Olguin by Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc., for Recorded Proceeding - |

| | | |
|---|---|---|
| | | San Francisco. (Burshteyn, Michael) (Filed on 12/15/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/15/2025) |
| 12/17/2025 | 18 | MOTION for leave to appear in Pro Hac Vice *James C. Evans* ( Filing fee $ 328, receipt number ACANDC-21459322.) filed by Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Certificate of Good Standing)(Evans, Jake) (Filed on 12/17/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/17/2025) |
| 12/17/2025 | 19 | **Order by Judge Araceli Martinez-Olguin granting 18 Motion for Pro Hac Vice as to James Cullen Evans. (ads, COURT STAFF) (Filed on 12/17/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/17/2025)** |
| 12/19/2025 | 20 | Statement *re Request for Opportunity to Oppose TRO Application* by AppFolio, Inc.. (Attachments: # 1 Proposed Order)(Pritikin, Martin) (Filed on 12/19/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/19/2025) |
| 12/19/2025 | 21 | Statement *Regarding Transfer of Venue* by AppFolio, Inc.. (Attachments: # 1 Declaration)(Pritikin, Martin) (Filed on 12/19/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/19/2025) |
| 12/19/2025 | 22 | OPPOSITION/RESPONSE (re 4 Ex Parte MOTION for Temporary Restraining Order ) filed byBeagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Declaration of Michael Brown ISO Opposition to Motion to Transfer Venue, # 2 Declaration of Marcelos Barros ISO Opposition to Motion to Transfer Venue)(Burshteyn, Michael) (Filed on 12/19/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/19/2025) |
| 12/19/2025 | 23 | Transcript of Proceedings held on 12/15/25, before Judge Araceli Martinez-Olguin. Court Reporter/Transcriber Echo Reporting, Inc., telephone number echoreporting@yahoo.com. Tape Number: 3:36 - 3:49. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 17 Transcript Order, ) Redaction Request due 1/9/2026. Redacted Transcript Deadline set for 1/20/2026. Release of Transcript Restriction set for 3/19/2026. (Related documents(s) 17 ) (Jauregui, Tara) (Filed on 12/19/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/19/2025) |
| 12/19/2025 | 24 | **ORDER TRANSFERRING CASE & MAINTAINING STATUS QUO. Signed by Judge Araceli Martinez-Olguin on December 19, 2025. (amolc1, COURTSTAFF) (Filed on 12/19/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/19/2025)** |
| 12/22/2025 | | Case electronically transferred to Central District of California (slh, COURT STAFF) (Filed on 12/22/2025) [Transferred from California Northern on 12/28/2025.] (Entered: 12/22/2025) |
| 12/28/2025 | 25 | ORIGINAL file, certified copy of transfer order and docket sheet received from California Northern (Entered: 12/28/2025) |
| 12/29/2025 | 26 | NOTICE OF RECEIPT OF CASE TRANSFERRED IN: Formerly Case Number: 3:25-cv-10670-AMO, from USDC Northern District (San Francisco). The above-referenced case has been transferred to this district and assigned the above civil case number 2:25-cv-12248-JFW (SSCx). (et) (Entered: 12/29/2025) |

| | | |
|---|---|---|
| 12/29/2025 | 27 | NOTICE OF ASSIGNMENT to District Judge John F. Walter and Magistrate Judge Stephanie S. Christensen. (et) (Entered: 12/29/2025) |
| 12/29/2025 | 28 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 12/29/2025) |
| 12/29/2025 | 29 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (et) (Entered: 12/29/2025) |
