**Case No. 26-769**

_____

# In the United States Court of Appeals for the Ninth Circuit

_____

BEAGLE LABS, INC., BEAGLE TECHNOLOGIES, INC., BIG BEAGLE, INC., RENTAL PROPERTY MANAGERS ASSOCIATION LLC, AND YRIG RISK RETENTION GROUP, INC.

*Plaintiffs-Appellants*,

v.

APPFOLIO, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the Central District of California, No. 2:25-cv-12248-JFW-SSC (Walter, J.)

_____

## APPELLANTS' REPLY BRIEF

_____

David Bloch
Marcelo Barros
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 590-5110
blochd@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE
Suite 2500, Terminus 200
Atlanta, GA 30305
Telephone: (678) 553-2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...........................................................................................1

SUMMARY OF ARGUMENT .......................................................................2

ARGUMENT...................................................................................................5

I.    The District Court Failed To Consider The Irreparable Harm Caused By AppFolio Cutting Off Beagle's Write Access To The AppFolio Accounts Of Shared Customers ..............5

        A.    Beagle Moved for Injunctive Relief to Preserve Its Access to Customer Accounts—Not Just The Limited Export for Four Categories of Data.........................5

        B.    The District Court Compounded Its Error By Failing to Consider The Evidence Presented On Reconsideration ..................................................................8

        C.    Beagle Did Not Forfeit Its Arguments ...............................13

II.    Other Errors Independently Justify Remand.................................15

        A.    The District Court's Factual Conclusions Regarding the Adequacy of Scheduled Reports and/or the Database API are Clearly Erroneous ...................................15

            1.    Scheduled Reports Are Not Adequate.......................16

            2.    Database API Is Not Adequate.................................17

        B.    The Diametrically Opposed Engineering Evidence Merited An Evidentiary Hearing.........................................18

        C.    The District Court Failed To Consider Beagle's Reputational Harm.............................................................19

CONCLUSION ............................................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alaska Oil and Gas Assn. v. Salazar*,
  No. 3:11-CV-0025-RRB, 2012 WL 12871656 (D. Alaska
  July 10, 2012) ...................................................................... 14

*El Pollo Loco, Inc. v. Hashim*,
  316 F.3d 1032 (9th Cir. 2003) .............................................. 14

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ................................................ 5

*Koerner v. Grigas*,
  328 F.3d 1039 (9th Cir. 2003) .............................................. 15

*Kona Enterprises, Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ........................................... 11, 12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ........................................... 11, 12

*Sch. Dist. No. 1J v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) .................................................. 12

*United States v. Debora*,
  713 F. Supp. 3d 1042 (W.D. Wash. 2024) ............................. 14

*United States v. Le*,
  119 F.4th 700 (9th Cir. 2024) .............................................. 16

*United States v. Mark*,
  795 F.3d 1102 (9th Cir. 2015) ............................... 9, 10, 12, 18

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) ................................................ 15

**Rules**

Fed. R. Civ. P. 52(a)(2).............................................................................. 20

## INTRODUCTION

The district court's order rests on clearly erroneous findings, stemming from the court's failure to fully consider the evidence before it and its denial of a hearing, at which any factual disputes could have been resolved. The court, relying on a declaration filed in support of Beagle's opening TRO brief, held that Beagle needed only four categories of data: (a) tenant rosters, (b) unit identifiers, (c) lease and billing information, and (d) insurance compliance, and that because AppFolio's Scheduled Reports provided those four categories, Beagle had not demonstrated irreparable harm. When Beagle provided further detail in reply, the Court largely declined to consider it on the grounds that the arguments were raised for the first time in reply. With the TRO denied, AppFolio began blocking Beagle's access.

Beagle then sought reconsideration and presented new evidence to correct the court's original error. The court dismissed that evidence as having been previously available to Beagle—notwithstanding that it only came to light *after* the emergency injunction was denied and, in material part, *because* it was denied. That evidence was squarely before the court at the time of the reconsideration motion, and subsequent filings (of

which this Court may take judicial notice) further corroborate Beagle's account. The district court thus erred twice.