| 12/29/2025 | 30 | First NOTICE of Appearance filed by attorney Brian Procel on behalf of Defendant AppFolio Inc (Attorney Brian Procel added to party AppFolio Inc(pty:dft))(Procel, Brian) (Entered: 12/29/2025) |
| 12/29/2025 | 31 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Jake Evans on behalf of Plaintiffs. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. (et) (Entered: 12/29/2025) |
| 12/29/2025 | 32 | STANDING ORDER by Judge John F. Walter. READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. This action has been assigned to the calendar of Judge John F. Walter. (iv) (Entered: 12/29/2025) |
| 12/29/2025 | 33 | MEMORANDUM in Opposition to Ex Parte MOTION for Temporary Restraining Order 4 filed by Defendant AppFolio Inc. (Attachments: # 1 Declaration of Jeremiah Levine, # 2 Exhibit A: AppFolio's TRO filed in Santa Barbara, # 3 Declaration of Sean Saxena, # 4 Exhibit A: AppFolio's Investor Day Presentation, # 5 Exhibit B: AppFolio's Scheduled Report, # 6 Exhibit C: AppFolio's Terms of Service, # 7 Exhibit D: Beagle's CEO Letter, # 8 Declaration of Nate Delage)(Procel, Brian) (Entered: 12/29/2025) |
| 12/30/2025 | 34 | Text Entry Order: On or before December 31, 2025, Plaintiffs shall file their Reply brief. On or before January 5, 2026, the parties shall file their proposed Statements of Decision in accordance with paragraph 5(f) of the Courts Standing Order. The Court will set a hearing, if necessary, after the Court reviews the additional pleadings filed by the parties. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 12/30/2025) |
| 12/31/2025 | 35 | NOTICE of Appearance filed by attorney Michael Burshteyn on behalf of Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc. (Burshteyn, Michael) (Entered: 12/31/2025) |
| 12/31/2025 | 36 | REPLY ISO TRO and PI Motion Ex Parte MOTION for Temporary Restraining Order 4 filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Declaration Brown Declaration ISO TRO and PI, # 2 Declaration D'Angelo Declaration ISO TRO and PI)(Burshteyn, Michael) (Entered: 12/31/2025) |
| 01/05/2026 | 37 | NOTICE OF LODGING filed *Defendant's [Proposed] Statement of Decision on Beagle's Motion for TRO* re Generic Text Only Entry, 34 (Attachments: # 1 Proposed Order Defendant's [Proposed] Statement of Decision on Beagle's Motion for TRO)(Pritikin, Martin) (Entered: 01/05/2026) |

| | | |
|---|---|---|
| 01/05/2026 | 38 | NOTICE OF LODGING filed *Plaintiffs [Proposed] Statement of Decision on Motion for Temporary Restraining Order* re Generic Text Only Entry, 34 (Attachments: # 1 Proposed Order Proposed Statement of Decision)(Burshteyn, Michael) (Entered: 01/05/2026) |
| 01/07/2026 | 39 | MINUTE (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION [filed 12/15/2025; Docket No. 4 ] by Judge John F. Walter. Beagle's Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction is DENIED. (iv) (Entered: 01/07/2026) |
| 01/07/2026 | 40 | DECLARATION of Michael Burshteyn re Initial Order upon Filing of Complaint - form only 32 filed by Plaintiff Beagle Labs, Inc.. (Burshteyn, Michael) (Entered: 01/07/2026) |
| 01/07/2026 | 41 | STATEMENT Joint Pursuant to Standing Order filed by Plaintiff Beagle Labs, Inc. re: Initial Order upon Filing of Complaint - form only 32 . (Burshteyn, Michael) (Entered: 01/07/2026) |
| 01/07/2026 | 42 | NOTICE of Appearance filed by attorney Sajni Patel on behalf of Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc. (Attorney Sajni Patel added to party Beagle Labs, Inc.(pty:pla), Attorney Sajni Patel added to party Beagle Technologies, Inc.(pty:pla), Attorney Sajni Patel added to party Big Beagle, Inc.(pty:pla), Attorney Sajni Patel added to party Rental Property Managers Association, LLC(pty:pla), Attorney Sajni Patel added to party YRIG Risk Retention Group, Inc.(pty:pla))(Patel, Sajni) (Entered: 01/07/2026) |