Beagle does not seek reversal of the district court's order—it merely seeks remand so that the district court may properly consider the evidence it declined to address on reply and again on reconsideration. Beagle respectfully submits that full and fair consideration of that record will support the relief it seeks.

## SUMMARY OF ARGUMENT

A factual finding is clearly erroneous when it is "illogical, implausible, or without support in the record." Though the court recognized that Beagle accounts can "view and *take action* across [a customer's] entire account database" (1-ER-007 (emphasis added)), it concluded Beagle was not irreparably harmed because the information Beagle uses was "available through alternative authorized means, such as . . . Scheduled Reports." 1-ER-009. But in AppFolio's own words, Scheduled Reports "provide a report—not write access." 2-ER-076. And *write access* is what Beagle was seeking to preserve. AppFolio's suggestion that this requirement was only "hinted at in reply" (Ans. Br. at 2) disregards both AppFolio's own characterization of the parties'

relationship (*e.g.*, 3-ER-300, noting "Beagle is not just accessing data, it is *using AppFolio's platform*" on a customer's behalf (emphasis in original)) as well as the fundamental nature of the parties' dispute itself. That Beagle was aware of Scheduled Reports and nonetheless sought emergency injunctive relief speaks for itself.

It is undisputed that the district court "did not reach whether Scheduled Reports and the Database API provide" write capability (Ans. Br. at 29), and AppFolio itself concedes it "never claimed that any of [the Scheduled Reports] features would allow Beagle to service its customers' contracts." 2-ER-075. They did not and do not. It was AppFolio—not Beagle—that unilaterally altered the manner in which vendors could access its platform on behalf of their shared customers. That is precisely why Beagle sought preliminary injunctive relief—to preserve the status quo and its existing ability to "view *or do*" actions on a shared customer's AppFolio account. 4-ER-616 (emphasis added).

Any uncertainty that may have existed during the initial briefing—which proceeded without a hearing—was fully resolved by the time Beagle moved for reconsideration. AppFolio had by then blocked Beagle's write access entirely. 2-ER-069; 2-ER-089; 2-ER-230–232 (confirming

deplatforming began after TRO denial). And in the course of reconsideration briefing, AppFolio expressly acknowledged that Beagle was "Demanding [] Write Access" and "sought . . . the ability to write in AppFolio databases." 2-ER-068. That concession was dispositive. Yet the district court concluded that this evidence—which *by definition* could not have been presented during the TRO proceedings because AppFolio did not implement its write-access block until after the court ruled—should nonetheless have been raised earlier. That conclusion is clear error. The district court was entitled to weigh Beagle's evidence and reject it. It was not entitled to bypass the issue entirely without ruling on it.

Beagle does not ask this Court to grant injunctive relief. It asks only that this Court remand for the district court to conduct the hearing it never held—to address the single question that is dispositive: whether AppFolio's substitute alternatives are capable of performing the write-enabled functions that Beagle's customers require.

## ARGUMENT

**I.  The District Court Failed To Consider The Irreparable Harm Caused By AppFolio Cutting Off Beagle's Write Access To The AppFolio Accounts Of Shared Customers**

The denial of relief rests on a single factual premise: that Beagle needed only four categories of data, and that a read-only Scheduled Report could supply them. Neither of those conclusions is correct. Beagle did not ask to preserve a limited data export; it asked to preserve working access to its customers' accounts—access that AppFolio's own record describes as able to *act* on the platform, not merely read from it. Beagle sought the maintenance of the *status quo* of account access, not merely the continued export of four pieces of data. The district court's contrary conclusion cannot be reconciled with the evidentiary record.

**A.  Beagle Moved for Injunctive Relief to Preserve Its Access to Customer Accounts—Not Just The Limited Export for Four Categories of Data**

Beagle moved to enjoin AppFolio from "disabling Beagle's customer-authorized accounts or otherwise interfering with Beagle's ability to access data through AppFolio's platform." 4-ER-633. A request to preserve the last peaceful state of affairs is the paradigm of a prohibitory injunction, and it is that status quo against which the court must measure "irreparable harm." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d

1199, 1210 (9th Cir. 2000) (the status quo is the last uncontested state preceding the controversy, which a prohibitory injunction preserves). That *status quo* indisputably included full account access—as AppFolio itself acknowledges: "AppFolio's user logs show Beagle is not just accessing data, it is *using AppFolio's platform*." 3-ER-300 (emphasis in original).