| 01/08/2026 | 43 | STIPULATION Extending Time to Answer the complaint as to AppFolio Inc answer now due 2/4/2026, re Complaint - (Discovery), 1 filed by Defendant AppFolio Inc.(Levine, Jeremiah) (Entered: 01/08/2026) |
| 01/08/2026 | 44 | DECLARATION of Jeremiah Levine *re Lead Counsel* filed by Defendant AppFolio Inc. (Levine, Jeremiah) (Entered: 01/08/2026) |
| 01/08/2026 | 45 | APPLICATION of Non-Resident Attorney Jordana Sternberg to Appear Pro Hac Vice on behalf of Plaintiff Beagle Labs, Inc. (Pro Hac Vice Fee - $450 Fee Paid, Receipt No. ACACDC-41238550) filed by Attorney for Plaintiffs Beagle Labs, Inc.. (Attachments: # 1 Proposed Order Jordana Sternberg) (Patel, Sajni) (Entered: 01/08/2026) |
| 01/08/2026 | 46 | APPLICATION of Non-Resident Attorney James C. Evans to Appear Pro Hac Vice on behalf of Plaintiff Beagle Labs, Inc. (Pro Hac Vice Fee - $450 Fee Paid, Receipt No. ACACDC-41238686) filed by Attorney for Plaintiffs Beagle Labs, Inc.. (Attachments: # 1 Proposed Order on Application for PHV for James Evans) (Patel, Sajni) (Entered: 01/08/2026) |
| 01/09/2026 | 47 | ORDER by Judge John F. Walter: granting 45 Non-Resident Attorney Jordana Sternberg APPLICATION to Appear Pro Hac Vice on behalf of Plaintiff Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, and YRIG Risk Retention Group, Inc., designating Sajni Patel as local counsel. THERE IS NO PDF ASSOCIATED WITH THIS ENTRY(aus) (Entered: 01/09/2026) |
| 01/09/2026 | 48 | ORDER by Judge John F. Walter: granting 46 Non-Resident Attorney James C. Evans APPLICATION to Appear Pro Hac Vice on behalf of Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, and YRIG Risk Retention Group, Inc., designating Sajni Patel as local counsel. THERE IS NO PDF ASSOCIATED WITH THIS ENTRY (aus) Modified on 1/9/2026 (aus). (Entered: 01/09/2026) |
| 01/13/2026 | 49 | MINUTE (IN CHAMBERS) COURT ORDER by Judge John F. Walter. Counsel are hereby notified that a Scheduling Conference has been set for February 23, 2026, at 1:15 |

| | | |
|---|---|---|
| | | p.m. before Judge John F. Walter in Courtroom 7A, 350 W. 1st St, Los Angeles, CA 90012. Lead Trial Counsel shall attend all proceedings before this Court, including the Scheduling Conference. Counsel are directed to comply with Rule 26 of the Federal Rules of Civil Procedure and Local Rule 26-1 in a timely fashion and to file a Joint Report, on or before February 6, 2026. (iv) (Entered: 01/13/2026) |
| 01/21/2026 | 50 | NOTICE OF MOTION AND MOTION for Reconsideration *of Denial of Order Denying TRO and OSC Preliminary Injunction re ECF NO. 39* filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. Motion set for hearing on 2/23/2026 at 01:30 PM before Judge John F. Walter. (Attachments: # 1 Declaration, # 2 Declaration) (Leao de Barros, Marcelo) (Entered: 01/21/2026) |
| 01/21/2026 | 51 | NOTICE OF MOTION AND MOTION for Reconsideration *of Denial of Order Denying TRO and OSC Preliminary Injunction Re ECF No. 39* filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. Motion set for hearing on 2/23/2026 at 01:30 PM before Judge John F. Walter. (Leao de Barros, Marcelo) (Entered: 01/21/2026) |