Continued passive access to customer data is important— "essential," even. Ans. Br. at 2, 16, 17, 20, 25, 29. But it is not all that Beagle needs, nor all that it sought. Beagle asked the court "to preserve the status quo"—which included write access to shared customer AppFolio accounts—preserving what Beagle could "view or do" on a shared customer's account. 4-ER-707; 4-ER-616. But in its reconsideration opposition papers, AppFolio acknowledged that "Beagle had filed this lawsuit . . . because Beagle was not after data, but after free access to AppFolio's functionality (i.e., *write capability*)." 2-ER-068; 2-ER-196 (emphasis added). AppFolio was crystal clear: "Beagle sued AppFolio, rather than use Scheduled reports, because Beagle was 'not just accessing data, it is using AppFolio's platform to issue charges to

6

residents for its products.' . . . In other words, Beagle wanted write capability." 2-ER-076 (quoting 3-ER-300).

The Court need look no further than AppFolio's own admissions. AppFolio's notice to its customers—the very notice the district court quoted—stated that, through their customers' accounts, Beagle could "view and take action across [a customer's] entire account database." 1-ER-007; 4–ER-745. The ability to "view" was never in dispute and remains available through Scheduled Reports. What is at issue is the ability to "take action across" an "entire account." 1-ER007. That functionality is publicly advertised by AppFolio: its vendor-access feature permits users or their proxies to "upload invoices, add notes and photos, and mark their work as complete." 1-ER-006; 4-ER-616–617; 4-ER-686; 4-ER-744. AppFolio's own engineer confirmed that Beagle had "write access to customer accounting records." 3-ER-526–527 ¶¶ 23, 25; *see* Ans. Br. at 7–8.

It was AppFolio's decision to selectively revoke that publicly advertised access—*for Beagle alone*—that gave rise to this dispute. By failing to recognize that write access was central to Beagle's TRO request from the outset, the district court committed clear error.

7

**B.** **The District Court Compounded Its Error By Failing to Consider The Evidence Presented On Reconsideration**

AppFolio defends the denial of reconsideration on the ground that the facts underlying Beagle's motion were "well-known to Beagle at the time it filed its Motion for TRO." 1-ER-004; Ans. Br. at 29. That position is untenable. Beagle could not know which access AppFolio would disable—or how that decision would affect Beagle's operations—*until AppFolio actually disabled it*. AppFolio notes that Beagle "had used Scheduled Reports to transmit more than 54,000 reports," but that observation cuts against AppFolio, not for it. Ans. Br. at 29; 2-ER-090. Beagle used Scheduled Reports as one component of its solution servicing shared customers, not as a *complete* or *adequate* substitute for full platform access. The fact that Beagle was actively using Scheduled Reports and still sought emergency injunctive relief is itself compelling evidence that no one—least of all Beagle—regarded those reports as sufficient. AppFolio also faults Beagle for declining to pursue AppFolio's offered "transition steps." Ans. Br. at 30; 2-ER-084. That criticism carries an implicit concession: that the status quo was changing and that Beagle would be adversely affected by that change. The reconsideration declaration of Beagle's engineer, Ayanga Okpokowuruk (2-ER-153–155)

establishes without ambiguity that AppFolio's deplatforming decision directly and materially impacted Beagle and its customers:

- Scheduled Reports and the Database API "contain no write-capable endpoints";

- The Database API is "restricted to enterprise-tier accounts" unavailable to "most" of Beagle's customers;

- The Database API does not enable Beagle to "fix errors, remediate compliance issues, or make required data updates" without AppFolio's cooperation.

2-ER-154. The district court should have considered that new evidence. It did not.

*United States v. Mark* reversed a reconsideration denial where the new evidence (1) directly contradicted rather than supplemented the prior record, and (2) undermined the sole factual basis for the ruling. 795 F.3d 1102, 1104–06 (9th Cir. 2015). On that record, the court held the district court abused its discretion in declining to reconsider or order a further evidentiary hearing. *Id.* Both are present here.