| 01/21/2026 | 52 | *stricken* NOTICE OF MOTION re Ex Parte MOTION for Temporary Restraining Order 4 filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Memorandum MPA ISO Motion for Reconsideration, # 2 Declaration D'Angelo Decl ISO Motion, # 3 Declaration Okpokowuruk Decl ISO Motion)(Burshteyn, Michael) Modified on 2/4/2026 (sr). (Entered: 01/21/2026) |
| 01/21/2026 | 53 | Notice of Withdrawal of Motion for Reconsideration, 51 , Motion for Reconsideration, 50 filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Burshteyn, Michael) (Entered: 01/21/2026) |
| 01/21/2026 | 54 | NOTICE OF LODGING filed re Notice of Motion, 52 (Attachments: # 1 Proposed Order ISO Motion for Reconsideration (52))(Burshteyn, Michael) (Entered: 01/21/2026) |
| 02/02/2026 | 55 | OPPOSITION to NOTICE OF MOTION AND MOTION for Reconsideration *of Denial of Order Denying TRO and OSC Preliminary Injunction Re ECF No. 39* 51 filed by Defendant AppFolio Inc. (Attachments: # 1 Declaration Saxena Decl., # 2 Exhibit Exh. A to Saxena Decl., # 3 Declaration Delage Decl.)(Levine, Jeremiah) (Entered: 02/02/2026) |
| 02/04/2026 | 56 | Text Entry Order: Plaintiffs Motion for Reconsideration of Denial of Order Denying TRO and OSC Preliminary Injunction Re ECF No. 39 (Docket No. 52 ) is STRICKEN for failure to comply with Local Rule 7-3, which requires the conference of counsel to take place at least seven days prior to the filing of the Motion, and paragraph 5(b) of the Court's Standing Order, which requires the Joint Statement to be filed not more than 2 days after the Local Rule 7-3 conference. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sr) TEXT ONLY ENTRY (Entered: 02/04/2026) |
| 02/04/2026 | 57 | ANSWER to Complaint - (Discovery), 1 filed by Defendant AppFolio Inc.(Levine, Jeremiah) (Entered: 02/04/2026) |
| 02/06/2026 | 58 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiffs Beagle Labs, Inc.. Appeal of Minutes of In Chambers Order/Directive - no proceeding held, 39 . (Appeal fee of $605 paid.) (Burshteyn, Michael) (Entered: 02/06/2026) |
| 02/06/2026 | 59 | REPRESENTATION STATEMENT re Notice of Appeal to 9th Circuit Court of Appeals 58 . (Burshteyn, Michael) (Entered: 02/06/2026) |

| | | |
|---|---|---|
| 02/06/2026 | 60 | DISCLOSURE of Interested Party filed by Defendant AppFolio Inc (Levine, Jeremiah) (Entered: 02/06/2026) |
| 02/06/2026 | 61 | STATUS REPORT *Joint 26(f) Report* filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Burshteyn, Michael) (Entered: 02/06/2026) |
| 02/06/2026 | 62 | STATUS REPORT *Joint Rule 7-3 Statement re Motion for Reconsideration* filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Burshteyn, Michael) (Entered: 02/06/2026) |
| 02/06/2026 | 63 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 26-769 assigned to Notice of Appeal to 9th Circuit Court of Appeals 58 as to plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (mat) (Entered: 02/10/2026) |
| 02/11/2026 | 64 | NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 filed by Plaintiffs Beagle Labs, Inc.. Motion set for hearing on 3/23/2026 at 01:30 PM before Judge John F. Walter. (Attachments: # 1 Memorandum PLAINTIFFS MOTION FOR RECONSIDERATION OF DENIAL OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39, # 2 Declaration DECLARATION OF ANTHONY DANGELO IN SUPPORT OF RECONSIDERATION RE DKT 39, # 3 Declaration DECLARATION OF AYANGA OKPOKOWURUK IN SUPPORT OF RECONSIDERATION RE DKT 39, # 4 Declaration DECLARATION OF MICHAEL BURSHTEYN IN SUPPORT OF RECONSIDERATION RE DKT 39) (Burshteyn, Michael) (Entered: 02/11/2026) |
| 02/11/2026 | 65 | NOTICE OF LODGING filed re NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 64 (Attachments: # 1 Proposed Order)(Burshteyn, Michael) (Entered: 02/11/2026) |