First, Okpokowuruk's testing does not supplement the record; it refutes the district court's premise that Scheduled Reports and the

9

Database API are adequate substitutes for write access. 2-ER-154. Second, that premise was dispositive: the court's finding of no irreparable harm rested entirely on its conclusion that AppFolio's proposed alternatives provided Beagle with everything it required to serve its customers. 1-ER-009–010. Evidence that directly undermines the sole factual predicate for a ruling is the paradigm case for reconsideration under *Mark*.

AppFolio resists this result by reading a third requirement into *Mark*: that the new evidence must have been "genuinely unavailable" earlier. Ans. Br. at 31. *Mark* imposes no such requirement. The opinion conducts no availability or diligence analysis; it does not use the word "genuinely," and never discusses whether the contradicting evidence could have been produced sooner. Its holding turns entirely on whether the new evidence contradicted the sole factual predicate for the ruling. 795 F.3d at 1105–06. But even under AppFolio's own framework, reconsideration is warranted because Okpokowuruk's testing could not have existed when the district court first denied relief. Beagle had not yet been deprived of write access, 2-ER-089, and the testing measured the operational consequences of a block that took effect later.

AppFolio's reliance on *Kona*, *Marlyn*, and *ACandS* is misplaced. In *Kona Enterprises, Inc. v. Estate of Bishop*, the movant raised a choice-of-law argument that was indisputably available from the outset but had been forfeited. 229 F.3d 877, 890 (9th Cir. 2000). The court explained that the movants had four months and "numerous [briefing] opportunities" to raise the legal issue, including in a *reply* brief objecting to the special master's report *and* at a hearing. *Id.* at 890–891. This case presents the opposite situation. Beagle relies on new evidence—Okpokowuruk's testing—that did not exist and could not have existed at the time of the TRO proceedings and Beagle explicitly raised the issue at the earliest possible opportunity.

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.* cuts in Beagle's favor. There, the court affirmed the denial of reconsideration because the movant's evidence could have been submitted before the district court made its decision. 571 F.3d 873, 880–81 (9th Cir. 2009). The relevant draft contract had been prepared *two years* before the hearing and an email underlying the later-filed CEO declaration arrived two days before the court's ruling, which meant the movant had a window to submit it to the court. Here, the testing was not belatedly submitted—

11

it was impossible to conduct before AppFolio began deplatforming Beagle. It depended entirely on post-TRO circumstances that created a new and independent factual predicate. And in contrast to *Marlyn*, Beagle moved expeditiously.

*ACandS* fares no better. There, the court held that the contract documents at issue "had been available . . . from the beginning of the case." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). This is not a case of withheld evidence. It is a case of evidence that did not yet exist. Beagle neither sat on a legal argument nor resubmitted documents it already possessed; it responded to an erroneous ruling with evidence that the ruling itself made necessary. Accordingly, *Mark* controls, and the district court was required to weigh Okpokowuruk's declaration on reconsideration.

*Kona* does, however, support the proposition that a district court may reconsider its prior orders to correct clear error. *Kona*, 229 F.3d at 890. AppFolio does not engage with the clear-error argument at all—it addresses only whether Okpokowuruk's evidence qualifies as "newly discovered." Ans. Br. at 30. That is insufficient. Beagle was entitled to present evidence demonstrating that the court's central factual finding

12

was incorrect and inconsistent with the operational realities on the ground. The district court dismissed that evidence by concluding it must have been available at the time of the original TRO briefing.

### C.     Beagle Did Not Forfeit Its Arguments

AppFolio contends that Beagle "knew what it needed to serve its customers when it filed its motion, and could have raised any write-access theory then," and that "[t]he theory is forfeit." Ans. Br. at 29. That contention is without merit. AppFolio itself admitted Beagle sued because it "wanted *write capability.*" 2-ER-076 (emphasis added).

Beagle's reply did not advance a new theory—it responded directly to the substitute alternatives AppFolio itself proposed in opposition. Moreover, AppFolio's own briefing acknowledges that Beagle's reply explicitly raised the issue of write access. A party cannot propose alternatives in opposition, decline to address the adequacy of those alternatives, and then argue forfeiture when the opposing party responds to them.

It was AppFolio that first injected the argument that Scheduled Reports and Database API were sufficient substitutes in its opposition. 3-ER-299, 303–304. Beagle's reply brief did not shift theories; it directly

13

rebutted AppFolio's framework that read-only access was sufficient. Once AppFolio proposed a read-only alternative as sufficient, Beagle explained why the alternative fails: it eliminates the very functionality AppFolio admits existed and that Beagle sought to preserve—the ability to "add or remove charges" and perform contracted operations. 2-ER-068; 2-ER-272.[1]

Beagle's explanation of why Scheduled Reports and the Database API are inadequate introduced no new theory. It merely exposed the deficiency in AppFolio's own position, correcting AppFolio's mischaracterization of how the platform operates and what Beagle requires to serve its customers.

---

[1] Such evidence is viewed as proper by district courts in this Circuit. *See El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1040 (9th Cir. 2003) (a district court does not abuse its discretion in entertaining a reply brief argument raised for the first time in response to a defense raised in the opposition, because denying that opportunity would strip the moving party of its right to argue against the opposing party's defense); *Alaska Oil and Gas Assn. v. Salazar*, No. 3:11-CV-0025-RRB, 2012 WL 12871656, at *2–3 (D. Alaska July 10, 2012) (reply briefs are proper when they rebut issues presented in the opposition even if the specific argument was not verbatim in the moving papers); *United States v. Debora,* 713 F. Supp. 3d 1042, 1068 (W.D. Wash. 2024) (a court "may consider evidence and argument submitted with a reply that is responsive to arguments raised in the non-moving party's brief in opposition").

AppFolio's reliance on *Zamani v. Carnes* is misplaced. There, the moving defendants raised an entirely new affirmative defense—the California litigation privilege—for the first time in a reply on a motion to strike, and pressed it again on reconsideration. 491 F.3d 990, 997 (9th Cir. 2007). The district court declined to consider it, and this Court held only that doing so was not an abuse of discretion. *Id.* (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)). In *Zamani*, the movants could have raised a freestanding affirmative defense in their opening papers and chose not to. Nothing of the kind happened here: Beagle did not raise a new independent legal argument but instead emphasized the nature of the relief it sought (it sought write functionality from the outset). *Zamani* permits a court to disregard genuinely new legal theories raised for the first time in reply—it does not authorize the court to disregard evidence that responds directly to arguments first advanced in the opposition.

## II. Other Errors Independently Justify Remand

### A. The District Court's Factual Conclusions Regarding the Adequacy of Scheduled Reports and/or the Database API are Clearly Erroneous

The district court misapprehended the evidence before it. A factual finding is clearly erroneous when it is "illogical, implausible, or without

support in the record." *United States v. Le*, 119 F.4th 700, 703 (9th Cir. 2024). The finding that a read-only report could substitute for Beagle's write access is implausible on this record. A report that cannot write, cannot perform the write-enabled functions the court itself found Beagle performed on behalf of its customers. And it is without support in the record: AppFolio never asserted—and the court never found—that any feature of the Scheduled Reports would enable Beagle to service its customers' contracts. The district court's error was not one of weighing competing evidence; it was one of resolving a material factual question in the absence of any evidence at all.

### 1.  Scheduled Reports Are Not Adequate

AppFolio argues that "Beagle provides no basis for this Court to conclude that [the sample report provided by AppFolio] was insufficient to support the court's finding." Ans. Br. at 18–19. Not so. It is *undisputed* that Scheduled Reports do not provide write access, which— as Beagle has repeatedly explained—Beagle sought from the outset. 2-ER-076; 4-ER-614; 4-ER-616–617.[2] AppFolio also frames Beagle's

---

[2] *See* Beagle's ex parte Motion for TRO at 4, 6–7 (Beagle sought to maintain the year-long status quo—one in which vendors, including Beagle, accessed the platform as designed by affirmatively viewing

argument as an attack on the court's consideration of Brown's email. Ans. Br. at 16–17. It is not. The district court certainly should have considered the email in the context of the entire record (including, of course, his subsequent explanation that the reports are "not workable.") 2-ER-278.

### 2. Database API Is Not Adequate

The district court's finding on the Database API fares no better. The court made no finding that the API could perform the functions Beagle needs, nor could it have, given that AppFolio expressly concedes it "made no representations regarding [the API's] capabilities" in opposing the TRO. 2-ER-076. Moreover, AppFolio does not dispute that the API is restricted to enterprise-tier accounts and therefore unavailable to "most" of Beagle's customers. 2-ER-154; 2-ER-047. Any finding to the contrary would be clear error unsupported by the record.

---

work order details, uploading invoices, adding notes and photos, and marking work as complete—functions AppFolio itself touts as core features, not passive "read-only" access).

**B.** **The Diametrically Opposed Engineering Evidence Merited An Evidentiary Hearing**

By the reconsideration stage, the record presented two sworn engineers in direct conflict on the dispositive technical question—Okpokowuruk for Beagle and Delage for AppFolio. 2-ER-154; 2-ER-089–090. Beagle's engineer testified that the Database API "contain[s] no write-capable endpoints," is "restricted to enterprise-tier accounts" unavailable to "most" of Beagle's customers, and cannot enable Beagle to "fix errors, remediate compliance issues, or make required data updates" without AppFolio's cooperation. 2-ER-154. AppFolio's engineer asserted to the contrary that the Database API has "robust [write] capability," 2-ER-090, but notably did not address enterprise-tier limitation.

*Mark* dictates what a court must do in that posture. There, faced with new evidence contradicting the basis for its prior ruling, the district court failed "to either grant [the] motion for reconsideration or order an additional evidentiary hearing," and this Court held that doing neither was an abuse of discretion. *Mark*, 795 F.3d at 1105–06. The same is true here.

18

**C.** **The District Court Failed To Consider Beagle's Reputational Harm**

Beagle's motion for injunctive relief rested on two independent theories of irreparable harm: the loss of its ability to service its customers, and the reputational damage resulting from AppFolio's communications branding Beagle a security threat. Opening Br. at 49–52; 4-ER-617–621. The district court, however, disposed of the "irreparable harm" issue entirely on the asserted availability of substitute data access. The order never addressed the reputational-harm theory and made no findings whatsoever with respect to the evidence Beagle submitted in support of it—including AppFolio's mass communications to Beagle's customers alleging "security risks," "false claims," and "noncompliant access," which prompted a wave of customer responses characterizing Beagle as a "scam" and employing derogatory epithets such as "scumbags." The order is silent on the issue entirely. 1-ER-005–010; 4-ER-620–621; 4-ER-638–639; 4-ER-721–722.

The district court's error with respect to reputational harm is independent of the write functionality issue. The court was entitled to weigh Beagle's reputational-harm evidence and reject it. It was entitled to credit AppFolio's arguments and conclude that the harm was

19

attenuated, compensable in damages (Ans. Br. at 23–24), or otherwise insufficient to warrant relief. What it was not entitled to do was decline to address the theory altogether. A district court is required to adjudicate a properly presented ground for relief and make findings sufficient to permit appellate review. Fed. R. Civ. P. 52(a)(2).

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's order denying the temporary restraining order and remand for further proceedings at which the district court may fully consider and weigh the evidence presented—preferably through an evidentiary hearing.

DATED:  June 26, 2026

Respectfully submitted,

/s/ David Bloch
David Bloch
Marcelo Barros
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 590-5110
blochd@gtlaw.com
Marcelo.Barros@gtlaw.com

Jake C. Evans (*pro hac vice*)
Jordana R. Sternberg (*pro hac vice*)
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE
Suite 2500, Terminus 200
Atlanta, GA 30305
Telephone: (678) 553-2100
Jake.Evans@gtlaw.com
Jordana.Sternberg@gtlaw.com
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of 9th Cir. R. 32-1(a) because this brief contains 3841 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century type.

/s/ David Bloch
David Bloch

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Court's Appellate Case Management System (ACMS) on June 26, 2026. All participants in the case are registered ACMS users and will be served by the appellate ACMS system.

/s/ David Bloch
David Bloch