| 02/12/2026 | 66 | ORDER VACATING SCHEDULING CONFERENCE, REFERRAL TO PRIVATE l\1EDIATION, and DISMISSING ANY UNSERVED DOE DEFENDANTS by Judge John F. Walter. The Court has reviewed the parties' Joint Rule 26() Report and finds that a Scheduling Conference is not necessary. The hearing on February 23, 2026 is vacated and taken off calendar. A Scheduling and Case Management Order will issue. Any unserved DOE defendants are dismissed at this time. The Court, having considered the parties Request: ADR Procedure Selection, the Notice to Parties of Court-Directed ADR Program, or the report submitted by the parties pursuant to Fed. R. Civ. P. 26() and Civil L.R. 26-1, hereby: ORDERS this case referred to: ADR PROCEDURE NO. 3: (Private mediation}. The ADR proceeding is to be completed no later than: November 2, 2026. The Joint Report re: Results of Settlement Conference due on: November 6, 2026. (es) (Entered: 02/13/2026) |
| 02/12/2026 | 67 | SCHEDULING AND CASE MANAGEMENT ORDER by Judge John F. Walter. The purpose of this Order is to notify the parties and their counsel of the deadlines and the schedule that will govern this action. Jury Trial set for 9/28/2027 at 8:30 AM before Judge John F. Walter. (es) (Entered: 02/13/2026) |
| 03/02/2026 | 68 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 64 filed by Defendant AppFolio Inc. (Attachments: # 1 Declaration, # 2 Exhibit Ex. A to Saxena Decl., # 3 Declaration)(Levine, Jeremiah) (Entered: 03/02/2026) |

| | | |
|---|---|---|
| 03/09/2026 | 69 | REPLY in Support NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 64 filed by Plaintiffs Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. (Attachments: # 1 Declaration) (Burshteyn, Michael) (Entered: 03/09/2026) |
| 03/11/2026 | 70 | NOTICE OF LODGING filed re NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 64 (Attachments: # 1 Proposed Order Defendant's [proposed] statement of decision)(Levine, Jeremiah) (Entered: 03/11/2026) |
| 03/11/2026 | 71 | NOTICE OF LODGING filed / *[PROPOSED] ORDER GRANTING PLAINTIFFS MOTION FOR RECONSIDERATION RE DKT. 39* re Minutes of In Chambers Order/Directive - no proceeding held, 39 , NOTICE OF MOTION AND MOTION for Reconsideration re Minutes of In Chambers Order/Directive - no proceeding held, 39 64 (Attachments: # 1 Proposed Order)(Burshteyn, Michael) (Entered: 03/11/2026) |
| 03/12/2026 | 72 | MINUTES (IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING TRO AND OSC PRELIMINARY INJUNCTION RE ECF NO. 39 [filed 2/11/2026; Docket No. 64 ] by Judge John F. Walter. Beagle's Motion for Reconsideration is DENIED. (iv) (Entered: 03/13/2026) |
| 03/25/2026 | 73 | STATUS REPORT *re LR 7-3 conference* filed by Defendant AppFolio Inc. (Levine, Jeremiah) (Entered: 03/25/2026) |
| 03/31/2026 | 74 | First AMENDED NOTICE OF APPEAL to 9th CIRCUIT filed by Plaintiff Beagle Labs, Inc., Beagle Technologies, Inc., Big Beagle, Inc., Rental Property Managers Association, LLC, YRIG Risk Retention Group, Inc.. Amending Notice of Appeal to 9th Circuit Court of Appeals 58 Filed On: 02/06/2026; Entered On: 02/06/2026; (Attachments: # 1 Exhibit Representation Statement)(Burshteyn, Michael) (Entered: 03/31/2026) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/03/2026 15:51:51 | | | |
| **PACER Login:** | mburshteyn | **Client Code:** | 241729.010100 |
| **Description:** | Docket Report | **Search Criteria:** | 2:25-cv-12248-JFW-SSC End date: 4/3/2026 |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |